**DEREK SMITH LAW GROUP, LLP**
Matt E.O. Finkelberg, (SBN 329503)
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
Telephone:     (310) 602-6050
Facsimile:     (310) 602-6350
Email:          matt@dereksmithlaw.com

*Attorneys for Plaintiff Jane Doe*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an Individual Woman,<br><br>    Plaintiff,<br><br>    vs.<br><br>CALVIN BROADUS a/k/a SNOOP DOGG, individually; and DONALD CAMPBELL a/k/a BISHOP DON MAGIC JUAN;<br><br>    Defendants. | Case No.<br><br>COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES<br><br>1. Trafficking Victims Protection Act, 18  U.S.C. § 1591;<br>2. Conspiracy in Violation of 18 U.S. Code § 1594;<br>3. Sexual Battery;<br>4. Sexual Assault;<br>5. Violation of the Tom Bane Civil Rights Act<br>6. Defamation;<br>7. False Light;<br>8. Intentional Infliction of Emotional Distress;<br>9. Negligent Infliction of Emotional Distress;<br>10. Unlawful Retaliation in Violation of California Labor Code § 1102.5; and<br>11. Harassment, Aiding, and Abetting in Violation of Gov't Code §§ 12940 Et Seq.<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jane Doe, by and through her attorneys, the Derek Smith Law Group, LLP, hereby complains of Defendants CALVIN BROADUS a/k/a SNOOP DOGG, individually; and DONALD CAMPBELL AKA BISHOP DON MAGIC JUAN, individually, upon information and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action charging pursuant to, *inter alia*, the Trafficking Victims Protection Act 18 U.S.C. § 1591, and laws of the State of California, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being sexually assaulted, battered, retaliated against, harassed, and defamed.

## JURISDICTION AND VENUE

2.      Jurisdiction of this action is conferred upon this Court as this case involves a federal question under 18 U.S.C. § 1591 and 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3.      This Court has supplemental jurisdiction over Plaintiff's related state law and local ordinance claims pursuant to 28 U.S.C. § 1367(a) because her claims under California law form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's state law claims share all common operative

facts with Plaintiff's federal law claims, and the parties are identical.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Central District of California because as described further herein, a substantial part of the events or omissions giving rise to the claims herein occurred in Los Angeles County, California and within the Central District of California. Moreover, Plaintiff resides in this District, and DEFENDANTS do significant business in this District.

5. Accordingly, venue properly lies in the Central District of California pursuant to 28 U.S.C. 1391.

6. Defendant SNOOP DOGG is an individual subject to suit under the Tom Bane Civil Rights Act and the Ralph Act.

## **THE PARTIES**

7. Plaintiff, JANE DOE ("Plaintiff") is an individual resident of California.

8. Plaintiff is a sexual assault victim and is identified herein as JANE DOE. Please see *Doe v. Blue Cross & Blue Shield United of Wisc.,* 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of ... rape victims, and other particularly vulnerable parties or witnesses"). Additionally, "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe No. 2 v. Kolko,* 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *see also Doe v. Evans,* 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting anonymity to sexual assault victim); *Doe v*

*Penzato*, No. 10 Civ. 5154 (MEJ), 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011).

9.      At all times material, Defendant CALVIN BROADUS AKA SNOOP DOGG ("SNOOP DOGG") was and has been Plaintiff's employer and held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, and having the ability to hire and fire Plaintiff.

10.      At all times material, Defendant DONALD CAMPBELL AKA "BISHOP DON MAGIC JUAN" ("CAMPBELL") was and has been Defendant SNOOP DOGG's "Spiritual Advisor," employee, agent, representative, and servant. As such, Defendant CAMPBELL was and is Plaintiff's employer and effectively held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including the ability to hire and fire Plaintiff.

11.      Defendants SNOOP DOGG and CAMPBELL are an "employer" as defined by California Government Code Sections 12926(d), 12940(a), 12940(h) and 12940(j)(4)(A) because in and around 2013 they employed more than five persons.

12.      Each Defendant sued in this action has acted, in all respects pertinent to this action, as the other Defendant's agent, and has carried out a joint scheme, enterprise, business plan, or policy in all respects pertinent hereto.  The acts of each Defendant are therefore legally attributable to the other Defendant.

13.      Under California law, Defendants are jointly and severally liable as

employers for the violations alleged herein because they have each exercised sufficient control over Plaintiff.  Each Defendant had the power to hire and fire Plaintiff, supervise and control Plaintiff's work schedule and/or conditions of employment, determine Plaintiff's rate of pay, and maintain Plaintiff's employment records.  Defendants suffer or permit Plaintiff to work and/or "engage" Plaintiff so as to create a common law employment relationship.  As Plaintiff's joint employers, Defendants are jointly and severally liable for all relief available to Plaintiff under the law.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.     At all times material, Plaintiff was and is a female residing in the State of California.

15.     Throughout Plaintiff's career, Plaintiff has worked as a professional dancer, model, actress, host, and spokesmodel for Muse Ink Festival, Comedy Central, and CNN.

16.     For several years, Plaintiff worked for, was employed by, was transported by, and performed with Defendants SNOOP DOGG and CAMPBELL, as well as with other rappers who toured with Defendant SNOOP DOGG, such as Weston Frye, Lil' Nate Dogg, Kurrupt, Sugar Free, and Warren G.

17.     During these performances, Plaintiff was working for Defendants SNOOP DOGG and CAMPBELL, who employed her as a dancer on stage as part of

their concerts and shows.

18.     Defendant SNOOP DOGG is the owner, agent, officer, and proxy for many businesses, corporations, and entities which include the ownership and production of music, videos, media, shows, and concerts.

19.     SNOOP DOGG has created, produced, broadcasted, and profited from a web video series which was uploaded on to Youtube.com called *GGN: Snoop Dogg's Double G News Network* ("GGN").

20.     Plaintiff obtained exposure as a dancer for Defendants, which allowed Plaintiff to obtain sponsorships, modeling jobs, and event-hosting jobs.  Many of these sponsorships and modeling jobs were also distributed nationwide.

21.     Defendants SNOOP DOGG and CAMPBELL knowingly compensated Plaintiff through sponsorships, modeling jobs, transportation, event hosting, and future business with Defendants when they hired and/or allowed Plaintiff to perform at their shows and concerts.

22.     Defendant CAMPBELL, an agent, employee, and proxy for Defendant SNOOP DOGG told Plaintiff: "Snoop wants you here," "this will make you go viral," and "This is for your career."  By doing this, Defendant CAMPBELL indicated that Plaintiff will be compensated for her work for Defendants and that she will be working for Defendants at shows and concerts from which Defendants profited.

23.     Defendant CAMPBELL is a self-proclaimed and former "Pimp," or

someone who a man who controls prostitutes and arranges clients for them, taking part of their earnings in return, and creates fear in women. Defendant CAMPBELL, in reference to the "girls" who "worked" for him that "got out of line," has explained: "***You have to create fear in that female. You have to tell her that if she do something wrong that you going to kill her. And you have to instill this into her to when she do something wrong, and you whooping her and checking her, that she says to you, 'Daddy, Please don't kill me like you said you was***."  Defendant CAMPBELL is Defendant SNOOP DOGG's "Spiritual Advisor" and someone who Defendant SNOOP DOGG has looked up to and aspired to be for much of his life.

24.     Defendant CAMPBELL, as an agent for Defendant SNOOP DOGG and with Defendant SNOOP DOGG's knowledge and approval, engaged in and conspired in a common scheme and enterprise of recruiting, enticing, providing, transporting, soliciting, and forcing Plaintiff and individuals similarly situated to Plaintiff, with the intent that Plaintiff engage in sexual activities with Defendants SNOOP DOGG and CAMPBELL, in exchange for access to employment with Defendants, including but are not limited to dancing and appearing on Defendants' concerts, promoting Defendants' shows, hosting Defendants' shows, and appearing on Defendants' shows such as GGN.

25.     For decades, Defendant SNOOP DOGG and CAMPBELL conspired and engaged in this pattern and practice of sexually harassing, forcing, recruiting, enticing,

transporting, soliciting, and harboring females trying to work in the music industry, including singers, rappers, and dancers seeking professional opportunities from Defendants.

26.     At all times material, Defendants SNOOP DOGG and CAMPBELL produced, hired, operated, and organized other artists, including Defendant SNOOP DOGG and CAMPBELL's, concerts, shows, performances, and videos that were distributed nationwide.

27.     In addition to this, Plaintiff received gifts and compensation from SNOOP DOGG and CAMPBELL, other rappers, and their affiliates or sponsors, in exchange for performing on stage and dancing with them at their shows.

**I.      Defendant SNOOP DOGG's History of Sexually Abusing, Harassing, Threatening, and Retaliating and Unconscionable Acts Against Women, Which Deterred Plaintiff from Bringing Her Claims Earlier**

28.     Defendant SNOOP DOGG has a long history of sexually abusing women, retaliating against, and threatening them when they complain about his unlawful conduct, and terminating employees who object to his unlawful conduct.

