1  DREW TULUMELLO (#196484)
   drew.tulumello@weil.com
2  WEIL, GOTSHAL & MANGES LLP
3  2001 M Street NW, Suite 600
   Washington, DC 20036
4  Tel: 202 682 7000
   Fax: 202 857 0940
5

6  *Attorney for Visa, Inc.*

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SOUTHERN DIVISION**

| | |
|---|---|
| 11  SERENA FLEITES AND JANE DOE<br>12  NOS. 1 through 33,<br><br>13           Plaintiffs,<br>14<br>15       v.<br>16  MINDGEEK S.A.R.L.; MG FREESITES,<br>LTD; MINDGEEK USA<br>17  INCORPORATED; MG PREMIUM LTD.;<br>18  RK HOLDINGS USA INC.; MG GLOBAL<br>ENTERTAINMENT INC.;<br>19  TRAFFICJUNKY INC.; BERND<br>20  BERGMAIR; FERAS ANTOON; DAVID<br>TASSILLO; COREY URMAN; VISA,<br>21  INC.; COLBECK CAPITAL DOES 1-10;<br>22  BERGMAIR DOES 1-10,<br><br>23           Defendants. | Case No. 2:21-CV-04920-CJC-ADS<br><br>Judicial Officer: Cormac J. Carney<br>Courtroom: 9B<br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF DEFENDANT VISA<br>INC.'S MOTION TO DISMISS**<br><br>Date: January 10, 2022<br>Time: 1:30 p.m. |

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 3

LEGAL STANDARD .................................................................................. 6

ARGUMENT .............................................................................................. 7

I.    Plaintiffs' Alleged Injuries Are Not Traceable To Visa ................................. 7

    A.    Plaintiffs lack Article III standing as to Visa. ........................................ 7

    B.    Plaintiffs lack statutory standing for their TVPRA and
RICO claims against Visa. .................................................................. 11

II.   The Complaint Does Not State A Claim For Relief Under The
TVPRA Against Visa ...................................................................................... 12

    A.    Visa did not participate in any sex trafficking venture. ..................... 13

    B.    The Complaint contains no facts showing that Visa knew
or should have known of the specific sex trafficking
violations alleged by Plaintiffs. .......................................................... 18

    C.    The Complaint contains no facts showing Visa obtained a
benefit specifically from the alleged illegal enterprise or
venture, rather than receiving a benefit from legal content. .............. 21

III.  The Complaint Does Not Plausibly Allege Any RICO Violation
By Visa ............................................................................................................ 22

    A.    The Complaint does not plausibly allege that Visa participated
in a RICO enterprise in violation of 18 U.S.C. § 1962(c). ............... 23

        1.    The Complaint does not allege an enterprise involving
Visa ......................................................................................... 23

        2.    The Complaint does not allege Visa participated in the
"conduct" of an enterprise ...................................................... 25

3.     The Complaint does not allege that Visa engaged in a pattern of racketeering activity that proximately caused Plaintiffs' injuries ...................................................26

B.     The Complaint does not state a claim that Visa invested enterprise proceeds under 18 U.S.C. § 1962(a). ................................27

IV.    The Complaint Does Not Plausibly Allege Conspiracy Claims Under RICO (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California Common Law....................................................................29

V.     The Complaint Fails To Allege Any State Law Claims Against Visa..........33

A.     The Complaint does not state a claim under California Business and Professions Code §§ 17200, 17500..............................................33

B.     The Complaint does not plausibly plead a claim for unjust enrichment against Visa. ...................................................................34

VI.    The Complaint Should Be Dismissed With Prejudice As To Visa..............36

CONCLUSION...............................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. et al. v. Salesforce.com, Inc. et al.*,
    No. 4:20-cv-01254 (S.D. Tex. March 22, 2021) ........................................................ 32

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020) ........................................................................... 19

*Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*,
    725 F.3d 494 (5th Cir. 2013) ..................................................................................... 14

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ..................................................................................... 6

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ........................................................... 30, 31, 34

*Ajzenman v. Off. of Comm'r of Baseball*,
    487 F. Supp. 3d 861 (C.D. Cal. 2020) ............................................................... 30, 32

*Allen v. Wright*,
    468 U.S. 737 (1984) ............................................................................................... 8, 9

*American Tobacco Co. v. United States*,
    328 U.S. 781 (1946) ................................................................................................. 30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 6, 25, 30

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020) ...................... 15

*Baumer v. Pachl*,
    8 F.3d 1341 (9th Cir. 1993) ................................................................................ 29, 31

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 6

*Benavidez v. Cnty. of San Diego*,
    993 F.3d 1134 (9th Cir. 2021) ..................................................................................... 6

*Benson v. JPMorgan Chase Bank, N.A.*,
  No. C–09–5272–EMC, 2010 WL 1526394 (N.D.Cal. Apr. 15, 2010) ..................... 32

*Bistline v. Jeffs*,
  2017 WL 108039 (D. Utah Jan. 11, 2017) ................................................... 15

*Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  No. 18-cv-2623, 2018 WL 2251629 (C.D. Cal. May 16, 2018) ................................ 8

*Boyle v. United States*,
  556 U.S. 938 (2009)........................................................................ 23

*Brady v. Dairy Fresh Prods. Co.*,
  974 F.2d 1149 (9th Cir. 1992) ............................................................. 28

*California v. Texas*,
  141 S. Ct. 2104 (2021)...................................................................... 8

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) .............................................................. 27

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) .............................................................. 36

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013).................................................. 30, 32

*In re DirecTV Early Cancellation Litig.*,
  738 F. Supp. 2d 1062 (C.D. Cal. 2010) .................................................... 35

*Disabled Rts. Action Comm. v. Santa Fe Gaming Corp.*,
  32 F. App'x 820 (9th Cir. 2002)........................................................... 35

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
  No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)......................... 19

*Doe 1 v. Red Roof Inns, Inc.*,
  No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13,
  2020) ...................................................................................... 21

*Doe v. Mindgeek USA Inc.*,
  No. 21-cv-00338, 2021 WL 4167054 (C.D. Cal. Sept. 3, 2021) ............. 13, 16, 22, 34

*Doe v. Twitter, Inc.*,
  2021 WL 3675207 (N.D. Cal. Aug. 19, 2021)..................................... 13, 16, 21, 22

*Eclectic Properties E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014) ................................................................. 23

*Emery v. Visa Internat. Serv. Ass'n,*
   95 Cal. App. 4th 952, 116 Cal. Rptr. 2d 25 (2002) ........................... 3, 4, 34

*Fields v. Twitter, Inc.,*
   881 F.3d 739 (9th Cir. 2018) ............................................................ 12, 22

*Fla. Audubon Soc'y v. Bentsen,*
   94 F.3d 658 (D.D.C. 1996) .................................................................... 10

*Gardner v. Starkist Co.,*
   418 F. Supp. 3d 443 (N.D. Cal. 2019) .................................................... 25

*Gauvin v. Trombatore,*
   682 F. Supp. 1067 (N.D. Cal. 1988) ................................................ 32, 34

*Geiss v. Weinstein Co. Holdings LLC,*
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................................... 21, 22

*Genty v. Resolution Trust Corp.,*
   937 F.2d 899 (3d Cir. 1991) .................................................................. 28

*Gershfeld v. Teamviewer US, Inc.,*
   No. 21-cv-00058, 2021 WL 3046775 (C.D. Cal. June 24, 2021) ......... 34, 35

*Golo, LLC v. Goli Nutrition Inc.,*
   No. 21-cv-02348, 2021 WL 3360134 (C.D. Cal. July 30, 2021) ................. 6

*Gomez v. Guthy-Renker, LLC,*
   No. 14-cv-01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ......... 24, 25

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
   185 F. Supp. 2d 9 (D.D.C. 2001) ............................................................. 6

*Hamid v. Price Waterhouse & Co. (In re Bank of Credit & Com. Intern'l
   Depositors Litig.),* No. CV 91-4483 CBM (EX), 1992 WL 696398 (C.D.
   Cal. Apr. 30, 1992) .............................................................................. 27

*Holmes v. Securities Investor Protection Corp.,*
   503 U.S. 258 (1992) ................................................................. 11, 12, 27

*Howard v. Am. Online Inc.,*
   208 F.3d 741 (9th Cir. 2000) ............................................................ 29, 32

*J.B. v. G6 Hosp., LLC*,
    No. 19-CV-07848-HSG, 2020 WL 4901196 (N.D. Cal.
    Aug. 20, 2020) ............................................................. 15, 16, 17, 18

*J.C. v. Choice Hotels Int'l, Inc.*,
    No. 20-CV-00155, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ...................... 19, 21

*J.L. v. Best W. Int'l, Inc.*,
    521 F. Supp. 3d 1048 (D. Colo. 2021) ................................................. 19

*Jubelirer v. MasterCard Int'l, Inc.*,
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) ............................................ 24, 26

*Kaing v. Pulte Homes, Inc.*,
    No. 09-cv-5057, 2010 WL 625365 (N.D. Cal. Feb. 18, 2010) .................................. 10

*Keel v. Schwarzenegger*,
    No. 08-cv-07591, 2009 WL 1444644 (C.D. Cal. May 19, 2009) ............................ 26

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ..................................................................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................. 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .............................................................................. 6, 7

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) ......................................................... 15

*Manos v. MTC Fin., Inc.*,
    No. 16-cv-01142, 2018 WL 6220051 (C.D. Cal. Apr. 2, 2018) ............................ 27

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ................................................................ 8, 9

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009) ....................................................... 10

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
    981 F.2d 429 (9th Cir. 1992) .................................................................... 29

*Oneto v. Ryland Grp., Inc.*,
    No. 09-cv-01670, 2010 WL 11506425 (C.D. Cal. Mar. 31, 2010) ............................ 10

VISA'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS
    vi
    2:21-CV-04920-CJC-ADS

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*,
  943 F.3d 1243 (9th Cir. 2019) ................................................................. 27

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ................................................. 11, 17, 18, 26

*Pillsbury, Madison & Sutro v. Lerner*,
  31 F.3d 924 (9th Cir. 1994) ................................................................... 12

*Ratha v. Phatthana Seafood Co.*,
  No. 16-cv-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ...................... 14, 15

