1  DAN MARMALEFSKY (CA SBN 95477)
   DMarmalefsky@mofo.com
2  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
3  Los Angeles, CA  90017-3543
   Telephone: 213.892.5200
4  Facsimile: 213.892.5454

5  RONALD G. WHITE (admitted *pro hac vice*)
   RWhite@mofo.com
6  MORRISON & FOERSTER LLP
   250 West 55th Street
7  New York, NY  10019-9601
   Telephone: 212.468.8000
8  Facsimile: 212.468.7900

9
   Attorneys for Defendant
10 BERND BERGMAIR
   *(Additional Counsel listed on next page)*
11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                   SOUTHERN DIVISION

15

16 SERENA FLEITES and JANE DOE NOS. 1       Case No. 2:21-cv-4920-CJC-ADS
   through 33,
17                                           **DEFENDANT BERND**
            Plaintiffs,                       **BERGMAIR'S NOTICE OF**
18                                           **MOTION AND MOTION TO**
        v.                                   **DISMISS PLAINTIFFS'**
19                                           **COMPLAINT FOR LACK**
   MINDGEEK S.A.R.L. a foreign entity; MG   **OF PERSONAL**
20 FREESITES, LTD., a foreign entity;        **JURISDICTION [FRCP**
   MINDGEEK USA INCORPORATED, a              **12(B)(2)] AND FOR**
21 Delaware corporation; MG PREMIUM         **FAILURE TO STATE A**
   LTD, a foreign entity; RK HOLDINGS USA    **CLAIM [FRCP 12(B)(6)];**
22 INC., a Florida corporation; MG GLOBAL   **MEMORANDUM OF**
   ENTERTAINMENT INC., a Delaware            **POINTS AND**
23 corporation; TRAFFICJUNKY INC., a         **AUTHORITIES**
   foreign entity; BERND BERGMAIR, a
24 foreign individual; FERAS ANTOON, a      Date: January 24, 2022
   foreign individual; DAVID TASSILLO, a    Time: 1:30 p.m.
25 foreign individual; COREY URMAN, a       Courtroom: 9 B
   foreign individual; VISA INC., a Delaware Judge: Hon. Cormac J. Carney
26 corporation; COLBECK CAPITAL DOES
   1-10; and BERGMAIR DOES 1-10,
27
            Defendants.
28

1    ANDRE FONTANA (CA SBN 324801)
     AFontana@mofo.com
2    MORRISON & FOERSTER LLP
     425 Market Street
3    San Francisco, CA  94105-2482
     Telephone: 415.268.7000
4    Facsimile: 415.268.7522

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 24, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Cormac J. Carney, in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West Fourth, Santa Ana, California 92701-4516, Defendant Bernd Bergmair will and does hereby move to dismiss the Complaint filed by Serena Fleites and Jane Doe Nos. 1 through 33 in its entirety.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that the Court lacks personal jurisdiction over Defendant Bergmair, and Rules 12(b)(6) and 9(b), on the grounds that the Complaint fails to state a claim against him upon which relief may be granted and fails to allege fraud-based claims with particularity.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Motions and Memoranda of Points and Authorities in support thereof of the other Defendants in this action; the pleadings and other records in the Court's file; and such other written and oral argument as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 8, 2021.

Dated: October 20, 2021

RONALD G. WHITE
DAN MARMALEFSKY
ANDRE FONTANA
MORRISON & FOERSTER LLP

By: _____/s/ Ronald G. White_____
Ronald G. White

Attorneys for Defendant
BERND BERGMAIR

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION .................................................................................................. 1

RELEVANT BACKGROUND ............................................................................. 2

ARGUMENT ........................................................................................................ 4

I.    Plaintiffs Have Not Established Personal Jurisdiction Over Bergmair ......... 4

    A.    Bergmair Is Not Subject to General Jurisdiction ................................ 5

    B.    Bergmair Is Not Subject to Specific Jurisdiction................................ 6

        1.    The Complaint Does Not Establish Any Purposeful Direction of Bergmair's Activities Toward California ............. 6

            a.    The Complaint Does Not Allege Any Intentional Act by Bergmair ............................................................. 7

            b.    The Complaint Does Not Allege Any Act by Bergmair Expressly Aimed at This Forum ................... 13

            c.    Bergmair Did Not Cause Harm that He Knew Would Be Suffered in This Forum ................................ 16

        2.    Bergmair Did Not Engage in Forum-Related Activities, Much Less Any Related to Plaintiffs' Claims ......................... 16

        3.    The Exercise of Jurisdiction over Bergmair Would Not Be Reasonable ............................................................... 19

            a.    Bergmair Did Not Purposefully Inject Himself into California's Affairs................................................. 19

            b.    Bergmair Would Be Substantially Burdened by Litigating in This Forum ............................................. 20

            c.    Litigating in California Would Create a Conflict of Sovereignty.................................................................. 21

            d.    California Does Not Have a Substantial Interest in Adjudicating This Case .................................... 22

            e.    California Is Not the Most Efficient Forum................... 22

            f.    This Forum Is Not Essential to Plaintiff's Convenient and Effective Relief ...................................... 23

            g.    An Appropriate Alternative Forum Exists ..................... 23

            h.    Balancing of the Reasonableness Factors ..................... 24

    C.    Fed. R. Civ. P. 4(k)(2) Does Not Provide a Basis for Jurisdiction Over Bergmair.................................................. 25

II.    Plaintiffs Have Failed to State a Claim Against Bergmair ......................... 26

    A.    The Complaint Fails to State a Claim on Any Count ........................ 26

        1.    The Complaint's Vague, Generalized Allegations and Shotgun Pleading Fail to State a Claim ................................... 26

ii

# TABLE OF CONTENTS
## (continued)

                                                                                    **Page**

2.  Section 230 Bars All of Plaintiffs' Claims Against
    Bergmair ...................................................................................... 30

B.  The Complaint Fails to Properly Allege a Valid Claim on
    Specific Counts ............................................................................. 31

1.  The Trafficking Claims (Counts I, II, and IV) Fail to State
    a Claim ........................................................................................ 32

2.  The Child Pornography Claims (Counts V and VI) Fail to
    State a Claim ............................................................................... 33

3.  The RICO Claims (Counts VII, VIII, and IX) Fail to State
    a Claim ........................................................................................ 33

4.  The California State Law Claims (Counts XIV, XV,
    XVII, XVIII, and XIX) Fail to State a Claim .......................... 34

CONCLUSION ................................................................................................ 35

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

ny-2254127

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A'lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
  2012 WL 12921013 (C.D. Cal. Aug. 6, 2012) ....................................................14

*A.B. v. Hilton Worldwide Holdings, Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020)........................................................................18

*AMA Multimedia LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020), *cert. denied*, 2021 WL 4507661 (S.
  Ct. Oct. 4, 2021) .................................................................................................*passim*

*Apple Hill Growers v. El Dorado Orchards*,
  2019 WL 5827365 (N.D. Cal. Nov. 7, 2019)........................................................29

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal.4th 503 (1994) .............................................................................................35

*Asahi Metal Indus. Co. v. Superior Ct.*,
  480 U.S. 102 (1987) ...............................................................................................20

*Ascentive LLC v. Opinion Corp.*,
  842 F. Supp. 2d 450 (E.D.N.Y. 2011)....................................................................31

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................26, 29

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017)..........................................................................15, 25

*Balistreri v. Pacifica Police Dep't.*,
  901 F.2d 696 (9th Cir. 1988).................................................................................26

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
  223 F.3d 1082 (9th Cir. 2000)............................................................................5, 14

*Beatport LLC v. SoundCloud Ltd.*,
  2020 WL 3977602 (C.D. Cal. July 13, 2020) .......................................................30

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 555 (2007) ....................................................................... 26

*In re Boon Global Ltd.*,
   923 F.3d 643 (9th Cir. 2019) ....................................................... 4, 6, 8

*Bravado Int'l Grp. v. Straughn*,
   2010 WL 11515508 (C.D. Cal. Jan. 25, 2010) ........................................ 14

*Bristol-Myers Squibb Co. v. Superior Ct.*,
   137 S. Ct. 1773 (2017) ......................................................................... 18

*Broidy Capital Management, LLC v. Qatar*,
   2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) .............................. 11, 13

*Brown v. General Steel Domestic Sales, LLC*,
   2008 WL 2128057 (C.D. Cal. May 19, 2008) ............................... 11, 12

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) .............................................................................. 7

*C&M Cafe v. Kinetic Farm, Inc.*,
   2016 WL 6822071, (N.D. Cal. Nov. 18, 2016) ................................... 35

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................*passim*

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
   125 F. Supp. 2d 1194 (C.D. Cal. 2000) ........................................ 20, 22

*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*,
   812 F. Supp. 1041 (N.D. Cal. 1993) .................................................... 23

*Cisco Systems, Inc. v. Link US LLC*,
   2019 WL 6682838 (N.D. Cal. Dec. 6, 2019) ................................... 9,10

*Clerkin v. MyLife.com, Inc.*,
   2011 WL 3607496 (N.D. Cal. Aug. 16, 2011) .................................... 12

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) ............................................................... 27

*Cockburn v. SWS Indus., Inc.*,
   2011 WL 2295145 (W.D. Wash. June 8, 2011) ................................. 14

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2254127

*Cook v. Champion Shipping AS*,
    732 F. Supp. 2d 1029 (E.D. Cal. 2010), *aff'd*, 463 F. App'x 626
    (9th Cir. 2011) ...................................................................................... 23

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ..................................................*passim*

*Daoud v. Societe Generale De Banque Au Liban, S.A.L.*,
    2021 WL 3579359 (C.D. Ca. July 6, 2021) ....................................... 15

*Davis v. Metro Prods., Inc.*,
    885 F.2d 515 (9th Cir. 1989) ............................................... 7, 8, 11

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
    2015 WL 12731929 (C.D. Cal. May 8, 2015)...................................... 29

*Doe v. American Red Cross*,
    112 F.3d 1048 (9th Cir. 1997) ..................................................... 16, 17

