DREW TULUMELLO (#196484)
drew.tulumello@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorney for Visa Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

SERENA FLEITES AND JANE DOE NOS. 1 through 33,

Plaintiffs,

v.

MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; RK HOLDINGS USA INC.; MG GLOBAL ENTERTAINMENT INC.; TRAFFICJUNKY INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA, INC.; COLBECK CAPITAL DOES 1-10; BERGMAIR DOES 1-10,

Defendants.

Case No. 2:21-CV-04920-CJC-ADS

Judicial Officer: Cormac J. Carney
Courtroom: 9B

**DEFENDANT VISA INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Date: February 14, 2022
Time: 1:30 p.m.

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiffs Have Not Alleged An Injury Traceable To Visa ........ 1

A. Plaintiffs lack Article III standing. ........ 1

B. Plaintiffs lack statutory standing under the TVPRA and RICO. ........ 4

II. The Complaint Does Not State A TVPRA Beneficiary Claim Against Visa ........ 6

A. The Complaint does not plausibly allege that Visa participated in a sex trafficking venture ........ 6

B. The Complaint lacks any specific allegations that Visa had knowledge of Plaintiffs' sex trafficking ........ 10

C. The Complaint does not plausibly allege that Visa benefitted from an illegal enterprise. ........ 11

III. The Complaint Does Not State A Valid RICO Claim ........ 12

A. Visa did not participate in a RICO enterprise in violation of Section 1962(c). ........ 12

B. Plaintiffs do not defend their claim for investment of RICO proceeds under Section 1962(a). ........ 13

IV. The Complaint Fails To State A Conspiracy Claim Under RICO (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California Common Law ........ 14

V. The Complaint Does Not Allege Viable State Law Claims Against Visa ........ 15

A. The Complaint does not allege facts to support unfair business practice or false advertising claims against Visa. ........ 15

B. Plaintiffs do not defend the unjust enrichment claim. ........ 16

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Marriott Int'l, Inc.*,
455 F. Supp. 3d 171 (E.D. Pa. 2020) .......... 6, 7

*Am. Nat'l Ins. Co. v. Akopyan*,
No. 2:20-cv-08502, 2021 WL 2792313 (C.D. Cal. Apr. 8, 2021) .......... 17

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019) .......... 5

*Arizona Att'ys for Crim. Just. v. Ducey*,
No. 17-cv-01422, 2018 WL 1570244 (D. Ariz. Mar. 30, 2018) .......... 3

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
No. 20-cv-00656, 2020 WL 4368214 (N.D. Cal. July 30, 2020) .......... 6, 7, 11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 2

*Daniel v. Nat'l Park Serv.*,
891 F.3d 762 (9th Cir. 2018) .......... 2, 3

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) .......... 7, 15

*Doe I v. Apple Inc.*
No. 1:19-cv-03737, 2021 WL 5774224 (D.D.C. Nov. 2, 2021) .......... 3, 4

*Doe v. Mindgeek USA Inc.*,
No. 21-cv-00338, 2021 WL 4167054 (C.D. Cal. Sept. 3, 2021) .......... 7, 17

*Doe v. Twitter, Inc.*,
No. 21-cv-00485, 2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) .......... 7

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018) .......... 2

*Emery v. Visa Internat. Serv. Ass'n*,
95 Cal. App. 4th 952, 116 Cal. Rptr. 2d 25 (2002) ........................................ 16

*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) ........................................ 5

*Hemi Grp., LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010)........................................ 5

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992)........................................ 5

*Ketayi v. Health Enrollment Group,*
516 F. Supp. 3d 1092 (S.D. Cal. 2021) ........................................ 13, 15

*Lundstrom v. Choice Hotels Int'l, Inc.*,
No. 21-cv-00619, 2021 WL 5579117 (D. Colo. Nov. 30, 2021) .......................... 7, 10

*M.A. v. Wyndham Hotels Resorts, Inc.*,
425 F. Supp. 3d 959 (S.D. Ohio 2019)........................................ 7

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) ........................................ 3

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ........................................ 8, 9

*Ratha v. Phatthana Seafood Co.*,
No. 16-cv-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ................................. 8

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020)........................................ 10

*S. Pac. Co. v. Darnell-Taenzer Lumber Co.*,
245 U.S. 531 (1918)........................................ 5

*Schneider v. California Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ........................................ 16

*Shorter v. Los Angeles Unified Sch. Dist.*,
No. 13-cv-3198, 2013 WL 6331204 (C.D. Cal. Dec. 4, 2013) .......................... 14, 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................ 1, 2

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00562, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ............................ 14

*Tapia v. Wells Fargo Bank, N.A.*, No. 15-cv-03922, 2015 WL 4650066 (C.D. Cal. Aug. 4, 2015)............................... 17

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)......................................................................... 1, 2

