DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

RONALD G. WHITE (admitted *pro hac vice*)
RWhite@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendant
BERND BERGMAIR
*(Additional Counsel listed on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES and JANE DOE NOS. 1 through 33,<br><br>Plaintiffs,<br><br>v.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; RK HOLDINGS USA INC., a Florida corporation; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; TRAFFICJUNKY INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; COREY URMAN, a foreign individual; VISA INC., a Delaware corporation; COLBECK CAPITAL DOES 1-10; and BERGMAIR DOES 1-10,<br><br>Defendants. | Case No. 2:21-cv-4920-CJC-ADS<br><br>**DEFENDANT BERND BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION [FRCP 12(B)(2)] AND FOR FAILURE TO STATE A CLAIM [FRCP 12(B)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 14, 2022<br>Time: 1:30 p.m.<br>Courtroom: 9 B<br>Judge: Hon. Cormac J. Carney |

1    ANDRE FONTANA (CA SBN 324801)
     AFontana@mofo.com
2    MORRISON & FOERSTER LLP
     425 Market Street
3    San Francisco, CA  94105-2482
     Telephone: 415.268.7000
4    Facsimile: 415.268.7522

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    Plaintiffs Have Not Established Personal Jurisdiction Over Bergmair. ......... 3

    A.    Plaintiffs Failed to Establish that Bergmair Had the Requisite
          Contacts with California. ................................................................ 4

    B.    Plaintiffs Failed to Establish that MG US and MG Global are
          Alter Egos of Bergmair. ................................................................ 5

         1.    Plaintiffs Failed to Allege Specific Facts Establishing that
             MG US and MG Global Are Alter Egos of Bergmair. ............... 8

         2.    The Complaint's Allegations Regarding Bergmair's Role
             in MindGeek Are Inconsistent with Any Alter Ego
             Relationship. ........................................................................ 13

    C.    Plaintiffs Have Not Made the Requisite Showing to Justify
          Jurisdictional Discovery. .............................................................. 18

II.    Plaintiffs Failed to State a Claim Against Bergmair. ................................... 22

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

ny-2301486

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*A.B. v. Hilton Worldwide Holdings, Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020)........................................................................19

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004)............................................................................18

*ADO Finance, AG v. McDonnell Douglas Corp.*,
    931 F. Supp. 711 (C.D. Cal. 1996)......................................................................10

*Amba Mktg. Systems, Inc. v. Jobar, Inc.*,
    551 F.2d 784 (9th Cir. 1977)..............................................................................17

*Asahi Metal Industry Co., Ltd. v. Superior Court*,
    480 U.S. 102 (1987) ..........................................................................................4

*Barantsevich v. VTB Bank*,
    954 F. Supp. 2d 972 (C.D. Cal. 2013).................................................................22

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008)............................................................................19

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986)........................................................................19, 20

*Calvert v. Huckins*,
    875 F. Supp. 674 (E.D. Cal. 1995) ..................................................................6, 16

*Cd Listening Bar, Inc. v. Caiman Holdings, Inc.*,
    2008 WL 11336948 (C.D. Cal. June 11, 2008)...............................................12, 13

*Comprehensive Toxicology Billing LLC v. Aliya Medcare Fin. LLC*,
    2016 WL 3475329 (C.D. Cal. Feb 23, 2016) ...................................................6, 7

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) .......................................................................................5

*Data Disc, Inc. v. Systems Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)............................................................................17

*Davis v. Metro Productions, Inc.*,
    885 F.2d 515 (9th Cir. 1989)................................................................5

*Doe v. Unocal Corp.*,
    248 F.3d 916 (9th Cir. 2001)...................................................7, 15, 16

*Doe v. WebGroup Czech Republic*,
    No. 2:21-cv-02428–VAP-SKx,
    (C.D. Cal. Jan. 13, 2022), ECF No. 162.............................................24

*Dynascan Tech., Inc. v. Plasmedia Productions, Inc.*,
    2010 WL 11520614 (C.D. Cal. Jan. 21, 2010) (Carney, J.)............6, 17

*Ewing v. Encor Solar, LLC*,
    2019 WL 277386 (S.D. Cal. Jan. 22, 2019) ........................................9

*Gerritsen v. Warner Bros. Ent., Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015)...............................................7

*Getz v. Boeing*,
    654 F.3d 852 (9th Cir. 2011)..............................................................19

*Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*,
    397 F.3d 1217 (9th Cir. 2005)..............................................................6

*Iconlab, Inc. v. Bausch Health Cos., Inc.*,
    828 F. App'x 363 (9th Cir. 2020)...........................................6, 10, 15

*In re Boon Global Ltd.*,
    923 F.3d 643 (9th Cir. 2019)......................................................7, 9, 15

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods.*
    *Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018)................................................24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods.*
    *Liab. Litig.*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017).....................................24

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
    394 F.3d 1143 (9th Cir. 2004)..............................................................7

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980).....................................................15, 16

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Lang v. Morris*,
    823 F. Supp. 2d 966 (N.D. Cal. 2011)....................................................................18, 19

*Langley v. Guiding Hands School, Inc.*,
    2021 WL 978950 (E.D. Cal. Mar. 16, 2021) ......................................................5, 6

*Martinez v. Manheim Central California*,
    2011 WL 1466684 (E.D. Cal. Apr. 18, 2011)..............................................................22

*MH Pillars, Ltd. v. Realini*,
    2017 WL 916414 (N.D. Cal. Mar. 18, 2017) ...................................................9, 12

*Mieuli v. DeBartolo*,
    2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ................................................................10

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
    2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) ............................................................19

*Mujica v. AirScan, Inc.*,
    771 F.3d 580 (9th Cir. 2014) ....................................................................................24

*N. American Lubricants Co. v. Terry*,
    2012 WL 1108918 (E.D. Cal. Apr. 2, 2012)...............................................................17

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003)......................................................................7

*NuCal Foods, Inc. v. Quality Egg, LLC*,
    887 F. Supp. 2d 977 (E.D. Cal. 2012) ...............................................................11, 17

*Pacific Maritime Freight, Inc. v. Foster*,
    2010 WL 3339432 (S.D. Cal. Aug. 24, 2010).............................................................7

*Panterra Networks, Inc. v. Convergence Works, LLC*,
    2009 WL 4049956 (N.D. Cal. Nov. 20, 2009).....................................................19, 22

*Park Miller, LLC v. Durham Group, Ltd.*,
    2019 WL 6841216 (N.D. Cal. Dec. 16, 2019) ...................................................11, 13

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)..........................................................................19, 21

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ................................................................*passim*

*Reynolds v. Binance Holdings Ltd.*,
   481 F. Supp. 3d 997 (N.D. Cal. 2020)............................................................ 12, 22

*Roman Catholic Archbishop of S.F. v. Superior Court*,
   15 Cal. App. 3d 405 (1971) ................................................................................ 13

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014).................................................................. 7

*Shimmick Constr. Co., Inc. v. Officine Meccaniche Galletti-
   O.M.G.S.R.L.*,
   2014 WL 5847440 (S.D. Cal. Nov. 12, 2014)..................................................... 17

*Sihler v. Fulfillment Lab, Inc.*,
   2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ....................................................... 10

*State Comp. Ins. Fund v. Khan*,
   2013 WL 12132027 (C.D. Cal. July 30, 2013) (Carney, J.) ............................... 25

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
   2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) (Carney, J.)........................*passim*