29.     This history demonstrates a pattern of sexual abuse, reckless indifference to the rights of others, and retaliatory threats and conduct when others object to unlawful conduct.  This further supports punitive damages and is admissible under Federal Rule of Evidence 415, as evidence of Defendants' prior sexual assaults and their propensity to thus sexually assault Plaintiff.  It also demonstrates that in keeping

with Defendant SNOOP DOGG's pattern of conduct, he is likely to retaliate against and possibly harm Plaintiff for opposing his sexual battery and abuse, and thus warrants Plaintiff's continued anonymity. Furthermore, to the extent SNOOP DOGG takes any retaliatory action against Plaintiff JANE DOE, Plaintiff hereby claims retaliation for exercising her rights as stated herein. It is anticipated that SNOOP DOGG will sue Plaintiff JANE DOE for extortion just as he did to Kylie Bell in an effort to intimidate her. Plaintiff claims unlawful retaliation in the event of such lawsuit.

30.    Defendant SNOOP DOGG has often referred to himself as a "Pimp." For example, in an interview with *Rolling Stone* magazine, Defendant SNOOP DOGG said that in 2003, "***I put an organization together.  I did a Playboy tour, and I had a bus follow me with ten bitches on it.  I could fire a bitch, fuck a bitch, get a new ho: it was my program.  City to city, titty to titty, hotel room to hotel room, athlete to athlete, entertainer to entertainer … I get a couple of their players to come hang out, pick and choose, and whichever one you like comes with a number.  A lot of athletes bought puss from me … <u>I dreamed of being a pimp</u>***."

31.    Around January 28, 2005, an Emmy award-winning makeup artist Kylie Bell ("Bell") filed a lawsuit against Defendant SNOOP DOGG, claiming that on January 31, 2003, "she had been drugged," and that SNOOP DOGG had raped her. Bell was told not to tell report the incident to the police because "[Defendant SNOOP

DOGG] was a gang member and that *he would send someone to kill her if she reported the incident to the police*."

32.     Around December 10, 2004, in an attempt to further intimidate and prevent Ms. Bell from filing her rape lawsuit against Defendant SNOOP DOGG, Defendant SNOOP DOGG filed his own retaliatory preemptive lawsuit against Ms. Bell, claiming extortion.

33.     Around January 2014, three of Defendant SNOOP DOGG's bodyguards filed a complaint against Defendant Snoop Dogg alleging that they were not being paid for overtime in violation of California Labor Code.  Defendant SNOOP DOGG terminated them in retaliation for their complaints.

34.     Defendant SNOOP DOGG also once threatened a female rapper, Iggy Azalea: "*Now I said what I said bitch now let it go before I go all in on ya pink punk ass yeah u bitch!!*," and "*Say Bitch.  You're fucking with the wrong nig\*\*ga! And your nigga betta check you before I do.  You fucking bitch.  Yeah, you fucking cunt*."

35.     Around May 18, 2018, during an interview on radio show "The Breakfast Club Power 105.1, Defendant SNOOP DOGG was asked:  "Do you look back at some of your old lyrics given the climate of what is happening today with women's empowerment, and be like 'damn that is kind of fucked up that I said that?' " Defendant SNOOP DOGG responded:  "*Nope. Nope. Hell No. That was me. Fuck*

***them hoes. Straight up.  Fuck a Bitch … I'm just saying that's me back then.  At the time I was making that music. That's who [Defendant SNOOP DOGG] was.  I cannot change that.***"

36.    Around In February 2020, after an interview in which female CBS news anchor Gayle King discussed the sexual allegations against Kobe Bryant, Defendant SNOOP DOGG threatened Ms. King's safety by saying:  "***I wanna call you one…Funky, dog-haired bitch, how dare you try and tarnish my motherfucking homeboy's reputation, punk motherfucker…Respect the family and back off bitch, before we come get you***."

37.    In response to the allegations made against Bill Cosby for rape, drug-facilitated sexual assault, sexual battery, and child sexual assault spanning decades, Defendant SNOOP DOGG posted a picture on his Instagram account supporting the alleged serial sexual predator by stating: "***Free bill Cosby***."

Throughout Defendant SNOOP DOGG's career, he opened his concerts by saying, "***Girls.  Do you want me to make you famous?  Then get down on both knees, bitch***," implying that Defendant SNOOP DOGG will make a woman famous and presumably rich but only in exchange for oral sex.

38.    As can be seen from the above, Defendant SNOOP DOGG engages in a pattern and practice of sexually assaulting women, threatening women, and retaliating against those who oppose unlawful behavior.

39.     The following public information further demonstrates why Plaintiff should be allowed to proceed pseudonymously, and explains why Plaintiff did not fight back against SNOOP DOGG when he sexually assaulted her, and why she feared coming forward sooner and is entitled to equitable tolling of all applicable statutes of limitations and why Defendants SNOOP DOGG and CAMPBELL are equitably estopped from bringing the defense of timeliness for all of Plaintiff's claims.  *See, e.g., Bianco v. Warner*, No. 21 Civ. 3677 (FLA), 2021 WL 4840470 (C.D. Cal. Oct. 7, 2021).  It is also evidence of SNOOP DOGG's reckless disregard for others and lack of credibility:

40.     Around 1993, Defendant SNOOP DOGG was arrested and charged with the murder of a (rival) gang member, who was allegedly shot and killed by SNOOP DOGG'S bodyguard.  (SNOOP DOGG reportedly drove the vehicle from which the gun was fired.)

41.     In July 1993, Defendant SNOOP DOGG was stopped for a traffic violation and a gun was found by police during a search of his car.

42.     In February 1997, Defendant SNOOP DOGG pleaded guilty to possession of a handgun.

43.     Around October 2006, after being stopped for a traffic infraction at Bob Hope Airport in Burbank, Defendant SNOOP DOGG was arrested for possession of a firearm and for suspicion of transporting an unspecified amount of marijuana.

44.     The following month, after taping an appearance on the Tonight Show with Jay Leno, Defendant SNOOP DOGG was arrested again for possession of marijuana, cocaine and a firearm.  Two members of his entourage, according to a Burbank Police Department statement, were admitted members of the "Rollin 20s" Crips gang, and were arrested on separate charges.

45.     In April 2007, SNOOP DOGG was given a three-year suspended sentence, five years' probation, and 800 hours of community service after pleading no contest to two felony charges of drug and gun possession by a convicted felon.

46.     Around April 26, 2006, Defendant SNOOP DOGG and members of his entourage were arrested after being turned away from British Airways' first class lounge at Heathrow Airport in London, England, because some members of his entourage were flying in economy class. After being escorted outside, the group got in a fight with the police and vandalized a duty-free shop.  Seven police officers were injured during the incident.

II.    **#METOO Witnesses who were Subjected To Similar Conduct of attempted rape, assault, battery, sexual harassment, enticement, harboring, solicitation, transportation, and recruitment by Defendants SNOOP DOGG and CAMPBELL**

47.     In order to protect other victims who were strong enough and brave enough to come out and share their story, their names will remain anonymous to ensure that Defendant SNOOP DOGG cannot retaliate, threaten, defame, or pressure these individuals (as he has done to Plaintiff) because of their complaints of assault,

battery, trafficking, and attempted rape. Plaintiff hopes that this will encourage others, whom SNOOP DOGG has scared and deterred from coming forward as a result of the conduct and actions he has taken which is described above in Section I. Plaintiff believes that there are many other victims who have been subjected to the same scheme, enterprise, pattern, and practice of trafficking, sexual harassment, assault, and battery that she and the individuals described below were subjected to. As a result of Defendant SNOOP DOGG's retaliatory conduct and history, other victims have come forward, including ME TOO #2, but have requested their story not be shared herein due to their fear that Defendant SNOOP DOGG will threaten and retaliate against them as he has done in his past and to Plaintiff.

48.     As discussed below, it is also imperative that these witnesses remain anonymous considering Defendant SNOOP DOGG and his agent's threats and intimidation through his Instagram post and retaliatory release of Plaintiff's name to the media in an effort to threaten and/or intimidate Plaintiff.

49.     The fact that these witnesses were too afraid to come out sooner and share their stories only further illustrates how Defendant SNOOP DOGG's conduct above prevented them and scared them from doing so. These witnesses are also relevant to Plaintiff's claim that Defendants should be equitably estopped from asserting any applicable statutes of limitations – because it was Defendant SNOOP DOGG's intention to scare other victims from coming forward through the acts

described above, and in fact he did scare Plaintiff out of coming forward sooner. Because of Plaintiff's courage and filing of this lawsuit, the below victims were inspired to share their story and no longer be silenced.

50.     These METOO witnesses' stories are also relevant and admissible pursuant to Federal Rule of Evidence 415, which states: "In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation."

**ME TOO #1**

51.     In the early 1990's, a woman who will be referred to as ME TOO #1 met Defendant SNOOP DOGG and several other men at a Popeye's restaurant in Los Angeles.