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) ................................................................. 36

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................... 14, 25, 26

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................. 19, 20

*S. Y. v. Best W. Int'l, Inc.*,
  No. 2:20-CV-616-JES-MRM, 2021 WL 2315073 (M.D. Fla. June 7, 2021) ................................................................................... 16

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir.2004) ................................................................. 6

*Simon v. E. Kentucky Welfare Rts. Org.*,
  426 U.S. 26 (1976) ............................................................................. 7

*Snake River Farmers' Ass'n, Inc. v. Dep't of Lab.*,
  9 F.3d 792 (9th Cir. 1993) ................................................................... 10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ......................................................................... 7

*Stein v. World-Wide Plumbing Supply Inc.*,
  71 F. Supp. 3d 320 (E.D.N.Y. 2014) ....................................................... 32

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................... 34

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ................................................................. 30

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)............................................................................. 7

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ................................................................. 27

*United States v. Am. Express Co.*,
    838 F.3d 179 (2d Cir. 2016) ..................................................................... 3

*United States v. Neapolitan*,
    791 F.2d 489 (7th Cir. 1986) ................................................................... 31

*United States v. Nichols*,
    No. 15-CR-756-1, 2019 WL 398775 (N.D. Ill. Jan. 31, 2019) ................... 32

*United States v. Oreto*,
    37 F.3d 739 (1st Cir. 1994).................................................................... 26

*United States v. Papagno*,
    639 F.3d 1093 (D.C. Cir. 2011)............................................................... 14

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987) ................................................................... 26

*United States v. Wilson*,
    No. 10-60102-CR-ZLOCH, 2010 WL 2991561 (S.D. Fla. July 27,
    2010) ...................................................................................................... 30

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ................................................................. 26

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................. 8

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ....................................... 25, 26, 27

*Western & S. Life Ins. Co. v. Countrywide Fin. Corp. (In re Countrywide
    Fin. Corp. Mortg.-Backed Sec. Litig.)*,
    No. 11-cv-07166, 2012 WL 10731957 (C.D. Cal. June 29, 2012) ............. 25

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
  5 F.4th 997 (9th Cir. 2021) ............................................................. 10

**Statutes**

18 U.S.C. § 2 ................................................................................... 28

18 U.S.C. § 1589 ............................................................................ 12

18 U.S.C. § 1591 ............................................................................ 13

18 U.S.C. § 1594 ....................................................................... 12, 29

18 U.S.C. § 1595 ................................................................. 13, 19, 21

18 U.S.C. § 1961 ............................................................................ 26

18 U.S.C. § 1962 .......................................................... 23, 27, 28, 29

22 U.S.C. § 7101 ............................................................................ 12

47 U.S.C. §§ 230(b) ....................................................................... 18

# INTRODUCTION

The circumstances described in this case are deeply disturbing. Plaintiffs allege that a variety of individuals, including former boyfriends, partners, and known sex traffickers, uploaded to the internet videos and photos showing them engaged in sex acts without their consent. Visa condemns sex trafficking, sexual exploitation, and child sexual abuse material ("CSAM"). They are repugnant to the values and mission of the company, its employees, and society in general. It is misplaced and legally improper to name Visa as a defendant on a sweeping legal theory no court has ever accepted.

Visa is not a proper defendant in this case in any way, shape, or form, and the facts alleged in the Complaint do not come close to supporting any cause of action against it. The Complaint seeks to impose liability on Visa, a payment network, for downstream conduct by completely unrelated parties. That theory is unprecedented and expansive. It is not supported by the law, and if allowed, would upend the electronic payments industry. The causes of action against Visa should be dismissed in their entirety.

Plaintiffs allege that MindGeek S.a.r.l. and its subsidiaries (collectively, "MindGeek") own and operate websites that provide sex traffickers a platform for uploading content involving underage victims or non-consensual sex acts, and that MindGeek consistently fails to identify and remove this content from its sites. The Complaint alleges that Plaintiffs suffered significant emotional and financial harm when various individuals, not named as defendants here, used MindGeek's sites to disseminate content depicting Plaintiffs without their consent. Plaintiffs seek to hold MindGeek liable for the harm they suffered under a variety of statutory and common law theories. Of the 32 defendants named in this action, 31 are MindGeek entities, owners, employees, financiers, or are otherwise affiliated with MindGeek. The thirty-second is Visa.

Visa is clearly unlike, and multiple steps removed from, the other defendants. Visa has no contractual relationship with MindGeek or any other defendant. As a payment network, Visa facilitates billions of electronic transactions annually between financial institutions. The parties to those transactions are (1) financial institutions that enter

1   business relationships with merchants, called "Acquirers," and (2) financial institutions
2   that issue cards to consumers, called "Issuers." When a consumer makes a purchase with
3   a card, the Acquirer pays the merchant, the Issuer collects the transaction amount from
4   the cardholder, and Visa gathers and shares the data that the Issuer and Acquirer need to
5   settle the transaction. Visa's long existing policies absolutely forbid these Acquirers from
6   dealing with merchants engaged in illegal activities and require Acquirers to possess
7   adequate controls to comply with these policies. The Complaint does not allege that Visa
8   or any of its employees created, disseminated, viewed, or were even aware of content
9   depicting Plaintiffs. The Complaint instead alleges that Visa "recognized MindGeek as
10  an authorized merchant and processed payment to its websites." Compl. ¶ 58. Based on
11  this allegation about its role as a payment network, the Complaint seeks to hold Visa liable
12  for Plaintiffs' alleged injuries under the Trafficking Victims Protection Reauthorization
13  Act ("TVPRA"), 18 U.S.C. §§ 1594–1595, the federal Racketeer Influenced and Corrupt
14  Organizations Act ("RICO"), 18 U.S.C. § 1962, and state laws prohibiting unfair business
15  practices.

16          There is no legal support for Plaintiffs' expansive theory of liability under any of
17  these claims. The claims should be dismissed with prejudice, first, because the Complaint
18  does not establish Article III standing or proximate causation. The injuries Plaintiffs
19  allege are not "fairly traceable" to *Visa's* conduct, but instead resulted from the
20  independent acts of *third parties* who uploaded videos to sites operated by MindGeek,
21  and of MindGeek itself, which allegedly failed to identify and remove videos of Plaintiffs
22  from its sites and maintained a platform that facilitated widespread access to the videos.
23  Nor does the Complaint allege that Visa processed any payments related to the content
24  specifically depicting Plaintiffs.

25          Second, the Complaint fails to plead a TVPRA claim against Visa because, among
26  other reasons, Visa's routine payment processing does not constitute "participation" in a
27  sex trafficking venture. Courts have interpreted the TVPRA's civil remedy provision to
28  impose liability where a person directly assists a trafficker by participating in and

benefiting from a venture.  The Complaint falls well short of this standard because it alleges that Visa engaged in no conduct beyond its routine payment processing—activity miles away from sex trafficking.

Third, the Complaint does not state a RICO claim because it does not allege Visa participated in any "association" to further sex trafficking.

Fourth, the Complaint does not state conspiracy claims under RICO, the TVPRA, or common law because it contains no plausible allegations that Visa agreed with others to engage in sex trafficking.

Fifth, the Complaint's state law claims fail based on Visa's lack of direct involvement or control over the sex trafficking Plaintiffs allege.

## BACKGROUND

Visa operates an electronic payment network that facilitates the flow of funds between financial institutions that execute transactions involving Visa-branded payment cards.  Visa enters into agreements with these financial institutions—or for simplicity, banks—and establishes procedures for processing Visa-branded payment card transactions.

Two types of banks participate in the Visa network: (1) Acquirers and (2) Issuers. *See, e.g.*, *United States v. Am. Express Co.*, 838 F.3d 179, 188 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) (describing actors in credit card processing systems).  Acquirers are banks that enter into contracts with merchants, which include any businesses where consumers use payment cards to purchase goods or services.  *See Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 956, 116 Cal. Rptr. 2d 25, 30 (2002) (describing Visa's network).  Under their agreements with merchants, Acquirers agree to process transactions when consumers use Visa-branded payment cards to make a purchase from the merchant.  *See id.*  Issuers are banks that provide Visa-branded payment cards to consumers.  *See id.*  When a consumer uses the card to buy goods and services from merchants, the Issuer receives payment and other information from the merchant, approves (or declines) the transaction, and then collects

1  the transaction amount from the cardholder.  *See id.*  The Visa network links the Acquirers

2  and Issuers by gathering transaction data that enables the Acquirers and Issuers to settle

3  transactions. *See id.*

4  Importantly, in operating this network, Visa engages with the Acquirer and Issuer

5  banks.  The Acquirers in turn contract with merchants, and Issuers contract with

6  cardholders.  Visa imposes rules governing the types of merchants that Acquirers may

7  contract with, but it is the Acquirer banks that initiate and maintain relationships with

8  merchants. *See id.*  Acquirers monitor merchant activity and are responsible for ensuring

9  that merchants comply with Visa's standards; among other things, Visa's standards

10 prohibit Acquirers from accepting payment from a merchant for any transaction that the

11 Acquirer knows or should have known involves illegal activities or products.  *See, e.g.*,

12 Visa, *Visa Core Rules and Visa Product and Service Rules* §§ 1.5.1.4, 1.5.2.1, 5.3.4.4

13 (Apr. 17, 2021), https://usa.visa.com/dam/VCOM/download/about-visa/visa-rules-

14 public.pdf.

15 The claims against Visa in this case arise from allegations that Visa's electronic

16 payment network was used for processing transactions related to websites owned and

17 operated by MindGeek.  Plaintiffs are thirty-four women who allege that they suffered

18 serious emotional, psychological, and financial harm after ex-boyfriends or known sex

19 traffickers uploaded videos or pictures of Plaintiffs engaged in sexual activity to

20 pornographic websites. *See* Compl. ¶¶ 262–405.  Plaintiffs allege that they were underage

21 when they appeared in the content and/or had been coerced into non-consensual sex acts,

22 and that they did not consent to having this content distributed over the internet.  *See*

23 *generally id.*  Plaintiffs allege that this content was distributed through Pornhub—one of

24 the largest pornographic websites in the world—and its affiliate websites, which are

25 owned and operated by MindGeek S.a.r.l., a Canada-based company, and its subsidiary

26 entities. *See, e.g.*, *id.* ¶ 405.  Plaintiffs allege that MindGeek had the capacity to monitor

27 its websites for underage and non-consensual content, but failed to identify and remove

28 such content, and has participated in a sex trafficking venture by allowing this content to

1  flow through its websites.  *See, e.g.*, *id.* ¶¶ 7, 188, 215, 225, 543.