*Doe v. MindGeek, USA, Inc.*,
    2021 WL 4167054 (C.D. Cal. Sept. 3, 2021) ....................................... 35

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002).............................................. 19, 21, 23

*Dynascan Tech., Inc. v. Plasmedia Prods., Inc.*,
    2010 WL 11520614 (C.D. Cal. Jan. 21, 2010)...................................... 8

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ........................................................... 27

*Fagbohungbe v. Caltrans*,
    2014 WL 644008 (N.D. Cal. Feb. 19, 2014)...................................... 27

*Flint CPS Inks N. Am. LLC v. Trend Offset Printing Servs., Inc.*,
    2020 WL 7862127 (C.D. Cal. Dec. 14, 2020) .................................... 28

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ......................................................................... 6

*Franco American Corp. v. Kim Seng Co.*,
    2011 WL 13220312 (C.D. Cal. June 24, 2011)................................... 29

*Gerritsen v. Warner Brothers Ent., Inc.*,
 112 F. Supp. 3d 1011 (C.D. Cal. 2015)...................................................... 8

*Getz v. Boeing Co.*,
 654 F.3d 852 (9th Cir. 2011) .................................................................. 10

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
 284 F.3d 1114 (9th Cir. 2002) ................................................................ 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ................................................................................. 6

*Hall v. Fiat Chrysler America US LLC*,
 2021 WL 3560231 (C.D. Cal. July 20, 2021) ......................................... 33

*Harmoni Int'l Spice, Inc. v. Bai*,
 2016 WL 6542731 (C.D. Cal. May 24, 2016)........................................... 33

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
 328 F.3d 1122 (9th Cir. 2003) .................................................................. 4

*Holland America Line, Inc. v. Wartsila N. Am., Inc.*,
 485 F.3d 450 (9th Cir. 2007)................................................. 14, 17, 18

*Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*,
 880 F. Supp. 743 (C.D. Cal. 1995)........................................................ 13

*Johnson v. UBS AG*,
 2021 WL 2935953 (9th Cir. July 13, 2021) ........................................... 18

*Just Film, Inc. v. Merchant Servs., Inc.*,
 2010 WL 4923146 (N.D. Cal. Nov. 29, 2010).................................... 10

*In re JUUL Labs, Inc. Mktg., Sales Practices and Prod. Liab. Litig.*,
 497 F. Supp. 3d 552 (N.D. Cal. 2020)........................................... 28, 34

*Karabu Corp. v. Gitner*,
 16 F. Supp. 2d 319 (S.D.N.Y. 1998)............................................. 10, 13

*Keeton v. Hustler*,
 465 U.S. 770 (1984) ................................................................................. 9

*Kieu Hoang v. Lang Van, Inc.*,
 2019 WL 6654130 (C.D. Cal. July 1, 2019) ........................................... 29

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ........................................................ 31

*Littleton v. Experian Info. Sols., Inc.*,
   2015 WL 4638308 (N.D. Cal. Aug. 4, 2015) ...................................... 30

*Marsh v. Zaazoom Sols., LLC*,
   2012 WL 952226 (N.D. Cal. Mar. 20, 2012) ................................... 9, 10

*Microsoft Corp. v. Gulfcoast Software Solutions LLC*,
   2016 WL 4543231 (W.D. Wash. Jan. 4, 2016) ............................... 12, 13

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ...................................... 28

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
   757 F.2d 1058 (9th Cir. 1985) ................................................... *passim*

*Panavision International, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) .......................................................... 24

*Pebble Beach Co. v. Caddy*,
   453 F. 3d 1151 (9th Cir. 2006) ......................................................... 14

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ...................................................... 7, 15

*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
   2016 WL 7177532 (C.D. Cal. May 26, 2016) .................................... 18

*Reflex Media, Inc. v. Luxy Ltd.*,
   2021 WL 945248 (C.D. Cal. Feb. 5, 2021) ........................................ 23

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ......................................................................... 34

*Rocke v. Canadian Auto. Sport Club*,
   660 F.2d 395 (9th Cir. 1981) ............................................................ 24

*Salesbrain, Inc. v. Angelvision Technologies*,
   2013 WL 1191236 (N.D. Cal. Mar. 21, 2013) ............................... 12, 13

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ............................................................ 34

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004).................................................................... 5

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986)................................................................... 4

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015)................................................ 26

*Securities and Exchange Comm'n v. Ferrante*,
   2019 WL 8230852 (C.D. Cal. Jan. 23, 2019)................................. 29, 30

*Securities and Exchange Comm'n v. Jammin Java Corp.*,
   2016 WL 6595133 (C.D. Cal. July 18, 2016) ........................... 8, 9, 10

*Sinatra v. National Enquirer*,
   854 F.2d 1191 (9th Cir. 1988)............................................................. 21

*Sollberger v. Wachovia Secs., LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010)...................................... 30

*Sullivan v. Oracle Corp.*,
   51 Cal.4th 1191 (2011) ...................................................................... 34

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)................................................................. 5

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
   2019 WL 8806093 (C.D. Cal. Sept. 20, 2019).............................*passim*

*The Explorastore, LLC v. Cal. Sci. Ctr. Found.*,
   2005 WL 1502281 (D. Or. June 23, 2005)........................................ 14

*Toyz, Inc. v. Wireless Toyz, Inc.*,
   2010 WL 334475 (N.D. Cal. Jan. 25, 2010) ...................................... 13

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994) ............................................................................ 33

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013), *aff'd, sub nom. Oneok, Inc. v. Learjet,
   Inc.*, 575 U.S. 373 (2015) ................................................................. 16

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................... 15

*Wargaming.net Ltd. v. Blitzteam LLC*,
  2021 WL 3619956 (C.D. Cal. Jan. 20, 2021)................................*passim*

*Warner v. Tinder, Inc.*,
  105 F. Supp. 3d 1083 (C.D. Cal. 2015) ............................... 34

*Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*,
  2008 WL 450095 (M.D. Fla. Feb. 15, 2008) ...................... 31

*Wolf Designs, Inc. v. DHR Co.*,
  322 F. Supp. 2d 1065 (C.D. Cal. 2004)................................. 8

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ............................................................ 20

**Statutes & Other Authorities**

18 U.S.C. § 1591(a)(1) ............................................................. 31, 32

18 U.S.C. § 1591(a)(2) ............................................................. 32

18 U.S.C. § 1591(e)(4) ............................................................. 32

18 U.S.C. § 1594(c) ................................................................. 31

18 U.S.C. § 1962 ..................................................................... 33

18 U.S.C. § 1962(c) ................................................................. 34

18 U.S.C. § 1965........................................................................ 5

18 U.S.C. §§ 2252 and 2252A................................................. 32

47 U.S.C. § 230 ....................................................................... 30

47 U.S.C. § 230(c) ................................................................... 31

Cal. Civ. Proc. Code § 410.10 .................................................. 5

Cal. Bus. & Profs. Code §§ 17200 and 17500 ...................... 30

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................................. 5

Fed. R. Civ. P. 4(k)(2) ................................................................................................ 25

Fed. R. Civ. P. 8 ................................................................................................... 26, 30

Fed. R. Civ. P. 9(b) ................................................................................................. i, 30

Fed. R. Civ. P. 12(b)(2) .......................................................................................... i, 13

Fed. R. Civ. P. 12(b)(6) .......................................................................................... i, 26

L.R. 7-3 ......................................................................................................................... i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2254127

# INTRODUCTION[1]

Defendant Bernd Bergmair is a resident of China.  He does not live or work in or have any connection to California or the United States.  Despite its extreme length, the Complaint in this case does not describe a single concrete act by Bergmair in furtherance of the alleged tortious conduct giving rise to the case, much less any directed at California.  Nor does the Complaint specify any business conducted by Bergmair on behalf of the MindGeek companies in California or aimed at California in any way.  The Complaint does not allege that Bergmair had any contact with – or even knew of the existence of – any of the plaintiffs, much less knew in what states or countries they resided.  Nonetheless, Plaintiffs assert that he can be required to defend this case in a forum that is halfway around the world from his home country and with which he has no connection.  The sum total of the Complaint's substantive allegations against Bergmair is that he exercised "oversight and control" of MindGeek's "strategic operations" and that he approved its "major" decisions.  Such conclusory statements, which the Complaint does not link in any way to the tortious conduct alleged or to California, are insufficient to satisfy the due process requirements for personal jurisdiction over Bergmair in this forum, and require dismissal of the Complaint.

Plaintiffs' claims fail on the merits as well.  The Complaint includes 644 paragraphs of allegations – virtually all of which are attributed collectively to "MindGeek" or "the MindGeek Defendants" without any differentiation between defendants – which it attempts to link to Bergmair by alleging in two sentences that he had "oversight and control" of MindGeek.  Such vague, generalized allegations do not even begin to establish the elements of the eighteen separate claims the Complaint asserts against Bergmair.  Nor is there any basis to impute liability for

---

[1] Pursuant to the stipulation of the parties and the Court's Order, the page limit for this brief was expanded to 50 pages.  (ECF No. 30.)

MindGeek's conduct to Bergmair, who at most is alleged to be a corporate shareholder with no management position.  Finally, even if any claim had been adequately pleaded – and not a single one is – all of the claims against Bergmair are barred by Section 230 of the Communications Decency Act.  As a result, the Court should dismiss the Complaint for failure to state a claim against Bergmair.

## RELEVANT BACKGROUND

The Complaint was filed by one named plaintiff and 33 plaintiffs proceeding under Jane Doe pseudonyms.  Only five plaintiffs resided in California at the times relevant to the allegations.  (Compl. ¶¶ 11, 12, 15, 26, 30.)  Fourteen of the 34 plaintiffs resided outside the United States at all times relevant to the Complaint, including in Thailand, Colombia, and other foreign countries.  (Compl. ¶¶ 13, 17, 19–25, 34–36, 38–39.)