*Turaani v. Wray*, 988 F.3d 313 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 225 (2021) ............................. 4

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................... 3

*Williams v. Price*, No. 11-cv-327, 2012 WL 3778344 (S.D. Cal. Aug. 30, 2012) ................................ 16

**Statutes**

18 U.S.C. § 1594(c) ........................................................................... 14

18 U.S.C. § 1962(a) ........................................................................... 13

18 U.S.C. § 1962(c) ........................................................................... 12

18 U.S.C. § 1962(d) ........................................................................... 14

California Business and Professions Code § 17200 ................................................ 15, 16

California Business and Professions Code § 17500 ................................................ 15, 16

## INTRODUCTION

Plaintiffs' 85-page omnibus opposition ("Opposition") is primarily dedicated to challenging the arguments of the MindGeek Defendants, disputing the MindGeek Defendants' jurisdictional objections, and opposing severance of the MindGeek individuals. The few pages and arguments made in passing to oppose Visa's motion to dismiss are conclusory and unpersuasive and do not substantively grapple with the deep legal defects in Plaintiffs' theory of liability. The Opposition confirms that Visa has no place in this lawsuit and should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs Have Not Alleged An Injury Traceable To Visa

#### A. Plaintiffs lack Article III standing.

Visa's motion to dismiss established that Plaintiffs cannot identify an injury traceable *to Visa* sufficient to confer Article III standing. Mot. 7–11. Plaintiffs' Opposition conflates the existence of a cause of action with Article III standing. Plaintiffs say that "in enacting FOSTA, Congress implicitly conferred Article III standing for all claims against those who participate in or benefit from a trafficking venture." Opp. 77 (citation omitted). That is not correct. That Congress created a private right of action does not mean that a plaintiff alleging a violation of the statute automatically has Article III standing. Far from it: as the Supreme Court has repeatedly held, even where Congress has created a cause of action, the key question for standing is whether the Plaintiffs suffered injury-in-fact *traceable* to defendant's conduct. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016) (holding that Article III standing is not automatically satisfied "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Congress's creation of a … cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm."). And while *Spokeo* and *TransUnion* focused on the "injury-in-fact" requirement of standing, the Ninth Circuit has held that a plaintiff asserting a statutory claim must satisfy the

*traceability* requirement of Article III as well. *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("[T]o satisfy Article III's standing requirement, a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury *causally connected* to the violation." (citing *Spokeo*, 578 U.S. at 340–41) (emphasis added)); *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (allegations of Fair Credit Reporting Act violation were insufficient to satisfy traceability because complaint did not "allege a link" between the statutory violation and the subsequent harm alleged).

The TVPRA[1] undoubtedly creates a cause of action where none existed before, but Visa's point is that Plaintiffs' injuries are not in any way *traceable to or caused by Visa*. Plaintiffs have the burden to plead standing. *TransUnion*, 141 S. Ct. at 2207. But they have not come close to doing so, because multiple intervening steps of causation break any link between Visa's payment processing and Plaintiffs' injuries.

Plaintiffs acknowledge, as they must, that Article III standing can exist for claims against far-removed third parties like Visa *only* if the third party had a "determinative or coercive effect upon the action of someone else" who *caused* the injury. Opp. 79 (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). So here, Plaintiffs must allege that Visa had a "determinative or coercive effect" upon sex traffickers or upon MindGeek. *Bennett*, 520 U.S. at 168–69. But there are no allegations to this effect in the Complaint.

Plaintiffs do not identify a single allegation showing that Visa took any action that had a *coercive or determinative effect* on the acts of any sex trafficker, MindGeek, or other person alleged to have engaged in the trafficking acts that directly resulted in Plaintiffs' alleged injuries.[2] Rather, Plaintiffs suggest that "had Visa withdrawn from the

---

[1] Plaintiffs' reference to FOSTA is misplaced—through FOSTA, Congress amended the Communications Act of 1934 to address Section 230 immunity claims by interactive computer service providers, which is a protection that Visa has not asserted in its Motion.

[2] In contending that Visa's actions had a determinative effect, Plaintiffs also take liberties with their own allegations. They claim that "Visa publicly misrepresented that the content on MindGeek tubesites was consensual and did not depict CSAM." Opp. 79–80 (citing Compl. ¶¶ 419, 427). But the Complaint alleges no such thing—instead, it alleges only

venture, MindGeek would *likely* have to have terminated its illegal practices." Opp. 80 (emphasis added). This speculation that, if Visa discontinued payment processing for the MindGeek sites, MindGeek in reaction might have done more to police its website more closely, which might then have led to the identification and removal of videos depicting Plaintiffs, which might then have disincentivized sex traffickers from making videos or engaging in sex trafficking, reflects precisely the long chain of contingencies insufficient to establish the traceability requirement of Article III. Visa is a far-removed third party that Plaintiffs lack standing to sue under Article III. *Warth v. Seldin*, 422 U.S. 490, 505–08 (1975); *Daniel*, 891 F.3d at 767.