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) .......................................................................... 19, 21

*Torres v. Ford Motor Co.*,
   2018 WL 4182487 (C.D. Cal. Aug. 30, 2018) (Carney, J.) ................................ 21

*TV Ears, Inc. v. SYK Group, LLC*,
   2016 WL 6248539 (S.D. Cal. Oct. 26, 2016)........................................................ 6

*Uhlig v. Fairn & Swanson Holdings, Inc.*,
   2020 WL 6872881 (S.D. Cal. Nov. 23, 2020)....................................................... 6

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ............................................................................................. 15

*Wady v. Provident Life & Accident Ins. Co.*,
   216 F. Supp. 2d 1060 (C.D. Cal. 2002)........................................................... 7, 17

*Waldrup v. Countrywide Fin. Corp.*,
   2015 WL 93363 (C.D. Cal. Jan. 5, 2015)........................................................... 24

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Wild v. Preventive Pest Control, LLC*,
   2019 WL 2871155 (C.D. Cal. May 29, 2019) (Carney, J.)................................21

*Williams v. Yamaha Motor Co., Ltd.*,
   851 F. 3d 1015 (9th Cir. 2017) ..............................................................5

**Statutes & Other Authorities**

18 U.S.C. § 1965..............................................................................5, 23

Fed. R. Civ. P. 4(k)(2) ...........................................................................5

Fed. R. Civ. P. 12(b)(6) .........................................................................25

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2301486

# **INTRODUCTION**

Plaintiffs' Complaint and Opposition make clear that they are not in possession of even one single fact linking Bernd Bergmair to their claims. Bergmair is alleged, at most, to be a shareholder, with no management position, of a corporation that plaintiffs claim injured them. To attempt to rope him into this case, plaintiffs generically allege that Bergmair oversaw the company's strategy and approved major decisions. But the Complaint does not specify a single corporate strategy or decision in which Bergmair participated, nor does it allege any concrete act by him in furtherance of the allegedly tortious conduct giving rise to the case – not a single email, letter, telephone call, meeting, transaction or other affirmative act. Since the Complaint contains literally no allegations of specific conduct by Bergmair, it also fails to show that Bergmair, who is a resident of China with no connection to the United States, engaged in any conduct aimed at California.

Faced with Bergmair's motion to dismiss, plaintiffs concede that their handful of conclusory paragraphs alleging that he exercised general corporate oversight are insufficient to confer personal jurisdiction over him, or to state a claim. Remarkably, in their Opposition, plaintiffs do not even attempt to defend the adequacy of their allegations with respect to Bergmair, either with respect to jurisdiction or on the merits. Instead, plaintiffs retreat to the fall-back argument that he is the alter ego of two MindGeek corporate entities. But the Complaint does not contain a single specific allegation about Bergmair's relationship with either company. Instead, plaintiffs allege that *other* MindGeek affiliates – *not* the corporate entities alleged to be Bergmair's alter egos, *nor* any of the other defendants in this case – engaged in "sham" transactions for illicit purposes. The Complaint does not identify these corporate entities, and conspicuously fails to include a single detail from which any supposedly improper transaction could be identified. In any event, such allegations cannot provide the basis for a finding of

an alter ego relationship between Bergmair and two *different* corporations since the alter ego analysis necessarily focuses on the relationship between the specific parties who are alleged to be alter egos and must be supported by specific facts regarding those entities.

In addition, plaintiffs' alter ego claim is simply inconsistent with the Complaint's allegations regarding Bergmair, and contrary to settled authority. The only allegations of any conduct by Bergmair are that he took actions consistent with his investor status at MindGeek – the type of actions the Ninth Circuit has held to be insufficient to show alter ego status. In addition, Ninth Circuit law requires that, to be the alter ego of a corporation, an individual must "dictate every facet of its business," including "matters of day-to-day operations."[1] But here, in a fatal blow to plaintiffs' alter ego claim, the Complaint expressly alleges that individuals at MindGeek *other* than Bergmair "controlled all the elements" of its business and possessed "daily operational control" of the company. (Compl. ¶¶ 93, 100, 109, 119.) As plaintiffs concede, absent an alter ego relationship, the Complaint's allegations are insufficient to establish personal jurisdiction over Bergmair, or state a claim against him.

As their final Hail Mary pass, plaintiffs seek permission to take jurisdictional discovery to shore up their deficient alter ego claim. Plaintiffs' strategy is painfully transparent: they included Bergmair – a China resident with no connection to California – in the Complaint based on the thinnest of allegations, hoping to use their broad-brush alter ego allegations as an excuse to bootstrap their way into obtaining jurisdictional discovery. Plaintiffs' Alice-in-Wonderland argument is that they can drag a foreign citizen into a U.S. court by including a few paragraphs of vague allegations in a complaint, and then use that to justify discovery aimed at retroactively finding some tenable basis to have included him in the Complaint in

---

[1] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted).

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2301486

the first place.  Were the Complaint's brief, vague allegations against Bergmair and its conclusory alter ego allegations found sufficient to permit jurisdictional discovery, then virtually any foreign citizen who is a corporate shareholder or officer will be subject to intrusive discovery at the whim of American plaintiffs' lawyers.

The Court should reject plaintiffs' throw-everything-against-the-wall-and-see-what-sticks approach and dismiss the Complaint against Bergmair with prejudice.

## ARGUMENT[2]

### I.    PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION OVER BERGMAIR.

Plaintiffs' Opposition makes clear that they are unable to allege any basis for personal jurisdiction over Bergmair.  While the Opposition perfunctorily asserts that plaintiffs have made "a prima facie showing of jurisdiction," it does not even attempt to argue that the vague, generalized allegations the Complaint makes regarding Bergmair are sufficient to establish personal jurisdiction over him in California.  (Plaintiffs' Omnibus Opposition to Defendants' Motions (hereinafter "Opposition" or "Opp.") at 68, ECF No. 94.)  Indeed, it is entirely silent on this point, implicitly conceding that the Complaint's handful of vague references to Bergmair fail to allege the type of specific facts required to demonstrate a basis for jurisdiction.  Instead, in an attempt to find an alternative basis for jurisdiction, the Opposition falls back on the claim that two U.S.-based MindGeek entities are the alter egos of Bergmair and thus that any California contacts of those other entities may be imputed to him.  Specifically, the Opposition claims that the conduct of defendants MindGeek USA Inc. ("MG US") and MindGeek Global Entertainment

---

[2] In addition to the arguments set forth in this Memorandum, Bergmair joins in the motions and arguments of all the defendant MindGeek corporate entities (hereinafter "MindGeek Defendants"), and those of individual defendants Feras Antoon, David Tassillo and Corey Urman (hereinafter "Individual Defendants").

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2301486

Inc. ("MG Global") – companies whose conduct the Complaint does not link in any way to Bergmair – should nonetheless be imputed to him on an alter ego theory. (Opp. at 5, 70.)  However, plaintiffs' alter ego argument is as meritless as their original theory.