52.     The group invited METOO #1 to the studio where Defendant SNOOP DOGG and Dr. Dre were recording music.

53.     While ME TOO #1 was standing next to a pool table, **Defendant SNOOP DOGG walked up to her, grabbed her hair, forcefully pushed and bent her down, over against the pool table, and pushed her head into the pool table, in front of all the other individuals in the recording studio.**

54.     **As he held ME TOO #1 down by her hair, Defendant SNOOP DOGG forced his hand up her skirt and pulled down her underwear; he then**

**pulled his penis out of his pants and attempted to rape ME TOO #1, who felt his penis touching her skin.**  At that point, fortunately, Dr. Dre yelled "Stop!  Leave her alone!"

55.    ME TOO #1, terrified and humiliated, pulled up her underwear and left the studio in tears.  She would have been raped but for Dr. Dre's intercession.

56.    ME TOO #1 to this day suffers from depression, sleepless nights, and post-traumatic stress.  ME TOO #1 is forever grateful that Dr. Dre saved her from being gang raped by Defendant SNOOP DOGG and the other men that watched in the studio.

### *ME TOO #3*

57.    Around sometime in 2005, ME TOO #3 attended a party in Los Angeles.  As ME TOO #3 and her friends were leaving, they met SNOOP DOGG and his close friend and associate, "Big Percy."  After this, ME TOO #3 and her friends agreed to meet up with Big Percy and Defendant SNOOP DOGG again at a hotel.

58.    While they were there, Big Percy told ME TOO #3, "*Snoop Dogg thinks you're pretty.  He wants you to go into the room with him and give him a massage*."  ME TOO #3 responded: "No, I am not doing that."

59.    Defendant CAMPBELL overheard ME TOO #3 rebuff this sexual advance, recruitment, and enticement and said, "Girl, why you gotta be so square."

60.    ME TOO #3 then went to the bathroom.  While ME TOO #3 was

urinating, ***Defendant CAMPBELL opened the door, turned off the lights, and closed the door behind him***.  ME TOO #3 screamed: "Oh my god!  Turn on the lights!"  **She immediately got up from the toilet, and when CAMPBELL turned the bathroom lights back on, ME TOO #3 saw that CAMPBELL was walking towards her with his penis out of his pants, attempting to force, entice, and/or coerce ME TOO # 3 into performing oral sex on him.**  She tried move around CAMPBELL so she could leave the bathroom, but **he kept moving back and forth to block her path**.  ME TOO #3 screamed, "Get out of my way," and finally escaped the bathroom.  She then told her friends, "We need to leave because Bishop just exposed himself to me."  They left the hotel.

### III.   Defendants' sexual assault, battery, trafficking, recruiting, harboring, enticing, soliciting, and transporting of Plaintiff

61.     Around May 29, 2013, during the period when Plaintiff performed for Defendants, she and a friend attended one of Defendant SNOOP DOGG's shows at "Club Heat Ultra Lounge," a night club in Anaheim. While there, Plaintiff and her friend entered the VIP room where they ran into Defendant CAMPBELL.

62.     That night, in line with Defendants' common scheme and joint enterprise, Defendant CAMPBELL invited Plaintiff and her friend back to join him and Defendant SNOOP DOGG at Defendant SNOOP DOGG's recording studio.  Plaintiff her friend agreed and joined them.  Defendant CAMPBELL transported Plaintiff and her friend to the studio.

63.     After midnight, Plaintiff's friend left because Defendants made her feel uncomfortable and unsafe.  Plaintiff was now alone with Defendants CAMPBELL and SNOOP DOGG. Defendant CAMPBELL offered Plaintiff:  "I can take you home or I can take you back to my place with me."  She asked Defendant CAMPBELL to drop her off at her home.

64.     Shortly thereafter, Plaintiff left with Defendant CAMPBELL and fell asleep in the car.  When she awoke, Plaintiff was still in the car with Defendant CAMPBELL. After a short time, they arrived at Defendant CAMPBELL's home despite Plaintiff's request to be dropped off at her home.  Too exhausted to argue or get home by herself, Plaintiff fell asleep at Defendant CAMPBELL's home.

65.     At about 4:00 that morning, Plaintiff awoke to Defendant CAMPBELL turning her body over to face him.  **Defendant CAMPBELL then removed his penis from his pants, put it in Plaintiff's face, then repeatedly shoved his penis into Plaintiff's mouth.**  Defendant CAMPBELL's penis was flaccid as he was forcing his penis into Plaintiff's mouth.   After some time, Defendant CAMPBELL, not able to obtain an erection, turned away from Plaintiff and left her alone.

66.     Defendant CAMPBELL leveraged his relationship, employment, and agency of Defendant SNOOP DOGG to place himself in a position of power and authority over Plaintiff, which enabled him to force Plaintiff to engage in sexual acts.

67.     Because Plaintiff worked for Defendants, Defendant CAMPBELL

thought he was entitled to sexually abuse her.  Defendant CAMPBELL sexually abused Plaintiff because he viewed her as one of his prostitutes and property, whom he could sexually abuse with impunity.

68.     Moreover, Defendant CAMPBELL believed he could, and he did, sexually assault and batter Plaintiff because he provided her with other work with SNOOP DOGG, work which both Defendants profited from.

69.     Defendant CAMPBELL thus discriminated against and harassed Plaintiff because of her sex and gender.

70.     Defendant CAMPBELL sexually harassed, sexually assaulted, and sexually battered Plaintiff.

71.     Subsequently, Defendant CAMPBELL told Plaintiff, "Here, put this dress on."  Plaintiff was not feeling well, and replied, "Can't I sleep? I don't feel well," but he insisted, and aggressively stated: "***Put the dress on," "let's go to Snoop's videotaping. I want to see if he will make you the weather girl***," and "Snoop wants you there." He implied that Plaintiff did not have a choice, and urged Plaintiff: "***Snoop wants you there.  Let's go.  This is a career move***."  Plaintiff complied in hopes of advancing her career.  Defendant SNOOP DOGG told Defendant CAMPBELL to bring Plaintiff back to the studio.

72.     "Weather girls" – typically models – play well-known roles on GGN. Usually scantily dressed or in bikinis, they dance as they describe the weather.

Defendant CAMPBELL had the ability to bring actresses and models onto the show.

73.    As other similarly situated women have described, it was common for Defendant CAMPBELL to leverage his relationship, employment, and agency with SNOOP DOGG to place himself in a position of power and authority over women in order to force them to engage in sexual acts with himself and Defendant SNOOP DOGG.  Defendant CAMPBELL has additionally instructed women to wear specific outfits for him which he found to be more attractive or thought that Defendant SNOOP DOGG would find more attractive.

74.    Defendants CAMPBELL and SNOOP DOGG were aware of, encouraged, and allowed each other to engage in, use, and profit from compelling women to engage in sexual acts in exchange for employment opportunities.

75.    Defendants profited from GGN as they received revenue from its millions of worldwide viewers, and posted content that included these women on the Internet and social media services such as Youtube, Facebook, and Instagram. Defendants SNOOP DOGG's and CAMPBELL's Weather Girls generate revenue and viewership for Defendants SNOOP DOGG, while providing a potential source of income, exposure, and career advancement for women like Plaintiff.

76.    The "Weather Girl" position is what Defendant CAMPBELL told Plaintiff she had the opportunity to be employed for, by explicitly telling Plaintiff, "I want to see if [Defendant SNOOP DOGG] will make you the weather girl," and that

this is "a career move." Defendant CAMPBELL's offer of employment as a Weather

Girl blatantly implies that money would be involved and that she could expect future

employment with Defendants if she complied with Defendant CAMPBELL's and

SNOOP DOGG's demands.

77.     Defendant CAMPBELL's statements showed that he and SNOOP DOGG

not only obtained revenue and profited off of GGN's Weather Girls, but that he and

SNOOP DOGG had the authority to hire, compensate, and make Plaintiff a Weather

Girl, which would then allow Plaintiff to advance her career.

78.     Defendants SNOOP DOGG and CAMPBELL continued to use these

women as "Weather Girls," or dancers for their shows, were aware of what these

women were forced to do in order to obtain employment, and allowed this conduct to

continue while profiting from the revenue and viewership the women generated for

them.  The revenue and viewership Defendants received was worldwide, as much of

their revenue came from viewership of the content that included these women and was

posted on the Internet and social media services such as Youtube, Facebook, and

Instagram.

79.     Defendant CAMPBELL, in furtherance of the scheme and joint

enterprise of recruiting and enticing women to have sexual relations with himself and

Defendant SNOOP DOGG in exchange for employment opportunities, told Plaintiff

what to wear so that Defendant SNOOP DOGG would be more attracted to Plaintiff

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

and inclined to hire her as a Weather Girl.  Moreover, Defendant CAMPBELL was

essentially grooming Plaintiff and preparing Plaintiff to have sexual relations with

Defendant SNOOP DOGG in exchange for work as a Weather Girl.