2        The factual allegations against Visa are very different.  Plaintiffs do not allege that

3  Visa created, uploaded, disseminated, or monitored any content on MindGeek's websites.

4  Instead, the Complaint alleges that *some* visitors to MindGeek sites purchased content

5  behind pay walls.  *See, e.g.*, *id.* ¶ 575.  The Complaint alleges that Visa processed these

6  payments for the paid sites and thus profited from MindGeek's trafficking enterprise.  *Id.*

7  ¶ 502.  But the Complaint does not allege that any of these transactions involved content

8  specifically depicting Plaintiffs, let alone that any person used a Visa card to access illegal

9  content at all.[1]    The Complaint also alleges generally that Visa's payment services

10 supported MindGeek's enterprise by helping MindGeek profit from visitors who bought

11 subscription services.  *See id.* ¶ 501.

12       The Complaint alleges that credit card companies, including Visa, knew that illegal

13 content was available on MindGeek's sites, and were aware that MindGeek had not taken

14 steps to "police" or moderate this content.  *See id.* ¶¶ 411–12.  It alleges broadly that "Visa

15 and its network banks were intimately familiar with MindGeek's business model and how

16 it used illicit content to attract and funnel business, advertising, and paid memberships."

17 *Id.* ¶ 420.  It seeks to hold Visa liable for sex trafficking because, it alleges, Visa "did not

18 insist that [allegedly illegal] content itself be removed or that MindGeek put in place

19 systems to reasonably ensure it was not commercializing such content and/or using it to

20 benefit its business[.]"  *Id.* ¶ 416.  It does not allege that Visa had any knowledge of

21 content depicting Plaintiffs specifically or that it was uploaded without Plaintiffs' consent.

22       The Complaint asserts claims against Visa under the TVPRA (Counts III and IV)

23 and RICO (Counts VII, VIII, and IX).  Plaintiffs also assert claims against Visa for unfair

24 business practices under California Business and Professions Code §§ 17200 and 17500

25 (Count XVIII), unjust enrichment (Count XVII), and civil conspiracy (Count XIX).

26

27 _____

28 [1] Only some of the MindGeek sites offer paid content.  The free sites of course do not involve Visa payments at all.

## LEGAL STANDARD

Visa moves for dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss a complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) should be granted where the complaint's allegations "are 'insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004)). "The party invoking federal jurisdiction bears the burden of establishing [the] elements" necessary to for federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Because a federal court "has an 'affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority,' … 'the [p]laintiff's factual allegations in the complaint … will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Golo, LLC v. Goli Nutrition Inc.*, No. 21-cv-02348, 2021 WL 3360134, at *3 (C.D. Cal. July 30, 2021) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should be granted where the complaint fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. The complaint must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "Thus, 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'" *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

# ARGUMENT

## I.    Plaintiffs' Alleged Injuries Are Not Traceable To Visa

While the injuries Plaintiffs allege in the Complaint are egregious and traumatic, for purposes of Article III standing, they respectfully are not fairly traceable to Visa. Instead, Plaintiffs' alleged injuries are fairly traceable to other entities and individuals with whom Visa has no relationship.  Because the Complaint does not tie the alleged injuries to Visa's conduct, Plaintiffs lack Article III standing and also cannot satisfy the proximate causation requirement for any of their statutory causes of action.

### A.    Plaintiffs lack Article III standing as to Visa.

Article III standing "is an essential and unchanging" prerequisite to the exercise of a federal court's jurisdiction.  *Lujan*, 504 U.S. at 560.   To meet the "irreducible constitutional minimum of standing," there must be "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'"  *Id.* at 560 (citations omitted).  It must also be "likely," rather than "merely speculative," that a plaintiff's "injur[ies] will be redressed by a favorable decision."  *Id*. at 561 (citations omitted).  The burden lies with Plaintiffs to "clearly … allege facts demonstrating" standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).  "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts … exercise 'their proper function in a limited and separated government.'"  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citations omitted).

Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."  *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976).  This means that Plaintiffs must allege "a 'line of causation' between defendants' action and [Plaintiffs'] alleged harm that is more

than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)).  Here, Plaintiffs have failed to allege a plausible causal chain between their alleged injuries and Visa's conduct.

The Complaint alleges no direct connection between Visa and Plaintiffs or their abusive partners or sex traffickers.  Plaintiffs allege that their injury stems from third parties who uploaded videos to MindGeek sites, MindGeek's maintenance of an internet platform on which those videos could be uploaded, and MindGeek's alleged lack of monitoring.  *See, e.g.*, Compl. ¶¶ 405, 490, 579, 589, 597, 644.  The Complaint does not allege that Visa created or uploaded videos or photographs involving Plaintiffs.  It does not allege that Visa hosted, shared, or promoted the content.  And it does not allege that Visa played any role in operating the sites where the third parties uploaded the content.  The Complaint does not allege that Visa was aware of the existence of any content depicting Plaintiffs, or even that any person used Visa-branded cards for payments connected to content involving Plaintiffs.  The alleged injuries underpinning each of Plaintiffs' claims against Visa—for TVPRA violations, RICO violations, conspiracy, unfair business practices, and unjust enrichment—thus depend *entirely* on the independent actions of parties other than Visa.  There is no Article III standing under such circumstances.  *See Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 18-cv-2623, 2018 WL 2251629, at *3 (C.D. Cal. May 16, 2018) (allegations of unsafe neighborhood were traceable only to third party individuals who committed acts of violence, not policy makers).

Although in some circumstances Article III standing can be established where the alleged harm is caused by a third party, it is "substantially more difficult" in such cases "to meet the minimum requirement of [Article] III."  *Warth v. Seldin*, 422 U.S. 490, 505 (1975); *see also California v. Texas*, 141 S. Ct. 2104, 2117 (2021).  And where, as here, "a chain of causation 'involves *numerous* third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and [Ninth Circuit] have found the causal chain too weak to support standing at the pleading

stage." *Maya*, 658 F.3d at 1070 (quoting *Allen*, 468 U.S. at 759 (emphasis added)).  Here, the Complaint alleges that Visa is liable for Plaintiffs' injuries because it could have placed financial pressure on MindGeek to change its practices by refusing to process payments for its sites. *See* Compl. ¶¶ 9, 406.  This is exactly the sort of speculative theory that courts have held is insufficient to support Article III standing.

The Complaint has not plausibly alleged that Visa could have compelled MindGeek to change its practices.  Visa does not have any direct contractual relationship with MindGeek or the sites identified in the Complaint.  At most, Visa has a relationship with banks that may have contracted with the MindGeek entities.  Moreover, the Complaint alleges that the content depicting Plaintiffs was user-generated and located on MindGeek's free-of-charge websites, such as Pornhub, *see* Compl. ¶¶ 262, 270, 276, 285, 288, 292, 295, 297, 301, 308, 310, 312, 318, 320, 323, 329, 339, 345, 348, 351, 353, 361, 365, 367, 373, 375, 381, 386, 388, 395, which require no transaction (much less a Visa transaction) to view.  And the Complaint contains no allegations suggesting that content depicting Plaintiffs required paid premium membership access to any free site or reached any sites with paywalls. *See id.* ¶ 501.  Any analysis of the Complaint's purported causal chain must account for this attenuated relationship.

Even if the Court assumed that Visa could have exercised some sort of persuasion, but did not, it would still have to speculate about the actions MindGeek, Acquirer banks, and MindGeek website users all would have taken in response.  It would have to assume that MindGeek would have changed its policies and that it would have changed its policies in a way that would have prevented the individuals who uploaded content depicting Plaintiffs from doing so.[2]  The "protracted chain of causation fails both because of the

---

[2] In fact, the Complaint suggests that any efforts by Visa to restrict payment processing to MindGeek would *not* have prevented Plaintiffs' injuries. The Complaint acknowledges that, in December 2020, Visa instructed Acquirer banks to suspend processing of payments related to MindGeek through the Visa network. Compl. ¶ 429.  Despite this action, the Complaint alleges that illegal content depicting a number of the Plaintiffs nevertheless remained available on MindGeek websites. *See, e.g.*, Compl. ¶¶ 269 (Serena Fleites); 281 (Jane Doe No. 2); 293 (Jane Doe No. 5); 310 (Jane Doe No. 10); 325–27 (Jane Doe No. 14); 336–37 (Jane Doe No. 16); 346 (Jane Doe No. 18); 351 (Jane Doe No.

1   uncertainty of several individual links and because of the number of speculative links that

2   must hold for the chain to connect the challenged act[ ] to the asserted particularized

3   injury." *Fla. Audubon Soc'y* v. *Bentsen*, 94 F.3d 658, 670 (D.D.C. 1996).  There is no

4   Article III standing under such circumstances.  *See, e.g.*, *Native Vill. of Kivalina v.*

5   *ExxonMobil Corp.*, 663 F. Supp. 2d 863, 881 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th

6   Cir. 2012) (no Article III standing where plaintiff could not attribute global warming

7   injuries to defendants as opposed to other entities); *Kaing v. Pulte Homes, Inc.*, No. 09-

8   cv-5057, 2010 WL 625365, at *6 (N.D. Cal. Feb. 18, 2010), *aff'd* 464 F. App'x 630 (9th

9   Cir. 2011) (plaintiffs' alleged loss in property value not traceable to subprime mortgage

10  lending because it "resulted not just from the actions of [defendant], but also from the

11  independent actions of all of the various residents of Plaintiff's neighborhood" and

12  economic conditions); *Oneto v. Ryland Grp., Inc.*, No. 09-cv-01670, 2010 WL 11506425,

13  at *8 (C.D. Cal. Mar. 31, 2010) ("The fragility of the connection between Defendants'

14  alleged conduct and the decreased value of Plaintiffs' houses is illuminated 'with each

15  additional link in the chain where the choices of others have an impact and make other

16  scenarios at least as plausible as the one advanced by … Plaintiffs.'") (quoting *Kaing*,

17  2010 WL 625365, at *5–6).[3]

18      The theory of causation articulated in the Complaint is far too expansive and

19  uncertain to support Article III standing.  If accepted, Plaintiffs' theory would turn the

20  financial and payment industries upside down.  It would require payment networks to bear

21  liability for the downstream conduct of individuals with whom they have no relationship

22  and no ability to control.  Future plaintiffs could try to apply this same theory to injuries

23  

24  20); 362 (Jane Doe No. 24); 373 (Jane Doe No. 27).