The defendants in the case include seven MindGeek entities, four of which are alleged to be foreign corporations with their principal places of business outside the United States.  (Compl. ¶¶ 45, 46, 48, 51.)  Of the three domestic MindGeek entities, only two have offices in California.  (Compl. ¶¶ 47, 50.)  The Complaint provides no description of the business carried on by the two companies with California offices.  The Complaint also names as defendants three individual officers of MindGeek, each of whom is alleged to be a resident of Canada (Compl. ¶¶ 53, 54, 55); Visa, Inc., which is alleged to have provided credit card processing services to MindGeek (Compl. ¶ 58); and 20 Doe defendants who are alleged to have been investors in MindGeek or a predecessor company (Compl. ¶¶ 56, 57).

The plaintiffs generally allege that sexually explicit images of them were posted by third parties, without their consent, on websites operated by one or more of the MindGeek corporate defendants.  (*See e.g.*, Compl. ¶¶ 348, 353, 356, 388, 401.)  Setting aside the Complaint's breathless tone and sensational and irrelevant accusations, the gist of the plaintiffs' allegations is that MindGeek did not employ effective monitoring of content uploaded by third-party users in violation of its

1    published terms of service, and did not have an effective process for removing the

2    offending content.  (Compl. ¶ 7.)

3        Although the Complaint runs 177 pages and asserts 18 different claims, it

4    barely mentions Bergmair.  Of its 644 paragraphs, only a handful even mention

5    Bergmair.  One identifies him as a resident of Hong Kong, China.  (Compl. ¶ 52.)

6    Most of the remaining references relate to his alleged ownership interest in

7    MindGeek entities, inconsistently alleging on the one hand that he is the "majority

8    owner" of MindGeek (*id.*), and on the other, that he instead "represent[s]" and acts

9    "on behalf of" a "group of uber wealthy individuals, families and groups" who are

10   the "actual owners" of MindGeek and who exercise "control of the company."

11   (Compl. ¶¶ 3, 56, 109, 114, 117–118, 119, 121.)

12       The Complaint does not allege a single specific action taken by Bergmair

13   related to the alleged claims.  Instead, it vaguely alleges in two conclusory

14   paragraphs that Bergmair "exercised daily direct oversight and control over the

15   strategic operations of MindGeek, closely managing financial operations, business

16   plans and . . . technology" (Compl. ¶ 120) and that he approved "major MindGeek

17   decisions" (Compl. ¶ 121).  The Complaint does not allege that Bergmair held any

18   management position with MindGeek and instead – inconsistent with the

19   allegations in paragraphs 120 and 121 – asserts that other individuals at MindGeek

20   "had daily operational control" of the company, and "controlled all the elements of

21   MindGeek's business."  (Compl. ¶¶ 53, 100, 109.)  In addition, the Complaint

22   alleges that the "actual owners" of MindGeek were the Doe defendants, who acted

23   as the "over-bosses" of the company and who had ultimate "control of the

24   company."  (Compl. ¶¶ 3, 109, 118.)  These conflicting allegations alone are

25   sufficient to defeat any claim against Bergmair.

26       The Complaint fails to identify a single concrete act taken by Bergmair, such

27   as an email, letter, telephone call, meeting, transaction, or other affirmative act, in

28   furtherance of the alleged wrongful conduct.  Nor is there any description of how

his alleged actions (unspecified oversight of MindGeek's strategic operations and

approval of its major decisions) related to any wrongful conduct. Despite asserting

18 separate claims, each with its own distinct elements, the Complaint does not

even attempt to specify any conduct on the part of Bergmair that supposedly

satisfies those elements. There is no allegation that Bergmair ever took any action

related to MindGeek's business in California or intentionally directed his conduct at

the state in any manner. Indeed, there is not a single factual allegation that

Bergmair himself had any contact at all with California or took any action

specifically directed at the state. There is similarly no allegation that Bergmair was

ever aware of the individual plaintiffs, what states or countries they were from, or

the fact that their images were posted on MindGeek sites.

## ARGUMENT[2]

### I.  PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION OVER BERGMAIR

The allegations in the Complaint are plainly insufficient to establish personal

jurisdiction in this district over Bergmair, a resident of China with no connection to

California.

Plaintiffs bear the burden to establish that personal jurisdiction over each

defendant is proper. *AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir.

2020); *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d

1122, 1128–29 (9th Cir. 2003). To carry this burden, plaintiffs must "come

forward with facts, by affidavit or otherwise, supporting personal jurisdiction."

*Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). Although

plaintiffs are required only to establish a prima facie showing of jurisdictional facts,

"the standard is not toothless." *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir.

---

[2] In addition to the arguments set forth in this Memorandum, Bergmair joins in the motions and arguments of all the defendant MindGeek corporate entities (hereinafter "MindGeek Defendants"), and those of individual defendants Feras Antoon, David Tassillo and Corey Urman (hereinafter "Individual Defendants").

2019).  "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

Where, as here, there is no applicable federal statute governing personal jurisdiction,[3] the district court must apply the law of the state in which it sits.  *See* Fed. R. Civ. P. 4(k)(1)(A); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  California's long-arm statute allows courts to exercise jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution.  *See* Cal. Civ. Proc. Code § 410.10.  As a result, jurisdiction may be exercised over a nonresident defendant in California only if the party has "minimum contacts" with California, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).)  No such contacts exist here.

## A.    Bergmair Is Not Subject to General Jurisdiction

General jurisdiction exists only where a party's contacts with the forum state are "substantial or continuous and systematic" so as to "approximate physical

---

[3] Plaintiffs allege that they have personal jurisdiction over the defendants pursuant to 18 U.S.C. § 1965 because they assert civil RICO claims.  (Compl. ¶ 63.)  Although that statute authorizes service of process in any judicial district of the United States, this provision is inapplicable to Bergmair since he lives outside the United States and was not served in any United States judicial district.  Instead, he was sent a request by Plaintiffs to waive service outside the United States and then waived service from outside the United States.  (*See* Stipulation to Set Time to Respond to Initial Complaint and Expand Page Limits at 2, (ECF No. 27) (individual defendants, including Bergmair, "are foreign citizens residing outside the United States," and Plaintiffs' "waiver request was sent to them outside any judicial district of the United States").)  In any event, even if the nationwide service provisions of § 1965 apply to Bergmair, and the relevant analysis is whether he had sufficient contacts with the United States, instead of California, the Plaintiffs' allegations are still insufficient for jurisdiction, since the Complaint alleges no contacts by Bergmair with either California or the United States as a whole.  *See infra* at Section I(C).

presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Here, the Complaint sets forth that Bergmair is a resident of Hong Kong, China (Compl. ¶ 52) and alleges no connections to California, much less the type of "continuous and systematic" contacts necessary to establish general jurisdiction over him. As a result, Bergmair is not subject to general jurisdiction in this District.

### B.   Bergmair Is Not Subject to Specific Jurisdiction

The Ninth Circuit employs a three-part test to determine if due process permits the exercise of specific jurisdiction over a nonresident defendant, allowing it only where (1) the defendant has purposefully directed his activities toward the forum;[4] (2) the claim arises out of or results from the defendant's forum-related activities; *and* (3) the exercise of jurisdiction is reasonable. *AMA Multimedia*, 970 F.3d at 1208. Unless all three requirements are satisfied, jurisdiction in the forum would deprive the defendant of due process of law. *Id.* Moreover, as the Supreme Court has mandated, "each party's contacts with the forum state must be assessed individually." *In re Boon Global*, 923 F.3d at 651 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Applying this standard, plaintiffs are unable to establish any of the three required elements for specific jurisdiction over Bergmair.

### 1.   The Complaint Does Not Establish Any Purposeful Direction of Bergmair's Activities Toward California

To determine if a defendant purposefully directed his activities at the forum state, the Ninth Circuit applies the three-part *Calder v. Jones* effects test, which

---

[4] Since Plaintiffs' claims sound in tort, the "purposeful direction" analysis, rather than the "purposeful availment" analysis, is to be applied. *AMA Multimedia*, 970 F.3d at 1208.

requires that the defendant (1) committed an intentional act (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *AMA Multimedia*, 970 F.3d at 1208–09; *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Plaintiffs' Complaint fails to establish any of these elements with respect to Bergmair.

### a.    The Complaint Does Not Allege Any Intentional Act by Bergmair

Under *Calder*, plaintiffs must first identify "an intentional act" taken by the defendant that gives rise to the action. *Picot*, 780 F.3d at 1214. Here, despite its length, the Complaint does not specify a single concrete action taken by Bergmair in furtherance of the alleged schemes. Instead, it contains 177 pages of accusations of tortious conduct by MindGeek, along with two sentences alleging generally that Bergmair "exercised daily direct oversight and control over the [company's] strategic operations" and that he approved "major MindGeek decisions." (Compl. ¶¶ 120–121.) But personal jurisdiction is proper only where "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985) (emphasis in original) (citation omitted). Conduct by an out-of-state individual defendant on behalf of a corporation is sufficient to confer personal jurisdiction over that individual only where he was the "primary participant" in the alleged wrongdoing and "acted purposefully" in directing those activities. *Calder*, 465 U.S. at 790; *Burger King*, 471 U.S. at 480 n.22.

Similarly, the Ninth Circuit has recognized that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Symettrica Entertainment, Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093, at *3 (C.D. Cal. Sept. 20, 2019) (Carney, J.). Courts in the Ninth Circuit have found personal jurisdiction over an

individual based on conduct undertaken in their corporate capacity only where (1) the corporation is the agent or alter ego of the individual defendant; or (2) the individual exercised control and directly participated in the conduct forming the basis for the plaintiff's claims.  *See Dynascan Tech., Inc. v. Plasmedia Productions, Inc.*, 2010 WL 11520614, at *2 (C.D. Cal. Jan. 21, 2010) (Carney, J.); *Securities and Exchange Comm'n v. Jammin Java Corp.*, 2016 WL 6595133, at *9 (C.D. Cal. July 18, 2016); *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004).