The courts repeatedly reject standing in similar circumstances. *See* Mot. 10. In *Doe I v. Apple Inc.*, for example, plaintiffs sought to hold electronics manufacturers liable for alleged human rights violations in cobalt mines. No. 1:19-cv-03737, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021). Plaintiffs relied on the theory that the defendants were responsible for any violations because, as end-purchasers of cobalt, they drove demand for the metal. *Id.* The court found that the plaintiffs lacked Article III standing. The court reasoned that "[i]t might be true that if Apple, for example, stopped making products that use cobalt, it would have purchased less of the metal," resulting in third parties ceasing to purchase cobalt, which in turn might have "led some of the Plaintiffs to not have been mining when their injuries occurred." *Id.* But that "long 'chain of contingencies'" was "not sufficient to tie Defendant's conduct to Plaintiffs' injuries." *Id.* *See also Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (injury not traceable where third parties "may well have engaged in their injury-inflicting actions even in the absence of the [defendant's] challenged conduct"); *Arizona Att'ys for Crim. Just. v.*

---

that Visa stated that it only permits transactions on its network for the "purchase or sale of lawful products and services," Compl. ¶ 419, and that "any truly effective solution must come from thoughtful changes to laws and regulations by those elected to establish the laws of our country," *id.* ¶ 427. Moreover, even if Plaintiffs assertions were true—which they are not—any statement Visa allegedly made about the content on MindGeek's tubesites does not amount to "coercion" or "control" over the MindGeek Defendants or any other third party.

*Ducey*, No. 17-cv-01422, 2018 WL 1570244, at *4 (D. Ariz. Mar. 30, 2018) (injury not traceable where Arizona Attorney General did "not have a coercive effect on the actions of state bar counsel who may or may not elect to pursue action"); *Turaani v. Wray*, 988 F.3d 313, 316–17 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 225 (2021) (injury to plaintiff from denial of gun sale was not traceable to FBI agent because agent's advice to gun dealer "did not command or coerce" the dealer to deny the sale).

Those bedrock principles of standing control with equal force here. Accepting as true Plaintiffs' allegations, they amount at most to "a long chain of contingencies" that is not sufficient to link Visa's conduct to the alleged injuries of the specific Plaintiffs in this case. *Apple*, 2021 WL 5774224 at *8. Indeed, Plaintiffs' allegations confirm that MindGeek's voluntary decisions in operating and maintaining its online platforms, and the acts of third-parties who uploaded content to its websites, are *independent* from Visa's payment processing. *See, e.g.*, Compl. ¶¶ 269, 281, 293, 429 (alleging that illegal content depicting several Plaintiffs remained on MindGeek sites even after Visa instructed Acquirer banks to cease processing payments). Plaintiffs do not and cannot allege that but for Visa's conduct, they would not have been harmed. Nor do Plaintiffs allege that by processing payments, Visa dictated, let alone coerced, MindGeek's policies, decisions, or actions, or the actions of any sex traffickers. Plaintiffs' alleged injuries therefore cannot be traced to Visa and the claims against Visa should be dismissed for lack of Article III standing.

**B. Plaintiffs lack statutory standing under the TVPRA and RICO.**

In addition to lacking Article III standing, Plaintiffs have no statutory standing under the TVPRA and RICO because under both statutes, as a matter of law, Visa was not the proximate cause of their injuries. *See* Mot. 11–12. Plaintiffs' only response, buried in a footnote, is the conclusory assertion that the Complaint "alleged proximate cause in connection with the claims where it is required." Opp. 78 n.45 (citing Opp. Argument §§ I–IV). That conclusory statement is insufficient to support statutory standing at the pleading stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56

(2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The Complaint fails to allege any facts whatsoever about how Visa's alleged actions in processing payments could be the proximate cause of Plaintiffs' alleged injuries, particularly where Plaintiffs' alleged injuries depend on the alleged actions of intervening third parties like unnamed sex traffickers and the various MindGeek Defendants.