## A.    Plaintiffs Failed to Establish that Bergmair Had the Requisite Contacts with California.

As shown in Bergmair's Opening Brief, the Complaint's allegations do not even come close to demonstrating that Bergmair has sufficient contacts with California to confer personal jurisdiction over him.  (Bergmair Motion to Dismiss (hereinafter "Opening Brief" or "Bergmair Br.") at 4-25, ECF No. 62.)  Although the Complaint includes 644 paragraphs, only a handful even mention Bergmair. Instead, the Complaint consists almost exclusively of allegations which are attributed collectively to "MindGeek" or "the MindGeek Defendants" – without any differentiation between defendants – but does not allege a single specific action taken by Bergmair related to the alleged claims.  Instead, the sum total of the allegations involving Bergmair are two conclusory paragraphs asserting that he "exercised daily direct oversight and control over the strategic operations of MindGeek" (Compl. ¶ 120) and that he approved "major MindGeek decisions" (*Id*. ¶ 121).

These allegations fail to establish the requisite contacts necessary to permit the exercise of personal jurisdiction over a foreign resident like Bergmair.  *See Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 115 (1987) ("great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field").  First, the Complaint is devoid of any allegation that Bergmair purposefully directed his activities toward California.  The Complaint does not allege a single concrete action by Bergmair, and the vague allegations of his "oversight" of MindGeek and "approval" of its major decisions are insufficient to attribute MindGeek's conduct to him under the "guiding spirit"

1  standard established by the Ninth Circuit.  Indeed, numerous courts have found that

2  allegations far more specific than those mentioning Bergmair here were insufficient

3  to establish personal jurisdiction.  (Bergmair Br. at 8–13.)  In addition, the

4  Complaint contains no facts suggesting that Bergmair's alleged actions were

5  expressly aimed at California (*id*. at 13–16), or that plaintiffs' claims arose from his

6  (non-existent) forum-related contacts.  (*Id*. at 16–18.)[3]

7       Plaintiffs have no response – literally, none – to these arguments.

8       **B.    Plaintiffs Failed to Establish that MG US and MG Global
               are Alter Egos of Bergmair.**

9       With no answer for the insufficiency of the Complaint's handful of

10  allegations regarding Bergmair, plaintiffs shift their argument to an alter ego

11  theory.[4]  This argument fails, as well.

12      Generally, a corporation's contacts with a forum cannot be imputed to its

13  owners or officers.  *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir.

14  1989).  Application of the alter ego doctrine is "recognized as an extreme remedy"

15  and will be employed "only in exceptional circumstances."  *Langley v. Guiding*

16  *Hands School, Inc.*, 2021 WL 978950, at *4 (E.D. Cal. Mar. 16, 2021) (quoting

17

18  _____

19  [3] Plaintiffs argue that the relevant test is Bergmair's contacts with the United
    States, not California, under the civil RICO statute, 18 U.S.C. § 1965, and Fed. R.

20  Civ. P. 4(k)(2).  (Opp. at 74–75.)  However, the RICO statute does not apply here
    because Bergmair was not served in any judicial district of the United States.

21  (Bergmair Br. at 5, n.3.)  In any event, this is a distinction without a difference
    since the Complaint alleges no contacts by Bergmair with either California or the

22  United States as a whole.

23      [4] Plaintiffs imprecisely suggest that all the MindGeek defendants are
    "agents/alter egos" of MG US and MG Global, but only address the alter ego

24  analysis.  (Opp. at 70.)  It is not clear that "agency" is even a basis to obtain
    personal jurisdiction over a defendant in light of the Supreme Court's decision in

25  *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014).  *See Williams v. Yamaha*
    *Motor Co., Ltd.*, 851 F. 3d 1015, 1024–25 (9th Cir. 2017) (expressing doubt about

26  the continued existence of the agency test but noting that, if it retained any viability,
    principal must be shown, at a minimum, to exercise "substantial[] control" over

27  agent).  Just as plaintiffs are unable to demonstrate Bergmair's "pervasive control"
    of MG US and MG Global for purposes of the alter ego test, they are unable to

28  show his "substantial[] control" of these entities.

1    *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).  This reluctance is

2    because "the doctrine of limited liability is a basic and fundamental rule of

3    corporate law, and it has served society well by encouraging corporate enterprise

4    without risk of personal liability for the corporation's debts." *Hambleton Bros.*

5    *Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1227 (9th Cir. 2005)

6    ("Shareholder protection through the corporate form is 'ingrained in our economic

7    and legal systems.'"); *Ranza*, 793 F.3d at 1070 ("A basic tenet of American

8    corporate law is that the corporation and its shareholders are distinct entities."

9    (citation omitted)).  Reflecting courts' reluctance to resort to the alter ego theory,

10   plaintiffs who invoke it in an effort to establish personal jurisdiction over a

11   corporate shareholder must satisfy "a slightly higher burden" and overcome the

12   presumption of corporate separateness with "clear evidence." *Langley*, 2021 WL

13   978950, at *4; *Uhlig v. Fairn & Swanson Holdings, Inc.*, 2020 WL 6872881, at *3

14   (S.D. Cal. Nov. 23, 2020); *TV Ears, Inc. v. SYK Group, LLC*, 2016 WL 6248539, at

15   *5 (S.D. Cal. Oct. 26, 2016); *Calvert*, 875 F. Supp. at 678.

16       To impute a corporation's jurisdictional contacts to an out-of-forum

17   corporate shareholder on an alter ego theory, the plaintiff's allegations must

18   establish that (1) there is "such unity of interest" and ownership that the separate

19   personalities of the two parties no longer exist; *and* (2) failure to disregard their

20   separate identities "would result in fraud or injustice." *Iconlab, Inc. v. Bausch*

21   *Health Cos., Inc.*, 828 F. App'x 363, 364 (9th Cir. 2020) (quoting *Ranza*, 793 F.3d

22   at 1073).  To make this showing, a plaintiff must allege "specific facts" supporting

23   both elements. *Comprehensive Toxicology Billing LLC v. Aliya Medcare Fin. LLC*,

24   2016 WL 3475329, at *6 (C.D. Cal. Feb 23, 2016); *Dynascan Tech., Inc. v.*

25   *Plasmedia Productions, Inc.*, 2010 WL 11520614, at *5 (C.D. Cal. Jan. 21, 2010)

26   (Carney, J.).

27       To satisfy the "unity of interest" element, a plaintiff must demonstrate that

28   the owner controls the company "to such a degree as to render the latter the mere

6

ny-2301486

1   instrumentality of the former." *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal*
2   *Corp.*, 248 F.3d 916, 926 (9th Cir. 2001)).  This test "envisions pervasive control
3   over the [company] such as when [its owner] 'dictates every facet of the
4   [company's] business – from broad policy decisions to routine matters of day-to-
5   day operation.'"  *Id*.  Indeed, even "sole ownership and control does not eviscerate
6   the separate corporate identity that is the foundation of corporate law." *Katzir's*
7   *Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004).

8        A plaintiff may plead unity of interest by showing the "commingling of funds
9   and other assets of the two entities, the holding out by one entity that it is liable for
10  the debts of the other, identical equitable ownership in the two entities, use of the
11  same offices and employees, and use of one as a mere shell or conduit for the
12  affairs of the other." *See, e.g.*, *Gerritsen v. Warner Bros. Ent., Inc.*, 112 F. Supp.
13  3d 1011, 1043 (C.D. Cal. 2015); *Wady v. Provident Life & Accident Ins. Co.*, 216 F.
14  Supp. 2d 1060, 1066 (C.D. Cal. 2002).