80.     In short, it was Defendants' scheme, joint enterprise, and common

practice to "pimp out," prostitute, or exploit females interested in working for

Defendants to Defendant SNOOP DOGG and himself, thereby affecting interstate

commerce.  This affected interstate commerce because Defendant CAMPBELL

attempted to "pimp out," prostitute, and/or women like exploit Plaintiff in exchange

for career opportunities on GGN, an interstate earning revenue throughout the nation

for Defendants.

81.     In the end, although Plaintiff had a stomach ache, she complied with

Defendant CAMPBELL's demands and put on the dress he had ordered her to wear,

in hopes of obtaining a GGN Weather Girl position or another job with Defendants.

Defendant CAMPBELL then transported Plaintiff to Defendant SNOOP DOGG.

82.     Plaintiff and Defendant CAMPBELL arrived at the recording studio

where Defendant SNOOP DOGG filmed GGN. While waiting for production to

begin, Plaintiff made eye contact with Defendant SNOOP DOGG, who leered at her

and undressed her with his eyes.

83.     Shortly thereafter, Plaintiff continued having stomach pains, and went to

the bathroom. While she sat on a toilet, **Defendant SNOOP DOGG opened the door**

**to the bathroom and shut it behind him, walked up to Plaintiff with his crotch in Plaintiff's face, removed his penis from his pants, grabbed Plaintiff's shoulder, and ordered Plaintiff**:  "*Put it in your mouth*."  Plaintiff, panicked and terrified, and recalling SNOOP DOGG's criminal history, alleged gang affiliation, and previous rape allegations, feared for her safety, future, and retaliation, and so reluctantly complied with his lewd instruction.

84.    After a few minutes, **Defendant SNOOP DOGG withdrew his penis from Plaintiff's mouth, visibly dissatisfied with Plaintiff's reluctant performance. SNOOP DOGG proceeded to masturbate, and ejaculated on Plaintiff's upper chest and lower neck.** Defendant SNOOP DOGG stated, "*I'll be back, I'll get you something to clean up with*" and exited the bathroom, leaving Plaintiff humiliated and still fearful for her safety.  Defendant SNOOP DOGG never returned to the restroom and left Plaintiff humiliated and terrified.

85.    Defendant SNOOP DOGG was aware that Plaintiff was at his studio to obtain a GGN Weather Girl job.  Defendant SNOOP DOGG instructed Defendant CAMPBELL to bring Plaintiff there – indeed CAMPBELL said so, that "Snoop wants you there."  Defendant SNOOP DOGG was aware of, encouraged, and partook in this "pimp out" and exploitation scheme and joint enterprise, and had instructed Defendant CAMPBELL to bring Plaintiff to his studio for *quid pro quo* sexual acts in exchange for hiring her as a Weather Girl or performer for his other shows.

86.     Because Plaintiff rebuffed Defendant SNOOP DOGG's sexual assault and battery by reluctantly acceding to Defendant SNOOP DOGG's sexual advances and refusing to be pimped out and exploited by Defendants, Defendants refused to hire her in retaliation.

87.     Had Defendants hired Plaintiff, they would have profited from her and obtained viewership because of her role as a "Weather Girl," or as a dancer and performer at Defendants' other shows and concerts.

88.     The assault and battery to which Plaintiff was subjected is similar to what other victims of Defendant SNOOP DOGG have suffered.

89.     Defendant SNOOP DOGG sexually harassed, sexually assaulted, and sexually battered Plaintiff.

90.     Defendant SNOOP DOGG subjected Plaintiff to *quid pro quo* harassment.

91.     Defendant SNOOP DOGG's actions were sexually predatorial.  Plaintiff found herself thinking about her job security if she displeased Defendant SNOOP DOGG, and felt pressured by him due to his dominance, and his position of power over her, including his ability to hire and fire her and ensure that she would never be hired at the Weather Girl or in his industry again as a performer at his concerts or any other concerts again.

92.     Shortly thereafter, Plaintiff, shocked, embarrassed, abandoned, and

dejected, cleaned herself off in the bathroom sink and exited the bathroom. Plaintiff turned right and locked eyes with Defendant SNOOP DOGG who, once again, leered at Plaintiff.  Plaintiff feared for her life and job security, and walked away.

93.     Plaintiff then went into the production room, lied on a couch, broke down, and cried.  Tedd Chung, a friend of Defendant SNOOP DOGG's friend and one of GGN's producers walked into the room with several other people to discuss the script for the show.  Mr. Chung then told Plaintiff to leave the room.  Plaintiff left the room and sat with Bokeem Woodbine next to the green screen.

94.     Shortly thereafter, Defendant CAMPBELL spotted Plaintiff, waved her over, insisting:  "Come here! Take a picture with Snoop!" Plaintiff, mortified, embarrassed, and fearing for her safety, walked over to SNOOP DOGG and stood next to him, while CAMPBELL took a picture of them.  Defendant SNOOP DOGG told Defendant CAMPBELL, "Make sure you bring this one back."   Plaintiff then left.

95.     Defendant SNOOP DOGG failed to hire Plaintiff as a Weather Girl because she refused to willingly and enthusiastically give oral sex to Defendant SNOOP DOGG, and was unable to orally give him an orgasm.

96.     Because Plaintiff refused to do the above, Defendant SNOOP DOGG did not hire Plaintiff as a "Weather Girl."

97.     Defendants SNOOP DOGG and CAMPBELL abused their power over

Plaintiff and sexually assaulted and battered her.

98.    Plaintiff felt emotionally overwhelmed, anxious and violated.

99.    Defendants' actions and conduct were directed at intentionally harming Plaintiff.

100.    As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, she has suffered anxiety, stress, depression, nightmares, sleep disturbances, post-traumatic stress, headaches, severe emotional distress and physical ailments.

101.    Defendants sexually harassed, assaulted, and battered Plaintiff.

102.    SNOOP DOGG and CAMPBELL also discriminated against and harassed Plaintiff because of her sex and gender; and retaliated against Plaintiff for insufficiently engaging in sexual relations by failing to hire her.

## IV.    **Defendant SNOOP DOGG's Most Recent Acts of Threats, Intimidation, Coercion, Harassment, Retaliation, Defamation, False Light, and Intentional Infliction of Emotional Distress Giving Rise to Causes of Action Five Through Ten**

103.    Plaintiff and Defendants attempted to resolve this dispute via private mediation, a protected activity, on February 8-9, 2022.

104.    Immediately after the mediation ended, in direct retaliation for Plaintiff's complaints of sexual assault and sexual battery, and in an effort to intimidate and threaten Plaintiff, Defendant SNOOP DOGG posted the below image on his Instagram, calling Plaintiff a "gold digger," while including emojis of a judge and police officer, threatening, harassing, and retaliating against Plaintiff by insinuating

that he will take similar action against Plaintiff as he took against Ms. Bell by threatening Plaintiff with criminal prosecution and/or a lawsuit for extortion.  This also yet another of Defendant SNOOP DOGG's common scheme and practice to intimidate, harass, threaten, and call his followers to action via social media against any women who challenges him.



105.   Defendant SNOOP DOGG thereby threatened Plaintiff with criminal prosecution and/or a lawsuit for extortion as he brought against Ms. Bell in the past, and harassed Plaintiff because she had complained about his sexual harassment, assault, and battery.

106.   As a result of Defendants SNOOP DOGG's threats of retaliation against

Plaintiff with a false claim of extortion, coupled with Defendants' history, forced Plaintiff to immediately file a lawsuit against him.

107.   This Instagram post was also used to threaten, intimidate, and coerce Plaintiff into not exercising her constitutional rights to engage in a mediation, make these complaints, and file a lawsuit, thereby violating the Tom Bane Civil Rights Act.

108.   Moreover, Defendants SNOOP DOGG through this Instagram post, which has since been deleted, also violated California Labor Code 1102.5 by retaliating against Plaintiff for her complaints of sexual harassment, assault, and battery.

109.   Defendant SNOOP DOGG's pattern and practice of threats, retaliation, harassment, and intimidation unsurprisingly did not stop there.

110.   Around February 11, 2022, through Defendant SNOOP DOGG's counsel, Defendant SNOOP DOGG threatened to file an additional lawsuit against Plaintiff, stating that "he will pursue a malicious prosecution action against your client and your firm seeking tens of millions of dollars in damages."   Said threat was in direct retaliation for Plaintiff's claims of and complaints of unlawful sexual harassment, assault, and battery.

111.   After Plaintiff's first lawsuit was filed on February 9, 2022, Defendant SNOOP DOGG authorized and instructed a "spokesperson" to release a statement to a journalist with Mediaite.com on February 11, 2022, which Mediate.com later

published on their website.  The defamatory statement said:

> The allegations by [Jane Doe][1] of sexual assault by Calvin Broadus (known as Snoop Dogg), are simply meritless. They appear to be part of a self-enrichment shakedown scheme by [Jane Doe] to extort Snoop Dogg…[Jane Doe]'s scheme involves concocting a legal complaint as an anonymous "Jane Doe" plaintiff, and, knowing full well it can be a public document, filing this complaint late Wednesday, only three days before the Super Bowl. In the complaint, [Jane Doe] manufactures an occurrence of more than 8 years ago, in 2013, for her false allegations…[Jane Doe]'s shakedown scheme is disgraceful. Her attempt to use the courts to advance this scheme is shameful too, and does a disservice to real victims who deserve to be believed.