25  [3] *See also Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1015
26  (9th Cir. 2021) (no Article III standing where plaintiffs failed to show that federal
    immigration regulation would result in increased border crossings); *Snake River Farmers'*
27  *Ass'n, Inc. v. Dep't of Lab.*, 9 F.3d 792, 796 (9th Cir. 1993) (allegation that low wage
    rates in one place might affect wages in another place was too "speculative, attenuated,
28  and general" to satisfy Article III).

1    caused by purchases of guns, prescription drugs, tobacco, soda, furs, and myriad other

2    products or services where investigation by Visa of each individual transaction is

3    impossible.  Not only would this result encourage misdirected litigation, it also would

4    undermine the payment and credit industry that the Ninth Circuit has recognized as "the

5    primary engine of electronic commerce" and that Congress has declared it is federal

6    policy to support.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir.

7    2007).

8         Each of the Complaint's claims against Visa—for TVPRA and RICO violations,

9    conspiracy, unjust enrichment, and unfair business practices—seeks to hold Visa liable

10   for Plaintiffs' injuries based on Visa's role in providing a network for processing

11   payments.  Because Plaintiffs' injuries are not fairly traceable to Visa, and instead resulted

12   from independent acts of other parties, all counts against Visa should be dismissed for

13   lack of Article III standing and the Court need go no further.

14   **B.    Plaintiffs lack statutory standing for their TVPRA and RICO claims**
         **against Visa.**

15

16        Because their injuries cannot be traced to Visa, Plaintiffs also lack statutory

17   standing to pursue TVPRA and RICO claims against Visa.  Courts are instructed to

18   "presume that a statutory cause of action is limited to plaintiffs whose injuries are

19   proximately caused by violations of the statute."  *Lexmark Int'l, Inc. v. Static Control*

20   *Components, Inc.*, 572 U.S. 118, 132 (2014).  This "proximate-cause requirement

21   generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful

22   conduct."  *Id.* at 133 (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S.

23   258, 268–269 (1992)).  Under this standard, a plaintiff must show "injury *flowing directly*

24   from" the conduct of the defendant.  *Id.* at 133–34; *see also Holmes*, 503 U.S. at 272

25   (noting the causation inquiry under RICO rarely goes beyond "the first step").

26        Here, accepting the Complaint's allegations, Visa's alleged acts were *not* a

27   proximate cause of Plaintiffs' injuries.  Plaintiffs nowhere allege that their injury

28   "flow[ed] directly" from Visa's alleged TVPRA or RICO violations.  *Lexmark*, 572 U.S.

at 133.  These statutory causes of action instead allege that Visa's payment processing facilitated and helped *MindGeek* benefit financially from sex trafficking violations. Compl. ¶ 9.  This is not enough to establish proximate causation.  *See Fields v. Twitter, Inc.*, 881 F.3d 739, 750 (9th Cir. 2018) (allegation that Twitter services "facilitated the … growth and ability to plan and execute" of a terrorist organization was insufficient to satisfy proximate causation).  Moreover, Plaintiffs' injuries depended entirely on independent intervening actions of other parties—the MindGeek defendants and third parties who recorded and uploaded illegal content, *id.* ¶ 132.  Those independent actions break the alleged causal chain between Visa's conduct and Plaintiffs' injuries.  *See Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 929 (9th Cir. 1994) (proximate causation not satisfied where plaintiff's harm depended on the independent acts of tenant passing the cost of an allegedly illegal rent increase on to the subtenant-plaintiff); *see also Holmes*, 503 U.S. at 272.  Counts III, IV, VII, VIII, and IX should be dismissed for failure to plausibly allege proximate causation.

## II.    The Complaint Does Not State A Claim For Relief Under The TVPRA Against Visa

Congress enacted the TVPRA "to combat trafficking in persons," which it found was being "increasingly perpetrated by organized, sophisticated criminal enterprises." 22 U.S.C. § 7101(a), (b)(8).  To that end, Congress imposed enhanced criminal penalties for certain offenses related to peonage, slavery, involuntary servitude, forced labor, and sex trafficking.  *See* 18 U.S.C. §§ 1589–1594.  Congress subsequently created a civil remedies provision, which provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

Under this provision, a private plaintiff may bring a civil claim based on a violation of one of the criminal offenses set forth in the statute. Here, the Complaint alleges a violation of section 1591, the sex trafficking provision. Because Visa is not alleged to be the perpetrator of this violation, to state a claim under section 1595, Plaintiffs must allege facts showing that Visa: (1) "knowingly participated in a venture;" (2) "received a benefit from its participation;" and (3) "knew or should have known that [P]laintiffs were victims of sex trafficking." *See Doe v. Mindgeek USA Inc.*, No. 21-cv-00338, 2021 WL 4167054, at *4 (C.D. Cal. Sept. 3, 2021) (Carney, J.) (quoting *Doe v. Twitter, Inc.*, 2021 WL 3675207, at *25 (N.D. Cal. Aug. 19, 2021)). The Complaint does not plausibly allege *any* of these elements as to Visa, and therefore does not state a claim under the TVPRA as to Visa.

### A.    Visa did not participate in any sex trafficking venture.

The TVPRA claim fails because the Complaint does not allege that Visa unlawfully "participated" in a sex trafficking "venture" within any reasonable meaning of those terms. Plaintiffs allege that MindGeek is a sex trafficking venture within the meaning of 18 U.S.C. § 1591 and § 1595 that "recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiffs and other minors, and victims of rape, sexual abuse, sexual exploitation, and nonconsensual sex[.]" Compl. ¶ 485–86.[4] They do not allege that Visa did any of those things. Instead, the Complaint alleges that Visa's payments network was used to process payments by third parties for premium subscriptions and other content on certain paid MindGeek partner channels. *Id.* ¶ 501. But Visa's act of processing payments for a merchant is miles away from the conduct courts have held to constitute "participation in a venture" required for liability

---

[4] Elsewhere, the Complaint alleges that MindGeek benefits from *a* sex trafficking venture. *See* Compl. ¶¶ 493, 496. As a result, it is unclear whether the Complaint alleges that Visa benefited from a sex trafficking venture or benefited from other entities that benefited from a sex trafficking venture. The lack of clarity only underscores that the Complaint does not plausibly allege TVPRA liability against Visa, an entity several steps removed from the alleged harm.

1     under section 1595.

2         The plain meaning of the term "participation" provides a baseline for the Court's

3 analysis. The verb "participate," as used in section 1595 when expanded in 2008, denotes

4 actions through which a person takes part in or contributes to a venture. *See Participate*,

5 *Shorter Oxford English Dictionary* (6th Ed. 2007) ("Take a part or share in; possess in

6 common *with* others.") (emphasis in original); *Participation*, *Black's Law Dictionary* (8th

7 ed. 2004) ("The act of taking part in something, such as a partnership, a crime, or a trial.");

8 *Participate*, Merriam-Webster's Advanced LEARNER's English Dictionary (2008)

9 ("[T]o be involved with others in doing something: to take part in an activity or event

10 with others."). As these definitions illustrate, "participation" requires active engagement.

11 *See Reves v. Ernst & Young*, 507 U.S. 170, 178–89 (1993) (rejecting argument that "aid"

12 equals "participation"); *Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White*

13 *Transp., Inc.)*, 725 F.3d 494, 497 (5th Cir. 2013) ("[T]he word 'participation' connotes

14 activity, and not mere nonfeasance."). "Participation" demands more than indirect

15 financial support or passive facilitation. As explained by the D.C. Circuit, "the company

16 that provides electricity to power the sound system at [a court's] oral arguments assists

17 the proceedings, but its employees are not ordinarily said to have participated in the oral

18 argument," just like "[a] health insurance company may pay for a patient's operation, but

19 the insurer does not participate in the operation at the hospital." *United States v. Papagno*,

20 639 F.3d 1093, 1098 (D.C. Cir. 2011).

21         Applying these principles, in *Ratha v. Phatthana Seafood Co.*, the court determined

22 that to state a claim for beneficiary liability under section 1595, plaintiffs must allege that

23 the defendant "'took some action to operate or manage the venture,' such as directing or

24 participating in [the alleged TVPRA violation]." No. 16-cv-4271, 2017 WL 8293174, at

25 \*4 (C.D. Cal. Dec. 21, 2017) (quoting *Bistline v. Jeffs*, 2017 WL 108039 at \*11 (D. Utah

26 Jan. 11, 2017)). It explained that liability under section 1595 "requires more than receipt

27 of a passive benefit to satisfy the TVPRA's participation in a venture element." *Ratha*,

28 2017 WL 8293174, at \*4. The court in *B.M. v. Wyndham Hotels & Resorts, Inc.* similarly

1  concluded that the plaintiff failed to state a claim for beneficiary liability under section
2  1595 where plaintiff did not allege that the beneficiary "*directly* participated in a venture
3  that trafficked [the plaintiff]" and failed to "connect the dots" between the alleged sex
4  trafficking and global hotel brands affiliated with the hotels at which the plaintiffs were
5  allegedly trafficked.  No. 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July
6  30, 2020) (emphasis added).  Under this rule, Plaintiffs' TVPRA claims against Visa fail
7  because they do not and cannot allege that as a payment network, Visa "operate[d] or
8  manage[d]" a sex trafficking venture.