Since plaintiffs do not seriously contend that the MindGeek entities are the alter ego of Bergmair,[5] the focus of the analysis is on the second prong of this test. To satisfy this element, a plaintiff's allegations must demonstrate that the individual defendant was the "guiding spirit" or "central figure" in the challenged corporate conduct.  *In re Boon Global*, 923 F.3d at 651; *Davis*, 885 F.2d at 523 n.10 (citation omitted); *Symettrica Entertainment*, 2019 WL 8806093, at *3.  Here, the Complaint's generalized allegations are insufficient to establish that Bergmair exercised control and directly participated in the challenged conduct.

Courts in the Ninth Circuit have repeatedly ruled that conclusory allegations that an individual defendant owned and controlled a corporation engaged in the conduct giving rise to the litigation are insufficient to meet this standard.  For example, in *Securities and Exchange Commission v. Jammin Java Corp.*, 2016 WL

---

[5] The Complaint includes a single paragraph (¶ 60) containing boilerplate allegations reciting, without factual detail, the elements of the alter ego doctrine under California law and asserting that every MindGeek corporation and every individual MindGeek defendant are alter egos of one another.  The paragraph does not mention a single specific MindGeek entity, a single specific transaction, or a single example demonstrating the supposed lack of corporate separateness.  The paragraph also does not attempt to explain how the MindGeek entities could simultaneously be the alter egos of Bergmair while also being the alter egos of the other individual defendants.  "Conclusory allegations" of alter ego status are insufficient to confer personal jurisdiction.  Rather, a plaintiff must allege specific facts supporting the elements of alter ego liability.  *See In re Boon Global*, 923 F.3d at 654; *Symettrica Entertainment*, 2019 WL 8806093 at *4; *Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015).

6595133, the Securities and Exchange Commission brought an enforcement action
against three individuals and the offshore shell companies that they "owned" and
"controlled," alleging participation in a pump-and-dump scheme. *Id*. at *1, *11.
The court dismissed the complaint, noting that, while an individual who owned and
controlled a corporation could be subject to jurisdiction based on his "personal
participation in the actions giving rise" to the claim, "ownership of . . . an entity
subject to the Court's jurisdiction is not alone sufficient for the Court to exercise
jurisdiction over the owner." *Id*. at *9. The court ruled that the complaint "fail[ed]
to allege in any more than conclusory language any personal conduct, if any, by
these defendants in connection with" the scheme, and that the "conclusory
allegation that the owner['s] actions are coexistent with that of the owned . . . entity
is insufficient." *Id*. at *9, *11. *See also Keeton v. Hustler*, 465 U.S. 770, 781 n.13
(1984) ("It does not of course follow from the fact that jurisdiction may be asserted
over [the corporation] that jurisdiction may also be asserted over [its owner].").

Similarly, in *Cisco Systems, Inc. v. Link US LLC*, 2019 WL 6682838 (N.D.
Cal. Dec. 6, 2019), Cisco sued a company and its president for allegedly selling
counterfeit Cisco goods. The only allegations against the executive were that he
was "intimately involved in operating" the company and "actively involved in [its]
day-to-day management and operations." *Id*. at *1. The court found that the
allegations were insufficient, ruling that "[i]f general allegations of managerial
responsibilities . . . were sufficient to establish specific jurisdiction in this case,
specific jurisdiction would extend to a company's officers in virtually every case
where it extended to the company itself. That result is inconsistent with Ninth
Circuit precedent." *Id*. at *4. In *Marsh v. Zaazoom Solutions, LLC*, 2012 WL
952226 (N.D. Cal. Mar. 20, 2012), the individual defendants were the "principals"
who ran "the day-to-day operations" of the companies that allegedly defrauded the
plaintiff and made "all significant strategic decisions for them." *Id*. at *3. The
court found no personal jurisdiction, since the complaint was "devoid of any

allegations of a specific act" in furtherance of the scheme by the individual defendants. *Id*. at *3, *9. In *Just Film, Inc. v. Merchant Services, Inc.*, 2010 WL 4923146 (N.D. Cal. Nov. 29, 2010), the court found no personal jurisdiction over individual corporate executives whom plaintiff alleged had "directed and controlled" companies involved in the fraud, since the complaint did not provide specific facts to "explain *how* these Defendants controlled or directly participated" in the scheme. *Id*. at *6 (emphasis added).[6]

The sum total of the allegations against Bergmair here – that he purportedly is the majority owner of MindGeek, "exercise[s] daily direct oversight and control over [its] strategic operations," and approves "major [company] decisions" (Compl. ¶¶ 52, 120–121) – are exactly the type of allegations that the courts in *Jammin Java*, *Cisco*, *Marsh*, and *Just Film* found insufficient. Such allegations plainly do not meet the requirement that a plaintiff allege specific actions by the defendant himself showing that he was the "guiding spirit" or "central figure" in the challenged conduct. *See Symettrica Entertainment*, 2019 WL 8806093, at *3; *see also Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (plaintiff must allege "specific facts, transactions, or conduct" that give rise to personal jurisdiction in forum).

Indeed, the allegations against Bergmair here are several levels removed from what is required. This Court and other district courts in the Ninth Circuit have repeatedly ruled that even allegations that an individual defendant directed or supervised the conduct giving rise to the plaintiff's claim – beyond simply

---

[6] *See also Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (then-District Judge Sotomayor ruling that "a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a primary actor" in the conduct underlying the claim; jurisdiction cannot be shown based "merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation") (citation and quotation marks omitted).

1    oversight or control of the company itself, which is what is alleged against

2    Bergmair – are insufficient to establish personal jurisdiction.  Instead, concrete

3    factual allegations establishing that the individual defendant's direct participation

4    made him the "guiding spirit" in the alleged wrongdoing are required. The

5    requirement to make such a showing before imputing a corporation's conduct to an

6    individual defendant is particularly significant in Bergmair's case, since he is

7    alleged at most to be merely a shareholder in the MindGeek companies and entitled

8    to the protection of the corporate form.  *See Davis*, 885 F.2d at 520 ("[T]here must

9    be a reason for the court to disregard the corporate form.").  For example, in

10   *Symettrica Entertainment*, this Court dismissed the case against two individual

11   corporate directors finding no personal jurisdiction where the plaintiff alleged only

12   that they had "specifically authorized, directed, or participated in the wrongful

13   conduct alleged."  2019 WL 8806093, at *3.  The Court ruled that these

14   "conclusory allegations" were insufficient to demonstrate that the director

15   defendants were the "guiding spirit" or "central figures" behind the alleged

16   wrongdoing.  *Id.*

17        Similarly, in *Broidy Capital Management, LLC v. Qatar*, 2018 WL 9943551

18   (C.D. Cal. Aug. 22, 2018), the plaintiff brought suit against the nation of Qatar,

19   claiming that it hacked plaintiff's computers.  Plaintiff also named as defendants a

20   consulting firm and one of its principals, but alleged only that they had "personally

21   supervised" the operation and had "coordinate[d] and implement[ed] the hack." *Id.*

22   at *1–2.  The court found that such "conclusory allegations" were insufficient to

23   demonstrate personal jurisdiction over the firm and its principal.  *Id.* at *5.  In

24   *Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057 (C.D. Cal. May

25   19, 2008), the plaintiff brought an action against a corporation and its owner

26   asserting various claims arising out of the company's allegedly misleading

27   advertising.  The complaint alleged that the individual defendant was a "principal"

28   of the company who "formulates, controls, directs, supervises, perpetuates,

manages and has knowledge of and acquiesces in the practices and policies" of the company" but did not allege facts showing that he was "personally responsible for" or had "authorized" the allegedly misleading advertisements. *Id*. at *9, *12. The court granted a motion to dismiss, finding that, "[a]t most, these allegations indicate that [the defendant] plays a broad managerial role within the company; they in no way suggest that he was the 'guiding spirit' behind [the company's] advertising." *Id*. at *11. In *Microsoft Corp. v. Gulfcoast Software Solutions LLC*, 2016 WL 4543231 (W.D. Wash. Jan. 4, 2016), Microsoft sued a company and one of its officers for copyright infringement. The complaint alleged that the officer "managed, supervised and controlled every aspect of his company's actions in relation to this case," and that the transactions at issue were "performed under his authority and supervision." *Id*. at *5. The Court found that these allegations were insufficient to establish personal jurisdiction since the plaintiff's allegations showed, at most, that the officer defendant played "a broad managerial role" in the company, but did not establish that he "actively participated" in the alleged infringement or was the "guiding spirit" behind it. *Id*. In *Salesbrain, Inc. v. Angelvision Technologies*, 2013 WL 1191236 (N.D. Cal. Mar. 21, 2013), the plaintiff alleged that a company and its principal shareholder infringed its copyrights. The plaintiff asserted that the infringement was "performed by, at the direction of, or under the supervision of" the individual shareholder, who had "a 'financial interest'" in the infringing activity. *Id*. at *2. The court ruled that these allegations were simply "too vague and conclusory" to establish that he had the degree of participation and control necessary to confer personal jurisdiction. The court noted that, by contrast, cases in which courts have found that jurisdiction existed over individual corporate employees involved allegations of "specific acts in furtherance of the specific wrongful conduct at issue." *Id*. at *8–9.[7]

---

[7] *See also Clerkin v. MyLife.com, Inc.*, 2011 WL 3607496, at *2–4 (N.D. Cal. Aug. 16, 2011) (allegations that corporate executive "aided and abetted" misconduct,

Thus, allegations even more specific than those against Bergmair here have been found to be insufficient to satisfy the "guiding spirit" requirement.  The allegations against Bergmair are even less substantial than the allegations of oversight and control of a company's actions found insufficient in *Symettrica Entertainment* (defendant "specifically authorized, directed or participated in the wrongful conduct alleged"), *Broidy* (defendant "personally supervised," "coordinate[d] and implement[ed]" wrongdoing), *Brown* (defendant "formulates, controls, directs, supervises" challenged practices), *Microsoft* (defendant "managed, supervised and controlled every aspect of his company's actions in relation to this case," and wrongdoing was "performed under his authority and supervision"), and *Salesbrain* (wrongdoing "performed by, at the direction of, or under the supervision of" defendant).  Plaintiffs are thus unable to satisfy the first element of the *Calder* effects test for specific jurisdiction, and for that reason alone, the Court should dismiss the Complaint.