To the extent Plaintiffs contend that they satisfy proximate causation by alleging that Visa could have encouraged MindGeek to change its practices, that argument fails to establish Article III standing, let alone statutory standing. Specifically, Plaintiffs' position violates the "first step" rule of proximate causation, which holds that only the most *direct* cause of a harm—that is, the first step in a line of causation (here, the sex trafficking)—is the proximate cause of the alleged injury. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 271 (1992) (quoting *S. Pac. Co. v. Darnell-Taenzer Lumber Co*., 245 U.S. 531, 533 (1918) ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step."). Courts in RICO cases and other statutory contexts have recognized that this "'first step' limitation" requires a *direct* relationship between the alleged harm and the statutory violation. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10 (2010) ("Because the City's theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement."); *Fields v. Twitter, Inc*., 881 F.3d 739, 745 (9th Cir. 2018) (applying "first step" limitation to Anti-Terrorism Act claim to require a "direct relation" between the harm and alleged statutory violation); *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1526 (2019) (recognizing in the antitrust context that "the first step" limitation is an "ancient rule" of proximate causation). Here, any possible link between Plaintiffs' alleged injuries and Visa's payment processing requires innumerable steps and is far too attenuated to satisfy the "first step" requirement of proximate causation under the TVPRA and RICO. Visa is not a but-for cause of Plaintiffs' harm, let alone a proximate cause. *Hemi Grp.*, 559 U.S. at 9; *Holmes*, 503 U.S. at 268–69.

**II. The Complaint Does Not State A TVPRA Beneficiary Claim Against Visa**

Visa's Motion showed that the Complaint does not state a TVPRA claim against Visa for three independent reasons: (1) Visa's routine payment processing does not constitute "participation" in a sex trafficking venture, (2) the Complaint contains no facts suggesting that Visa knew or should have known of the specific sex trafficking violations that Plaintiffs allege, and (3) the Complaint does not plausibly allege that Visa received any benefit directly connected to any alleged illegal trafficking. *See* Mot. 13–22. Plaintiffs' failure to allege any one of these elements requires dismissal of their claims. The Complaint does not satisfy *any* of these three elements.

**A. The Complaint does not plausibly allege that Visa participated in a sex trafficking venture.**

The Opposition does not explain how Visa's payment processing could amount to participation in a sex trafficking venture under the TVPRA. As Visa explained, "participation" requires more than indirect financial support or passive facilitation—rather, it necessitates active engagement in a venture. Mot. 14. Plaintiffs say that Visa allegedly participated in a venture because "continued violations of the sex trafficking laws could have been prevented had Visa terminated its relationship with MindGeek earlier or, at a minimum, not knowingly continued to process payments without insisting … that the business ensure only legal content was being monetized." Opp. 46–47. But no court has stretched the concept of "participation" in a sex trafficking venture under the TVPRA to reach a third party on the theory that the third party should have affirmatively *prevented* trafficking.

Indeed, courts have specifically rejected Plaintiffs' theory, expressly finding that the TVPRA does not impose such a far-reaching affirmative duty. In *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020), the court explained that it "does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking." Similarly, in *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020), the court disagreed with plaintiff's

theory that "Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals." The court concluded, "[w]e do not read the Act as requiring hotels (*and other businesses or professions possibly earning money from trafficking*) to affirmatively stop the trafficking." *Id.* (emphasis added); *see also Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619, 2021 WL 5579117, at *5 (D. Colo. Nov. 30, 2021) ("[D]efendant is correct that the 'mere failure to prevent sex trafficking is not sufficient' to show that defendant knowingly benefited from its participation in a venture[.]") (quoting *A.B.*, 455 F. Supp. 3d at 182).

Instead, to allege "participation," Plaintiffs must "connect the dots" between the alleged trafficking of the named plaintiffs and actions of the defendant. *See, e.g.*, *B.M.*, 2020 WL 4368214, at *5 (holding that allegations against parent hotel chain failed to satisfy participation element where the Complaint was "devoid of any facts linking *these Defendants* … to the sex trafficking of *this Plaintiff*" (emphasis in original)); *see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) ("In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit."). At the very least, courts require that the plaintiff show a "continuous business relationship between the trafficker and [Defendants] such that it would appear that the trafficker and [Defendants] have established a pattern of conduct or could be said to have a tacit agreement." *Doe v. Mindgeek USA Inc.*, No. 21-cv-00338, 2021 WL 4167054, at *5 (C.D. Cal. Sept. 3, 2021) (quoting *M.A. v. Wyndham Hotels Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)). The Complaint comes nowhere close to meeting that standard.

Plaintiffs say that the Complaint alleges a "tacit agreement" because it alleges that Visa "processed credit card payments that 'carried with them obvious red flags.'" *See* Opp. 46. Yet the Complaint does not identify *any* such transactions. It also falls woefully short of alleging the kinds of facts that courts have found to establish "participation in a venture." *See e.g.*, *Doe v. Twitter, Inc.*, No. 21-cv-00485, 2021 WL 3675207, at *25–26