15       To satisfy the "injustice" element, courts require "evidence of bad faith
16  conduct on the part of defendants before concluding that an inequitable result
17  justifies an alter ego finding." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d
18  1101, 1117 (C.D. Cal. 2003).  *See Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
19  2019 WL 8806093, at *5 (C.D. Cal. Sept. 20, 2019) (Carney, J.); *Comprehensive*
20  *Toxicology*, 2016 WL 3475329, at *9.  Absent bad faith, courts have "rejected the
21  view that the potential difficulty a plaintiff faces collecting a judgment is an
22  inequitable result that warrants application of the alter ego doctrine." *Neilson*, 290
23  F. Supp. 2d at 1117.  *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040-41 (N.D. Cal.
24  2014); *Pacific Maritime Freight, Inc. v. Foster*, 2010 WL 3339432, at *7 (S.D. Cal.
25  Aug. 24, 2010).  Mere allegations that a defendant "structures companies to escape
26  liability are insufficient to confer personal jurisdiction [on an alter ego theory]." *In*
27  *re Boon Global Ltd.*, 923 F.3d 643, 654 (9th Cir. 2019).

28

1

### 1. Plaintiffs Failed to Allege Specific Facts Establishing that MG US and MG Global Are Alter Egos of Bergmair.

2

3    Plaintiffs do not satisfy their "higher burden" to present "clear evidence"

4    establishing that MG US and MG Global are alter egos of Bergmair.  Far from

5    containing the "specific facts" required to support plaintiffs' alter ego theory, the

6    Complaint alleges virtually no facts about MG US and MG Global other than basic

7    corporate identifying information: their states of incorporation, they maintain

8    offices in California, and they are subsidiaries of defendant MindGeek, S.a.r.l.

9    (Compl. ¶¶ 47, 50, 65, 66.)[5]  Other than generally identifying Bergmair as one of

10   the owners of "MindGeek" (which is defined as all the defendant MindGeek

11   corporate entities), the Complaint sets forth no facts about these entities'

12   connection, if any, to Bergmair.  (Compl. ¶ 52.)  The Complaint does not allege any

13   conduct Bergmair took specifically with respect to the affairs of either MG US or

14   MG Global.  With respect to the "unity of interest" element of the alter ego test, the

15   Complaint does not allege that MG US and MG Global improperly commingled

16   funds or engaged in any of the practices that would suggest a lack of corporate

17   separateness.  Nor does the Complaint allege that Bergmair took any of the actions

18   the Ninth Circuit has identified as indicating an alter ego relationship with MG US

19   and MG Global, such as exercising "pervasive control" over the companies and

20   controlling their "day-to-day operations."  *Ranza*, 793 F.3d at 1073 (citation

21   omitted).  Similarly, the Complaint fails to allege any specific facts suggesting that

22   MG US and MG Global are undercapitalized or why it would be an injustice to

23   recognize their separate corporate existences.

24   With none of the type of specific facts required by the Ninth Circuit,

25

26   _____

[5] The only other reference in the entire Complaint to either corporation is an irrelevant allegation about lobbying efforts by MG US at an unspecified time in the past (Compl. ¶ 438), which has absolutely nothing to do with plaintiffs' claimed injuries.

27

28

plaintiffs seek to invoke the alter ego theory, apparently based on two types of allegations in the Complaint.  (Opp. at 71–72.)  First, the Complaint alleges generically that all seven defendant MindGeek entities, all four individual MindGeek defendants, and up to 20 unnamed Doe defendants are alter egos of one another.  (Compl. ¶¶ 59–60.)  In support of this allegation that at least 11 (and perhaps as many as 31) defendants are somehow alter egos, the Complaint simply lists the various factors to which courts look in the alter ego analysis, as if cut-and-pasted from a hornbook, and alleges without detail that every single defendant in this lawsuit other than Visa engaged in such conduct.  (*Id.*)  Courts repeatedly reject as insufficient such conclusory alter ego allegations.  *See In re Boon Global*, 923 F.3d at 654; *Symettrica Ent.*, 2019 WL 8806093, at *4.  *See also Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *5 (S.D. Cal. Jan. 22, 2019) ("perfunctory and conclusory statements not supported by facts" are insufficient to support alter ego finding); *MH Pillars, Ltd. v. Realini*, 2017 WL 916414, at *14 (N.D. Cal. Mar. 18, 2017) (complaint deficient where "it contains primarily conclusory allegations that merely recite the factors considered by courts when evaluating alter ego claims").

Second, the Complaint alleges that a series of unnamed MindGeek entities – *i.e.*, entities other than the MindGeek corporate defendants in this lawsuit – were "sham shell companies."  (Compl. ¶¶ 140–161.)[6]  Although the Complaint alleges that these entities engaged in various transactions for illicit purposes, it does not identify any of these corporate entities by name.  Also conspicuously missing is a single specific example, or a single detail from which any supposedly improper

---

[6] Plaintiffs' argument with respect to these entities is inconsistent with the claim that MG US or MG Global are alter egos of Bergmair since their Opposition asserts that the entities are collectively "managed, directed, and controlled" by all the Individual Defendants, the Doe defendants, unnamed other MindGeek employees, defendant Visa, Inc., and an unspecified "network of corrupt credit card companies."  (Opp. at 18.)  The fact that so many other individuals and entities supposedly manage and control these entities contradicts the claim that Bergmair singularly controlled these, or any other MindGeek entities, to the degree that they were mere instrumentalities of his.

1  transaction could be identified.  These allegations plainly fail to establish that there

2  is an alter ego relationship between MG US, MG Global and Bergmair.

3  Allegations about *other* corporate entities – entities that are *not* named as

4  defendants in this case and that are *not* the ones whose conduct plaintiffs seek to

5  impute to Bergmair – cannot provide the basis for a finding of alter ego liability.

6  The alter ego analysis necessarily focuses on the relationship between the specific

7  parties who are alleged to be alter egos, since the test is whether there is "such unity

8  of interest" and ownership that the separate personalities of the two parties no

9  longer exist.  *Iconlab*, 828 F. App'x at 364; *Ranza*, 793 F.3d at 1070–71 ("The alter

10  ego test is designed to determine whether the [parties] are 'not really separate

11  entities,' such that *one* entity's contacts with the forum state can be fairly attributed

12  to *the other*." (emphasis added) (citation omitted)).

13          Not surprisingly, plaintiffs do not cite a single case where allegations about

14  the lack of corporate separateness of companies *other* than the specific parties

15  alleged to be alter egos were held to be sufficient to demonstrate alter ego status.

16  Indeed, in their Opposition, plaintiffs cite just three cases supposedly supporting the

17  sufficiency of their alter ego allegations.  (Opp. at 71.)  However, in all three cases,

18  the allegations with respect to alter ego status related to the specific entities that

19  were claimed to be alter egos, unlike the Complaint here, whose alter ego

20  allegations relate to unnamed, unspecified companies other than those at issue.  *See*

21  *Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436, at *6 (S.D. Cal. Dec. 8, 2020);

22  *Mieuli v. DeBartolo*, 2001 WL 777447, at * 9 (N.D. Cal. Jan. 16, 2001); *ADO*

23  *Finance, AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 713, 717–18 (C.D.

24  Cal. 1996).[7]

25          In contrast, courts have rejected plaintiffs' alter ego claims where, as here,

26

27          [7] In *Sihler*, the primary case plaintiffs cite, the court actually *rejected* the plaintiffs' allegations of alter ego status as "conclusory" and insufficient, offering no support to plaintiffs' position here.  2020 WL 7226436, at *6.