112.   After this statement revealed Plaintiff's name, her counsel released a statement condemning Defendants' brazen release of her name as another example of SNOOP DOGG'S practice of shaming and threatening his victims.

> Sexual assault victims are allowed to proceed anonymously for their own protection. Courts allow pseudonyms ""when necessary to protect the privacy of ... rape victims." The "public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." These laws also protect the safety of sexual assault victims. We believe this is especially true when a Defendant has a criminal history.

> By Mr. Broadus' spokesperson revealing our client's real name, this falls right in step with what we believe to be Mr. Broadus' *modus operandi* of harassing and intimidating women who oppose sexual misconduct or oppose him. We believe it is the Defendants'' intention to attack and intimidate any woman who goes against them.

> We are disgusted and appalled that a spokesperson for Mr. Broadus would do something so malicious. It takes a lot for women to finally muster the courage to come forward against their harassers. It is even

---

[1]   Plaintiff's name has been redacted from Defendants' statement above. The original contained Plaintiff's true identity despite the action being pursued anonymously.

harder for a woman to come forward against a sexual harasser who has an extensive criminal history and is idolized by millions. It is obvious that survivors should never have to face intimidation and threats from their harassers. Broadus' spokesperson's revelation of the Plaintiff's real name in this case is abhorrent. There are laws to protect their identities for a reason. We have concerns for our client's safety now that her identity has been revealed.

Our client had the courage to stand up for her rights and decided that her story could no longer be silenced. Our client does not have the power of over 60 million Instagram followers or the elite celebrity status of "Snoop Dogg" and everything that comes with it. She is just one woman who was brave enough to stand up for herself. We applaud her bravery and hope that Mr. Broadus and his spokesperson's actions do not further deter women from coming forward against their sexual harassers. If enough women will stand up against their harassers, we will see a change for the better. However, if harassers like Mr. Broadus continue to retaliate against those who stand up to them, we are concerned there will be a disastrous chilling effect, and women will not come forward out of fear of retaliation. Even worse, harassers would feel emboldened to sexually assault without fear of consequences.

It is hypocritical to accuse our client of performing a disservice to other victims when this spokesperson just released the name of a survivor. This conduct may instill fear in other victims that their names will also be released in public despite the protections the law has given them.

We are passionate and will continue to fight for our client. The "Jane Doe" status is available to victims of sexual assault and must be protected. We thank all individuals who have come forward to stand with our client, and hope that this conduct does not scare others from coming forward with their stories. We thank those who have shared with us over the past couple of days their experiences with Defendants. We encourage other victims to always come forward. We also thank all news outlets that refuse to publish the real name of our client. We will continue to protect sexual assault survivors and fight for their rights.

113. Until the appropriate time when a motion is made to address Plaintiff's

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

right to proceed anonymously.  We hereby request that Defendants' be enjoined from making any further public reference to Plaintiff's true identity.

114.    As Plaintiff's statement noted, despite Plaintiff having redacted her name, as is her right in the pending lawsuit and a protection the law affords her and other similarly situated victims of sexual harassment and assault, Defendants implicitly continued to intimidate and threaten scared Plaintiff and other victims of sexual harassment, assault, and battery by releasing her name to the media – and thus to the public, and millions of people.

115.    By releasing Plaintiff's name, Defendant SNOOP DOGG yet again demonstrated his pattern and practice of scaring, intimidating, retaliating against, and harassing victims of sexual harassment, assault, and battery, by effectively calling on his millions of followers to threaten, intimidate, and retaliate against Plaintiff.

116.    Defendant SNOOP DOGG released her name with the knowledge, intention, and hope that Defendant SNOOP DOGG's millions of followers would harass, intimidate, and threaten Plaintiff.

117.    Because Defendant SNOOP DOGG knowingly released Plaintiff's name to the public, Plaintiff has since been subjected to harassment by Defendant SNOOP DOGG's followers who have further intimidated, threatened, messaged, and called Plaintiff names through social media.

118.    Defendant SNOOP DOGG has a large social media following and the

ability to threaten individuals and recruit others to follow through on his threats. And indeed, since then, SNOOP DOGG's followers have intimidated, threatened, and called Plaintiff names through Instagram and social media.

119.   Defendant SNOOP DOGG has threatened women in the past, has threatened Plaintiff, and revealed her name to his millions of followers, intentionally making Plaintiff vulnerable to further retaliation from Defendant SNOOP DOGG and his followers, especially considering Defendant SNOOP DOGG's past and what was stated in Ms. Bells Complaint, "[Defendant SNOOP DOGG] **was a gang member and that he would send someone to kill her if she reported the incident to the police**."

120.   Plaintiff's fear stems from the fact that Defendant SNOOP DOGG has threatened numerous women as shown above. For example, Defendant SNOOP DOGG told Iggy Azalea, "***And your n\*\*ga betta check you before I do***," and Gayle King, "***Respect the family and back off bitch, before we come get you***." Considering Defendant SNOOP DOGG's fan base and following, it is terrifying to imagine what he means when he also told Ms. King, "***Before we come get you***."

121.   Plaintiff fears that Defendant SNOOP DOGG will continue to carry out these threats.

122.   Defendant SNOOP DOGG released this statement with the intent and effect of revictimizing Plaintiff, destroying her professional reputation, outing

Plaintiff's identity so Defendant's millions of followers can also retaliate, harass, and threaten Plaintiff, and subjecting Plaintiff to violence and threats of violence from Defendant SNOOP DOGG's millions of followers and supporters, causing Plaintiff severe emotional distress.

123. Defendant SNOOP DOGG retaliated against, harassed, intimidated, and threatened Plaintiff.

124. Moreover, Defendant SNOOP DOGG, through this statement has also violated California Labor Code 1102.5 by retaliating against Plaintiff for her complaints of sexual harassment, assault, and battery.

125. Defendant SNOOP DOGG, through his spokesperson, publicly called Plaintiff a liar by stating she "concocted" her claims, and that she has attempted to "extort" Defendant SNOOP DOGG, ironically and ridiculously making Plaintiff out to be the one attempting to "shakedown" Defendant SNOOP DOGG.

126. As noted, SNOOP DOGG's spokesperson said of Plaintiff's claims:

(a)    they appear to be a part of a self-enrichment shakedown scheme

(b)    they are extorting Snoop Dogg;

(c)    they manufacture an occurrence of more than eight years ago for her false allegations;

(d)    the scheme involves concocting a legal complaint;

(e)    SNOOP DOGG has never had any sexual encounter whatsoever

with Plaintiff.

Each of the purported statements of fact set forth above is false.

127.   The defamatory statements have a natural tendency to injure Plaintiff's reputation.

128.   Defendants published the defamatory statements while knowing that they were false.

129.   In the alternative, the Defamatory statements and each of them were published with reckless disregard as to their falsity.

130.   Defendants thus defamed Plaintiff and/or placed her in a false light.

131.   Defendants also disparately treated, disparately impacted, sexually harassed, and discriminated against Plaintiff because of her sex and gender; subjected Plaintiff to a hostile work environment and sexual harassment; and failed to hire and retaliated against Plaintiff because of her sex and gender and because she failed to willingly and enthusiastically participate in Defendants' sexual assault or rape of Plaintiff.

132.   As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety, loss of sleep, stress, and severe emotional distress.

133.   Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits, and other

compensation which such employment entails.  Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

134.   As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages from Defendants.

135.   Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

136.   Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions as a result of Defendants' discriminatory conduct.

137.   Plaintiff claims actual discharge and wrongful termination.

138.   Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Claimant is an Independent Contractor, Volunteer, or Applicant, and Claimant makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors, volunteers, or applicants.  Furthermore, in such, case, Plaintiff claims that Defendants owed and breached their duty to Plaintiff to prevent her harassment/discrimination/retaliation and are liable therefore for negligence.

139.   Plaintiff claims that Defendants sexually harassed, assaulted, and battered

her, created a hostile work environment for her, unlawfully discriminated against her, disparately treated her, and retaliated against her because of her sex and gender.

**FIRST CAUSE OF ACTION**
**TRAFFICKING VICTIMS PROTECTION ACT (TVPA)**
(Against Defendants SNOOP DOGG and CAMPBELL)

140.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

141.   In addition to what is stated above, Defendant SNOOP DOGG and CAMPBELL engaged in interstate commerce as described herein through, inter alia, their use of the internet, telephones, text messages, advertising, promotion, and interstate concerts.  Furthermore, the above Weather Girl position Defendants that SNOOP DOGG and CAMPBELL used to recruit, entice, harbor, solicit, and transport Plaintiff for sex acts that were forced upon her by Defendant SNOOP DOGG and CAMPBELL, was a position on Defendants' interstate internet television show from which they profited.