9           Even where courts have allowed claims to proceed without a "direct association"
10 between the beneficiary and the trafficker, courts have "required 'a showing of a
11 continuous business relationship between the trafficker and the [defendant] such that it
12 would appear that the trafficker and the [defendant] have established a pattern of conduct
13 or could be said to have *a tacit agreement*'" to the unlawful aspects of the venture.  *J.B.*
14 *v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20,
15 2020) (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D.
16 Ohio 2019) (emphasis added)).  This requires more than a routine business relationship.
17 In recent TVPRA cases against hotel chains, for example, courts have held that plaintiffs
18 alleged a continuous relationship where defendants *themselves* rented rooms to people
19 they should have known were engaged in sex trafficking, and saw evidence of the specific
20 trafficking first hand, such as the renter paying for the rooms in cash, victims with visible
21 bruises and apparent malnourishment, a "continuous procession of older men entering
22 and leaving" the rooms, or excessive guest requests for sheets or room service.  *See, e.g.*,
23 *B.M.*, 2020 WL 4368214, at *1.   Some hotels also accommodated requests from
24 traffickers to rent rooms near exit doors, had staff who observed traffickers escorting
25 victims throughout the hotel, and allegedly ignored screams for help coming from the
26 rooms.  *See S. Y. v. Best W. Int'l, Inc*., No. 2:20-CV-616-JES-MRM, 2021 WL 2315073,
27 at *6 (M.D. Fla. June 7, 2021).

28           In the technology context, courts have held the participation element sufficiently

alleged where defendants have had similar access to and control over the traffickers.  In *Doe v. Twitter*, for example, the court found participation sufficiently alleged based on allegations that Twitter has the ability to monitor the posting of illegal content but fails to remove it; Twitter's hashtags help users find illegal content; Twitter does not remove hashtags it knows are associated with illegal content; and Twitter's search suggestion feature makes it easier for users to find illegal content.  *See Twitter*, 2021 WL 3675207, at *25–26.  This Court in *Doe v. MindGeek USA Inc.* similarly concluded that participation was adequately alleged where MindGeek knowingly permitted CSAM to remain on its site despite having the ability to remove it; that MindGeek offered playlists, tags, titles, categories, and descriptors to help facilitate the search for illegal content; and that MindGeek suggests and promotes search terms, among other actions.  *MindGeek*, 2021 WL 4167054, at *5.

The Complaint does not allege any comparable conduct on the part of Visa.  The Complaint does not allege that Visa had the ability to remove content depicting the Plaintiffs, or that it promoted or directed website users to illegal content.  At most, it alleges that Visa's payment processing system made it easier for *MindGeek* to charge certain customers for content on its website.  But this does not rise to level of "tacit agreement" to a *sex trafficking venture*.  The allegations of "participation" here are analogous to those that were held insufficient in a case alleging Craigslist participated in a sex trafficking venture.  *See J.B.*, 2020 WL 4901196, at *9.  In *J.B.*, the court rejected the plaintiff's argument that Craigslist's advertisements led to J.B. being trafficked and that buyers were initiated through Craigslist's "erotic services" section of the website.  *See id.*  The court held that there was no factual basis to allege "Craigslist enters into tacit agreements with all traffickers (or even posters) that use its website[.]"  *Id.*  The court explained, "[t]o conclude otherwise would mean that 'all web[-]based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public,' lest such platforms be deemed to have participated in the venture."  *Id.*  The court observed that this would not

be reasonable in light of the volume of posts—nor would it be consistent with Congressional intent. *Id.* The same is true here. The Visa network processes hundreds of billions of transactions every year.[5] Visa is not "participating" in billions of ventures each year. Instead, it is in the business of operating a payment system that connects Issuers and Acquirers, who in turn separately contract with cardholders and merchants.

The Ninth Circuit has rejected similar legal theories seeking to impose aiding-and-abetting type liability on payment card companies for payment processing. In *Perfect 10 v. Visa*, the Ninth Circuit evaluated whether a copyright owner could hold a payment card company liable on a vicarious liability theory for processing payments on a copyright infringer's website. *See Perfect 10*, 494 F.3d at 798. The plaintiffs argued that by continuing to process credit card payments on the infringing websites—despite alleged knowledge of the infringement—credit card companies "induce, enable, and contribute to the infringing activity." *Id.* at 796. The Ninth Circuit disagreed. *Id.* The court acknowledged that "Defendants' payment systems make it easier for such an infringement to be profitable, and that they therefore have the effect of increasing such infringement, but because infringement of [Plaintiff's] copyrights can occur without using Defendants' payment system, we hold that payment processing by the Defendants as alleged in [Plaintiff's] First Amended Complaint does not constitute a 'material contribution.'" *Id.* at 797–98. It explained, "[t]he alleged infringement does not turn on the payment; it turns on the reproduction, alteration and distribution of the images, which Defendants do not do, and which occurs over networks Defendants do not control." *Id.* at 805–06.

The same is true here. Visa does not control the production, upload, or distribution of the content depicting Plaintiffs on MindGeek's sites. Visa had no control over MindGeek's monitoring and approval of content on its websites or the ways in which it aided users in locating content. Termination of payment processing would not have brought an end to the Plaintiffs' alleged injuries. Just as payment processing did not

---

[5] *See* Visa, *Visa Fact Sheet*, available at https://usa.visa.com/dam/VCOM/global/about-visa/documents/aboutvisafactsheet.pdf

constitute a material contribution to copyright infringement, so too here it does not constitute participation in a sex trafficking venture.

Any other rule would be untenable. As the Ninth Circuit acknowledged in *Perfect 10*, "credit cards serve as the primary engine of electronic commerce," and "Congress has determined it to be the 'policy of the United States—(1) to promote the continued development of the Internet and other interactive computer services and other interactive media [and] (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.'" 494 F.3d at 794 (quoting 47 U.S.C. §§ 230(b)(1), (2)). Payment networks could not play this role if they faced liability for criminal misconduct by completely unrelated individuals who somewhere along the way happened to benefit from a credit card transaction. Requiring these platforms to investigate the individual facts and circumstances in billions of transactions on pain of severe legal liability would invite almost limitless liability against such platforms and therefore precipitate a dramatic change in the industry. To take just one example from the TVPRA context, Plaintiffs' theory would invite liability against payment companies for processing cardholder payments to hotel chains because those hotels failed to prevent sex trafficking. Electronic commerce cannot function if payment processors are held to be co-venturers and participants in the illegal conduct of any person or entity that uses their payment processing network. *See J.B.*, 2020 WL 4901196 at *9 (holding it would be unreasonable to conclude that Craigslist enters into tacit agreements with all traffickers who post ads to its website). By processing payments, Visa does not enter into a tacit agreement with every merchant that accepts card payments.

### B. The Complaint contains no facts showing that Visa knew or should have known of the specific sex trafficking violations alleged by Plaintiffs.

Plaintiffs' TVPRA claims against Visa should also be dismissed because they do not plausibly allege that Visa knew or should have known of the alleged sex trafficking that injured Plaintiffs. Although Plaintiffs attempt to impute knowledge to Visa based on

general reports of illegal content on MindGeek websites, those reports are not tied to Plaintiffs themselves or the particular content depicting them.  Those allegations are insufficient.

Section 1595(a) requires that the plaintiff show the defendant participated in "*a venture*" that the defendant knew or should have known was engaged in an act violating section 1591.  Because the statutory text "speaks in singular terms," Plaintiffs must plead the knowledge element as to a *particular* sex trafficking venture, involving these specific Plaintiffs, not just allege conclusory facts about sex trafficking in general.  *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).  Courts have held that alleged "knowledge or willful blindness of a general sex trafficking problem" in an industry is not sufficient to establish liability under the TVPRA.  *Id*.  Instead, the TVPRA requires Plaintiffs to allege "facts sufficient to establish that the defendant knew or should have known about the trafficking of *the plaintiff in particular*."  *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) (emphasis added); *see also J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155, 2020 WL 6318707, at *6 (N.D. Cal. Oct. 28, 2020) ("general allegations about sex trafficking problems throughout the hospitality industry is not enough to put them on notice about the sex trafficking of this plaintiff"); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020) ("Plaintiff must allege facts showing how [defendants] received notice that Plaintiff A.B. was trafficked at their respective properties."); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("Plaintiff alleges that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels. But this is not sufficient to show that Wyndham should have known about what happened to this plaintiff." (internal citation omitted)).

The Complaint does not satisfy this requirement.  It does not allege that Visa knew or should have known about any alleged sex trafficking involving the 34 Plaintiffs who have brought this action.  It does not allege that any of these Plaintiffs notified Visa about the content depicting them on MindGeek sites or that Visa would have known about this

content specifically for any other reason.  Actors multiple steps removed from the alleged sex trafficking, as Visa is here, lack the requisite constructive knowledge of trafficking where the Complaint alleges the actor had no more than a general awareness of violations. For example, in *S.J. v. Choice Hotels*, the court distinguished between the alleged knowledge of franchisee hotels, whose front desk staff directly witnessed suspicious behavior, and franchisor entities, which were further removed.  The court explained that, "to conclude that *franchisors* like Wyndham, Howard Johnson, Inc., and Choice Hotels are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J.*, 473 F. Supp. 3d at 154 (emphasis added).

Just as with the franchisors in *S.J.*, Plaintiffs here allege that Visa knew of a general problem in the online pornography industry and on MindGeek's websites.  *See, e.g.*, Compl. ¶ 409 ("These credit card companies and their member banks providing merchant services to MindGeek were *aware of the trafficking risk* because it was *common knowledge in the pornographic industry* since no later than the 1980 [sic] and the *subject of numerous public reports* from government and advocacy agencies ever since, particularly since the emergence of online pornography industry.") (emphasis added); *id.* ¶ 419 ("For example, in 2020, Visa was included for the first time on the *annual Dirty Dozen List issued by anti-trafficking advocates* to highlight mainstream business that facilitate, participate in and profit from sexual abuse and exploitation.") (emphasis added); *id.* ¶ 423 ("The *presence of trafficking in the webcam industry* was notorious and well known to Visa.") (emphasis added).  Plaintiffs allege that Visa had a call with "anti-sex trafficking advocates" in which they "detailed the ways in which MindGeek was enabling and profiting from the rape and trafficking of women and children."  *Id.* ¶ 421. But these allegations go to notice of general allegations about sex trafficking problems, which is insufficient to allege that Visa had knowledge or constructive knowledge of actual, specific trafficking violations involving Plaintiffs as alleged here.  *See Doe 1 v.*

1    *Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr.