**b.    The Complaint Does Not Allege Any Act by Bergmair Expressly Aimed at This Forum**

Plaintiffs also fail to satisfy the second prong of the *Calder* effects test.  To

---

"personally performed acts" giving rise to plaintiff's claims and "worked with other defendants to perpetrate" the scheme were insufficient because they "do not afford any insight into how [defendant] controlled or directly participated in the alleged fraudulent scheme"); *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750–51 (C.D. Cal. 1995) (even though corporate executive was "responsible for most of the administrative functions" at his company, including "sole responsibility" for allegedly infringing advertising, allegations failed to show "sufficient personal conduct" to establish that he was "guiding force"); *Toyz, Inc. v. Wireless Toyz, Inc.*, 2010 WL 334475, at *7 (N.D. Cal. Jan. 25, 2010) (dismissing complaint that did not "identify the particular actions or omissions for which any particular Individual Defendant allegedly is responsible," and ruling that "generalized allegations" of "involvement" in the alleged wrongdoing were insufficient to permit jurisdiction). *See also Karabu Corp.*, 16 F. Supp. 2d at 324–25 (then-District Judge Sotomayor dismissing complaint against individual corporate executives where allegation was that they "directed" company employees to engage in wrongdoing, and ruling that "[c]ourts have also routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand").

satisfy this element, a plaintiff must establish not merely that their injury in the forum was foreseeable to the defendant, but that the defendant expressly aimed his conduct at the forum. *Pebble Beach Co. v. Caddy*, 453 F. 3d 1151, 1156–60 (9th Cir. 2006); *Bancroft & Masters*, 223 F.3d at 1087–88. But the Complaint does not even attempt to link the vague alleged conduct attributed to Bergmair to California. The Complaint is devoid of any facts suggesting that the particular actions it alleges in conclusory fashion against Bergmair – oversight of MindGeek's strategic operations and approval of its major decisions – were expressly aimed at California.

Moreover, to satisfy the express aiming requirement, a plaintiff must demonstrate that the defendant "engaged in wrongful conduct *targeted at a plaintiff whom the defendant knows to be a resident of the forum state*." *Bancroft & Masters*, 223 F.3d at 1087 (emphasis added). *See also Holland America Line, Inc. v. Wartsila N. America, Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (*Bancroft* and *Calder* require the defendant "to individually and wrongfully target the plaintiff"). Here, there is no allegation that Bergmair knew of any of the plaintiffs, much less knew whether any of them were residents of California. This lack of "individualized targeting" is fatal to the claim of personal jurisdiction. *See Bancroft & Masters*, 223 F.3d at 1088 (the required showing of "individualized targeting" is missing where "there was no showing that the defendants even knew of the existence of the plaintiffs" (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997)).[8]

---

[8] *See also A'lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, 2012 WL 12921013, at *6 (C.D. Cal. Aug. 6, 2012) (no express aiming where defendant claimed that it had "never heard of" plaintiff prior to suit and plaintiff offered no factual allegations to contradict this); *Bravado Int'l Group v. Straughn*, 2010 WL 11515508, at *6 (C.D. Cal. Jan. 25, 2010) (effects test not satisfied where no allegations that "defendants even knew [plaintiff] existed]"); *Cockburn v. SWS Industries, Inc.*, 2011 WL 2295145, at *4 (W.D. Wash. June 8, 2011) (no showing of express aiming where "none of the . . . defendants knew about plaintiff's existence"); *The Explorastore, LLC v. California Science Ctr. Foundation*, 2005 WL 1502281, at *3 (D. Or. June 23, 2005) (effects test not satisfied where plaintiff

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2254127

Indeed, according to the Complaint, 29 of the 34 plaintiffs were not residents of California at the time of their alleged injuries, and 14 of them were not even residents of the United States. (Compl. ¶¶ 11–44.) These facts virtually compel the conclusion that the alleged conduct was not "expressly aimed" at California. To the contrary, they plainly indicate that the effects felt in California were the product of random geographical dispersion rather than any "individualized targeting" by MindGeek or Bergmair. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070–71 (9th Cir. 2017) (where defendant emailed newsletter to over 300 recipients, ten of whom were in California, "[i]t can hardly be said that California was the focal point both of the newsletter and of the harm suffered" (internal punctuation omitted)). In any event, jurisdiction is proper only where it is "based on [a defendant's] own affiliation with the State, not based on the 'random, fortuitous or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King*, 471 U.S. at 475). The jurisdictional analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Daoud v. Societe Generale De Banque Au Liban, S.A.L.*, 2021 WL 3579359, at *3 (C.D. Ca. July 6, 2021) (Carney, J.) (quoting *Walden*, 571 U.S. at 285). As a result, even the alleged injuries suffered by the five California plaintiffs do not create a sufficient connection between California and Bergmair. The fact that a plaintiff suffered an injury caused by a defendant's tortious conduct while residing in the forum state is not sufficient. *Picot*, 780 F.3d at 1214 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . Rather, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.") (citation and internal

---

"presented no evidence that [defendant] knew of its existence before the commencement of this action").

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

quotation marks omitted) (quoting *Walden*, 571 U.S. at 290).

The Complaint fails to establish that Bergmair expressly aimed his conduct at California, and thus, the Court should dismiss the Complaint for this reason alone.

### c.  Bergmair Did Not Cause Harm that He Knew Would Be Suffered in This Forum

Finally, plaintiffs similarly fail to satisfy the third prong of the *Calder* effects test, which requires that the defendant cause harm that he knew would be suffered in the forum state.  *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993) (third prong of *Calder* test requires that defendant's conduct caused harm "which is suffered – and which the defendant knows is likely to be suffered – in the forum state").  As described above, the Complaint does not allege that Bergmair knew of any of the 34 plaintiffs, much less that five were residents of California.  As a result, he could not have known about the likelihood that any would suffer harm in California.  As to the 29 of the 34 plaintiffs who did not reside in California at the relevant time, they did not suffer any harm at all in California. Even with respect to the five California resident plaintiffs, the Complaint fails to plead any facts sufficient to establish that Bergmair had any knowledge that they would suffer harm in this State.

### 2.  Bergmair Did Not Engage in Forum-Related Activities, Much Less Any Related to Plaintiffs' Claims

Plaintiffs are also unable to establish the second element of specific jurisdiction, namely, that their claims arise from Bergmair's alleged forum-related activities.  To satisfy this element, plaintiffs must show a "direct nexus" between the defendant's forum-related contacts and their cause of action.  *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 742 (9th Cir. 2013).  Contacts that are "too attenuated" from the claims at issue do not satisfy this test. *Doe v. American Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

Plaintiffs' sparse allegations against Bergmair fail to establish the required

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2254127

1    "direct nexus."  The only acts alleged in the Complaint by Bergmair are his

2    purported oversight of MindGeek's strategic operations and approval of its major

3    decisions, but the Complaint does not even attempt to link these actions with the

4    wrongdoing alleged (the failure to detect and remove videos of plaintiffs) or the

5    plaintiffs' injuries.  The Complaint is silent regarding how these generalized

6    allegations of corporate control are connected to the alleged conduct giving rise to

7    plaintiffs' claims, much less how they caused the injuries.

8         This failure to draw a "direct nexus" between Bergmair's actions and the

9    claims at issue is fatal.  For example, in *AMA Multimedia*, the Ninth Circuit

10   affirmed the district court's finding that it did not have personal jurisdiction over a

11   foreign individual who owned adult websites.  970 F.3d at 1204–05.  The court

12   ruled that plaintiff had failed to show that its claims arose out of defendant's forum-

13   related conduct in part because "nothing more than . . . bare allegations support any

14   personal involvement by [defendant] in uploading, encouraging the uploading, or

15   intentionally failing to remove the infringing content." *Id.* at 1212 n.9.  Here, the

16   nexus between Bergmair's actions and the claims at issue is even weaker than in

17   *AMA Multimedia*.  There were at least "bare allegations" in that case that the

18   website owner was involved in encouraging the uploading of, and the failure to

19   remove, the objectionable content.  No comparable allegations exist here.  Bergmair

20   is alleged only to have oversight of a company that engaged in conduct giving rise

21   to the plaintiffs' claims.  The Complaint is devoid of any allegations specifying any

22   actions he took in furtherance of the alleged scheme and does not establish the

23   required "direct nexus" between his conduct and the claims at issue.[9]

24        Moreover, the claims of the vast majority of plaintiffs also fail this element

25   of the jurisdictional analysis because their injuries were not sustained in California.

26   _____

27        [9] *See Doe v. American Red Cross*, 112 F.3d at 1051 (affirming dismissal where connection between plaintiff's claim and defendant's forum contacts was "far too attenuated").

28

1    Specific jurisdiction is "tethered to a relationship between the forum and the claim."

2    *Holland America*, 485 F. 3d at 460; *see also Calder*, 465 U.S. at 788 ("In judging

3    minimum contacts, a court properly focuses on the relationship among the

4    defendant, the forum, and the litigation." (citation omitted)).  Here, 29 of the 34

5    plaintiffs (Does # 2–3, 5–14, 16–18, 20–33) did not reside in California at the time

6    the allegedly tortious conduct occurred, and therefore their injuries were sustained

7    in other states and countries.  As a result, their claims did not arise from any

8    California-related actions of Bergmair or any other foreign defendant.  *See Johnson*

9    *v. UBS AG*, 2021 WL 2935953, at *2 (9th Cir. July 13, 2021) (affirming dismissal

10   where plaintiff's claim did not arise out of defendant corporation's activities in

11   California); *Holland America*, 485 F.3d at 460–61 (plaintiff's injury was sustained

12   outside forum state so it was unable to satisfy nexus requirement between its claim

13   and defendant's forum-related conduct); *A.B. v. Hilton Worldwide Holdings, Inc.*,

14   484 F. Supp. 3d 921, 933–34 (D. Or. 2020) (dismissing trafficking victim's suit

15   against hotel chains because she was trafficked at defendants' hotels in Washington

16   and thus their Oregon-focused conduct could not have been the cause of the harm

17   sustained in Washington); *Prime Healthcare Centinela, LLC v. Kimberly-Clark*

18   *Corp.*, 2016 WL 7177532, at *1–2 (C.D. Cal. May 26, 2016) (dismissing claims of

19   plaintiffs whose injuries did not arise out of defendant's California activities since

20   "personal jurisdiction must be established *for each defendant* and *by each*

21   *plaintiff*") (emphasis in original) (citation omitted).  *See also Bristol-Myers Squibb*

22   *Co. v. Superior Ct.*, 137 S. Ct. 1773, 1781–82 (2017) (holding that, in lawsuit

23   alleging injuries from pharmaceutical company's drug, California court did not

24   have specific jurisdiction over claims by out-of-state plaintiffs because they did not

25   suffer any harm in state, and explaining that "[w]hat is needed – and what is

26   missing here – is a connection between the forum and the specific claims at issue").