(N.D. Cal. Aug. 19, 2021) (finding participation adequately pled against Twitter where Twitter made it difficult to report violations, permitted illegal content despite ability to monitor it, reported instances of child abuse material on its platform, and created hashtags to assist in search functions). At best, the Complaint alleges that Visa participated in the venture by ultimately receiving an indirect and "passive benefit," Opp. 46, which is insufficient to satisfy participation. *See Ratha v. Phatthana Seafood Co.*, No. 16-cv-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017). Plaintiffs dismiss *Ratha* because it does not "deal with beneficiary liability based on a violation of section 1591," Opp. 48 n.14, but that distinction makes no difference—the *Ratha* court squarely addressed the TVPRA's standard governing the conduct that amounts to "participation" under Section 1595, which applies to any beneficiary liability claim regardless of the underlying trafficking violation. Moreover, *no court* has ever embraced Plaintiffs' elastic theory that the mere indirect and passive receipt of funds that may or may not relate to trafficking is sufficient to constitute participation in a venture.[3]

Plaintiffs' argument stretches the bounds of liability well beyond recognized limits. In *Perfect 10*, the Ninth Circuit rejected a similar argument that "by continuing to process credit card payments to the infringing websites despite having knowledge of ongoing infringement, [the credit card] Defendants induce, enable and contribute to the infringing activity … ." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 796 (9th Cir. 2007). The Ninth Circuit held that where the infringing conduct can occur without payment, payment processing does not constitute material contribution. *Id.* The *Perfect 10* court reasoned that "the services provided by the credit card companies do not help locate and are not used to distribute the infringing images," and that "the issue here is reproduction, alteration, display and distribution, which can occur without payment." *Id.* And compared to a search engine like Google, "[t]he salient distinction is that Google's search

---

[3] Moreover, even if passive receipt of funds were sufficient (which it is not), Visa earns transaction fees from *the acquiring banks* with whom it contracts, not directly from merchants such as MindGeek. *See* Mot. 22.

engine itself assists in the distribution of infringing content to the Internet users, while Defendants' payment systems do not." *Id.* at 797. Thus, even though credit card processors "do, as alleged, make infringement more profitable, and people are generally more inclined to engage in an activity when it is financially profitable," the Ninth Circuit held that "because infringement of Perfect 10's copyrights can occur without using Defendants' payment system, we hold that payment processing by the Defendants … does not constitute a 'material contribution … .'" *Id.* at 797–98.

Plaintiffs have no response to *Perfect 10*. They ask the Court to disregard *Perfect 10* because it addressed a different cause of action, Opp. 48 n.14, but the Ninth Circuit's reasoning is instructive here. Here, as in *Perfect 10*, Visa has no role in producing the alleged illegal content, monitoring it, sharing it, or otherwise providing a platform enabling users to access it. The "salient" difference the Ninth Circuit found to distinguish payment processors and a search engine like Google also exists here: Visa in no way "assists" the trafficking at issue by aiding the creation, dissemination, or distribution of illegal content. *Id.* And, as in *Perfect 10*, the alleged sex trafficking could (and did) occur without Visa's involvement at all. *Perfect 10*'s reasoning shows that the Complaint fails to allege that Visa "participated" in a sex trafficking venture.

Plaintiffs also suggest that the Court should disregard the economic ramifications of their expansive theory of liability, arguing that the effect on commerce argument is "easily disposed of" because holding Visa liable would "prevent companies like Visa from knowingly continuing to benefit from such illegal activities." Opp. 46. But this blithe dismissal of the unintended consequences of Plaintiffs' sweeping theory is unpersuasive. Many remote, third-party actors "participate" in the sex trafficking venture as Plaintiffs define it—the companies that provide electricity to the traffickers or to MindGeek; the companies that sell video equipment to traffickers; the cars, banks, restaurants, grocery stores and others that enable the traffickers to carry out their scheme.

The consequences on commerce are particularly serious. Visa cannot identify all forms of illegal conduct connected to the billions of transactions processed over its

networks every year. Visa does not have a direct contractual relationship with MindGeek, with the alleged traffickers, or with the Plaintiffs. If Visa is engaged in a sex trafficking venture by running its business, then the liability for the payment industry will be boundless.

**B. The Complaint lacks any specific allegations that Visa had knowledge of Plaintiffs' sex trafficking.**

The Opposition identifies no allegations suggesting that Visa knew or should have known of specific instances of Plaintiffs' alleged exploitation. "[K]nowledge or willful blindness of a general sex trafficking problem" in an industry is insufficient to establish liability under the TVPRA absent allegations relating to a particular plaintiff's trafficking. *See* Mot. 19; *see also Lundstrom*, 2021 WL 5579117, at *8 ("General knowledge of commercial sex activity occurring at hotels across the United States, or even defendant's properties, is insufficient on its own to demonstrate that defendant participated in the trafficking of plaintiff."); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture.").

Disregarding this body of law, the Opposition merely reiterates the Complaint's allegation that Visa should have known about the sex trafficking venture because PayPal previously terminated its relationship with MindGeek and "the presence of trafficking in the webcam industry was notorious." Opp. 48. These allegations of general knowledge are not enough. Plaintiffs must allege that Visa knew or should have known of the alleged trafficking of the specific Plaintiffs who brought this action. Because they do not, they cannot satisfy the knowledge element of the TVPRA.