28

the allegations in the complaint relate to other companies in a single corporate family, or do not focus on the specific parties claimed to be alter egos.  For example, in *Park Miller, LLC v. Durham Group, Ltd.*, 2019 WL 6841216 (N.D. Cal. Dec. 16, 2019), plaintiff sought to establish personal jurisdiction over an individual, McGrain, by alleging that he was the alter ego of two corporations he owned named DGL and DCC.  However, plaintiff's allegations related only to the relationship between the two corporations, not any relationship either had with McGrain.  The court ruled that plaintiff's allegations of "intermingling of assets between DGL and DCC might support an alter ego theory between DGL and DCC but does not provide allegations of an alter ego theory involving McGrain." *Id*. at *10.  As a result, the court found that plaintiff had failed to establish that McGrain was the alter ego of his companies and their jurisdictional contacts could not be imputed to him. *Id*.

Similarly, in *NuCal Foods, Inc. v. Quality Egg, LLC*, 887 F. Supp. 2d 977 (E.D. Cal. 2012), plaintiff alleged that an individual defendant, DeCoster, and corporations he owned operated as "a single consolidated enterprise" that were structured to "escape liability." *Id*. at 991, 993–94.  Since the Court had personal jurisdiction over one of DeCoster's companies, Quality Egg, plaintiff argued that its contacts should be imputed to DeCoster and his other companies on an alter ego theory.  The court rejected this claim, finding that, despite its wide-ranging allegations about DeCoster's affiliated corporations, plaintiff had failed to make specific allegations about Quality Egg, the particular entity claimed to be an alter ego.  Specifically, the Court found that plaintiffs had failed to allege that Quality Egg was "currently underfunded or non-operational," a necessary element to establish the "injustice" prong.  Since plaintiffs "ha[d] proffered no evidence to contradict" the affidavit submitted by Quality Egg's representative that it was operational and had its own bank accounts, plaintiff's failure to provide particularized allegations about the specific entity claimed to be an alter ego was

1    fatal. *Id*. at 993–94.

2         In *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D. Cal. 2020),

3    plaintiff sued Binance, a foreign corporation, and alleged that the court had

4    personal jurisdiction over it because it was the alter ego of its U.S. subsidiary,

5    BAM.  One fact that plaintiff alleged to support its alter ego claim was that BAM

6    shared a business address with *another* company, Koi Trading, in which Binance

7    had a major investment.  The court held that BAM's relationship with another

8    company did not support an alter ego finding because it did not relate to the

9    relationship between the specific entities alleged to be alter egos, Binance and

10   BAM.  The court ruled that this fact "does not demonstrate that Binance *itself* was

11   using the same offices and employees as BAM" and did not show that BAM had

12   "disregarded its corporate formalities with Binance."  *Id*. at 1006 (emphasis in

13   original).  The court rejected the claim that "Binance's ownership interest in Koi

14   Trading, and BAM's shared address with Koi Trading, creates any unity of interest

15   between BAM and *Binance* under the alter-ego theory."  *Id*. at 1006, n.3 (emphasis

16   in original).

17        In *MH Pillars, Ltd.*, 2017 WL 916414, plaintiffs opposed the motions to

18   dismiss of two defendant corporations, arguing that they were alter egos of their

19   individual owner, Robinson.  Plaintiffs alleged that each defendant was the alter

20   ego of all the others since they operated as "a single enterprise" and had engaged in

21   "fraudulent transfers."  *Id*. at *12–13.  The court granted the motion to dismiss,

22   finding that the complaint lacked the necessary specificity to establish alter ego

23   status because "it [did] not allege facts showing what each individual defendant did

24   that would justify piercing the corporate veil."  *Id*. at *14.

25        In *Cd Listening Bar, Inc. v. Caiman Holdings, Inc.*, 2008 WL 11336948

26   (C.D. Cal. June 11, 2008), plaintiff sought to obtain personal jurisdiction over

27   defendant corporations by imputing to them the contacts of a "sister" company with

28   employees in California, which the plaintiff claimed was the alter ego of the

defendants.  *Id*. at *4-5.  Although plaintiff argued generally that the group of affiliated companies operated as a "single unit" and used "multiple entities in an attempt to frustrate suit in any given jurisdiction," the court rejected the alter ego claim because plaintiff did not allege any specific facts regarding the relationship between the California sister company and the defendant corporations it claimed were its alter egos.  *Id*.[8]

As this case law demonstrates, the Complaint's allegations about other unnamed entities supposedly affiliated with MindGeek do not support plaintiffs' alter ego theory, much less provide the "specific facts" needed to show "clear evidence" focused particularly on the relationship between Bergmair and MG US and MG Global, the two companies they claim are his alter egos.  Moreover, even if plaintiffs' allegations about other corporations could somehow be stretched to imply that MG US and MG Global were alter egos of *one another*, this does not indicate in any way that they are alter egos of *Bergmair*.  *See Park Miller*, 2019 WL 6841216, at *10; *Roman Catholic Archbishop*, 15 Cal. App. 3d at 412.

### 2.    The Complaint's Allegations Regarding Bergmair's Role in MindGeek Are Inconsistent with Any Alter Ego Relationship.

In addition to their failure to offer specific facts focused on the particular parties alleged to be alter egos, plaintiffs' allegations regarding Bergmair's role at MindGeek are inconsistent with any claimed alter ego relationship.  The claim that Bergmair so dominates and controls MindGeek or any of its individual entities such that the "separate personalities of the two parties no longer exist," and that it is a "mere instrumentality" of his is simply inconsistent with basic facts alleged in the Complaint about Bergmair and the company.  Bergmair, who resides in Hong

---

[8] *See also Roman Catholic Archbishop of S.F. v. Superior Court*, 15 Cal. App. 3d 405, 412 (1971) (denying alter ego claim where plaintiff's allegations showed potential alter ego relationship between parties other than defendants in case).

Kong, China, is alleged at most to be a shareholder in MindGeek[9] with no
management position.  (Compl. ¶ 52.)  The company, whose primary corporate
office is in another country (Canada), has a full-time CEO, COO and other senior
executives.  (Compl. ¶¶ 45, 53–55.)  Simply as a threshold matter of logic, the fact
that MindGeek employed a full-time CEO and senior management, who worked at
its corporate office located in a different country halfway around the globe and a
dozen time zones away from Bergmair's home indicates it was not structured to be
dominated and controlled by Bergmair as a "mere instrumentality" of himself.
Indeed, this structure affirmatively suggests the typical division of responsibility
expected in a corporation: investors collectively exercise big-picture oversight of
the company's business, while senior management directs its day-to-day operations.
Similarly illogical is plaintiffs' allegation that MindGeek could simultaneously be
the alter ego of Bergmair while also being the alter ego of all the other individual
defendants.  (Compl. ¶ 60.)

The only allegations in the Complaint regarding Bergmair's role at
MindGeek are two conclusory paragraphs asserting that Bergmair "exercised daily
direct oversight and control over the strategic operations of MindGeek, closely
managing financial operations, business plans and . . . technology" (Compl. ¶ 120)
and that he approved "major MindGeek decisions" (Compl. ¶ 121).  At the same
time, however, the Complaint asserts that the senior executives of MindGeek "***had
daily operational control***" of the company and "***controlled all the elements of
MindGeek's business***." (Compl. ¶¶ 93, 100, 109, 119.)  Taking these allegations at
face value, they refute any assertion that Bergmair was the alter ego of MindGeek;
daily operational control by others of "all the elements of MindGeek's business" is

---

[9] The Complaint inconsistently alleges on the one hand that he is the
"majority owner" of MindGeek (Compl. ¶ 52), and on the other, that he instead
"represent[s]" and acts "on behalf of" a "group of uber wealthy individuals,
families and groups" who are the "actual owners" of MindGeek and who exercise
"control of the company."  (Compl. ¶¶ 3, 56, 109, 114, 117–118, 119, 121.)