142.   Defendant SNOOP DOGG and CAMPBELL in effecting interstate commerce by producing, running, and starring in the interstate internet television show GGN, and through the enticement, transportation, harboring, solicitation, and recruitment of performers working at interstate music concerts and interstate internet television shows, enticed, solicited, and recruited Plaintiff to appear at Defendants'

studio and be sexually assaulted and battered.

143.   Thereafter, because Plaintiff was not a willing and enthusiastic participant in the sexual assault and battery, Defendants failed to place Plaintiff in the role of Weather Girl on the interstate internet/television show, preventing Plaintiff from additionally being compensated for her work.

144.   Defendants SNOOP DOGG and CAMPBELL transported, solicited, harbored, enticed, and recruited Plaintiff to be a Weather Girl, and committed sexual assault and battery of Plaintiff by force.

145.   Through their sexual assault and battery, Defendants SNOOP DOGG and CAMPBELL would have profited and obtained revenue from Plaintiff if she has been made a Weather Girl.  It was Defendants' scheme and joint enterprise to profit from the "pimping out," prostitution, and exploitation of females including Plaintiff by using them to obtain viewership and revenue from Defendants' viewers who watched GGN to see the Weather Girls.

146.   Through this scheme, joint enterprise, and attempted prostitution of Plaintiff, Defendants SNOOP DOGG and CAMPBELL continued to produce GGN with Weather Girls, made money off of the Weather Girls, and attempted to make money by using Plaintiff as a Weather Girl, had she not complained of and rejected their sexual assault and battery.

147.   Plaintiff brings this claim pursuant to all applicable sections of 18

U.S.C.A. §§ 1591, 1595, as "[a]n individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States. The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred." 18 U.S.C.A. §1595(a).

148.   Defendants conduct constituted sexual trafficking "by force, fraud, or coercion," in violation of 18 USC § 1591.  In particular, their conduct involved participation in a venture that affected interstate commerce, provided Defendants with financial benefits states as follows:

**(a)** Whoever knowingly--
**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
**(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).
**(b)** The punishment for an offense under subsection (a) is--
**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or
**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the

age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

**(e)** In this section:

**(1)** The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

**(2)** The term "coercion" means--

**(A)** threats of serious harm to or physical restraint against any person;

**(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

**(C)** the abuse or threatened abuse of law or the legal process.

**(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

**(4)** The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

**(5)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

**(6)** The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

149.     Additionally, 18 USCA § 1595. Civil remedy states as follows:

(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate

district court of the United States and may recover damages and reasonable attorneys fees.

(b)(1) Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

(2) In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

(c) No action may be maintained under subsection (a) unless it is commenced not later than the later of--

(1) 10 years after the cause of action arose; or

(2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

150.   Broad, expansive language is employed in Trafficking Victims Protection Act (TVPA) and its remedial provision, which permits civil actions for damages. *See Noble v. Weinstein*, 335 F. Supp. 3d 504 (SDNY 2018).

151.   Defendants subjected Plaintiffs to commercial sex acts by force and coercion, including both physical and financial.

152.   18 U.S.C. 1591 § (e)(3) defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

153.   A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18. See the Department of Justice's definition: https://www.justice.gov/crt/involuntary-servitude-forced-labor-and-sex-trafficking-statutesenforced. "Section 1591 criminalizes sex trafficking, which is defined as causing a person to engage in a commercial sex act under certain statutorily enumerated conditions. A commercial sex act means any sex

act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18."

154.   Defendants conditioned Plaintiff's employment or possibility of financial benefits, on her continued engagement in forced sex acts. Additionally, the financial aspect to the relationship was also an element of the "forced" sex acts.

155.   Defendants knowingly recruited, enticed, solicited, or harbored Plaintiff through means of force, threats of force, or a combination of such forceful means, and forcibly caused Plaintiff to engage in an unwanted sexual act for a commercial benefit.

156.   Plaintiff is entitled to damages as a result of Defendants' conduct, in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### FOR CONSPIRACY IN VIOLATION OF 18 U.S. CODE § 1594
(Against Defendants SNOOP DOGG and CAMPBELL)

157.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

158.   18 U.S.C. § 1594 further provides liability for "[w]hoever conspires with another to violate section 1591."

159.   As stated above and herein, Defendants SNOOP DOGG and CAMPBELL each further conspired with the other to violate 18 U.S.C. § 1591 by

entering into a joint enterprise with consciousness of its general nature and extent.

160.   Defendants CAMPBELL and SNOOP DOGG engaged and conspired in a common scheme and enterprise of recruiting, enticing, providing, transporting, soliciting, and forcing Plaintiff and individuals similarly situated to Plaintiff, with the intent that Plaintiff engage in sexual activities with Defendants SNOOP DOGG and CAMPBELL, in exchange for access to employment with Defendants, including but are not limited to dancing and appearing on Defendants' concerts, promoting Defendants' shows, hosting Defendants' shows, and appearing on Defendants' shows such as GGN.

161.   For decades, Defendant SNOOP DOGG and CAMPBELL conspired and engaged in this pattern and practice of sexually harassing, forcing, recruiting, enticing, transporting, soliciting, and harboring females trying to work in the music industry, including singers, rappers, and dancers seeking professional opportunities from Defendants.

162.   Defendants are liable to Plaintiffs under 18 U.S.C. §§ 1591, 1594, and 1595.

163.   Plaintiff is entitled to damages as a result of Defendants' conduct, in amounts to be proven at trial.

## THIRD CAUSE OF ACTION
## FOR SEXUAL BATTERY
(Against Defendants SNOOP DOGG and CAMPBELL)

164.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

165.   As described above, Defendants SNOOP DOGG and CAMPBELL caused, and intended to cause, Plaintiff to have imminent apprehension of a harmful and offensive contact with an intimate part of another.  In doing these acts, Defendants SNOOP DOGG and CAMPBELL caused, and intended to cause, imminent apprehension of a harmful and offensive contact with Plaintiff, in violation of, inter alia, Civil Code section 1708.5, and related laws. At no time did Plaintiff consent to any of the acts of Defendants SNOOP DOGG and CAMPBELL described herein.

166.   As a result of Defendants SNOOP DOGG's and CAMPBELL's conduct, Plaintiff was placed in apprehension and fear for her physical well-being.

167.   Defendants SNOOP DOGG's and CAMPBELL's sexual battery involved actual physical contact.

168.   Defendants SNOOP DOGG and CAMPBELL did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff's person that would offend a reasonable person's sense of personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate part of Plaintiff's person such as would offend a reasonable person's sense of personal

dignity.

169.   Because of Defendants SNOOP DOGG's and CAMPBELL's position of authority over Plaintiff, and her mental and emotional state, Plaintiff was unable to, and did not, give legal consent to such acts.

170.   As a direct and proximate result of the acts of Defendants SNOOP DOGG's and CAMPBELL's acts, Plaintiff sustained serious and permanent injuries to her person and other damage in an amount to be shown according to proof and within the jurisdiction of the Court.

171.   Defendants SNOOP DOGG and CAMPBELL further knew or should have known of each other's assaults and batteries, but ratified each other's conduct, as described herein above, by failing to adequately, or at all take remedial steps against such conduct of Defendants SNOOP DOGG and CAMPBELL, and refusing to intervene to protect Plaintiff, among other acts of ratification.  As Plaintiff's employers and by ratifying each other's Defendants SNOOP DOGG and CAMPBELL's misconduct, Defendants SNOOP DOGG and CAMPBELL are liable to Plaintiff for battery and assault.

172.   Plaintiff claims equitable estoppel with regard to any applicable statutes of limitations in light of unconscionable acts that deterred her from filing her claims. *See, e.g., Bianco v. Warner*, No. 21 Civ. 3677 (FLA), 2021 WL 4840470 (C.D. Cal. Oct. 7, 2021).  Defendants SNOOP DOGG and CAMPBELL are equitably estopped

from bringing the defense of timeliness for all of Plaintiff's claims.

173.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been harmed in that she has suffered actual, consequential, and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in her field and damage to her reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

174.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress.  Plaintiff has further experienced, and will continue to experience, other physical symptoms arising from the wrongful acts of Defendants, in amounts subject to proof at the time of trial.

175.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or their agents or employees in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner pursuant to California Civil Code Section 3294, in order to injure and damage Plaintiff, thereby justifying an award of punitive damages in a sum appropriate to punish and make an example of Defendants.

# FOURTH CAUSE OF ACTION
## FOR SEXUAL ASSAULT
(Against Defendants SNOOP DOGG and CAMPBELL)

176.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

177.   Defendants SNOOP DOGG and CAMPBELL committed overt acts of sexual abuse, assault, and battery against Plaintiff.

178.   Defendants SNOOP DOGG and CAMPBELL intended to inflict a harmful or offensive conduct against Plaintiff and intended to cause Plaintiff to fear such contact.  Defendants SNOOP DOGG and CAMPBELL knew that the consequence of an offensive contact was certain to result, as Defendants SNOOP DOGG and CAMPBELL's sexual abuse was intentionally inflicted.