2    13, 2020) ("Allegations that customers complained about prostitution existing on

3    properties itself is insufficient to meet a known or should have known standard under

4    either 18 USC §§ 1595(a) or 1591(a).  Moreover, many of the allegations that have been

5    made are conclusory in nature.").  These allegations are therefore insufficient to suggest

6    that Visa had the knowledge or constructive knowledge of a specific venture engaged in

7    TVPRA violations necessary to satisfy this element of Plaintiffs' claim.  *See, e.g. J.C.*,

8    2020 WL 6318707, at *6.

9            **C.    The Complaint contains no facts showing Visa obtained a benefit specifically from the alleged illegal enterprise or venture, rather than receiving a benefit from legal content.**

10

11          The Complaint also does not plausibly allege the "benefit" element of a TVPRA

12    violation.  To satisfy this element, Plaintiffs must allege facts from which the Court can

13    infer that Visa knowingly received a "financial benefit" deriving from participation in the

14    sex trafficking venture.  *See Twitter*, 2021 WL 3675207, at *26.  General allegations of

15    profit are not sufficient; "[t]here must be a *causal relationship* between affirmative

16    conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss v. Weinstein*

17    *Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).

18          To satisfy this standard, the Complaint must tie the transaction fees that Visa

19    received to illegal sex trafficking content, as opposed to the *legal* content hosted on

20    MindGeek websites.  *See id.* (finding that plaintiffs alleged no benefit where defendants

21    received money based on sex trafficker's continued employment, but not "because of"

22    the alleged sex trafficking).  The Complaint does not draw this connection.  It does not

23    allege that Visa processed any payments related to content depicting Plaintiffs

24    specifically.  And it does not contain any facts that give rise to the inference that Visa

25    processed payments for illegal content—let alone that it did so with "knowledge of [the]

26    causal relationship" between the illegal content and the fees that it collected.  *Id*.

27          The allegations of benefit against Visa are very different from those that courts

28    have found sufficient to satisfy this element in other cases involving allegations of illegal

sexual content on website pages. In *MindGeek*, for example, the Court found the plaintiff satisfied this element by alleging that MindGeek monetized the posting of CSAM, and specifically the videos of that particular plaintiff. It pointed to the allegations that advertisements appeared next to the videos depicting her and that one of the videos received 30,000 views. *See MindGeek*, 2021 WL 4167054, at *6. Similarly in *Twitter*, the court found the Complaint contained "detailed allegations about how Twitter monetizes content, including CSAM, through advertising, sale of access to its API, and data collection," and more specifically, that those plaintiffs' videos were viewed and retweeted a significant amount of times. *Twitter*, 2021 WL 3675207, at *27. Here, there are no specific factual allegations that Visa has knowingly and deliberately monetized illegal content. The Complaint contains only conclusory assertions about transaction fees. *See, e.g.*, Compl. ¶ 420 (stating Visa and its merchant banks "profited from tens of thousands of transactions annually that benefited from MindGeek's trafficking venture"); *id.* ¶ 424 (stating that Visa and its banks processed payments from MindGeek despite "red flags," including that accounts were in regions known for high levels of sex trafficking). But the Complaint does not distinguish between transaction fees for legal content on MindGeek's sites as opposed to illegal conduct. Moreover, Visa collects fees based on usage of its network by Issuers and Acquirers, who pay those fees for the benefit of being part of the Visa payment ecosystem. Visa does *not* monetize the particular subject matter of the underlying transaction.

Because the Complaint does not plausibly allege that Visa received any "benefit" from any alleged participation in a venture, the Complaint does not plead any viable TVPRA claim against Visa.

## III. The Complaint Does Not Plausibly Allege Any RICO Violation By Visa

The Racketeer Influenced and Corrupt Organizations Act was intended to combat organized crime by allowing for criminal and civil penalties for racketeering activities performed as part of an ongoing criminal enterprise. The Complaint asserts two theories of RICO liability against Visa: (i) participation in a RICO enterprise under 18 U.S.C. §

1962(c) and (ii) investment of enterprise proceeds under section 1962(a).  Because the Complaint alleges nothing more than routine and completely indirect business dealings between Visa and MindGeek, it does not state a viable claim of RICO liability under either theory.

### A.    The Complaint does not plausibly allege that Visa participated in a RICO enterprise in violation of 18 U.S.C. § 1962(c).

To state a claim under section 1962(c) for participation in a RICO enterprise, Plaintiffs must allege that Visa "participate[d] in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt.  In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)).  The Complaint fails to satisfy any element as to Visa.

### 1.    The Complaint does not allege an enterprise involving Visa

The Complaint fails to allege the existence of an enterprise with which Visa had any relationship.  It alleges that "Defendants and enterprise members were associated in fact."  Compl. ¶¶ 536–37.  But this is a legal conclusion and it falls apart under scrutiny.  "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).  And "[t]he concept of 'associat[ion]' requires both interpersonal relationships and a common interest." *Id.* (citation omitted).  The Complaint does not allege that Visa had any interpersonal relationship with any other alleged party in the "enterprise," let alone that Visa shared a "common purpose" with its members.

Far from alleging a close "association," the Complaint alleges that Visa provided a network for processing credit card transactions.  It alleges "nothing more than a simple contract for services of a type entered by millions of others." *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1052 (W.D. Wis. 1999).  That business arrangement is

insufficient to show an "interpersonal relationship" between Visa and the MindGeek Defendants. *See Gomez v. Guthy-Renker, LLC*, No. 14-cv-01425, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client."). Moreover, Visa did not even maintain any *direct contractual* relationship with MindGeek or any of the other MindGeek Defendants—the Acquirers initiated and maintained business relationships with MindGeek for processing payments. *See supra* at 4. Courts have rejected as "absurd" the notion "that each of the many million combinations of merchant, [credit card company], and lender is a RICO enterprise. However broadly worded, the RICO statute is not to be applied to 'situations absurdly remote from the concerns of the statute's framers.'" *Jubelirer*, 68 F. Supp. 2d at 1053 (citation omitted). "An enterprise must be more than a routine contractual combination for the provision of financial services." *Id.*[6]

Second, the Complaint alleges no facts suggesting that Visa shared a common purpose with any of the MindGeek Defendants. The Complaint alleges that Visa wanted to earn transaction fees. Compl. ¶ 431. But Visa's alleged interest in in receiving transaction fees is insufficient to show a *common purpose* with a sex trafficking

---

[6] The only allegation in Count VII that specifically refers to Visa is in paragraph 537, where it alleges that the "Enterprise" consisted of "sham shell entities" "which existed solely as vehicles through which to execute the Enterprise's rackets and scams and evade taxes," and that "Defendant Visa participated in the scheme, by <u>inter alia</u>, engineering and facilitating credit card and financial transactions to siphon off illicit profits and avoid credit card red flags." Compl. ¶ 537. At most, this allegation suggests that, at some point, MindGeek Defendants used "stolen credit cards," which *might* have included Visa-branded credit cards (the Complaint does not specify), to "pay for memberships and content [on MindGeek sites]" and "manufacture false traffic, ad impressions, and membership conversions." *See* Compl. ¶¶ 156–59. But the Complaint alleges no involvement by Visa in allegedly "engineering" these transactions; indeed, it specifies that MindGeek's members took precautions to *avoid* detection by card issuers or brands, for example by limiting purchases to "$1 trial memberships" because the "nominal transaction amount would not trip credit card company review and thus not be flagged as potentially fraudulent." *Id.* ¶ 158. These allegations completely eviscerate any suggestion that Visa and MindGeek were in a cooperative sex trafficking association.

---

association: courts have deemed "this element unmet when the alleged association-in-fact is merely a routine contract for services, because the entities are actually pursuing their individual economic interests, rather than any shared purpose." *Gomez*, 2015 WL 4270042, at *9; *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough."); *Western & S. Life Ins. Co. v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.)*, No. 11-cv-07166, 2012 WL 10731957, at *8 (C.D. Cal. June 29, 2012) (explaining that parties who "enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise'") (citations omitted). While the Complaint alleges—with no support or elaboration as to Visa—that "[e]ach of the Defendants shared the same conspiratorial objective" of reaping financial rewards through distributing illegal content, Compl. ¶ 509, that conclusory allegation, which merely recites the element of the offense, is insufficient to plausibly allege that Visa shared in this alleged objective. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 2. The Complaint does not allege Visa participated in the "conduct" of an enterprise

The Complaint must also allege that Visa participated in the "conduct" of an enterprise, which requires it to show that Visa had "some part in directing [the] affairs [of the enterprise]." *Reves*, 507 U.S. at 179; *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1034 (C.D. Cal. 2011) ("Liability for participating in the 'conduct' of a RICO enterprise extends only to those who 'have some part in directing [the enterprise's] affairs.'") (citation omitted). It does not do so.

Directing the affairs of an enterprise requires a party to have "participated in the operation or management of the enterprise itself," *Reves*, 507 U.S. at 183, for example, by "occupy[ing] a position in the 'chain of command[.]'" *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (quoting *United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994)). The Complaint does not allege that Visa's activities in relation to MindGeek

come anywhere close to this standard. Indeed, Plaintiffs do not allege that Visa engaged in any conduct beyond its attenuated, indirect business relationship with MindGeek. *See* Compl. ¶ 58 ("Visa recognized MindGeek as an authorized merchant and processed payment to its websites including but not limited to Pornhub."). But "merely having a business relationship with and performing services for [] an enterprise, including financial … services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise." *Jubelirer*, 68 F. Supp. 2d at 1053. This principle applies even if "the service provider [allegedly] knows of the enterprise's illicit nature" and "the services performed [allegedly] facilitate[d] the enterprise's activities[.]" *Id.*

The "existence of a business relationship … without more does not show that [a defendant] conducted the enterprise." *In re WellPoint, Inc.*, 865 F. Supp. 2d at 1034–35; *Walter*, 538 F.3d at 1249 ("Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'"); *cf. Perfect 10*, 494 F.3d at 807 (allegations that credit card brands could stop or reduce website's trademark infringement by ceasing to process payments "does not constitute 'direct control'" over the means of infringement). The RICO claims against Visa fail for this reason.