27

28

### 3.     The Exercise of Jurisdiction over Bergmair Would Not Be Reasonable

Finally, even if the plaintiffs were able to satisfy the first two elements of the specific jurisdiction test, the exercise of jurisdiction over Bergmair would not be reasonable.  In the Ninth Circuit, courts determine whether such jurisdiction would comport with "fair play and substantial justice," and is therefore reasonable, by considering seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985).  Because Bergmair is a foreign citizen, plaintiffs "must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen."  *Core-Vent Corp.*, 11 F.3d at 1490.

### a.     Bergmair Did Not Purposefully Inject Himself into California's Affairs

The first factor considers "the extent of the purposeful interjection into the forum state."  *Paccar*, 757 F.2d at 1065.  Courts must be mindful that "[t]here may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114–15 (9th Cir. 2002).  "[T]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise."  *Core-Vent*, 11 F.3d at 1488 (citation omitted).  Here, Bergmair's alleged actions in overseeing the strategic operations and approving the major decisions of MindGeek, a Luxembourg company operating websites with a worldwide focus, do not demonstrate any purposeful interjection into California at all.  But even if they

19

1    were somehow deemed sufficient to meet the purposeful direction prong, they show

2    only a minimal degree of "purposeful interjection" into California.  The complaint

3    does not allege that any of his conduct took place in California, or that California

4    was a focus of his actions any more than any other state or country.  *Id.* (finding

5    that where foreign defendants' conduct was sufficient for jurisdiction but still

6    "attenuated" from United States, first reasonableness factor weighed in defendants'

7    favor); *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194,

8    1205 (C.D. Cal. 2000) (even assuming defendant's contacts were sufficient to meet

9    purposeful availment test, they were "so attenuated" that purposeful interjection

10   factor "weighs heavily in [defendant's] favor").  This factor weighs against

11   jurisdiction.

### b.    Bergmair Would Be Substantially Burdened by Litigating in This Forum

12
13          The second factor considers "the burden on the defendant of defending in the

14   forum," *Paccar*, 757 F. 2d at 1065, which is "always a primary concern." *World-*

15   *Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  The Supreme

16   Court has recognized that "[t]he unique burdens placed upon one who must defend

17   oneself in a foreign legal system should have significant weight in assessing the

18   reasonableness of stretching the long arm of personal jurisdiction over national

19   borders." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987).  *See*

20   *also Wargaming.net Ltd. v. Blitzteam LLC*, 2021 WL 3619956, at *5 (C.D. Cal. Jan.

21   20, 2021) (Carney, J.) ("The Supreme Court has recognized that defending a

22   lawsuit in a foreign country can impose a substantial burden on a nonresident

23   defendant.").  Here, Bergmair, who resides in Hong Kong, China, would "bear a

24   heavy burden." *Paccar*, 757 F.2d at 1065.  Even with modern transportation and

25   communication methods, litigating in a foreign country located literally on the other

26   side of the world would present major difficulties. *Id.*  This factor weighs heavily

27   in Bergmair's favor even if the burden "would not be insurmountable [since] it

28

would nonetheless be substantial." *Callaway Golf*, 125 F. Supp. 2d at 1205
(quoting *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981)).
As an individual, with no ongoing connection to or relationship with the United
States, the burden on Bergmair would be "particularly great." *Core-Vent*, 11 F.3d
at 1488.  This factor also weighs against the reasonableness of asserting jurisdiction
over Bergmair.

**c.      Litigating in California Would Create a Conflict
of Sovereignty**

The third factor considers "the extent of conflict with the sovereignty of
defendant's state." *Paccar*, 757 F.2d at 1065.  Litigation against a foreign
defendant "creates a higher jurisdictional barrier than litigation against a citizen
from a sister state because important sovereignty concerns exist." *Sinatra v.
National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Where the defendant is a
foreign resident, "the sovereignty barrier is high and undermines the reasonableness
of personal jurisdiction." *Wargaming.net Ltd.*, 2021 WL 3619956, at *5 (quoting
*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993)).
In weighing this factor, the Ninth Circuit has "focused on the presence or absence
of connections to the United States in general, not just to the forum state.
Sovereignty concerns weigh more heavily when the defendants have no United
States-based relationships." *Core-Vent*, 11 F.3d at 1489.  Here, Bergmair has no
United States relationships, which weighs heavily in his favor. *Id*. (fact that
individual defendants had no United States-based relationships "weigh[s] more
heavily" in their favor).  Similarly, Hong Kong has an interest in resolving disputes
involving its residents. *Paccar*, 757 F.2d at 1065 (district court's assertion of
jurisdiction over foreign company "interfered with" sovereignty of defendant's
country and its right to resolve disputes involving its residents).  As a result, this
factor weighs heavily against jurisdiction.

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### d.    California Does Not Have a Substantial Interest in Adjudicating This Case

The fourth factor considers "the forum state's interest in adjudicating the dispute." *Paccar*, 757 F.2d at 1065.  Of course, California has a "strong interest" in providing a forum for its residents who are tortiously injured.  *Dole Food Co.*, 303 F. 3d at 1115–16.  However, that interest is substantially diluted here because 29 of the 34 plaintiffs have no connection to California, and 14 are foreign residents with no connection to the United States, much less California, and whose injuries were sustained abroad.  California has no compelling interest in being the forum for a dispute between primarily non-California and non-United States residents on the one hand, and a series of mostly foreign corporations and individual Canadian and Hong Kong residents on the other.  *Paccar*, 757 F. 2d at 1065 (factor weighed against jurisdiction where forum "has no special interest" in dispute); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002) (California's interest in dispute involving foreign parties was "slight"); *Wargaming.net Ltd.*, 2021 WL 3619956, at *5 (factor weighs against exercise of jurisdiction where neither party was a citizen of the forum, and forum citizens were not harmed by defendant's alleged conduct); *Callaway Golf*, 125 F. Supp. 2d at 1207 (factor weighs against jurisdiction where forum has "little interest" in dispute).  This factor weighs against jurisdiction.

### e.    California Is Not the Most Efficient Forum

The fifth factor considers which forum is "the most efficient judicial resolution of the controversy." *Paccar*, 757 F.2d at 1065.  In evaluating this factor, the Ninth Circuit has "looked primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489.  Here, the vast bulk of the evidence and witnesses – mostly MindGeek employees and documents – are located outside California and even outside the United States.  In addition, most of the plaintiffs themselves are from outside California and many outside the United

States, and the primary evidence in their possession regarding their claims is presumably located in their home states and countries. As a result, there is no reason to think that a court in California is a more efficient forum for resolving the controversy than one in another country. *See Wargaming.net Ltd.*, 2021 WL 3619956, at *5 (finding that factor weighed against Court's jurisdiction where "most, if not all, of the evidence and witnesses in this case are located overseas"). This factor weighs against jurisdiction.

> **f.** **This Forum Is Not Essential to Plaintiff's Convenient and Effective Relief**

The sixth factor considers "the importance of the forum to plaintiff's interest in convenient and effective relief." *Paccar*, 757 F.2d at 1065. However, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Core-Vent*, 11 F.3d at 1490; *Dole Food Co.*, 303 F.3d at 1116 ("[I]n this circuit, the plaintiff's convenience is not of paramount importance"). "A mere preference on the part of the plaintiff for its home forum does not affect the balancing." *Core-Vent*, 11 F.3d at 1490. In any event, it's not even clear that this Court is a "convenient" forum for the plaintiffs as a whole. Only five of the plaintiffs are from California. For many of the plaintiffs (14 out of 34) litigating in this Court involves litigating in a foreign country. There is no reason to believe that the plaintiffs as a group would suffer any greater inconvenience if they were required to bring their claims in another country. Given the small number of plaintiffs from California, this factor weighs against jurisdiction.

> **g.** **An Appropriate Alternative Forum Exists**

The seventh factor considers "the existence of an alternative forum." *Paccar*, 757 F.2d at 1065. "Plaintiff bears the burden of proving the unavailability of an alternative forum." *Wargaming.net Ltd.*, 2021 WL 3619956, at *5 (original alterations omitted) (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 609 (9th Cir. 2018)). Here, a potential alternative forum exists to

litigate claims against Bergmair, namely Hong Kong, where he resides, which has a fair and effective legal system.[10]  The Ninth Circuit has found that this factor may weigh against the plaintiff's chosen jurisdiction even where "it may be more costly and inconvenient" for a plaintiff to litigate in the alternative forum. *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998).  But as noted above, for the many plaintiffs here who are not even United States residents, bringing their claims in Hong Kong instead of California would simply mean litigating in one foreign country rather than another.  As a result, this factor weighs against jurisdiction.