Because the Complaint lacks any plausible allegation that Visa knew or should have known of specific instances of Plaintiffs' alleged trafficking, Plaintiffs have failed to satisfy the constructive knowledge requirement of the TVPRA.

### C. The Complaint does not plausibly allege that Visa benefitted from an illegal enterprise.

Even if Plaintiffs could overcome the "participation" and "knowledge" elements of a TVPRA claim, they do not plausibly plead a benefit tied to an illegal enterprise. Plaintiffs argue that "Visa's routine processing of payments necessarily implicated [illegal] content," and that for purposes of TVPRA liability, any benefit Visa received "need not derive directly from the illegal activities itself." Opp. 47. Yet Plaintiffs do not identify a single allegation suggesting that Visa received any transaction fees for payments made to access illegal content. And the Opposition is wrong on the law: numerous courts have held that beneficiary liability under the TVPRA requires that the defendant derive a *direct* benefit from the alleged trafficking.

To state a claim under the TVPRA, the Complaint must plausibly allege that the transaction fees Visa received were paid on account of specific instances of illegal sex trafficking, rather than for legal content hosted on a site. *See* Mot. 21. Plaintiffs rely on *B.M. v. Wyndham Hotels & Resorts, Inc.*, contending that the court held "that plaintiff need only allege that the benefit received by the defendants 'derive directly from, and be knowingly received in exchange for, participating in a sex-trafficking venture,'" and "need not derive directly from the illegal activities itself." Opp. 47 (citing *B.M.*, 2020 WL 4368214, at *4). But *B.M.* does not go that far. In *B.M.*, the hotel franchisors argued that royalties they received from operators renting rooms to sex traffickers did not amount to a knowing benefit from a trafficking venture. The court rejected the franchisors' argument because, unlike here, the *B.M.* plaintiff alleged that a fraction of the room rates was paid to the franchisor; that is, the franchise royalties were derived *directly* from payments that sex traffickers made for the rooms to carry out their venture. Each room rented by a trafficker was thus necessarily tied to a direct benefit to the franchisor—the profits from traffickers' payments passed directly to the hotel chain franchisors.

Here, the Complaint alleges no facts showing that Visa received transaction fees for payments from sex traffickers, or from payments related *in any way* to illegal sex

trafficking or CSAM content, as opposed to payments for legal content hosted on MindGeek websites. Moreover, the Complaint concedes that vast amounts of content on MindGeek websites are absolutely free. *See* Mot. 9. Thus, unlike *B.M.*, where the franchisors directly benefitted from payments made directly by sex traffickers to rent hotel rooms, the Complaint draws no link between illegal content and any payments made using Visa-branded payment cards. *See id.* at 21. Nor does the Complaint allege Visa processed any payments related to content depicting Plaintiffs specifically. This is not a "technical legal argument[]," *see* Opp. 48, but an essential element to a TVPRA claim that Plaintiffs have not sufficiently alleged. Plaintiffs' TVPRA claim against Visa cannot rest on a conclusory assertion that Visa's payment processing "necessarily" implicated such content absent a single factual allegation to support such an assertion.

## III. The Complaint Does Not State A Valid RICO Claim

### A. Visa did not participate in a RICO enterprise in violation of Section 1962(c).

Nothing in the Opposition is sufficient to overcome the defects in the Complaint's RICO claims against Visa. Indeed, Plaintiffs make only a passing attempt to address Visa's arguments with respect to the RICO causes of action.

First, the Opposition does not point to anything in the Complaint that is sufficient to allege an association-in-fact "enterprise" involving Visa, as required by 18 U.S.C. § 1962(c). Rather than allege an "interpersonal relationship[] and a common interest" between Visa and MindGeek, the Complaint describes a "simple contract for services" between MindGeek and Visa. Mot. 23–24. Courts have consistently held that such allegations are insufficient to show a common purpose, a basic requirement for RICO liability. *See* Mot. 24–25. Plaintiffs' only response is to state that "[t]he argument that the Complaint simply alleges a contractual relationship between Visa and MindGeek must be rejected in light of" their general allegations against Visa. Opp. 54 n.17. They do not identify a single specific allegation suggesting that Visa had any purpose beyond the

commercial one of operating its business.[4]

Plaintiffs cite *Ketayi v. Health Enrollment Group*, which recognized that two contracting businesses could still "'form an "enterprise" for RICO purposes and still be named as individual RICO defendants.'" 516 F. Supp. 3d 1092, 1135 (S.D. Cal. 2021). This is obviously true in cases where the plaintiffs "allege[] *more* than that Defendants simply contracted with one another for legitimate purposes," for example in a coordinated insurance fraud scheme. *Id*. (emphasis added). But here, the Complaint nowhere alleges that Visa entered a contractual relationship with the purpose of deceiving any person or to engage in substantive sex trafficking violations. The "more" described in *Ketayi* is completely missing.