1    flatly inconsistent with the claim that Bergmair so dominated the company that it

2    was a "mere instrumentality" of his.  Indeed, the "unity of interest" element

3    "envisions pervasive control" over a company, such as when an owner "dictates

4    every facet of [its] business," including "matters of day-to-day operation." *Ranza*,

5    793 F.3d at 1073 (citation omitted); *In re Boon Global*, 923 F.3d at 653 (same);

6    *Doe*, 248 F.3d at 926 (alter ego relationship typified by owner's "control of the

7    [company's] internal affairs or daily operations"); *Kramer Motors, Inc. v. British*

8    *Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (alter ego finding requires that

9    owner "controls the internal affairs of [the company] or determines how it operates

10   on a daily basis").  Plaintiffs' allegations that individuals at MindGeek other than

11   Bergmair "controlled all the elements" of MindGeek's business and possessed

12   "daily operational control" of the company is fatal to their alter ego claim with

13   respect to Bergmair.

14        Moreover, even crediting the Complaint's bare conclusory allegations of

15   Bergmair's role, the Ninth Circuit has specifically found that actions consistent

16   with an investor's status, such as Bergmair's exercising "oversight and control" of

17   MindGeek's strategic operations and approving its "major" decisions (Compl. ¶¶

18   120–21), do *not* give rise to alter ego status.  *See Doe*, 248 F.3d at 926 (quoting

19   *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).  Indeed, courts have

20   specifically found that an owner's oversight of a company's strategic operations

21   and approval of its major decisions, even in conjunction with other corporate

22   involvement, do not give rise to an alter ego relationship.  *See Iconlab*, 828 F.

23   App'x at 364–65 (affirming district court's finding of no alter ego relationship

24   where owner "approved [companies'] large purchases," as well as financed their

25   activity, issued collective media releases and submitted consolidated earnings

26   reports, since none of these activities reflected "day-to-day involvement in

27   [companies'] governance"); *Ranza*, 793 F.3d at 1074-75 (where owner was

28   "heavily involved" in company's operations, including approving "large

15

1  purchases," controlling budget and setting general policies, but did not direct

2  "routine, day-to-day operations," its role in "macromanagement issues" did not

3  indicate alter ego relationship); *Doe*, 248 F.3d at 927 (owner's "macro-

4  management" of company, including involvement in company's acquisitions and

5  expenditures, "formulation of general business policies and strategies" and

6  provision of financing did not amount to alter ego relationship); *Kramer*, 628 F.2d

7  at 1177 (fact that owner had "general executive responsibility for the operation" of

8  company, including "review[ing] and approv[ing] its major policy decisions," and

9  "work[ing] closely" with company executives on pricing, was insufficient for alter

10  ego status); *Calvert*, 875 F. Supp. at 679 (to establish alter ego status, plaintiff must

11  show that owner does more than "exercise the broad oversight" of company and set

12  "general policies," but instead demonstrate that he "control[s] 'how the company

13  will be operated on a day-to-day basis'" (citation omitted)).

14        The Complaint's allegations also fail the "injustice" element of the alter ego

15  test, even assuming that its broad-brush allegations about the MindGeek entities

16  collectively were acceptable.  The Complaint does not allege that six of the seven

17  MindGeek corporate defendants (including MG US and MG Global) are insolvent

18  or otherwise unable to satisfy a potential judgment against them.  The Complaint

19  alleges in conclusory fashion that "the parent company" (presumably defendant

20  MindGeek, S.a.r.l.) "records massive losses, not profits" (Compl. ¶ 141), but makes

21  no similar allegations with respect to any of the other MindGeek corporate

22  defendants.  At the same time, it estimates that MindGeek as a whole generates in

23  excess of $460 million in revenues annually.  (Compl. ¶ 68.)[10]  Plaintiffs are unable

24  to satisfy the "injustice" element of the alter ego test if they can recover a judgment

25

26  [10] In any event, the Andreou Declaration attests that each of the existing MindGeek defendants is adequately capitalized, has its own bank accounts and observes all necessary corporate formalities.  (Declaration of Andreas Alkiviades

27  Andreou in Support of the MindGeek Defendants' Motion to Dismiss (hereinafter "Andreou Declaration") ¶¶ 7, 11, 15, 19, 23, ECF No. 70-2.)

28

against MG US, MG Global, or the remaining defendants.  *See Shimmick Constr. Co., Inc. v. Officine Meccaniche Galletti-O.M.G.S.R.L.*, 2014 WL 5847440, at \*7 (S.D. Cal. Nov. 12, 2014); *Wady v. Provident Life & Accident Ins. Co.*, 216 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002).

Finally, in addition to their facial insufficiency, plaintiffs' allegations are simply not sufficient to overcome the sworn affidavit submitted by the MindGeek corporate defendants establishing the corporate separateness of MG US and MG Global.[11]  When a defendant submits an affidavit controverting the allegations in the complaint, the plaintiff "[cannot] simply rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Systems, Inc. v. Jobar, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (where defendant contests personal jurisdiction, "if only one side of the conflict was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit").  When "there is a conflict between the complaint and an affidavit, plaintiff cannot rely solely on the complaint to establish jurisdictional facts." *NuCal Foods*, 887 F. Supp. 2d at 988 (quoting *N. American Lubricants Co. v. Terry*, 2012 WL 1108918, at \*4 (E.D. Cal. Apr. 2, 2012)).  *See Symettrica Ent.*, 2019 WL 8806093, at \*4 (where defendants' affidavits stated that company followed corporate formalities and plaintiff offered no facts other than complaint's allegations, court rejected alter ego theory); *Dynascan Tech.*, 2010 WL 11520614, at \*3 (where defendant submitted affidavit, plaintiff's alter ego argument failed because complaint's allegations "may not presumptively be accepted as true" and plaintiff presented no other evidence

---

[11] Plaintiffs concede in their Opposition that the Court may properly consider the Andreou Declaration with respect to the issue of personal jurisdiction.  (Opp. at 68, n.36.)

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT
ny-2301486

1    supporting alter ego theory).  Here, in arguing that MG US and MG Global are alter

2    egos, plaintiffs are necessarily claiming that they do not observe corporate

3    separateness.  But a MindGeek corporate officer has submitted an affidavit attesting

4    that MG US and MG Global are "adequately capitalized," have their own bank

5    accounts, and observe "all necessary corporate formalities." (Andreou Declaration

6    ¶¶ 15, 23.)  Since plaintiffs cannot simply "rest on the bare allegations" of their

7    complaint and have not come forward with any other evidence, their alter ego claim

8    must fail.[12]

9    
    ### C.    Plaintiffs Have Not Made the Requisite Showing to Justify Jurisdictional Discovery.