179.   Defendants SNOOP DOGG and CAMPBELL's actions placed Plaintiff in apprehension of an immediate harmful or offensive contact.

180.   Plaintiff did not consent to Defendants SNOOP DOGG's and CAMPBELL's harmful or offensive contact with Plaintiff's person, or to any of their unlawful or offensive conduct, which put Plaintiff in imminent apprehension of such contact.

181.   In doing the things herein alleged, Defendants SNOOP DOGG and CAMPBELL violated Plaintiff's right under California Civil Code § 43 to be free from bodily restraint or harm, and from personal insult.  In doing the things herein

alleged, Defendants SNOOP DOGG and CAMPBELL violated their duty, pursuant to California Civil Code §1708, to abstain from injuring Plaintiff or infringing upon her rights.

182.   Under Code of Civil Procedure Section 340.16, "[i]n any civil action for recovery of damages suffered as a result of sexual assault, where the assault occurred on or after the plaintiff's 18th birthday, the time for commencement of the action shall be the later of the following:  (1) Within 10 years from the date of the last act, attempted act, or assault with the intent to commit an act, of sexual assault by the defendant against the plaintiff."

183.   Defendants should be equitably estoppel from claiming any applicable statutes of limitations, in light of their unconscionable acts, which deterred Plaintiff from filing her claims sooner.  *See, e.g., Bianco*, 2021 WL 4840470.

184.   Defendants SNOOP DOGG and CAMPBELL knew or should have known, of each other's assaults, batteries, and other tortious conduct, but ratified such conduct as described herein above, by failing to adequately, or at all take remedial steps against Defendants each other, and refusing to intervene to protect Plaintiff.

185.   As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, and physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; Plaintiff has also

suffered and continues to suffer and was prevented and continues to be prevented

from performing daily activities and obtaining the full enjoyment of life; and she will

sustain loss of earnings and earning capacity, and/or has incurred and will continue to

incur expenses for medical and psychological treatment, therapy, and counseling.

186.    Defendants SNOOP DOGG and CAMPBELL's sexual assault is a

substantial factor in bringing about these harms to Plaintiff.

187.    Defendants SNOOP DOGG's and CAMPBELL's conduct was

oppressive, malicious, and despicable, in that it was intentional and done in conscious

disregard for the rights and safety of others, and was carried out with a conscious

disregard of Plaintiff's right to be free from such tortious behavior, such as to

constitute oppression, fraud or malice pursuant to California Civil Code section 3294,

entitling Plaintiff to punitive damages against Defendants in an amount appropriate to

punish and set an example of Defendants.


### FIFTH CAUSE OF ACTION
### FOR VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT
(Against Defendant SNOOP DOGG)

188.    Plaintiff incorporates by reference and re-alleges the preceding

paragraphs, as though fully stated herein.

189.    California Civil Code  §§ 52 states:  "If a person or persons, whether or

not acting under color of law, interferes by threat, intimidation, or coercion, or

attempts to interfere by threat, intimidation, or coercion, with the exercise or

– 48 –

enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured."

190.   Defendant SNOOP DOGG interfered by threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion, with Plaintiff's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of California.

191.   As a direct and proximate result of Defendant's SNOOP DOGG's tortious acts, omissions, and wrongful conduct, Plaintiff's employment and professional development has been adversely affected.  Plaintiff has lost wages and will continue to lose wages in an amount to be determined at trial.  Plaintiff has also suffered substantial economic injury, all to Plaintiff's general, special, and consequential damage in amounts to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

192.   As a proximate result of the wrongful acts of DefendantSNOOP DOGG, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress; and she has incurred and will

likely continue to incur medical expenses, pain, and mental and emotional suffering for a period in the future in an amount subject to proof at the time of trial.

193.    As a proximate result of the wrongful acts of Defendant, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.

194.    Pursuant to California Civil Code sections 52(a) and 52.1(b), Plaintiff is entitled to recover from SNOOP DOGG actual damages as described above, treble damages, and a civil penalty no case less than four thousand dollars ($4,000), and any attorneys' fees that may be determined by the Court in addition thereto.

195.    The acts taken toward Plaintiff were also carried out by and/or ratified by SNOOP DOGG in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff.  This justifies an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendant SNOOP DOGG.


**SIXTH CAUSE OF ACTION**
**FOR DEFAMATION/DEFAMATION PER SE**
(Against Defendant SNOOP DOGG)

196.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

197.    The defamatory statement to the press released by Defendant SNOOP

DOGG through his spokesperson were false and unprivileged, were written and published with the goal of threatening, intimidating, retaliating against, and making Plaintiff an object of harassment, ridicule, contempt, hatred, or disgrace, and to bring her public and personal humiliation.

198.   Defendant SNOOP DOGG knew that his spokesperson's statement were false or were published with reckless disregard as to their truth or falsity.

199.   The defamatory statements on their face tend to directly injure Plaintiff in respect to her profession, trade, and business by imputing dishonesty to her, effectively calling her a liar about a matter as deeply personal as having been sexually assaulted and battered.

200.   As a direct and proximate result of the defamatory statement, Plaintiff has suffered and will suffer loss of reputation, shame, mortification, hurt feelings, and severe emotional distress, all to her general damages.

201.   As a further direct and proximate result of the defamatory statement, Plaintiff has suffered loss of business contracts, business engagements, and deals and will continue to suffer loss of business in an amount to be proven at trial.

202.   As a result of this damage to her reputation, Plaintiff's business and personal relationships have been, and will continue to be adversely affected.

203.   By engaging in the above willful conduct with reckless disregard of truth or falsity, Defendant acted with actual malice and in reckless and conscious disregard

1  to Plaintiff's rights, entitling her to punitive damages.

### SEVENTH CAUSE OF ACTION
### FOR FALSE LIGHT
(Against Defendant SNOOP DOGG)

204.   Plaintiff incorporates by reference and re-alleges the preceding

paragraphs, as though fully stated herein.

205.   Defendant's SNOOP DOGG's defamatory statement contains numerous

false implications about Plaintiff, including without limitation that Plaintiff was part

of a "self-enrichment shakedown scheme," "extort[ed] Snoop Dogg," "manufactures

an occurrence of more than 8 years ago," made "false allegations," "concoct[ed] a

legal complaint," and that "Mr. Broadus has never had any sexual encounter

whatsoever with" Plaintiff.  In fact, Plaintiff was sexually assaulted and battered by

Plaintiff.  Plaintiff is not extorting Defendants and did not "concoct" a "self-

enrichment shakedown scheme."  SNOOP DOGG, without Plaintiff's consent and

against her will, subjected Plaintiff to sexual assault and battery.

206.   The unfair and inaccurate depictions of Plaintiff, and the false

impressions and implications created by the defamatory statements would be highly

offensive to any reasonable person of ordinary sensibilities in Plaintiff's position.

207.   Upon information and belief, members of the community understood that

the statements were about Plaintiff, as the statements were about, concerning, and

mentioned her expressly.

208.   The defamatory statements had a natural tendency to injure Plaintiff's reputation.

209.   SNOOP DOGG (or his agents) published the defamatory statements knowing that they contained unfair and inaccurate depictions of Plaintiff, and false implications that would damages Plaintiff's reputation in the community.

210.   Defendant SNOOP DOGG knows that he sexually assaulted and battered Plaintiff.  Defendant SNOOP DOGG knew that by implying that Plaintiff's claims were "concocted" and/or lies, he put Plaintiff in a false light.

211.   In the alternative, the false implications, and each of them, contained in the defamatory statements were published with reckless disregard as to their truth or falsity.

212.   Upon information and belief, SNOOP DOGG's wrongful conduct was a substantial factor in causing Plaintiff harm in her profession, trade, and business by imputing dishonesty to her, effectively calling her a liar about a matter as deeply personal as having been sexually assaulted and battered.

213.   As a direct and proximate result of the defamatory statement and depiction, Plaintiff has suffered and will suffer loss of reputation, shame, mortification, hurt feelings, and severe emotional distress, and has been, and continues to be, embarrassed and humiliated by the false statements and implications, and

reasonably made to fear that she will be shunned, avoided and subjected to further ridicule.

214.   Thus, as a direct and proximate result of the above-described statements and depictions, Plaintiff has suffered and will continue to suffer, significant damage to her reputation and to her livelihood.

215.   Defendant SNOOP DOGG has acted with knowledge that his (or his agents') depictions of Plaintiff are false.  Defendant's SNOOP DOGG's conduct was intended by them to cause injury to Plaintiff, and was despicable conduct carried on with a willful and conscious disregard of the rights and reputation of Plaintiff.