### 3. The Complaint does not allege that Visa engaged in a pattern of racketeering activity that proximately caused Plaintiffs' injuries

The Complaint must also allege that each individual defendant engaged in a predicate act of "racketeering activity," as identified in 18 U.S.C. § 1961(1). *See Keel v. Schwarzenegger*, No. 08-cv-07591, 2009 WL 1444644, at *6–7 (C.D. Cal. May 19, 2009) (citing *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987)). The only predicate act by Visa the Complaint even attempts to allege is supposed TVPRA violations, which, as explained *supra* Section II, Plaintiffs have not plausibly alleged. There is no TVPRA violation by Visa, meaning there is also no predicate act as required for RICO liability.

Moreover, because the Complaint has not plausibly alleged a *single* predicate racketeering act as to Visa, it has not alleged a "pattern" of racketeering activity. *See*

*Manos v. MTC Fin., Inc.*, No. 16-cv-01142, 2018 WL 6220051, at \*3 (C.D. Cal. Apr. 2, 2018) (Carney, J.), *aff'd*, 773 F. App'x 452 (9th Cir. 2019) ("'In order to constitute a "pattern," there must be at least two acts of racketeering activity within ten years of one another.'" (quoting *Turner v. Cook*, 362 F.3d 1219, 1228 (9th Cir. 2004)))); *In re WellPoint, Inc.*, 865 F. Supp. 2d at 1035 ("Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant.") (emphasis in original).

Finally, to even have standing to pursue a RICO claim, Plaintiffs must allege that Visa's alleged RICO violation was the proximate cause of their injuries. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1258 (9th Cir. 2019) ("Proximate cause exists to 'limit a person's responsibility for the consequences of that person's own acts.'" (quoting *Holmes*, 503 U.S. at 268)) (emphasis added). "Proximate causation requires some direct relation between the injury asserted and the injurious conduct alleged." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (internal citations and quotation marks omitted). "[T]he harm alleged must be 'by reason of,' or proximately caused by, the predicate acts." *Hamid v. Price Waterhouse & Co. (In re Bank of Credit & Com. Intern'l Depositors Litig.)*, No. CV 91-4483 CBM (EX), 1992 WL 696398, at \*7 (C.D. Cal. Apr. 30, 1992). As explained *supra* Section I, the Complaint nowhere alleges that Visa's alleged acts were a direct cause of Plaintiffs' harm, and instead directly targets the third parties who uploaded the content to MindGeek's sites and MindGeek itself.

## B.    The Complaint does not state a claim that Visa invested enterprise proceeds under 18 U.S.C. § 1962(a).

The Complaint's alternative theory of RICO liability based on investment of illegal enterprise proceeds also fails. To be liable under section 1962(a) for investment of illegal enterprise proceeds, an individual or entity must receive income derived from a pattern of racketeering activity, invest the income in an enterprise engaged in interstate commerce, and have participated in the racketeering as a "principal" within the meaning

of 18 U.S.C. § 2. 18 U.S.C. § 1962(a); *see also Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1152 (9th Cir. 1992) ("Under the clear language of this provision, the person who receives and invests the 'racketeering' income must have participated as a principal in the racketeering activities."). To participate as a "principal," the defendant must "commit[] or aid[] in the commission of an offense" and have "possession of the specific intent associated with the various underlying predicate offenses." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 907–08 (3d Cir. 1991).[7] The Complaint satisfies none of these elements.

Plaintiffs allege that Visa profited from the alleged enterprise by receiving fees for processing payments. Compl. ¶ 502. But the Complaint nowhere alleges that Visa invested any transaction fee revenue in an enterprise. The Complaint references acts in which "Defendants used funds they fraudulently procured" to "fund the Enterprise through transfers from MindGeek to its network of sex traffickers," "fund the dissemination of materially false and fraudulent information used to deceive customers that the content on its websites was legal, consensual and verified," and to fund publicity campaigns to discredit victims who spoke out against MindGeek. Compl. ¶ 575. These allegations relate to *MindGeek's* investment of its own proceeds in the alleged enterprise, and have *nothing to do with Visa*.

Nor does the Complaint allege that Visa acted as a "principal" in the racketeering. As explained above in Section II, the Complaint fails to plausibly allege that Visa, through its routine processing of payments, committed or aided in the commission of a predicate TVPRA violation.

---

[7] 18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

1    Further, for Plaintiffs to have standing to bring a civil RICO claim for investment

2    of enterprise income, they must "allege facts tending to show that [they were] injured by

3    the use or investment of *racketeering* income," *Nugget Hydroelectric, L.P. v. Pac. Gas &*

4    *Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992) (emphasis added).  This means the harm to

5    the Plaintiffs must derive from investment of RICO proceeds.  The Complaint does not

6    even allege that Visa invested transaction fees in an enterprise; it certainly does not allege

7    that Visa used or invested transaction fees in any way that caused these particular

8    Plaintiffs any injury.  Instead, the Complaint alleges that the MindGeek Defendants

9    reinvested *their* proceeds from the enterprise in a manner that caused further harm to

10   Plaintiffs.  Compl. ¶¶ 575, 579.  The Complaint's cursory effort to assert this cause of

11   action against Visa should be rejected.

12   **IV.    The Complaint Does Not Plausibly Allege Conspiracy Claims Under RICO
         (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California
13       Common Law**

14   The Complaint alleges three claims for conspiracy against Visa: conspiracy claims

15   arising under RICO (Count IX), the TVPRA (Count IV), and California common law

16   (Count XIX).  Each claim requires Plaintiffs to allege facts satisfying the same

17   fundamental elements of any conspiracy: an agreement to engage in wrongdoing,

18   knowledge of the essential features of the conspiracy, and intent to aid in its purpose.  The

19   Complaint fails to plausibly allege any of these elements.

20   To state a claim for RICO conspiracy in violation of section 1962(d), Plaintiffs

21   must allege either that Visa entered "an agreement that is a substantive violation of RICO"

22   or "agreed to commit, or participated in, a violation of two predicate offenses."  *Howard*

23   *v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  They must also allege that Visa

24   was "'*aware* of the essential nature and scope of the enterprise and *intended* to participate

25   in it.'"  *Id.* (quoting *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (emphasis added).

26   Similarly, to allege a TVPRA conspiracy, the Complaint must contain facts sufficient to

27   show that the allegedly conspiring parties had a "unity of purpose or a common design

28   and understanding, or a meeting of the minds in an unlawful arrangement."  *Transgo, Inc.*

1    *v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985) (citing *American*

2    *Tobacco Co. v. United States,* 328 U.S. 781, 809–10 (1946)).  This means that Plaintiffs

3    must plausibly allege that the parties shared a purpose of engaging in conduct that

4    constituted a violation of the TVPRA, and to profit from those actions.  *See, e.g.*, *United*

5    *States v. Wilson*, No. 10-60102-CR-ZLOCH, 2010 WL 2991561, at *5 (S.D. Fla. July 27,

6    2010), *report and recommendation adopted*, No. 10-60102-CR, 2010 WL 3239211 (S.D.

7    Fla. Aug. 16, 2010) ("[I]n order to prove conspiracy to cause a minor to participate in a

8    commercial sex act [under Section 1591], the Government must establish that Defendant

9    agreed with another to cause a minor to engage in a commercial sex act.").  The elements

10   of civil conspiracy under California common law are also similar: to show formation of a

11   conspiracy, Plaintiffs must plausibly allege "(i) knowledge of wrongful activity, (ii)

12   agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity."

13   *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (citing

14   *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013)).  The Complaint

15   is devoid of facts needed to satisfy these standards.

16        First, the Complaint fails to allege any "agreement" between Visa and any of the

17   MindGeek Defendants to engage in sex trafficking.  The Complaint's conclusory

18   assertion that "Defendants conspired by agreement or understanding, to commit unlawful

19   acts," Compl. ¶ 509, is insufficient to plausibly allege that Visa itself agreed in any way

20   with the MindGeek Defendants to commit a substantive RICO violation, a predicate

21   TVPRA violation, or any other wrongful act.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet

22   that a court must accept as true all of the allegations contained in a complaint is

23   inapplicable to legal conclusions."); *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F.

24   Supp. 3d 945, 964 (N.D. Cal. 2015) ("[A] Complaint which 'lump[s] together … multiple

25   defendants in one broad allegation fails to satisfy [the] notice requirement of Rule

26   8(a)(2).'") (citations omitted).  Further, the allegation that Visa "recognized MindGeek

27   as an authorized merchant and processed payment to its websites," Compl. ¶ 58, only

28   suggests that Visa at most agreed to provide payment processing services, but does

suggest that Visa agreed to participate in sex trafficking of any kind.  Visa's business relationship with MindGeek does not substitute for specific factual allegations of such an agreement: "mere association" with another entity is not actionable because "agreement is essential" to conspiracy liability.  *Baumer*, 8 F.3d at 1346 (quoting *United States v. Neapolitan*, 791 F.2d 489, 499 (7th Cir. 1986)).

Second, the Complaint does not allege that Visa intended to further the cause of any alleged conspiracy or to participate in an alleged enterprise.  Plaintiffs' general, conclusory assertions that "[e]ach of the Defendants shared the same conspiratorial objective," Compl. ¶ 509 (TVPRA conspiracy), or that they "shared the same conspiratorial objective, which was to maintain, stream, re-upload, monetize, and distribute CSAM and other non-consensual content and/or to benefit financially from such distribution," *id.* ¶ 641 (civil conspiracy), are insufficient.  They allege that "Visa knew that its funding supported and facilitated MindGeek [sic] would lead to the commercialization and monetization of CSAM and other non-consensual content depicting the Plaintiffs."  *Id.* ¶¶ 407, 512.[8]  But alleged knowledge of wrongdoing alone, even if true, does not make a conspiracy.  Plaintiffs must sufficiently allege a "meeting of the minds" to commit the trafficking violation.  *See, e.g.*, *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) ("Although such a statement alleges that [defendants] and others possibly participated in violation of the forced labor prohibition, it does not imply that there was some act of agreement between any of them. Accordingly, plaintiff's conspiracy claim fails."); Order at 11, *A.B. et al. v.*

---

[8] Plaintiffs' civil conspiracy allegations against Visa do not even go this far.  The Complaint fails to even mention Visa specifically in this count, grouping "defendants" together and merely restating the element of the claim.  *Id.* ¶ 641.  This broad allegation is insufficient to state a claim against Visa. *See Adobe Sys.*, 125 F. Supp. 3d at 964 ("[A] complaint which 'lump[s] together … multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'") (citations omitted); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.").