### h.    Balancing of the Reasonableness Factors

In sum, all seven factors weigh against the assertion of jurisdiction.  *See Wargaming.net Ltd.*, 2021 WL 3619956, at *6 (declining to exercise personal jurisdiction over foreign defendant where five of the seven reasonableness factors weighed against exercise of jurisdiction).  *See also Rocke*, 660 F.2d at 400 ("Due process requires that we weigh more heavily the expectations of and burdens upon the defendants than we weigh the hardships upon the plaintiff").  Indeed, the Ninth Circuit last year affirmed the lack of jurisdiction over a defendant similarly situated to Bergmair.  In *AMA Multimedia*, an individual Polish citizen (Wanat), who was the owner of adult websites was sued by a company who alleged that third party users had posted content on the websites that infringed its copyrights.  970 F.3d at 1204–05.  In applying the reasonableness factors, the Ninth Circuit ruled that exercising jurisdiction over Wanat would be unreasonable "given his limited

---

[10] Courts have recognized Hong Kong as an adequate alternative forum, both in the context of determining the "reasonableness" of exercising specific jurisdiction (as here) and in connection with motions for dismissal on *forum non conveniens* grounds.  *See Reflex Media, Inc. v. Luxy Ltd.*, 2021 WL 945248 at *5 (C.D. Cal. Feb. 5, 2021); *Cook v. Champion Shipping AS*, 732 F. Supp. 2d 1029, 1033–34 (E.D. Cal. 2010), *aff'd*, 463 F. App'x 626, 627 (9th Cir. 2011); *Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1043–44 (N.D. Cal. 1993).

contacts with the forum, the burden on Wanat if he must defend in the forum, potential conflicts with Poland's sovereignty and its potential as an alternative forum." *Id.* at 1212 n.9. The court found that these factors outweighed the plaintiff's interest in adjudicating the dispute in the United States, its chosen forum. *Id.* The case for jurisdiction over Wanat in *AMA Multimedia* was even stronger than that for Bergmair here. In that case, Wanat's degree of alleged interjection into United States affairs (registering internet domain names and obtaining other technical services from United States-based companies), *id.* at 1209, was greater than that of Bergmair, who is alleged only to have had general oversight of MindGeek operations, without any specific connection to California alleged. In addition, the sole plaintiff in *AMA Multimedia* was an American company, which presumably had an interest in litigating in the United States, where here, by contrast, the vast majority of the plaintiffs have no connection to California (and a significant number have no connection to the United States). As a result, asserting personal jurisdiction over Bergmair here would be unreasonable and would not comport with "fair play and substantial justice." The Court should dismiss plaintiffs' claims against him.

### C.    Fed. R. Civ. P. 4(k)(2) Does Not Provide a Basis for Jurisdiction Over Bergmair

Federal Rule of Civil Procedure 4(k)(2), which may authorize jurisdiction over a defendant when there is no individual state that has jurisdiction, also provides no basis for jurisdiction over Bergmair. Under Rule 4(k)(2), a plaintiff must still demonstrate that a defendant has sufficient minimum contacts with the forum to satisfy due process. *Id.* (authorizing jurisdiction only when it is "consistent with the United States Constitution and laws"). This due process analysis is identical to the traditional personal jurisdiction analysis except that a defendant's contacts with the United States as a whole, rather than an individual forum state, are considered. *See Axiom Foods*, 874 F.3d at 1072 (quoting *Holland*

25

*America*, 485 F.3d at 462).  However, just as the Complaint fails to allege any contacts by Bergmair with California, it similarly fails to allege any contacts by Bergmair with any other state in the United States.  As a result, the minimum contacts analysis is the same as described above, and there is no basis for specific jurisdiction over Bergmair.

## II.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST BERGMAIR

### A.  The Complaint Fails to State a Claim on Any Count

#### 1.  The Complaint's Vague, Generalized Allegations and Shotgun Pleading Fail to State a Claim

Even if plaintiffs could establish personal jurisdiction, the Court should still dismiss the Complaint on the merits because its generalized allegations against Bergmair are insufficient to state any viable claim for relief.

The Court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  Although a Rule 12(b)(6) motion requires the Court to "accept as true all of the allegations contained in a complaint," that standard "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1233 (C.D. Cal. 2015) (internal quotation marks and alterations omitted) (quoting *Twombly*, 550 U.S. at 555).  Federal Rule of Civil Procedure 8 requires that a plaintiff provide a "statement of circumstances, occurrences, and events in support of the claim presented." *Twombly*, 550 U.S. at

26

555 n.3 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1202 (3d ed. 2004)).  Indeed, the Supreme Court has emphasized that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*.  In making such a factual showing, a complaint must "differentiate between each of the defendants and clearly state the factual basis for each cause of action as to each specific defendant." *Fagbohungbe v. Caltrans*, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014).

Here, the Complaint plainly fails to provide sufficient facts to state any claim against Bergmair.  Although the Complaint asserts 18 separate claims against Bergmair, each with separate elements, it literally does not identify a single concrete act taken by him giving rise to these claims.  Instead, the Complaint sets forth 177 pages of allegations of conduct attributed to "MindGeek" or "the MindGeek Defendants," with the only link to Bergmair being the vague allegations that he exercised "oversight and control" of the company and approved its "major" decisions.  (Compl. ¶¶ 120–121.)  These bare allegations do not come close to satisfying the specific elements of sex trafficking, civil RICO, and the multiple other causes of action asserted by plaintiffs.

Moreover, such conclusory allegations fall far short of justifying plaintiffs' attempt to hold an individual – who is alleged to be at most a mere shareholder of MindGeek – responsible for the conduct of corporate entities.  A corporate shareholder or employee is not liable for torts of the company unless he "authorizes or directs or . . . participates" in the wrongful conduct. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016); *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999).  Just as in the personal jurisdiction context, cases finding "personal liability on the part of

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1    corporate officers have typically involved instances where the defendant was the

2    'guiding spirit' behind the wrongful conduct, or the 'central figure' in the

3    challenged corporate activity." *Facebook*, 844 F.3d at 1069 (quoting *Davis*, 885

4    F.2d at 523 n.10).

5         District courts in the Ninth Circuit have repeatedly ruled that generalized

6    allegations of corporate oversight and control are not sufficient to meet the guiding

7    spirit standard. For example, in *In re JUUL Labs, Inc. Marketing, Sales Practices*

8    *and Products Liability Litigation*, 497 F. Supp. 3d 552 (N.D. Cal. 2020), plaintiffs

9    sued e-cigarette maker JUUL and several of its board directors alleging that JUUL

10   targeted its advertising towards youths. The directors were alleged to have had

11   "control" of the Board, and "final say" over the company's marketing materials. *Id*.

12   at 635. The court dismissed the claims against the directors, ruling that such

13   allegations "[did] not establish the requisite individual 'direction or control' to pin

14   liability" for JUUL's marketing on the individual directors. *Id*. The court held that

15   "[t]hese generalized allegations are insufficient to connect each [defendant] to the

16   direction or control of any unfair *acts* or youth-targeted marketing *acts*," since there

17   were "no factual allegations of specific *conduct*" committed by or at the direction of

18   the directors. *Id*. at 636 (emphasis in original). The court concluded that "vague

19   allegations about exercising 'final say' over marketing decisions do not suffice

20   without any specificity concerning what those decisions were and how they were

21   connected to" plaintiff's claims. *Id*. at 654. Similarly, in *O'Connor v. Uber*

22   *Technologies, Inc.*, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013), plaintiff drivers

23   raised various employment law claims against Uber and two of its top executives.

24   Plaintiffs alleged that the executives were liable based on their corporate positions

25   and the fact that they were "responsible for" the challenged employment policies

26   and pay practices. *Id*. at *18. The court dismissed the claims against the executives,

27   ruling that the plaintiffs had "failed to allege enough specific allegations showing

28   that [they] personally directed or participated in the tortious conduct." *Id*. (citation

1   and internal quotation marks omitted).  The court held that "identifying their roles

2   in the corporation and alleging that they were 'responsible' for pay practices and

3   employment policies does not make it plausible that they were personally liable"

4   for the company's actions.  *Id*.  *See Flint CPS Inks N. America LLC v. Trend Offset*

5   *Printing Services, Inc.*, 2020 WL 7862127, at *5 (C.D. Cal. Dec. 14, 2020)

6   (allegations that corporate officers "had control over," had "direct participation in,"

7   and "authorized and approved" company's wrongful conduct failed to state a

8   claim); *Kieu Hoang v. Lang Van, Inc.*, 2019 WL 6654130, at *4–5 (C.D. Cal. July

9   1, 2019) (allegations that corporate officers were "personally involved" in,

10  "materially contributed to" and "directly supervised" challenged conduct failed to

11  state a claim); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL

12  12731929, at *9 (C.D. Cal. May 8, 2015) (allegation that owner of corporation was

13  "active, moving, conscious force behind" wrongful activity failed to state a claim);

14  *Franco American Corp. v. Kim Seng Co.*, 2011 WL 13220312, at *2–3 (C.D. Cal.

15  June 24, 2011) (complaint failed to state a claim where it alleged only that owner of

16  corporation was "personally responsible for the actions" of the company and made

17  "all of the important decisions" related to the company's dealing with plaintiff);

18  *Apple Hill Growers v. El Dorado Orchards*, 2019 WL 5827365, at *3 (N.D. Cal.

19  Nov. 7, 2019) (allegation that corporate officers "control[ed] and direct[ed]" the

20  company's wrongful conduct failed to state a claim).  *See also Iqbal*, 556 U.S. at

21  678–81 (allegations that Attorney General was "architect" of discriminatory

22  government policy and FBI Director was "instrumental" in executing it and they

23  "knew of [and] condoned" policy were "not entitled to the assumption of truth"

24  since they amount to "nothing more than a 'formulaic recitation of the elements'"

25  of a claim).