Second, Plaintiffs have no answer to the Complaint's failure to satisfy the "participation" element of a RICO enterprise because it contains no allegations that Visa directed the affairs of any alleged enterprise. Mot. 25–26. Plaintiffs rely again on vague references to the "allegations" against Visa in suggesting that they "also satisfy the conduct element, which requires only a showing that defendant played 'some part in directing th[e] affairs' of the Enterprise." Opp. 54 n.18. But nowhere does the Opposition or the Complaint suggest that Visa played *any role* in directing any alleged enterprise. The Complaint alleges only that Visa "recognized MindGeek as an authorized merchant and processed payment to its websites," and thus had nothing beyond an attenuated business relationship with MindGeek. Mot. 26 (citing Compl. ¶ 58). Plaintiffs offer no substantive response to these fundamental defects.

**B. Plaintiffs do not defend their claim for investment of RICO proceeds under Section 1962(a).**

Plaintiffs make no attempt to respond to Visa's argument that the Complaint does not state a claim that Visa invested "enterprise proceeds" under § 1962(a). Mot. 27–29.

[4] Moreover, Visa does not have a direct contractual relationship with MindGeek. But even assuming Plaintiffs' allegations are accepted as true, their theory under RICO is invalid.

Because Plaintiffs have failed to respond to these arguments, they are waived and the cause of action should be dismissed with prejudice. *See, e.g.*, *Shorter v. Los Angeles Unified Sch. Dist.*, No. 13-cv-3198, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013).

**IV. The Complaint Fails To State A Conspiracy Claim Under RICO (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California Common Law**

Plaintiffs' Opposition does not show how the Complaint has plausibly alleged any element of their conspiracy claims under RICO, the TVPRA, and California common law.

In addressing their RICO conspiracy claim, Plaintiffs contend that "the existence of the agreement between defendants and the intent and knowledge of the conspirators 'can be readily and plausibly inferred' from the Complaint's detailed allegations of interdependence and mutual efforts to further the common purpose of the Enterprise." Opp. 61–62. They cite to the Opposition's summary of allegations relating to Visa's knowledge of a generalized issue with CSAM in online pornography. But again, the Opposition fails to identify a single fact that could support an inference that Visa entered into an agreement specifically to engage in wrongdoing.

Plaintiffs cite *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00562, 2017 WL 3485881, at *17 (N.D. Cal. Aug. 15, 2017) in arguing that the allegations support the inference of an agreement. But there, the plaintiff alleged RICO violations related to defendants' use of counterfeit software licensing keys to access copyrighted software and duplicate the programs. The defendants argued that the plaintiff did not allege the existence of an actual agreement. The court, however, found that an agreement could be inferred because the allegations showed that the employees of the other defendant *took actions directly in support* of the conspiracy, for example using "illegal keys connected to the names of employees" and using those keys thousands of times on multiple computers. *Id.* The court held that this parallel illegal conduct of each of the employees in *Synopsys* could suggest they shared an agreement to engage in wrongdoing. The facts alleged here, *which do not illustrate any parallel conduct or coordination*, let alone coordinated *illegal* conduct, do not support such an inference. The Complaint shows that

Visa acted on its own as a payment processor, not in concert with MindGeek, which has complete and independent control in operating its platforms.

Plaintiffs further claim that "[a] civil RICO plaintiff 'is not required to prove every detail of the agreement when alleging conspiracy, particularly at the motion to dismiss stage.'" Opp. 62 n.31 (quoting *Ketayi*, 516 F. Supp. 3d at 1138) (internal quotations omitted). That principle is no help because the Complaint does not allege a *single* detail of any purported agreement between Visa and MindGeek to engage in a wrongdoing.

Plaintiffs attempt to defend their TVPRA conspiracy claim with the conclusory assertion that "the Complaint sufficiently alleges that Visa and the MindGeek Defendants had a 'unity of purpose or a common design and understanding, or a meeting of the minds … .'" Opp. 49. In support, Plaintiffs merely recite their allegation that "Visa knew that its funding supported and facilitated MindGeek," and "continued to partner with MindGeek despite numerous public disclosures that MindGeek was engaged in sex trafficking" and dissemination of CSAM. Opp. 49. But, as Visa explained, alleged knowledge of wrongdoing alone, even if true, does not make a conspiracy, and does not demonstrate a "meeting of the minds." *See* Mot. 31; *see also Doe #1 v. Red Roof Inns*, 21 F.4th 714 ("[O]bserving something is not the same as participating in it."). Visa further explained that the Complaint does not plausibly allege that Visa had knowledge of the essential features of the conspiracy, or intent to aid in its purpose. Mot. 31–33. The Opposition makes no effort to show how the Complaint satisfied either requirement. With respect to civil conspiracy, Plaintiffs state only that "[d]efendants' challenges to plaintiffs' civil conspiracy claims are predicated entirely on its challenges to the underlying claims," Opp. 63, but they do not directly address any of Visa's arguments related to civil conspiracy, Mot. 29–33, and that claim should be dismissed.