10

11           Having conceded that the Complaint's handful of references to Bergmair are

12    insufficient to directly establish jurisdiction, and anticipating the failure of their

13    fall-back alter ego argument, plaintiffs seek permission to conduct jurisdictional

14    discovery to try to remedy those deficiencies.  (Opp. at 76–77.)  However, because

15    the Complaint fails to make even the most basic showing of personal jurisdiction,

16    any jurisdictional discovery would amount to an unwarranted fishing expedition.

17           To obtain jurisdictional discovery, a plaintiff must first make a showing that

18    there is a "colorable basis" for personal jurisdiction over the defendant in question

19    by coming forward with "some evidence" supporting jurisdiction.  *See Symettrica*

20    *Ent.*, 2019 WL 8806093, at *5 (citing *Lang v. Morris*, 823 F. Supp. 2d 966, 979

21           [12] Plaintiffs incorrectly assert that the Court can exercise "pendent personal
22    jurisdiction" over "the MindGeek Defendants" (which is defined to include
      Bergmair) because the Court has jurisdiction over two MindGeek corporate
23    defendants.  (Opp. at 1 & n.1, 75–76.)  But this doctrine only permits a court to hear
      a claim against a defendant for which there is no personal jurisdiction when it arises
24    from a common nucleus of facts as another claim against that defendant *for which*
      *the court already has personal jurisdiction*.  *See Action Embroidery Corp. v.*
25    *Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004) ("When a
      defendant must appear in a forum to defend against one claim, it is often reasonable
26    to compel that defendant to answer other claims in the same suit.").  This doctrine
      does not operate to allow a court to assert personal jurisdiction over a defendant
27    simply because it has jurisdiction over his co-defendants.  Here, pendent personal
      jurisdiction is irrelevant because plaintiffs have not shown that the Court has
28    jurisdiction over Bergmair with respect to *any* of their claims against him.

(N.D. Cal. 2011)); *Mocha Mill, Inc. v. Port of Mokha, Inc.*, 2019 WL 1048252, at *7 (N.D. Cal. Mar. 5, 2019) (to obtain jurisdictional discovery, plaintiff must first "provide the Court with 'specific facts, transactions, or conduct that would give rise to personal jurisdiction'" (quoting *Getz v. Boeing*, 654 F.3d 852, 860 (9th Cir. 2011))); *Panterra Networks, Inc. v. Convergence Works, LLC*, 2009 WL 4049956, at *4 (N.D. Cal. Nov. 20, 2009) (to justify being allowed to conduct jurisdictional discovery, plaintiff must first produce "some evidence" establishing personal jurisdiction).

In addition, jurisdictional discovery is not warranted unless a plaintiff can demonstrate how the discovery he seeks would demonstrate jurisdiction over the defendant. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995); *Symettrica Ent.*, 2019 WL 8806093, at *5; *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 934 (D. Or. 2020) (denying jurisdictional discovery where plaintiff failed to explain "how jurisdictional discovery might demonstrate that [defendants] are subject to personal jurisdiction"); *Lang*, 823 F. Supp. 2d at 979 (denying jurisdictional discovery where plaintiffs failed to "provide[] any detail to the Court as to what discovery would establish").

As the Ninth Circuit has made clear repeatedly, where a plaintiff's claim of personal jurisdiction "appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom*, 49 F.3d at 562). *See Getz*, 654 F.3d at 860 (affirming district court's denial of jurisdictional discovery where plaintiffs made only "speculative allegations of attenuated jurisdictional contacts" and failed to identify any "specific facts, transactions, or conduct" that would give rise to personal jurisdiction); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of jurisdictional discovery where plaintiff's request was "based on little more than a hunch that it might yield jurisdictionally relevant facts"); *Butcher's Union*

1    *Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (affirming denial

2    of jurisdictional discovery where plaintiffs made only "conclusory" allegations and

3    did not provide any detail regarding how discovery would enable them to

4    demonstrate jurisdiction).

5        Here, plaintiffs have not supported their claim of personal jurisdiction over

6    Bergmair with evidence, and have failed to establish a "colorable basis" for such

7    jurisdiction.  Plaintiffs' sole remaining theory of jurisdiction over Bergmair is that

8    he is the alter ego of MG US and MG Global.  (Opp. at 5, 70.)  However, as

9    described above, the Complaint's allegations do not even come close to establishing

10   an alter ego relationship between Bergmair and those entities.  The Complaint does

11   not contain a single allegation of any involvement by Bergmair in the affairs of

12   those two companies, other than its blunderbuss allegations that all the MindGeek

13   corporate and individual defendants are alter egos of one another, which are exactly

14   the type of conclusory allegations that courts have repeatedly found to be

15   insufficient.  *See supra* at 8-9.  The Complaint's allegations that other, unnamed

16   corporate affiliates engaged in vaguely described transactions that did not respect

17   corporate separateness say nothing about the specific relationship between

18   Bergmair and MG US and MG Global.  *See supra* at 9-13.  And even if such

19   allegations could somehow be construed as raising an inference that MG US and

20   MG Global failed to observe corporate separateness, they do not suggest anything

21   about Bergmair's relationship to these entities.  *See supra* at 13.  In any event, these

22   allegations are contradicted by the Andreou Declaration attesting that both MG US

23   and MG Global observe all corporate formalities.  (Andreou Declaration ¶¶ 15, 23.)

24       In addition, as discussed above, plaintiffs' alter ego claim with respect to

25   Bergmair fails on an even more fundamental level.  First, the particular actions

26   attributed to Bergmair in the Complaint – oversight of corporate strategy and

27   approval of major decisions – have specifically been found to be inconsistent with

28   alter ego status in numerous Ninth Circuit cases.  *See supra* at 15-16.  More

20

1    specifically, the Complaint's allegations that individuals at MindGeek *other* than

2    Bergmair "controlled all the elements" of its business and possessed "daily

3    operational control" of the company (Compl. ¶¶ 93, 100, 109, 119) is fatal to any

4    alter ego claim. *See supra* at 14-15.

5         Finally, plaintiffs' claim for jurisdictional discovery is deficient because it

6    fails to identify what discovery it seeks and how such discovery might demonstrate

7    that Bergmair is subject to personal jurisdiction. (Opp. at 76–77.) Indeed, because

8    the Complaint itself confirms that Bergmair is not in "daily operational control" of

9    the company, and at most is alleged only to perform functions consistent with his

10   investor status, there is no discovery that would overcome these disqualifying facts

11   and make out a viable claim that Bergmair is the alter ego of MG US, MG Global

12   or any other MindGeek entity. *Pebble Beach*, 453 F.3d at 1160 (where plaintiff's

13   theory of jurisdiction over defendant was legally insufficient, denial of

14   jurisdictional discovery was proper); *Terracom*, 49 F.3d at 562 (affirming denial of

15   jurisdictional discovery where plaintiff "failed to demonstrate how further

16   discovery would allow it to contradict [defendant's] affidavits").[13]

17        In short, plaintiffs' request here is precisely the situation described by the

18   Ninth Circuit in *Pebble Beach* and *Terracom*, in which it held that, where a

19   plaintiff's claim of personal jurisdiction "appears to be both attenuated and based

20   on bare allegations in the face of specific denials made by the defendants, the Court

21   need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160 (quoting

22   *Terracom*, 49 F.3d at 562). Plaintiffs' alter ego allegation is undeniably

23   "attenuated," since the only allegations even arguably supporting it are those

24   regarding the supposed lack of corporate separateness of other, unnamed affiliates

25   of MindGeek and not the specific pairs of alter egos it asserts (Bergmair and MG

26   _____

27   [13] *See also Wild v. Preventive Pest Control, LLC*, 2019 WL 2871155, at *6
     (C.D. Cal. May 29, 2019) (Carney, J.); *Torres v. Ford Motor Co.*, 2018 WL
     4182487, at *2 (C.D. Cal. Aug. 30, 2018) (Carney, J.).