216.   As such, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant and deter him from conduct in the future.

**EIGHTH CAUSE OF ACTION**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(Against Defendant SNOOP DOGG)

217.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

218.   By engaging in the above-described conduct, which included, but is not limited to, defaming Plaintiff, retaliating against Plaintiff, harassing Plaintiff, threatening Plaintiff with criminal charges and a tens of millions of dollars lawsuit, and releasing Plaintiff's name to Defendant's SNOOP DOGG's millions of followers

so that they have the ability to threaten, intimidate, harass, and retaliate against Plaintiff, Defendants engaged in extreme and outrages conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress.

219.   Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and severe emotional distress.

220.   Defendants' outrageous conduct was the actual and proximate cause of Plaintiff's severe emotional distress.

221.   Defendants' conduct was also reckless and committed with a conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to an award of punitive damages against Defendants in an amount to be determined by proof at trial.

## NINTH CAUSE OF ACTION
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Against Defendant SNOOP DOGG)

222.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

223.   Plaintiff is informed and believes that Defendant SNOOP DOGG knew or should have known that he was retaliating against Plaintiff by posting a picture on Instagram which threatened Plaintiff with criminal charges, by releasing Plaintiff's name through Defendant SNOOP DOGG's spokesperson, and by harassing and defaming Plaintiff.

224.   Plaintiff is informed and believes that Defendants failed to take appropriate and corrective action against Defendant SNOOP DOGG.

225.   Defendant SNOOP DOGG owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

226.   Defendant SNOOP DOGG failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.  This includes, but is not limited to, subjecting her to further harassment, outing Plaintiff's name, and threatening Plaintiff with criminal charges and a million-dollar lawsuit, intimidation, defamation, and retaliation.

227.   Defendant SNOOP DOGG released or failed to take reasonable measures to stop their agents from releasing, defamatory statements about Plaintiff, with the intent and effect of re-victimizing her, destroying her professional reputation, outing her identity so Defendants' millions of followers can also retaliate, harass, and threaten Plaintiff, and subjecting her to violence and threats of violence through their millions of followers and supporters, causing Plaintiff severe emotional distress.

228.   Alternatively, Defendant SNOOP DOGG negligently released the statement with a reckless disregard for Plaintiff's safety by outing her identity so their millions of followers can also retaliate, harass, and threaten Plaintiff, and subject her to violence and threats of violence, causing Plaintiff severe emotional distress.

229.   As a result of Defendant SNOOP DOGG's negligent and intolerable treatment and conduct, Plaintiff suffered and continues to suffer from anxiety, worry,

mental anguish, loss of sleep, stress, depression, and severe emotional distress.

230.   Defendant SNOOP DOGG's conduct constitutes negligence and is actionable under the laws of the State of California.  As a direct and proximate result of Defendant's acts or omissions, Plaintiff has suffered, without limitation, emotional distress, fear, embarrassment, anxiety, shame, humiliation, distress, shock, and severe emotional distress.

### TENTH CAUSE OF ACTION
### FOR UNLAWFUL WHISTLEBLOWER RETALIATION
### IN VIOLATION OF CALIFORNIA LABOR Code § 1102.5
(Against Defendant SNOOP DOGG)

231.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

232.   Plaintiff complained to Defendant SNOOP DOGG of the Trafficking Victims Protection Act, sexual assault, battery, harassment, and retaliation.

233.   Defendant SNOOP DOGG retaliated against Plaintiff for reporting and complaining subjecting her to further harassment, outing Plaintiff's name, threats of criminal charges, threats of lawsuit for millions of dollars, intimidation, defamation, and retaliation.

234.   Defendant SNOOP DOGG's conduct violated California Labor Code §1102.5.

235.   As a direct and proximate result of Defendant's retaliatory harassment of

Plaintiff, she has suffered and continues to suffer damages in the form of lost wages and other employment benefits, and emotional distress, the exact amount of which will be proven at trial.

236.   The foregoing conduct engaged in, authorized and ratified by Defendant and each of his agents, constitutes malice, fraud, and oppression, and was authorized, ratified, and carried on with a conscious and willful disregard of Plaintiff's right to be free from retaliation based on making reports and complaints of sexual assault and battery, so as to justify punitive and exemplary damages in an amount appropriate to punish and make an example of Defendant.

237.   As a direct and proximate result of the foregoing conduct, Plaintiff is entitled to recover, in addition to the damages alleged above, attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, and prejudgment interest pursuant to California Civil Code §§ 3287, 3288, and 3291.


## ELEVENTH CAUSE OF ACTION
## FOR HARASSMENT, AIDING, and ABETTING IN VIOLATION OF THE FEHA [CAL. GOV'T CODE §§ 12940 ET SEQ.
(Against Defendant SNOOP DOGG)

238.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

239.   At all times relevant for purposes of this Complaint, Gov't Code §12900 et seq. were in full force and effect and were binding on all Defendants.  Gov't Code

§12940(j)(1) states that it is unlawful "For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, if the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish

harassment."

240.   Plaintiff was subjected to harassment from Defendant SNOOP DOGG after Plaintiff complained of sexual harassment, assault, and battery.  Said conduct was severe, pervasive, constant and continuous, and was offensive, humiliating and harassing to Plaintiff and would have been offensive to a reasonable person under Plaintiff's circumstances.

241.   When Plaintiff complained of sexual harassment, assault, battery, and retaliation, Defendant SNOOP DOGG subjected Plaintiff to further harassment by releasing her name to the public, threatening Plaintiff with criminal charges, threatening Plaintiff with a lawsuit worth tens of millions of dollars, intimidation, defamation, and retaliation.  Defendant took no corrective action and did not redact or retract their statement or threats of a lawsuit and criminal prosecution which resulted in Plaintiff being subjected to continued harassment, threats of criminal charges, intimidation, defamation, and retaliation.

242.   Defendant is responsible for the acts of Defendant's followers who harassed Plaintiff after the release of her name because Defendant knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

243.   At all times relevant for purposes of this Complaint, the FEHA, Gov't Code § 12940 et seq., was in full force and effect and binding on Defendants.  FEHA

states that it is an unlawful employment practice "(i) for any person to aid abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

244.   As such term is used under FEHA, "any of the acts forbidden under this part this part" means or refers to harassment on the bases of one or more of the protected characteristics under FEHA such as sex and gender.

245.   Defendant SNOOP DOGG instructed, aided, and/or abetted their spokesperson to release Plaintiff's name to the public and media, an act of severe harassment in itself, thereby further subjecting Plaintiff to harassment.

246.   Defendant SNOOP DOGG instructed, aided, and/or abetted their attorney to threaten Plaintiff and Plaintiff's counsel with a lawsuit worth tens of millions of dollars, thereby further subjecting Plaintiff to harassment and retaliation.

247.   Defendant aided and abetted their Instagram followers to harass Plaintiff when they released Plaintiff's name to the public and media.

248.   These laws set forth in the preceding paragraph require Defendant to refrain from harassing, or creating, or maintaining a hostile work environment against an employee based upon Plaintiff's sex and gender, and for aiding and abetting harassment and retaliation.

249.   Defendant's harassing conduct was severe and pervasive, was unwelcome by Plaintiff, and a reasonable person in Plaintiff's circumstances would

have considered the work environment to be hostile and abusive.

250.   Defendant violated the FEHA and the public police of the State of California which is embodied in the FEHA by creating a hostile work environment, and by discriminating and harassing Plaintiff because of Plaintiff's sex and gender.

251.   As a proximate result of the wrongful acts of Defendant, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damages to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages together with prejudgment interest pursuant to *Civil Code* Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

252.   As a proximate result of the wrongful acts of Defendant, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result.  Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

253.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendant acting in a despicable, oppressive, fraudulent, malicious, deliberate,

egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendant.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment as follows:

As to All Causes of Action

1. For general, compensatory, and/or special damages in an amount according to proof for Plaintiff's injuries, mental and/or emotional distress, medical expenses, actual financial losses, consequential financial losses, incidental financial losses, loss of past and future earnings, loss of salary and benefits, and all damages flowing therefrom for an amount to be determined at trial;

2. For all general and special damages to compensate Plaintiff for an amount to be determined at trial;

3. For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants for an amount to be determined at trial;

4. For prejudgment and post-judgment interest according to any applicable provision of law, according to proof for an amount to be determined at trial;

5. For attorney's fees and costs for an amount to be determined at trial;

6.  Costs of suit; and

7.  For such other and further relief as the Court may deem just and proper.

Dated: July 20, 2022

**DEREK SMITH LAW GROUP, LLP**

*Attorneys for Plaintiff JANE DOE*

By:  /s/ Matt E.O. Finkelberg
MATT E.O. FINKELBERG, ESQ.
633 West 5th St., Suite 3250
Los Angeles, CA 90071
(310) 602-6050

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues to be tried and all causes of action and claims with respect to which Plaintiff has a right to jury trial.

Dated: July 20, 2022

**DEREK SMITH LAW GROUP, LLP**
*Attorneys for Plaintiff JANE DOE*

By: _/s/ Matt E.O. Finkelberg_
MATT E.O. FINKELBERG, ESQ.
633 West 5th St., Suite 3250
Los Angees, CA 90071
(310) 602-6050