1   *Salesforce.com, Inc. et al.*, No. 4:20-cv-01254 (S.D. Tex. March 22, 2021), ECF No. 58
2   (holding that plaintiff's allegation that Salesforce entered an agreement for the purchase
3   of business software did not establish it "had sex trafficking as an 'object to be
4   accomplished'"). And Plaintiffs here have not alleged any such meeting of the minds that
5   would show Visa had intent to commit wrongful acts.

6        Moreover, courts have held that a buyer-seller relationship between parties, without
7   more, does not establish the parties' intent to aid each other in a conspiratorial objective,
8   even if the goods involved in the transaction are allegedly illicit. *See 3Taps Inc.*, 942 F.
9   Supp. 2d at 981 ("That Padmapper had an incentive to use the inappropriately obtained
10  information, or that 3Taps would not itself have committed the acts without a market for
11  the resulting information, does not plausibly suggest that Padmapper ever intended to
12  assist 3Taps in the alleged wrongful conduct required to obtain the information in the first
13  place."); *see also Benson v. JPMorgan Chase Bank, N.A.*, No. C–09–5272–EMC, 2010
14  WL 1526394 (N.D.Cal. Apr. 15, 2010) (bank's financial incentive to accept deposits from
15  ponzi scheme promoters did not establish intent to aid the promoters). Thus, the
16  Complaint's allegation that Visa wished to earn a profit by continuing to process
17  payments, Compl. ¶ 431, falls well short of showing intent to participate in any sex
18  trafficking conspiracy or enterprise. And, in any event, Visa does not even have any
19  direct relationship with MindGeek that would have permitted it to reach any sort of mutual
20  agreement to engage in sex trafficking; it is Acquirer banks who initiate and maintain a
21  relationship with merchants like MindGeek.

22       Third, the Complaint does not allege that Visa was aware of the nature and scope
23  of any alleged conspiracy. *See United States v. Nichols*, No. 15-CR-756-1, 2019 WL
24  398775, at *13 (N.D. Ill. Jan. 31, 2019) (TVPRA conspiracy requires knowledge of the
25  "essential nature and scope of the charged conspiracy"); *Howard*, 208 F.3d at 751
26  (defendant must be "*aware* of the essential nature and scope of the enterprise") (emphasis
27  added) (citation omitted); *Ajzenman*, 487 F. Supp. 3d at 867 (civil conspiracy requires
28  "knowledge of wrongful activity"). The Complaint does not allege that Visa had any

1  insight or knowledge whatsoever into the sex trafficking plans, goals, methods, or
2  operations of the criminals engaged in these activities.  There is no allegation that Visa
3  ever met anyone responsible for the content of the videos uploaded onto MindGeek's
4  websites.  It is absurd to claim that Visa had "insight" into the nature and purpose of the
5  alleged sex trafficking venture.  Because the Complaint fails to plead any of the elements
6  common to each conspiracy claim—agreement, intent, and knowledge—all conspiracy
7  counts against Visa should be dismissed.

8  **V.    The Complaint Fails To Allege Any State Law Claims Against Visa**

9      **A.    The Complaint does not state a claim under California Business and
10          Professions Code §§ 17200, 17500.**

11      Plaintiffs have not stated a claim against Visa for unfair business practices or false
12  advertising under California Business and Professions Code §§ 17200, 17500.  Although
13  the Complaint nominally purports to assert this claim against Visa, Plaintiffs' factual
14  allegations in Count XVIII relate solely to the alleged acts of the MindGeek Defendants,
15  not Visa.  The Complaint alleges generally that "*Defendants* have engaged in unlawful,
16  unfair, and fraudulent business acts and practices by participating in a venture engaged in
17  trafficking that intentionally produced, recruited, funded, disseminated, and monetized
18  the dissemination of CSAM materials, sex abuse, trafficking content, and other non-
19  consensual content *on its site*." Compl. ¶ 637 (emphasis added).  It also states that
20  "*Defendants* fraudulently deceived *its* [sic] *users* that they were monetizing, distributing,
21  and advertising legitimate, legal content, when in fact *defendants' websites* were riddled
22  with videos of rape, child pornography, sex trafficking, and other non-consensual
23  content" and "Defendants knowingly had inadequate age and consent verification systems
24  in place that enabled users to upload child pornography to *Defendants' websites.*" *Id.* ¶
25  638 (emphasis added).

26      Visa does not have any websites at issue in this case.  It does not have any control
27  over age and consent verification policies on the websites at issue, and it does not
28  distribute or advertise content on those sites.  These allegations are directed at MindGeek.

And the Complaint's passing attempt to group Visa in with the MindGeek Defendants, with no specific allegations as to Visa, is insufficient to state a claim against to Visa. *See Adobe Sys.*, 125 F. Supp. 3d at 964; *Gauvin*, 682 F. Supp. at 1071 (explaining that Complaint failed to state a claim where "all defendants are lumped together in a single, broad allegation").

Moreover, to the extent the Complaint directs at Visa the allegation that "Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices by participating in a venture engaged in trafficking," it fails to plausibly allege that Visa participated in any venture, as explained above in Section II.A. Further, "[a] defendant's liability [for unfair business practices] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500." *Emery*, 95 Cal. App. 4th at 960, 116 Cal. Rptr. 2d at 33. The Complaint nowhere alleges facts suggesting that Visa personally participated in or exercised control over any alleged venture. Visa performed arm's length financial services in accordance with its contracts with banks that contract with MindGeek—nothing more.

## B.     The Complaint does not plausibly plead a claim for unjust enrichment against Visa.

The Complaint also attempts to assert a separate cause of action for unjust enrichment against Visa. But this Court, along with "many" others in this district, does not recognize unjust enrichment as an "independent cause of action." *MindGeek,* 2021 WL 4167054 at *11 (Carney, J.); *Gershfeld v. Teamviewer US, Inc.*, No. 21-cv-00058, 2021 WL 3046775, at *3 (C.D. Cal. June 24, 2021) (Carney, J.). For that reason alone, the unjust enrichment claim should be dismissed. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) ("Simply put, 'there is no cause of action in California for unjust enrichment.' Therefore, Plaintiffs' claim for unjust enrichment fails to state a claim for which relief may be granted.") (citation omitted); *In re DirecTV Early Cancellation Litig.*,

738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) (dismissing unjust enrichment claim because California does not recognize such a claim).

Even if there was a valid independent cause of action for unjust enrichment, to state a claim, the Complaint "must plead receipt of a benefit and the unjust retention of the benefit at the expense of another." *Gershfeld*, 2021 WL 3046775, at *3 (citation omitted). Thus, to state a claim, Plaintiffs would need to demonstrate that Visa received money that rightfully belonged to them. *See Disabled Rts. Action Comm. v. Santa Fe Gaming Corp.*, 32 F. App'x 820, 820–21 (9th Cir. 2002) ("Under the circumstances, by seeking an accounting for unjust enrichment when [defendant] did not reap profits that rightfully belonged to the plaintiffs, the plaintiffs are in essence pursuing punitive damages for defendant's alleged ADA violation.").

The Complaint fails to state a claim for restitution against Visa because it does not plausibly allege any link between the alleged sex trafficking violations and any transaction fees that Visa received. It asserts that "Visa benefited financially and profited from videos and images depicting Plaintiffs on MindGeek's websites, including, but not limited to, Pornhub, by receiving transaction fees paid by MindGeek when users used Visa credit cards to pay to view this content without the Plaintiffs' knowledge and consent." Compl. ¶ 635. That conclusory statement, however, does not show that any funds Visa received in connection with transaction fees were benefits conferred on Visa *by the Plaintiffs*. As explained above in Section II.B, the Complaint contains no specific allegation that Visa processed a single payment on account of any content involving Plaintiffs that was uploaded to MindGeek sites, nor does it allege that content depicting Plaintiffs was accessible with a paid subscription or as paid content. Because the Complaint contains only conclusory assertions that Visa has indirectly profited from the alleged sex trafficking, Plaintiffs' claims for unjust enrichment should be dismissed against Visa for this additional reason.

## VI.    The Complaint Should Be Dismissed With Prejudice As To Visa

Each claim against Visa should be dismissed with prejudice because the pleadings "could not possibly be cured by the allegation of other facts." *See Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of appeal where amendment could not cure defect in pleadings); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (amendment would be futile where "complaint makes clear that [plaintiff's] injury was caused by his alleged wrongful termination" and not the alleged statutory violation).    Plaintiffs' injuries stem from independent, intervening acts of third parties, and Visa lacks any connection with the MindGeek Defendants beyond an indirect and intermediated routine business relationship.    No amendment to the pleadings could change that reality.    Accordingly, the Complaint should be dismissed with prejudice as to Visa.

### CONCLUSION

Visa condemns the terrible harms that Plaintiffs describe.    But imposing liability on Visa is not consistent with the rule of law or with justice.    There is no legal theory that renders Visa liable for the allegedly illegal acts that others perpetrated on Plaintiffs.    For these reasons, the Court should dismiss all claims, Counts III, IV, VII, VIII, IX, XVIII, XVII, and XIX, as to Visa with prejudice.

Dated:  October 18, 2021                    RESPECTFULLY SUBMITTED,

                                                          */s/ Drew Tulumello*
                                                          DREW TULUMELLO (#196484)
                                                          drew.tulumello@weil.com
                                                          WEIL, GOTSHAL & MANGES LLP
                                                          2001 M Street NW, Suite 600
                                                          Washington, DC 20036
                                                          Tel: 202 682 7000
                                                          Fax: 202 857 0940
                                                          *Attorney for Defendant Visa, Inc.*