26      The Complaint also fails to state a claim against Bergmair because of its

27  pervasive allegations of conduct attributed to "MindGeek" or the "MindGeek

28  Defendants" without differentiating between the defendants.  (*See, e.g.*, Compl. ¶¶

8, 9, 60, 61, 66–67, 493–496, 498, 502, 575, 642.)  Such "shotgun pleading" is impermissible, since it fails to provide each defendant with fair notice of the claims against him.  *See Securities and Exchange Comm'n v. Ferrante*, 2019 WL 8230852, at *4 (C.D. Cal. Jan. 23, 2019) (Carney, J.) ("shotgun pleading" subject to dismissal where plaintiff "fails to differentiate between the defendants such that it is impossible to determine which defendant is accused of what"); *Beatport LLC v. SoundCloud Ltd.*, 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020) ("[I]t is a basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants."); *Sollberger v. Wachovia Securities, LLC*, 2010 WL 2674456, at *4–5 (C.D. Cal. June 30, 2010) (dismissal appropriate where plaintiff "use[d] the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong"); *Littleton v. Experian Info. Solutions, Inc.*, 2015 WL 4638308, at *2 (N.D. Cal. Aug. 4, 2015) (ruling that "everyone did everything allegation[s]" provide insufficient notice under Rule 8).  Without more specific facts – which are absent here – the "everyone did everything" allegations of conduct by plaintiffs against MindGeek or the MindGeek Defendants are insufficient to state a claim against Bergmair.[11]

## 2.    Section 230 Bars All of Plaintiffs' Claims Against Bergmair

As set forth in the motions to dismiss of the MindGeek Defendants and the other Individual Defendants, all of plaintiffs' claims against Bergmair are barred by

---

[11] The Complaint's vague allegations against Bergmair and its "shotgun" allegations against all defendants fail to satisfy Rule 8's pleading standard, so they also plainly fail to satisfy the heightened pleading requirements of Rule 9(b).  Counts XVII and XVIII (alleging Unjust Enrichment and violations of California Business and Professions Code §§ 17200 and 17500) sound in fraud, so Rule 9(b) requires that they set forth "the 'who, what, when, where and how'" of the alleged misconduct.  *Ferrante*, 2019 WL 8230852, at *3 (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  The Complaint's vague allegations do not come close to meeting this standard.

1  Section 230 of the Communications Decency Act, 47 U.S.C. § 230.  Bergmair joins

2  in the motions and arguments of the MindGeek Defendants and the Individual

3  Defendants for dismissal of all counts based on the applicability of Section 230.

4     The allegations in the Complaint that Bergmair exercised "oversight and

5  control" of MindGeek and approved its "major" decisions are too vague and

6  general to state a claim, but accepting them as true, the immunity afforded by

7  Section 230 extends to Bergmair as a "provider . . . of an interactive computer

8  service."  47 U.S.C. § 230(c).  *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357–

9  58 (D.C. Cir. 2014) (defendant Mark Zuckerberg qualified for Section 230

10  protection as "provider" of Facebook's ICS, as demonstrated by fact that plaintiff's

11  suit sought "to hold him accountable for his role in making that service available");

12  *Ascentive LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 474 (E.D.N.Y. 2011)

13  (individual defendants who were officers of defendant company and operated

14  website qualified as "providers" of an ICS under Section 230); *Whitney Info.*

15  *Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, at *8 (M.D. Fla. Feb.

16  15, 2008) (individual who was owner and operator of defendant website was

17  "provider" of an ICS under Section 230 and therefore entitled to immunity).  Since

18  Section 230's immunity applies to Bergmair, it bars all of plaintiffs' claims against

19  him.

20     **B.    The Complaint Fails to Properly Allege a Valid Claim on Specific Counts**

21

22     In addition to its overarching lack of specificity with respect to Bergmair,

23  each of the individual counts of the Complaint is insufficiently pleaded in other

24  respects.  Bergmair joins in the motions and arguments of the MindGeek

25  Defendants and the Individual Defendants with respect to the deficiencies in the

26  individual claims in the Complaint.  In addition to the pleading deficiencies

27  identified there, and the deficiencies discussed above, plaintiffs' claims against

28  Bergmair are insufficient for the reasons set forth below.

1

2

### 1. The Trafficking Claims (Counts I, II, and IV) Fail to State a Claim

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Complaint alleges claims against Bergmair for trafficking under 18 U.S.C. §§ 1591(a)(1) and (a)(2) and for conspiracy to violate those statutes under § 1594(c). In addition to the deficiencies described in the other defendants' motions and those discussed above, the Complaint contains literally no allegations whatsoever that Bergmair undertook any of the prohibited conduct, nor that he possessed the requisite knowledge.

For example, among other elements, § 1591(a)(1) requires that a defendant take one of the actions enumerated in that sub-section ("recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits") with respect to a person, "knowing" that the person is a minor or will be the victim of coercion. Here, the Complaint alleges only that Bergmair had "oversight" of MindGeek. It does not allege that he ever had contact with any of the plaintiffs, much less that he engaged in any of the specific actions set forth in § 1591(a)(1). Similarly, there are no allegations that he "knew" anything at all about any of the plaintiffs. In fact, the Complaint does not allege any facts to suggest that Bergmair even knew of the existence of the plaintiffs.

Similarly, among other elements, § 1591(a)(2) requires that a defendant "knowingly" benefit from "participation in a venture" which has engaged in a violation of sub-section (a)(1). "[P]articipation in a venture" means "knowingly assisting, supporting, or facilitating" a trafficking violation. § 1591(e)(4). The Complaint's allegation that Bergmair had "oversight" of MindGeek does not even begin to establish that he "knowingly assist[ed]" a trafficking venture, much less that he "knowingly" benefitted from such participation. As noted above, there are no allegations that Bergmair ever even knew of the plaintiffs or had any contact with them, so he could not have knowingly participated in a trafficking venture involving them.

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2254127

1    As a result, all three trafficking claims are woefully deficient and the Court

2    should dismiss them.

3              **2.      The Child Pornography Claims (Counts V and VI)
                        Fail to State a Claim**
4

5    The Complaint alleges claims for violation of 18 U.S.C. §§ 2252 and 2252A,

6    which prohibit the knowing distribution of child pornography.  In addition to the

7    deficiencies described in the other defendants' motions, and those discussed above,

8    the Complaint fails to properly allege these claims against Bergmair.

9              For an individual to violate these statutes, he must know both the explicit

10   nature of the material and that the performers were under age.  *United States v. X-*

11   *Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  Again, there are no allegations that

12   Bergmair even knew of plaintiffs' existence, much less had knowledge of the

13   specific videos featuring them, or whether plaintiffs were under age when the

14   videos were made.  As a result, these counts plainly fail to state a viable claim and

15   the Court should dismiss them.

16             **3.      The RICO Claims (Counts VII, VIII, and IX) Fail to
                        State a Claim**

17   The Complaint alleges claims for violation of several subsections of 18

18   U.S.C. § 1962.  Courts "strive to flush out frivolous RICO allegations at an early

19   stage of the litigation."  *See Hall v. Fiat Chrysler America US LLC*, 2021 WL

20   3560231, at *3 (C.D. Cal. July 20, 2021) (Carney, J.) (quoting *Wagh v. Metris*

21   *Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003)).  In addition to the deficiencies

22   described in the other defendants' motions, and those discussed above, the

23   Complaint fails to properly allege a RICO claim against Bergmair for two

24   additional reasons.

25             First, where a plaintiff alleges RICO claims against multiple defendants, the

26   "plaintiff must allege at least two predicate acts by *each* defendant."  *Harmoni Int'l*

27   *Spice, Inc. v. Bai*, 2016 WL 6542731, at *25 (C.D. Cal. May 24, 2016) (emphasis in

28   original) (quoting *In re Wellpoint, Inc.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal.

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

2011)).  Here, the conclusory allegations that Bergmair had "oversight" of

MindGeek and approved its "major" decisions (Compl. ¶¶ 120–121) and that he

"directed and controlled" unnamed entities that were part of the alleged enterprise

(Compl. ¶¶ 537, 571) do not connect him to any racketeering activity or set forth

any specific predicate acts, much less two distinct predicate acts.

Second, these vague allegations are insufficient to establish Bergmair's

participation in the conduct of the alleged enterprise's affairs under Section

1962(c).  To properly plead this element, the plaintiffs must allege specific facts

showing that a defendant played "*some* part in directing the enterprise's affairs."

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original).

Conclusory allegations of direction or control are insufficient to satisfy this

element.  *See In re JUUL Labs*, 497 F. Supp. 3d at 605–06, 608 (concluding that

"[w]ithout identification of specific acts taken by" the officer and director

defendants, the "very general" allegation that they had "final say" over allegedly

unlawful marketing practices was insufficient to show participation in RICO

enterprise); *C&M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *5 (N.D. Cal.

Nov. 18, 2016) (allegation that defendants were "co-founders, members, and

managers" of RICO enterprise was insufficient to establish their participation in

enterprise).

Since plaintiffs have failed to adequately plead a substantive RICO violation,

their RICO conspiracy claim fails as well.  *See Sanford v. MemberWorks, Inc.*, 625

F.3d 550, 559 (9th Cir. 2010).  As a result, all the RICO counts are plainly deficient

and the Court should dismiss them.

### 4.    The California State Law Claims (Counts XIV, XV, XVII, XVIII, and XIX) Fail to State a Claim

Plaintiffs assert a series of claims alleging privacy violations under California

common law and statutes.  In addition to the deficiencies described in the other

defendants' motions, and those discussed above, the Complaint fails to properly

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

allege several of these claims against Bergmair for additional reasons.  First, the alleged violations of California statutes (Counts XIV, XV, and XVIII) cannot serve as the basis for claims by the 29 non-California plaintiffs, since those statutes do not have extraterritorial effect outside the State.  *See Warner v. Tinder, Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015); *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011).  Second, two of the alleged common law claims, for Unjust Enrichment and Civil Conspiracy (Counts XVII and XIX), are not recognized as independent causes of action under California law.  *See Doe v. MindGeek, USA, Inc.*, 2021 WL 4167054, at *11 (C.D. Cal. Sept. 3, 2021) (Carney, J.) (unjust enrichment not a cause of action); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994) (civil conspiracy not an independent cause of action).

## CONCLUSION

For these reasons, the Court should dismiss plaintiffs' Complaint with prejudice for both lack of personal jurisdiction and failure to state a claim for relief.

Dated: October 20, 2021   RONALD G. WHITE
              DAN MARMALEFSKY
              ANDRE FONTANA
              MORRISON & FOERSTER LLP


             By:   */s/ Ronald G. White*
               Ronald G. White

             Attorneys for Defendant
             BERND BERGMAIR