## V. The Complaint Does Not Allege Viable State Law Claims Against Visa

### A. The Complaint does not allege facts to support unfair business practice or false advertising claims against Visa.

The Opposition contends that Plaintiffs have adequately alleged claims against Visa under California Business and Professions Code §§ 17200 and 17500 ("UCL

claims") by alleging that Visa processed credit card transactions, profited from an alleged sex trafficking venture, and misrepresented the content of MindGeek's tubesites. Opp. 63. *But these are not the allegations that appear in the Complaint.* Instead, the Complaint's allegations in support of Plaintiffs' UCL claims focus entirely on *MindGeek's* conduct. Mot. 33. The Opposition has no answer for its failure to include any specific allegations as to *Visa* for these causes of action. Nor does the Opposition explain how its allegations against Visa satisfy the UCL's requirement that a defendant exercise "unbridled control" over the alleged unfair business practices. *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 960, 116 Cal. Rptr. 2d 25, 33 (2002). Visa is not alleged to have exercised this level of control over the purported sex trafficking venture, or really any level of control. The UCL claims fail along with Plaintiffs' other causes of action.[5] As with the TVPRA, Plaintiffs' unfair business practices claim requires Plaintiffs to plausibly allege Visa's "personal 'participation in the unlawful practices.'" *See* Mot. 34. Thus, the claim under California Business and Professions Code §§ 17200, 17500, fails for the same reason the TVPRA participation claim fails. *See supra* § II.A.

**B. Plaintiffs do not defend the unjust enrichment claim.**

The Opposition does not address Visa's arguments for dismissing Plaintiffs' unjust enrichment claims. Mot. 34–35. Visa cited multiple decisions from this Court and in this jurisdiction establishing that unjust enrichment is not a valid cause of action in California.

---

[5] Further, while the Opposition claims that Visa "intentionally lied and made misrepresentations about the nature of the content on MindGeek's tubesites" so it could continue to process payments, Opp. 63, that assertion has no basis in the Complaint—and Plaintiffs do not identify any specific and actionable misrepresentations and thus lend no support for Plaintiffs' unfair business practice or false advertising claims. *See supra* n.2. Plaintiffs cannot allege a new fact in their Opposition in a last-minute effort to revive a claim that the Complaint has not adequately plead. *See, e.g.*, *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Williams v. Price*, No. 11-cv-327, 2012 WL 3778344, at *5 (S.D. Cal. Aug. 30, 2012) ("Factual allegations raised for the first time in an opposition brief cannot cure the deficiencies of a complaint.").

*See, e.g.*, *Mindgeek*, 2021 WL 4167054, at *11. Given Plaintiffs' silence, and the absence of any other basis for restitution in the Complaint, the Court should deem any opposition to dismissal of the unjust enrichment claim waived and dismiss the count with prejudice. *See, e.g.*, *Shorter*, 2013 WL 6331204, at *9 ("[P]laintiff's failure to address the issues raised in [defendant's] motion to dismiss in her opposition may be construed as a waiver of those issues and an abandonment of her claims against [defendant]."); *Am. Nat'l Ins. Co. v. Akopyan*, No. 2:20-cv-08502, 2021 WL 2792313, at *2 (C.D. Cal. Apr. 8, 2021) ("[T]he Court does not need to delve into the merits of [defendant's] argument because [plaintiff] failed to address that argument in his Opposition … . Therefore, the Court finds that [plaintiff] has failed to state a claim … ."); *Tapia v. Wells Fargo Bank, N.A.*, No. 15-cv-03922, 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015) ("This contention is not addressed in the opposition. The Court therefore deems any objection to the motion to dismiss claims against [defendant] waived.").

**CONCLUSION**

Visa condemns the terrible harms that Plaintiffs describe and stands against sex trafficking, sexual exploitation, and child sexual abuse material. There is no legal theory that renders Visa liable for the allegedly illegal acts committed by the perpetrators. For the above-stated reasons, the Court should dismiss all claims in Counts III, IV, VII, VIII, IX, XVIII, XVII, and XIX, as to Visa with prejudice.

Dated: January 21, 2022

RESPECTFULLY SUBMITTED,

*/s/ Drew Tulumello*

DREW TULUMELLO (#196484)
drew.tulumello@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorney for Defendant Visa Inc.*