28

US and Bergmair and MG Global).  Similarly, the Complaint's "bare allegations"
of lack of corporate separateness on the part of MG US and MG Global are
contradicted by the Andreou Declaration.

District courts have frequently denied jurisdictional discovery where, as here,
plaintiffs have failed to make a sufficient evidentiary showing supporting their alter
ego claims.  *See, e.g.*, *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997–98
(C.D. Cal. 2013) (where plaintiff offered no evidence that defendant controlled day-
to-day operations of corporation, and defendant proffered declaration attesting to its
corporate separateness, jurisdictional discovery would amount to "nothing more
than a fishing expedition"); *Reynolds*, 481 F. Supp. 3d at 1005–06, 1010 (where
plaintiff's alter ego allegations rested, in part, on claim about defendant's
relationship with affiliated company other than supposed alter ego, and defendant
submitted affidavit regarding independence of claimed alter ego, jurisdictional
discovery was denied since plaintiff "offer[ed] no more than a hunch that discovery
would yield jurisdictionally relevant facts"); *Martinez v. Manheim Central
California*, 2011 WL 1466684, at *3, *5–6 (E.D. Cal. Apr. 18, 2011) (finding that
plaintiffs' allegations that defendants shared headquarters and board director were
insufficient to justify discovery regarding claimed alter ego relationship, and
rejecting plaintiffs' argument that he was entitled to such discovery because
information about the relationship of the corporate entities was "peculiarly" in
defendants' possession).[14]  As a result, jurisdictional discovery is not warranted.

## II.    PLAINTIFFS FAILED TO STATE A CLAIM AGAINST BERGMAIR.

Plaintiffs' Opposition concedes the inadequacy of the Complaint's
allegations against Bergmair on the merits, not even addressing the arguments in

---

[14] *See also Panterra*, 2009 WL 4049956, at *3–4 (denying request where
plaintiff made only conclusory alter ego allegations and "failed to identify . . . the
jurisdictional discovery it proposes that it be allowed to conduct or explain how
such discovery would illuminate the jurisdictional issues").

1  Bergmair's Opening Brief.  Just as with their jurisdictional allegations, plaintiffs

2  instead retreat to an alter ego theory in an attempt to paper over the substantive

3  deficiency of their allegations, but their alter ego claims are insufficient in this

4  context as well.

5      In his Opening Brief, Bergmair demonstrated that general allegations of

6  corporate control, like those made against him here, are insufficient to state a claim.

7  Although the Complaint asserts 18 separate claims against Bergmair, each with

8  separate elements, it literally does not identify a single concrete act taken by him

9  giving rise to any of these claims.  Its bare allegations do not come close to

10  satisfying the specific elements of sex trafficking, civil RICO, and the multiple

11  other causes of action asserted by plaintiffs.  Such conclusory allegations fall far

12  short of justifying plaintiffs' attempt to hold an individual – who is alleged to be at

13  most a mere shareholder of MindGeek – responsible for the conduct of corporate

14  entities.  (Bergmair Br. at 27–29.)

15      With no even-halfway-plausible counter-argument, plaintiffs virtually

16  concede that they have failed to state a claim against Bergmair, meaning that, even

17  if they could demonstrate jurisdiction over him, their case against him must still be

18  dismissed.  Plaintiffs primarily focus their alter ego argument on the issue of

19  personal jurisdiction, but make several scattered references to the alter ego theory in

20  their Opposition in a half-hearted attempt to throw in some argument why their

21  claims against Bergmair are adequately pled.  (Opp. at 49, 64.)  But their alter ego

22  claim fares no better in this context.  As demonstrated above, plaintiffs broad-brush

23  allegations and the Complaint's acknowledgement that Bergmair was merely an

24  investor and not in daily operational control of MindGeek, are insufficient to

25  establish such a relationship between Bergmair and either MG US or MG Global

26  and cannot serve as the basis for liability.[15]

27

28  [15] Plaintiffs incorrectly suggest that Bergmair conceded that the Complaint adequately pled the California statutory and common law claims.  (Opp. at 62 n.32.)

1    Plaintiffs similarly attempt to justify their deficient allegations – which
2  repeatedly lump all defendants together by attributing conduct generically to
3  "MindGeek" or "the MindGeek Defendants" – by arguing that they are permitted to
4  engage in "group pleading" and sort out the specifics later through discovery.
5  (Opp. at 42, n.10, 54.)  This argument is meritless.  Indeed, in a recent similar case
6  involving claims against an adult entertainment website, the Court granted a motion
7  to dismiss due to such impermissible group pleading.  *See Doe v. WebGroup Czech*
8  *Republic*, No. 2:21-cv-02428–VAP-SKx, slip op. at 21-24 (C.D. Cal. Jan. 13,
9  2022), ECF No. 162.  *See also Mujica v. AirScan, Inc.*, 771 F.3d 580, 593 (9th Cir.
10  2014) ("plaintiffs must satisfy the pleading requirements of Rule 8 *before* the
11  discovery stage, not after it" (emphasis in original) (citing *Ashcroft v. Iqbal*, 556
12  U.S. 662, 678-79 (2009))).  Moreover, plaintiffs offer no support for their
13  argument.  In three of the four cases they cite, the group pleading related to multiple
14  corporate entities in a single corporate family.[16]  Nothing in those cases suggests
15  that an individual defendant like Bergmair can properly be lumped in with ten other
16  corporate and individual defendants and be required to guess which of the
17  Complaint's hundreds of general references to MindGeek concern him.  In the one
18  case involving individual defendants, this Court did not offer the blanket approval
19  of group pleading that plaintiffs here suggest.  Instead, the Court initially dismissed
20  the complaint due to impermissibly vague group pleading, and only found the
21  amended complaint sufficient where it attached a chart listing the details of
22  hundreds of thousands of allegedly false claims and tying each one to a specific

23  ─────────────

24  As noted in his Opening Brief, Bergmair joins in the motions of the other
   defendants challenging the sufficiency of all the California state law claims.
25  (Bergmair Br. at 34–35.)

26     [16] Opp. at 42, n.10 (citing *Waldrup v. Countrywide Fin. Corp.*, 2015 WL
   93363, at *8 (C.D. Cal. Jan. 5, 2015); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg.,
27  Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 976–77 (N.D. Cal.
   2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab.
28  Litig.*, 2017 WL 4890594, at *11 (N.D. Cal. Oct. 30, 2017)).

defendant. *See State Comp. Ins. Fund v. Khan*, 2013 WL 12132027, at *4 (C.D. Cal. July 30, 2013) (Carney, J.).

As a result, even if the Court had jurisdiction over Bergmair, the Complaint's claims against him must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For these reasons, the Court should dismiss plaintiffs' Complaint with prejudice both for lack of personal jurisdiction and for failure to state a claim for relief.

Dated: January 24, 2022  RONALD G. WHITE
            DAN MARMALEFSKY
            ANDRE FONTANA
            MORRISON & FOERSTER LLP


            By:   */s/ Ronald G. White*
              Ronald G. White

            Attorneys for Defendant
            BERND BERGMAIR