1  WIECHERT, MUNK & GOLDSTEIN, PC
   David W. Wiechert (SBN 94607)
2  27136 Paseo Espada, Suite B1123
   San Juan Capistrano, CA 92675
3  Phone: (949) 361-2822
   Facsimile: (949) 361-5722
4  Email: dwiechert@aol.com

5  COHEN & GRESSER LLP
6  Jason Brown (admitted *pro hac vice*)
   Nathaniel P. T. Read (admitted *pro hac vice*)
7  Colin C. Bridge (admitted *pro hac vice*)
   800 Third Avenue
8  New York, New York 10022
   Phone: (212) 957-6000
9  Facsimile: (212) 957-4514
   Email: jbrown@cohengresser.com
10 Email: nread@cohengresser.com
   Email: cbridge@cohengresser.com
11
12 *Attorneys for Defendant*
   *Feras Antoon*

13                UNITED STATES DISTRICT COURT

14         FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 SERENA FLEITES and JANE DOE          Case No. 21-cv-04920-CJC-ADS
   DOS. 1 through 33,
17                                       **REPLY IN FURTHER SUPPORT
              Plaintiffs,                OF MOTION TO DISMISS THE
18     v.                                COMPLAINT (DKT No. 1) ON
                                         BEHALF OF DEFENDANT
19 MINDGEEK S.A.R.L., a foreign entity;  FERAS ANTOON**
   MG FREESITES, LTD., a foreign entity;
20 MINDGEEK USA INCORPORATED, a
   Delaware corporation; MG PREMIUM
21 LTD, a foreign entity; RK HOLDINGS    **Date: February 14, 2022**
   USA INC., a Florida corporation, MG   **Time: 1:30 p.m.**
22 GLOBAL ENTERTAINMENT INC., a          **Courtroom: 9 B**
   Delaware corporation, TRAFFICJUNKY    **Judge: Hon. Cormac J. Carney**
23 INC., a foreign entity; BERND
   BERGMAIR, a foreign individual;
24 FERAS ANTOON, a foreign individual;
   DAVID TASSILLO, a foreign individual;
25 COREY URMAN, a foreign individual;
   VISA INC., a Delaware corporation;
26 COLBECK CAPITAL DOES 1-10; and
   BERGMAIR DOES 1-10
27
              Defendants.
28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

# **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................ 2

I.  THERE IS NO PERSONAL JURISDICTION OVER
    Mr. ANTOON ............................................................................... 2

    A.  The Complaint Fails To Plead That Any of The
        MindGeek Entities Are Mr. Antoon's Alter Ego................... 3

        1.  The Complaint Does Not Allege That Mr. Antoon
            And The MindGeek Entities Lack Separate
            Personalities ........................................................... 4

        2.  The Complaint Fails To Plead That Injustice
            Would Result If The MindGeek Entities' Acts
            Were Not Imputed To Mr. Antoon ............................ 6

        3.  Plaintiffs' Authorities Support Dismissal................. 8

    B.  Plaintiffs Cannot Rely on Agency To Establish
        Jurisdiction ................................................................... 10

    C.  The Complaint Fails To Plead Sufficient Contacts
        Between Mr. Antoon and California Or The United
        States ............................................................................ 11

    D.  The Court May Not Exercise Pendent Jurisdiction Over
        Any Claims Against Mr. Antoon. ................................... 12

    E.  The Exercise of Jurisdiction Over Mr. Antoon Would Be
        Unreasonable ................................................................ 13

    F.  The Court Should Deny Plaintiffs' Request for
        Jurisdictional Discovery ................................................ 13

II.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST
     MR. ANTOON ............................................................................ 14

    A.  The Complaint Engages in Improper Group Pleading ....... 15

    B.  The Alter Ego Doctrine Does Not Excuse Plaintiffs'
        Failure to Plead Legally Sufficient Claims...................... 20

III. CONCLUSION .......................................................................... 23

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ............................................................................. 12

*ADO Finance, AG v. McDonnell Douglas Corporation*,
   931 F. Supp. 711 (C.D. Cal. 1996) ................................................................. 9-10

*Allegro Consultants, Inc. v. Wellington Techs., Inc.*,
   No. 13-CV-02204-BLF, 2014 WL 4352344 (N.D. Cal. Sept. 2,
   2014) ......................................................................................................................... 6

*Angelini Metal Works Co. v. Hubbard Iron Doors, Inc.*,
   No. CV116392GHKPLAX, 2016 WL 6304476 (C.D. Cal. Jan. 5,
   2016) ..................................................................................................................... 5-6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 9, 14

*Baker v. Chin & Hensolt, Inc.*,
   No. C-09-4168 MMC, 2010 WL 1222783 (N.D. Cal. Mar. 24,
   2010) ......................................................................................................................... 7

*Beatport LLC v. SoundCloud Ltd*,
   No. CV 19-847 MRW, 2020 WL 3977602 (C.D. Cal. July 13,
   2020) ...................................................................................................... 11-12, 15-16

*Bell Atlantic Corporation v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 9, 14, 22

*Calder v. Jones*,
   465 U.S. 783 (1984) ............................................................................................. 2

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, &*
   *Products Liability Litigation*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................... 17-18

*Daimler v. AG Bauman*,
   571 U.S. 117 (2014) .......................................................................................... 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

*Data Disc, Inc. v. Sysm. Tech. Assocs.*,
  557 F.2d 1280 (9th Cir. 1977) ............................................................. 8

*Doe v. MindGeek*,
  2021 WL 4167054 (C.D. Cal. Sept. 3, 2021) ..................................19-20

*Doe v. WebGroup Czech Republic, a.s.*,
  No. 2:21-cv-02428-VAP-SK (C.D. Cal. Jan. 13, 2022) ....................... 16, 18, 22

*Federal Reserve Bank of San Francisco v. HK Systems*,
  No. C-95-1190 MHP, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) .................. 9

*Gerritsen v. Warner Bros. Ent. Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015).........................................20-21

*Gofron v. Picsel Techs., Inc.*,
  804 F. Supp. 2d 1030 (N.D. Cal. 2011) ............................................. 8

*Innovatel Servs. Inc. v. First Bridge Merch. Sols., LLC*,
  No. 220CV07681SBAGRX, 2021 WL 3415218 (C.D. Cal. Mar.
  19, 2021)........................................................................22

*Johnson v. Mitchell*,
  No. CIV S-10-1968 GEB, 2012 WL 1657643 (E.D. Cal. May 10,
  2012)...........................................................................14

*Kao v. Holiday*,
  58 Cal. App. 5th 199 (Cal. Ct. App. 2020) ......................................21

*Martinez v. Manheim Cent. California*,
  No. 1:10-CV-01511-SKO, 2011 WL 1466684 (E.D. Cal. Apr. 18,
  2011)...........................................................................14

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996).....................................................16

*Mehr v. Fed'n Internationale de Football Ass'n*,
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) ..........................................12

*Mieuli v. DeBartolo*,
  No. C-00-3225 JCS, 2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ...................9

*Pac. Coast Shipyards Pension Fund v. Nautical Eng'g, Inc.*,
  No. 12-05439 RS, 2014 WL 120637 (N.D. Cal. Jan. 13, 2014)......................21

- iii -

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ................................................................... 2, 3, 4

*Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-*
   *O.M.G. S.R.L.*, No. 13-CV-2700-BAS JLB, 2014 WL 5847440
   (S.D. Cal. Nov. 12, 2014) .................................................................... 4, 6-7

*Shin v. Time Squared Glob., LLC*,
   No. SACV1500943AGGJSX, 2015 WL 13284952 (C.D. Cal. Aug.
   26, 2015) ....................................................................................... 19

*Sihler v. Fulfillment Lab, Inc.*,
   2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) .................................... 8-9

*Sollberger v. Wachovia Sec., LLC*,
   No. SACV 09-0766AGANX, 2010 WL 2674456 (C.D. Cal. June
   30, 2010) ....................................................................................... 16

*State Compensation Insurance Fund v. Khan*,
   2013 WL 12132027 (C.D. Cal. July 30, 2013) ........................... 16-17

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ........................................................... 2

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
   No. LACV1901192CJCKLS, 2019 WL 8806093 (C.D. Cal. Sept.
   20, 2019) ..................................................................................... 3, 13

*Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*,
   No. 18-CV-1896-AJB-NLS, 2019 WL 3842995 (S.D. Cal. Aug.
   14, 2019) ..................................................................................... 4, 22

*Uhlig v. Fairn & Swanson Holdings, Inc.*,
   No. 20-CV-00887-DMS-MSB, 2020 WL 6872881 (S.D. Cal. Nov.
   23, 2020) ....................................................................................... 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.*
   *Litig.*,
   2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ................................. 18

*Waldrup v. Countrywide Financial Corporation*,
   2015 WL 93363 (C.D. Cal. Jan. 5, 2015) ........................................ 17

- iv -

*Zeiger v. WellPet LLC,*
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................ 12

**Statutes**

18 U.S.C. § 1964................................................................................. 11

18 U.S.C. § 1595................................................................................. 20

**Rules**

Fed. R. Civ. P. 8.........................................................9, 14, 17, 18-19

Fed. R. Civ. P. 9(b) ........................................................................ 17

Fed. R. Civ. P. 12(b)(6) ......................................... 1, 19, 20, 22

Fed. R. Civ. P. 20(a) ......................................................................... 1

Fed. R. Civ. P. 12(b)(2) ................................................................... 1

**Other Authorities**

Amended Application for Authorization to Institute a Class Action
   and to Obtain the Status of Representative,
   Jane Doe c. 9219-1568 Québec Inc. & als., No. 500-06-001115-
   209 (Can. Que. Sup. Ct. Nov. 29, 2021) ...................................... 8

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

# PRELIMINARY STATEMENT

Mr. Antoon's moving papers showed two independent grounds for dismissal (ECF No. 68 ("Antoon Br.")).  First, Plaintiffs have not met their burden to establish personal jurisdiction over Mr. Antoon.  Second, the Complaint[1] fails to state a claim against Mr. Antoon.  Plaintiffs' omnibus opposition briefing (ECF No. 94 ("Opp. Br.")) does not meaningfully rebut these points, showing that Mr. Antoon does not belong in this case.

Recognizing that their Complaint contains no facts supporting personal jurisdiction over Mr. Antoon, Plaintiffs rely on an alter ego theory, arguing that the contacts of certain entities should be imputed to Mr. Antoon.  But Plaintiffs have no facts showing that Mr. Antoon had the required unity of interest and domination over any entity to support disregarding the corporate form, nor can they show that fraud or injustice would result if the corporate form were not respected.

Plaintiffs similarly cannot provide sufficient facts to support plausible claims based on Mr. Antoon's own actions, and thus simply lump him in with other individual and entity defendants (without any factual basis), invoking as justification group pleading and the alter ego doctrine.  Such broad-brush methods fail to state legally cognizable claims.

Despite submitting a 179-page Complaint and a 101-page Opposition, Plaintiffs cannot show the required facts linking Mr. Antoon to this jurisdiction or their claims.  For these reasons, the Complaint should be dismissed with prejudice.[2]

---

[1] Capitalized terms not defined herein have the definitions given in Mr. Antoon's opening memorandum of law.

[2] The Court should also dismiss Plaintiffs' claims against Mr. Antoon for the reasons set forth in the concurrently filed reply memoranda of law submitted by the MindGeek Entities, Bernd Bergmair, David Tassillo, and Corey Urman pursuant to Rules 12(b)(2), 12(b)(6), and 20(a) of the Federal Rules of Civil Procedure, which Mr. Antoon joins and incorporates by reference.  In addition, pursuant to Mr.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

## <u>ARGUMENT</u>

## I.    THERE IS NO PERSONAL JURISDICTION OVER MR. ANTOON

It is Plaintiffs' burden to establish personal jurisdiction over each defendant, including Mr. Antoon. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  To meet the requirements of due process, the contacts of each defendant "must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).  The plaintiff must come forward with plausible jurisdictional facts; "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations" do not suffice. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

But Plaintiffs' omnibus opposition briefing, as did the Complaint, fails to show the specific, factual allegations required to establish jurisdiction over Mr. Antoon; instead, Plaintiffs assert unwarranted conflations of individuals and entities.  (*See, e.g.*, Opp. Br. at 74 n.40 (arguing there is an alter ego relationship between the MindGeek Entities and individual defendants because "[t]he *MindGeek Entities* admit that certain entities in California have" certain responsibilities (emphasis added)); Compl. ¶ 60 ("the MindGeek Defendants operate as a single business entity by, among other things . . . treating each other's assets as their own").)

Tacitly admitting that they cannot show jurisdiction over Mr. Antoon based on his own actions, Plaintiffs are forced principally to rely on the assertion that Mr. Antoon and the two California-based MindGeek Entities are alter egos.  (*See* Opp. Br. at 70-74.).  But neither Plaintiffs' alter ego arguments nor their other, cursory

Antoon's previously-filed Joinder (ECF No. 82) in the MindGeek Entities' Motion to Sever and Dismiss Jane Does Nos. 1 through 33 (ECF No. 75) (the "Motion to Sever"), the court should grant the Motion to Sever as to Mr. Antoon for the reasons set forth in the MindGeek Entities' reply memorandum of law.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE**
**COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

1    attempts at showing jurisdiction staves off dismissal.  And because Plaintiffs have

2    failed to show a *prima facie* case of jurisdiction and do not explain how

3    jurisdictional discovery could remedy the Complaint's defects, Plaintiffs' request

4    for jurisdictional discovery should be denied.

5

6    **A.**    **The Complaint Fails To Plead That Any of The MindGeek Entities Are Mr. Antoon's Alter Ego**

7

8         Plaintiffs contend that this Court may exercise general jurisdiction over Mr.

9    Antoon "based on the jurisdictional contacts of" the two California-based

10    MindGeek Entities, MindGeek USA Inc. ("MG US") and MindGeek Global

11    Entertainment Inc. ("MG Global").  (Opp. Br. at 70.)  But, as explained in Mr.

12    Antoon's Motion to Dismiss, the Complaint falls far short of pleading facts

13    sufficient to provide a basis for imputing MG US's or MG Global's (or any other

14    MindGeek Entity's) jurisdictional contacts to Mr. Antoon on an alter ego theory.

15    (*See* Antoon Br. at 12-13.)[3]

16         For the alter ego doctrine to apply and the corporate form to be ignored, the

17    Complaint must plead facts showing "(1) that there is such unity of interest and

18    ownership that the separate personalities of the corporation and the individuals no

19    longer exist and (2) that failure to disregard the corporation would result in fraud

20    or injustice." *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, No.

21    LACV1901192CJCKLS, 2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019)

22    (quoting *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)).

23    Failure to establish either prong means the plaintiff has failed to meet their burden.

24

25    ---

   [3] In a footnote, Plaintiffs contend that "the alter ego relationship among the MindGeek Entities and Individual Defendants confers *specific* jurisdiction over the

26    MindGeek Defendants."  (Opp. Br. at 74 n.40) (emphasis added).  But the Complaint's failure to plead an alter ego relationship between Mr. Antoon and *any*

27    MindGeek Entity dooms any attempt to establish specific jurisdiction on an alter ego theory.

28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

*See Ranza*, 793 F.3d at 1075 n.9 (because plaintiff did not show the nonexistence of separate personalities between individual and corporation, "we need not analyze the 'fraud or injustice' prong"); *Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, No. 13-CV-2700-BAS JLB, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014) (because plaintiff failed "to establish the second prong of the alter-ego analysis, the Court need not address the first prong"). As discussed below, Plaintiffs here have failed to show either prong.

> **1.    The Complaint Does Not Allege That Mr. Antoon And The MindGeek Entities Lack Separate Personalities**

To show the required unity of interest and ownership under the first prong, the plaintiff must allege facts showing "pervasive control . . . such as when a parent corporation dictates every facet of the subsidiary's business." *Ranza* 793 F.3d at 1073 (citation and quotation marks omitted).  Plaintiffs cannot establish this control through conclusory allegations.  *See, e.g.*, *Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*, No. 18-CV-1896-AJB-NLS, 2019 WL 3842995, at *6 (S.D. Cal. Aug. 14, 2019) (rejecting as insufficient conclusory allegations that defendants "dominated, influenced, and controlled each other and the officers of one another, as well as the business, property, and affairs of each other" (citation omitted)).

The Complaint's scant factual allegations regarding Mr. Antoon do not establish that he had such pervasive control over MG US or MG Global.  Instead, the Complaint makes plain that Mr. Antoon was a minority stakeholder and did not have ultimate control over the MindGeek Entities.  For example, the Complaint makes the vague allegation that Mr. Antoon "is the co-owner and CEO of MindGeek," (Compl. ¶ 53) but later pleads that Mr. Antoon and other so-called Bro-Club members had "daily operational control" of the MindGeek Entities (as is

- 4 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

1    typical of senior executives) and answered to others, including a new set of owners

2    who obtained overall control over those entities in 2013 (Compl. ¶ 119.)[4]

3         Elsewhere, the Complaint confirms Mr. Antoon's limited control over the

4    MindGeek Entities (including MG US and MG Global), stating that Mr. Antoon

5    was among the "MindGeek executives" who were "controlled by and directed by

6    MindGeek's financiers." (Compl. ¶ 537.) These "uber-wealthy owners" are the

7    supposed "over-bosses" of the entities and "are unknown" to Mr. Antoon. (Compl.

8    ¶ 3; *see also* Compl. ¶ 118 ("Despite their . . . control of the company . . . the

9    identities of [these financiers] . . . remained unknown even to Feras Antoon.")

10   And the Complaint also asserts that Mr. Bergmair, not Mr. Antoon, "is the majority

11   owner of MindGeek" (without specifying which entity that might be). (Compl. ¶

12   51.) Despite their insinuation of impropriety, Plaintiffs here describe a common

13   structure whereby Mr. Antoon and other senior executives attend to day-to-day

14   corporate affairs. And the allegations regarding ultimate control undercut

15   Plaintiffs' alter ego theory because the control alleged in the Complaint is not

16   concentrated in any single person's hands, let alone Mr. Antoon's.

17        Plaintiffs' facts thus show, at best, that Mr. Antoon had *some* degree of

18   control over an international group of companies in which he had *some* ownership

19   stake and that the group of companies was ultimately owned and controlled by

20   unnamed individuals unknown to Mr. Antoon. If Plaintiffs' allegations were

21   enough to show jurisdiction, alter ego would be established for every executive in

22   or part owner of a multi-national group of companies, which of course is not the

23   law. Indeed, courts routinely reject alter ego theories based on allegations of far

24   greater domination and control than Plaintiffs make here. *See, e.g.*, *Angelini Metal*

25

26   [4] The Complaint also alleges that Mr. Antoon had an unnamed "shell company
     through which he would sign exclusive deals" with porn performers, but Plaintiffs
27   have not sued that company, do not allege where it is headquartered or operates,
     and do not assert that it has anything to do with Plaintiffs' claims. (Compl. ¶ 154.)
28

- 5 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

*Works Co. v. Hubbard Iron Doors, Inc.*, No. CV116392GHKPLAX, 2016 WL
6304476, at *3, *7 (C.D. Cal. Jan. 5, 2016) (complaint "contain[ed] no specific
allegations to suggest that there was no separation between" Texas LLC and its
owner and sole managing member); *Uhlig v. Fairn & Swanson Holdings, Inc.*, No.
20-CV-00887-DMS-MSB, 2020 WL 6872881, at *3 (S.D. Cal. Nov. 23, 2020)
(allegations that individual defendants controlled company and were its sole
members, officers, and owners "alone [did] not establish the requisite level of
control for alter ego jurisdiction").

      The Complaint does not contain any facts showing that Mr. Antoon engaged
in conduct that would "typically suggest an alter ego relationship in California:
commingling of funds, the individual's treatment of corporate assets as his own,
disregard of legal formalities and the failure to maintain arm's length relationships
among related entities, or diversion or manipulation of assets." *Allegro
Consultants, Inc. v. Wellington Techs., Inc.*, No. 13-CV-02204-BLF, 2014 WL
4352344, at *6 (N.D. Cal. Sept. 2, 2014) (concluding plaintiff failed to make a
prima facie case of personal jurisdiction over company's co-founder absent
evidence of such factors); *see also* Opp. Br. at 71-72 (citing Compl. ¶¶ 60, 70, 83,
93-94, 119-21, 139-61) (offering no facts showing Mr. Antoon using any of the
MindGeek Entities' assets for his personal use).

      In sum, the Complaint does not allege that Mr. Antoon had such pervasive
control over either MG US or MG Global (or any of the MindGeek Entities, for
that matter) that they may be viewed as his alter egos.

      **2.**    **The Complaint Fails To Plead That Injustice Would Result
If The MindGeek Entities' Acts Were Not Imputed To Mr.
Antoon**

      For Plaintiffs to satisfy the second prong of the alter ego test, "there must be
an inequitable result if the acts in question are treated as those of the corporation

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

alone." S*himmick*, 2014 WL 5847440, at *6 (quoting *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011)). Plaintiffs cannot rely on conclusory allegations to meet this prong either. *See, e.g.*, *Shimmick*, 2014 WL 5847440, at *7 (conclusory allegation held "no weight in [the court's] jurisdictional analysis").

Here, the Complaint fails to allege any facts to show that "fraud or injustice" would result if the acts of MG US or MG Global were not attributed to Mr. Antoon. For example, the Complaint does not plead that either MG US or MG Global are (or were) undercapitalized by Mr. Antoon, or that Mr. Antoon depleted their assets to avoid payment of a possible judgment that might be rendered against them. Without such allegations, the Complaint fails to establish that "fraud or injustice" would result if Mr. Antoon were not deemed the alter ego of MG US or MG Global. *Baker v. Chin & Hensolt, Inc.*, No. C-09-4168 MMC, 2010 WL 1222783, *4 (N.D. Cal. Mar. 24, 2010) (dismissing claim against individual because factual allegations were insufficient to show corporation was his alter ego). Similarly, the absence of facts suggesting that a judgment for Plaintiffs could not be satisfied because of any action by Mr. Antoon means the Complaint fails to satisfy the second prong of the alter ego test. *See Shimmick*, 2014 WL 5847440, at *7 (concluding piercing the veil to obtain jurisdiction over individual would be improper where, among other things, there were no facts before the court suggesting plaintiff could not be made whole without his participation).

Further, there is unrebutted evidence before the Court that each of the corporate defendants here is adequately capitalized and has its own board of directors (or equivalent). (ECF No. 72-3, Declaration of Andreas Alkiviades Andreou In Support of the MindGeek Defendants' Motion to Dismiss.) Plaintiffs offer no factual or other basis for challenging this evidence, and thus, even if the Complaint were to plead facts indicating that MG US and MG Global were

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

1  undercapitalized, the Court could not rely on such allegations to assert jurisdiction

2  over Mr. Antoon.  *See Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc., 557 F.2d 1280,

3  1284 (9th Cir. 1977) (Courts "may not assume the truth of allegations in a pleading

4  which are contradicted by affidavit."); *see also, e.g.*, *Gofron v. Picsel Techs., Inc.*,

5  804 F. Supp. 2d 1030, 1037 (N.D. Cal. 2011) (concluding plaintiffs could not rest

6  on allegations to establish jurisdiction where defendant nonresident company had

7  submitted an affidavit contradicting their allegations).

8      Finally, Plaintiffs can bring claims against Mr. Antoon in Canada; indeed,

9  one Plaintiff is a citizen of Canada (*see* Compl. ¶ 25) and certain similar claims are

10  pending against Mr. Antoon there.  *See* Amended Application for Authorization to

11  Institute a Class Action and to Obtain the Status of Representative, Jane Doe c.

12  9219-1568 Québec Inc. & als., No. 500-06-001115-209 (Can. Que. Sup. Ct. Nov.

13  29, 2021), *available at* https://www.registredesactionscollectives.quebec/en/Fichier

14  /Document?NomFichier=8810.pdf (last visited Jan. 16, 2022).

15      Plaintiffs have not and cannot show that fraud or injustice would result if

16  Mr. Antoon is not deemed to be an alter ego of MG US or MG Global (or any

17  other defendant) for jurisdictional purposes, a finding for which Plaintiffs have

18  offered no factual support.

19          **3.    Plaintiffs' Authorities Support Dismissal**

20

21      Plaintiffs' cited authority supports dismissal.  (*See* Opp. Br. at 70-71 (citing

22  cases).)  For example, *Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436 (S.D. Cal.

23  Dec. 8, 2020) (cited in Opp. Br. at 71) rejected plaintiffs' arguments that the

24  individual defendant was the alter ego of the corporation, in part because the

25  plaintiffs had abandoned that argument in their opposition.  *Id.* at *6.  The *Sihler*

26  court instead exercised personal jurisdiction over the individual defendant because

27  the plaintiffs had "alleged sufficient facts and offered sufficient evidence to make a

28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

1   prima facie showing that Defendant Nelson directly participated in the alleged
2   misconduct purposefully directed at California." *Id.* at *7.
3       Plaintiffs' reliance on *Federal Reserve Bank of San Francisco v. HK*
4   *Systems*, No. C-95-1190 MHP, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) and
5   *Mieuli v. DeBartolo*, No. C-00-3225 JCS, 2001 WL 777447, at *10 (N.D. Cal. Jan.
6   16, 2001), is also unavailing.  In *HK Systems*, the court reasoned that, "[u]nder the
7   liberal pleading requirements of the Federal Rules and viewed in the light most
8   favorable to the Fed," allegations that a parent company "dominated and
9   controlled" "to such an extent that the individuality and separateness of the
10  subsidiary had ceased," among other things, "implicate[d] a variety of" the factors
11  relevant to the alter ego analysis.  1997 WL 227955 at *6.  In *Mieuli*, the court
12  exercised personal jurisdiction over an individual who allegedly dominated the
13  general partner of a limited partnership to such an extent that he acted as the *de*
14  *facto* general partner and thus could be held directly liable on a theory of *de facto*
15  partnership.  *See id.* at *10.
16      The Complaint contains no facts showing that Mr. Antoon dominated either
17  MG US or MG Global.  By contrast, as explained above, the Complaint states that
18  Mr. Antoon was not the majority owner of the MindGeek Entities and did not
19  actually control them.[5]
20      And the court in *ADO Finance, AG v. McDonnell Douglas Corporation*, 931
21  F. Supp. 711 (C.D. Cal. 1996) was presented with a strong evidentiary showing
22  that a corporation's owner dominated his purported alter ego corporation.  Among
23  other things, the court was presented with testimony from the corporation's Rule
24
25  ───────────
    [5] *HK Systems* or *Mieuli*, which were decided before the Supreme Court's decisions
26  in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v.*
    *Twombly*, 550 U.S. 544 (2007), also cannot provide support for Plaintiffs'
27  perfunctory argument that the Complaint states a claim against Mr. Antoon that
    satisfies Federal Rule of Civil Procedure 8(a).
28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

30(b)(6) witness that the individual, who solely owned its parent companies, appointed the corporation's Board, directed the corporation's business decisions, and managed the corporation's daily operations. *Id.* at 718. Again, while this strong showing of domination and control was sufficient in ADO for a *prima facie* showing of jurisdiction based on an alter ego theory, the Complaint alleges that Mr. Antoon did not have the final say in the MindGeek Entities' strategy decisions and was a minority stakeholder. (*See supra* Section I.A.1.)

In short, Plaintiffs' authorities highlight the Complaint's deficient allegations of alter ego and support dismissal.

## B. Plaintiffs Cannot Rely on Agency To Establish Jurisdiction

In cursory fashion, Plaintiffs assert that "[t]his Court has personal jurisdiction over each of the MindGeek Entities and Individual Defendants based on the jurisdictional contacts of their agents/alter egos MG USA and MG Global," suggesting that exercising jurisdiction over the individual defendants (including Mr. Antoon) may be proper under an agency theory. (Opp. Br. at 70.) But Plaintiffs have no answer to the invalidation of the "Ninth Circuit's agency test for purposes of general jurisdiction" by *Daimler v. AG Bauman*, 571 U.S. 117 (2014). (Antoon Br. at 8 (quoting *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016))). Plaintiffs also do not and cannot argue that the Complaint sufficiently alleges that any of the MindGeek Entities acted as Mr. Antoon's agent for purposes of specific jurisdiction. (*See* Antoon Br. at 13-14.) Plaintiffs have essentially abandoned their agency theory, and, for the reasons set forth in Mr. Antoon's opening memorandum of law, agency cannot be used to show jurisdiction over Mr. Antoon. (*See* Antoon Br. at 8, 13-14.)

- 10 -
**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

### C.    The Complaint Fails To Plead Sufficient Contacts Between Mr. Antoon and California Or The United States

Plaintiffs make a barebones attempt to argue that even absent an alter ego relationship with MG US or MG Global, Mr. Antoon has sufficient minimum contacts with California and the United States to satisfy the requirements of specific jurisdiction; indeed, Plaintiffs do not even mention Mr. Antoon by name on this point.  (*See* Opp. Br. at 74 n. 40 ("even absent alter ego allegations, this Court may exercise specific jurisdiction over the MindGeek Defendants because the MindGeek Entities have created numerous shell companies located in California"), Opp. Br. at 75 ("[t]he Complaint alleges each defendants' minimum contacts with the United States sufficient to confer jurisdiction").)  But Plaintiffs overlook the Complaint's failure to allege any facts showing that Mr. Antoon did anything relevant to Plaintiffs' claims, much less took action directed at California or at the United States; this failure means Mr. Antoon has insufficient contacts with either forum to satisfy the requirements of due process.  (*See* Antoon Br. at 8-11, 14-16.)[6]  Instead, Plaintiffs again resort to impermissibly lumping Mr. Antoon together with other individuals and the MindGeek Entities to create the illusion of sufficient jurisdictionally relevant contacts.  (*See, e.g.*, Opp. Br. at 75.)  "It's obviously conclusory for a litigant to say that A and B (and C and D) all did the same thing to me, without making any attempt to distinguish between the parties or to explain in any way the basis for their alleged culpability."  *Beatport LLC v. SoundCloud Ltd*, No. CV 19-847 MRW, 2020 WL 3977602, at *6 (C.D. Cal. July 13, 2020) (dismissing nonresident defendant because, among other things,

---

[6] Plaintiffs appear to misunderstand Mr. Antoon's argument on jurisdiction under 18 U.S.C. § 1964.  (*See* Opp. Br. at 75 n.42.)  Mr. Antoon contends that, because service here was not effected pursuant to RICO's service provisions, 18 U.S.C. § 1964 provides no basis for applying the national contacts test to determine whether the requirements of specific jurisdiction have been satisfied.  (*See* Antoon Br. at 15.)

- 11 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

1    pleadings "trie[d] to transfer [parent's] contacts with California to those of its

2    subsidiary"). For the reasons set forth in Mr. Antoon's opening memorandum of

3    law, where (as here) there has been no showing of an alter ego or agency

4    relationship, one defendant's jurisdictional contacts cannot be attributed to another,

5    and the Complaint fails to establish specific jurisdiction over Mr. Antoon. (*See*

6    Antoon Br. at 8-11, 14-16; *see also Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837,

7    848-49 (N.D. Cal. 2018) (disregarding allegations grouping defendants together);

8    *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1052 (N.D.

9    Cal. 2015) (no jurisdiction where none of the alleged California contacts had

10   anything to do with plaintiffs' claims)).

11
       **D.    The Court May Not Exercise Pendent Jurisdiction Over Any**
12          **Claims Against Mr. Antoon.**

13          Plaintiffs assert that because "the MindGeek Defendants have conceded for

14   the purposes of this Motion that this Court has jurisdiction over claims brought by

15   the California plaintiffs, this Court may exercise pendent personal jurisdiction over

16   the remaining claims brought by the non-California plaintiffs." (Opp. Br. at 75

17   (citation omitted).) But of course Mr. Antoon has not conceded that exercising

18   personal jurisdiction over *any* of the claims asserted against him is proper. (*See*

19   Antoon Br. at 6-17.) And pendent jurisdiction cannot be used across defendants; it

20   only applies to claims against the same defendant "for which there is no

21   independent basis of personal jurisdiction so long as it arises out of a common

22   nucleus of operative facts with a claim in the same suit over which the court does

23   have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368

24   F.3d 1174, 1180 (9th Cir. 2004). The Complaint asserts no claims against Mr.

25   Antoon over which personal jurisdiction exists, and thus pendent jurisdiction

26   cannot be applied to establish personal jurisdiction over Mr. Antoon. (*See* Antoon

27   Br. at 6-17.)

28

- 12 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

**E.    The Exercise of Jurisdiction Over Mr. Antoon Would Be Unreasonable.**

In their usual cursory fashion, Plaintiffs contest Mr. Antoon's showing that exercising jurisdiction over him would be unreasonable solely by improperly lumping him in with other defendants.  (*See, e.g.*, Opp. Br. at 76 ("Plaintiffs allege that the MindGeek Enterprise, under the control of the Individual Defendants, created shell entities in California . . . .").)  Tellingly, Plaintiffs do not cite the Complaint to support their argument that Mr. Antoon "purposely injected [himself] into the forum state's affairs."  (Opp. Br. at 76.)  That is because the Complaint contains no facts supporting this assertion.

Plaintiffs also offer nothing to counter Mr. Antoon's argument that, given the availability of a superior alternative forum (Canada, where Mr. Antoon resides), the Court's lack of interest in adjudicating claims against Mr. Antoon that have nothing to do with what he did in California or the United States, and the undue burden on Mr. Antoon of litigating here, exercising jurisdiction over him in this action would be unreasonable.  (*See* Antoon Br. at 17.)  And so, for the reasons set forth in Mr. Antoon's opening memorandum of law, exercising jurisdiction over him in this action would be unreasonable.

**F.    The Court Should Deny Plaintiffs' Request for Jurisdictional Discovery.**

The Plaintiffs make a typically perfunctory argument that, "[i]n the event this Court determines that the allegations in the Complaint do not establish jurisdiction," they are "entitled to jurisdictional discovery."  (Opp. Br. at 76.)  Although courts have discretion in determining whether to permit jurisdictional discovery, a party must make a showing that such discovery is warranted and not a mere fishing expedition.  *See Symettrica*, 2019 WL 8806093, at *5.  In their opposition, Plaintiffs offer no justification for jurisdictional discovery, including

- 13 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

how any discovery might shed light on whether Mr. Antoon may be subject to personal jurisdiction in California or the United States.  Instead, Plaintiffs can only offer the most generic rationale: that they would seek "information concerning the activities and jurisdictional contacts of each entity" and "jurisdictional discovery concerning the jurisdictional contacts of" the Doe Defendants.  (*See* Opp. Br. at 77 & n.43.)

Courts have denied jurisdictional discovery where, as here, it is not clear what discovery plaintiffs intend to conduct to remedy the defects in their pleadings and the request appears to be nothing more than a fishing expedition based on speculation.  *See, e.g.*, *Johnson v. Mitchell*, No. CIV S-10-1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012) (denying jurisdictional discovery because, among other things, request was a fishing expedition); *Martinez v. Manheim Cent. California*, No. 1:10-CV-01511-SKO, 2011 WL 1466684, at *5 (E.D. Cal. Apr. 18, 2011) (same).  In the absence of any explanation as to how Plaintiffs, whose Complaint and opposition show that Mr. Antoon has nothing to do with this case, could discover jurisdictionally relevant facts as to Mr. Antoon, Plaintiffs' request for jurisdiction discovery should be denied.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. ANTOON

The Court should dismiss the claims against Mr. Antoon because Plaintiffs' claims are legally deficient under Federal Rule of Civil Procedure 8(a), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).

Under *Twombly* and *Iqbal*, a complaint is subject to dismissal unless it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678.  As set forth in Mr. Antoon's moving brief, the Complaint lacks plausible factual allegations

- 14 -

concerning Mr. Antoon's role with respect to each of the claims Plaintiffs have asserted.  There are no factual allegations that Mr. Antoon engaged in a sex trafficking venture, that he knew or should have known about the alleged trafficking, that he personally benefited from sex trafficking, or that he entered an agreement to violate the TVPRA.  (*See* Antoon Br. at 19-21.)  Similarly, Plaintiffs' child pornography claims allege conduct by "MindGeek," but assert no facts establishing that Mr. Antoon was aware that Ms. Fleites and Does 1-13 were minors or that his actions caused their injuries.  (*See* Antoon Br. at 21-22.) Plaintiffs' RICO allegations, likewise, do not describe Mr. Antoon's role in the alleged enterprise or identify any predicate acts by Mr. Antoon.  (*See* Antoon Br. at 22-24.)  And Plaintiffs' state law claims are equally devoid of factual allegations concerning conduct by Mr. Antoon.  (*See* Antoon Br. at 24-25.)

In their omnibus opposition brief, Plaintiffs rely almost entirely on their allegations concerning "MindGeek" or the "MindGeek Defendants."  (*See*, *e.g.*, Opp. Br. at 34 ("the Complaint also alleges that the MindGeek Defendants failed to place any restriction on the uploading of content")).  They fail to allege a factual basis for Mr. Antoon's involvement in any of the claims asserted against him. Instead, Plaintiffs incorrectly argue (1) that "group pleading" is permissible and therefore it is unnecessary to make allegations concerning Mr. Antoon's conduct and (2) that particularized allegations are not required because the corporate and individual defendants are all alter egos and their acts may be imputed to each other. For the reasons discussed below, these arguments are without merit.

### A.    The Complaint Engages in Improper Group Pleading

It is well-settled that a plaintiff suing multiple defendants must make particularized allegations as to each defendant.  Courts in the Ninth Circuit routinely hold it to be "a basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants."  *Beatport LLC v.*

- 15 -

1  *SoundCloud Ltd*, No. CV 19-847 MRW, 2020 WL 3977602, at \*5 (C.D. Cal. July
2  13, 2020); *see also McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996)
3  (affirming dismissal where "no attempt is made to match up the specific factual
4  allegations and the specific legal claims to a specific defendant.").

5      In a recent case, a court in this District dismissed a complaint alleging
6  violations of sex trafficking and child pornography laws where the complaint
7  "commingle[d] the Defendants together throughout much of the pleading, without
8  identifying which entities are responsible for the conducted [sic] underlying the
9  claims." *Doe v. WebGroup Czech Republic, a.s.*, No. 2:21-cv-02428-VAP-SK
10  (C.D. Cal. Jan. 13, 2022), ECF No. 162 ("*WebGroup*") at 22; *see also Sollberger v.*
11  *Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at \*4-\*5
12  (C.D. Cal. June 30, 2010) (group pleading "warrants dismissal" because it
13  "deprives Defendants of knowing exactly what they are accused of doing wrong").

14      In their opposition, Plaintiffs do not address, much less distinguish, the
15  authorities cited by Mr. Antoon in support of dismissal.  Instead, Plaintiffs cite a
16  handful of cases they contend permit "group pleading" where "the defendants are
17  uniquely in possession of the relevant information."  (See Opp. Br. at 42 n.10, 52.)
18  These cases, however, are inapposite and do not support Plaintiffs' argument.

19      For example, Plaintiffs claim that this Court's decision in *State*
20  *Compensation Insurance Fund v. Khan*, 2013 WL 12132027 (C.D. Cal. July 30,
21  2013) held that group pleading is permissible where defendants "operate as a unit
22  and information concerning each individual's participation is uniquely within
23  defendants' control." (*See* Opp. Br. at 54.)  But *Khan* did not condone group
24  pleading.  On the contrary, the Court noted that it had dismissed the original
25  complaint due to pleading deficiencies including the complaint's failure "to plead
26  the role of each defendant in the scheme" and its reliance instead on "'group
27  pleading,' making it unclear which allegations were directed at which defendants."
28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

*Kahn*, 2013 WL 12132027, at *4.  The Court denied the motion to dismiss the amended complaint because, among other reasons, the amended complaint alleged facts showing what each defendant did: the Court found that, despite continued improper group pleading, plaintiffs had "included enough factual detail to clarify the role and specific claims asserted against each defendant." *Id.*[7]

Plaintiffs' reliance on *Waldrup v. Countrywide Financial Corporation*, 2015 WL 93363 (C.D. Cal. Jan. 5, 2015) is also misplaced because the reasoning cited by Plaintiffs considered the particularity with which fraudulent concealment by corporate defendants must be pleaded.  Acknowledging the difficulty of satisfying the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) that apply in such cases, the court denied the defendants' motions to dismiss, even though the plaintiff could not specify the role of each corporate defendant, because the complaint included the names of the specific agents with whom the plaintiff delt and details concerning their authority to speak on behalf of the corporate defendants.  *See id.*, 2015 WL 93363, at *8.  Here, not only have Plaintiffs not included the type of specific factual allegations found sufficient in *Waldrup*, but they have not alleged plausible facts concerning Mr. Antoon sufficient to satisfy the basic pleading standards under Federal Rule of Civil Procedure 8(a) and *Iqbal/Twombly*.

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, & Products Liability Litigation*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) also does not help Plaintiffs.  Like *Waldrup, Chrysler-Dodge* involved unique factual

---

[7] Moreover, contrary to Plaintiffs' suggestion here, *Kahn's* holding that pleading requirements "may be relaxed with respect to matters within the opposing party's knowledge," had nothing to do with the issue of group pleading.  This holding solely related to the separate issue of whether the complaint's allegations could be based on information and belief.  As the Court explained: "many of the details related to the allegedly fraudulent enterprise are within Defendants' exclusive knowledge, and it is therefore acceptable that some of State Fund's allegations are based on information or belief."  *Id*.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

circumstances and allegations concerning corporate rather than individual defendants. In *Chrysler-Dodge*, the plaintiffs alleged that two specific corporate defendants in the same corporate family had overlapping organizational structures, making it difficult to know which entity did what. *Id.* at 976-77. As a result of plaintiffs' specific allegations on this point, the court upheld allegations about the corporate group rather than requiring the misconduct of each of the two entities to be specified. *Id.* Indeed, in a part of the opinion not cited by Plaintiffs, the court recognized that group pleading is generally not allowed but permitted it under the specific factual circumstances alleged in the case. *See id.* at 990 ("While, in general, 'lumping' of defendants is not permissible, Plaintiffs have made allegations explaining why it is appropriate in the instant case," including because defendants had grouped "business sectors by function (instead of location), such that plausibly both [defendant] companies played a role."[8]

Plaintiffs cannot use group pleading to mask the pleading defects in their claims against Mr. Antoon. The Complaint's use of the collective "MindGeek" or "MindGeek Defendants" with respect to each claim results in a pleading in which the allegations against each defendant "rest on, or are inextricably tied to," the allegations against other defendants." *WebGroup* at 23. As a result, "it is difficult to parse out the conduct" for which a given defendant is allegedly responsible. *Id.* Plaintiffs thus fail to allege sufficient claims against Mr. Antoon and fail to meet their burden under Federal Rule of Civil Procedure 8(a) of making a "short and

---

[8] The final case Plaintiffs cite in support of group pleading, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017), does not materially add to the analysis because it concerns, in relevant part, the same underlying facts as the *Chrysler-Dodge* case and essentially the same reasoning by the court. *See id.* at *11 ("As alleged, each of [the corporate group's] sections and divisions is grouped not by location, but by subject matter," and "[t]hese allegations support a plausible inference that the knowledge of, and action undertaking by, employees . . . can be attributed to both" corporate defendants).

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

1    plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

2    Civ. P. 8(a)(2); *see also Shin v. Time Squared Glob., LLC*, No.

3    SACV1500943AGGJSX, 2015 WL 13284952, at *2 (C.D. Cal. Aug. 26, 2015)

4    (explaining that "[o]ne common theme of Rule 8(a), Rule 9(b), and Iqbal and

5    Twombly on pleading is that Plaintiffs must give the defendants a clear statement

6    about what the defendants allegedly did wrong" and dismissing complaint that

7    "use[d] the omnibus term 'Defendants' throughout . . .  without identifying what

8    the particular defendants specifically did wrong.").

9            Moreover, it would be futile to allow Plaintiffs to amend their Complaint.

10   When the defendants in this case, including Mr. Antoon, moved to dismiss the

11   Complaint under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs had the

12   ability to amend as of right to address any pleading deficiencies.  Instead, Plaintiffs

13   have doubled down.  Throughout their opposition, they continue to improperly

14   lump defendants together using the collective "MindGeek Defendants" and almost

15   never allege what Mr. Antoon himself purportedly did.  (*See, e.g.*, Opp. Br. at 35

16   ("the MindGeek Defendants maintained and continue to maintain [images] on a

17   server in the United States")).  One egregious example is Plaintiffs' assertion that

18   "this Court has twice held based on substantially identical allegations that the

19   MindGeek Defendants 'knew or should have known that [p]laintiff[s] were the

20   victim[s] of sex trafficking at the hands of user[s] who posted the content.'"  (Opp.

21   Br. at 35 (citing *Doe v. MindGeek*, 2021 WL 4167054 (C.D. Cal. Sept. 3, 2021));

22   *see also* Opp. Br. at 31 ("This Court has already held, based on nearly identical

23   (albeit less egregious) allegations, that the MindGeek Defendants' criminal scheme

24   and rackets give rise to a claim for beneficiary liability.").)  But of course Mr.

25

26

27

28

- 19 -
**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

Antoon, despite being included in the definition of the "MindGeek Defendants" (*see* Opp. Br. at 1, n.1), is not a party to the *Doe v. MindGeek* case.[9]

### B. The Alter Ego Doctrine Does Not Excuse Plaintiffs' Failure to Plead Legally Sufficient Claims

Plaintiff's alter ego allegations are also insufficient to rescue their claims under Federal Rule of Civil Procedure 12(b)(6). While Plaintiffs' legal arguments concerning alter ego are principally focused on the issue of jurisdiction (*see* Opp. Br. at 70-74), Plaintiffs appear to suggest at various points in their Rule 12(b)(6) discussion (*see, e.g.,* Opp. Br. at 49, 64) that their alter ego claim relieves them of the need to make particularized allegations addressing Mr. Antoon. Plaintiffs' reliance on the alter ego doctrine in the 12(b)(6) context is improper because their alter ego allegations against Mr. Antoon are insufficient.

Plaintiffs have failed to properly plead that Mr. Antoon is the alter ego of any of the MindGeek Entities. To establish alter ego liability, a plaintiff must allege the same two elements required in the jurisdictional context: "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Gerritsen v. Warner Bros. Ent. Inc.,* 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015). Conclusory allegations will not suffice. *See id.* (explaining that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege

---

[9] Moreover, Plaintiffs overstate the Court's holding in *Doe v. Mindgeek* with respect to the Section 1595 claim in that case. There, the Court held only that the plaintiff's sex trafficking allegations were sufficient to survive a motion to dismiss. *See Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054, at *7 (C.D. Cal. Sept. 3, 2021). The Court did not hold, for example, that the defendants actually knew or should have known that plaintiff was a victim of sex trafficking or that they otherwise violated the law.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

specific facts supporting both of the elements of alter ego liability."); *Pac. Coast Shipyards Pension Fund v. Nautical Eng'g, Inc.*, No. 12-05439 RS, 2014 WL 120637, at \*4 (N.D. Cal. Jan. 13, 2014) (same).

As demonstrated above in Sections I.A.1-2, Plaintiff's allegations are conclusory and insufficiently particularized with respect to both the unity of interest prong (*see supra* at 4-6) and the inequity prong (*see supra* at 6-8). Moreover, the sole alter ego case cited in Plaintiffs' 12(b)(6) discussion, *Kao v. Holiday*, 58 Cal. App. 5th 199, 202 (Cal. Ct. App. 2020), only highlights the inadequacy of Plaintiff's alter ego allegations.  In *Kao*, the appellate court upheld the trial court's finding of alter ego liability where, among other things, the trial court found that the defendants commingled funds and made unauthorized use of corporate assets by paying their rent with company funds and using personal funds to pay the plaintiff's salary.  *See id*. at 206-07.  In contrast, as discussed above, the Complaint contains no similar factual allegations that Mr. Antoon commingled funds with MindGeek or any other entity, or that he treated corporate assets as his own.  (*See supra* at 6.)

Further, Plaintiffs' alter ego references appear to be designed to avoid the need to allege detailed facts with respect to each defendant.  For example, in response to the argument by Mr. Antoon and others that the Complaint fails to allege an agreement to violate the sex trafficking laws, Plaintiffs offer the supposedly "detailed allegations of each individual's role in the enterprise (Facts §§ B.2-4) and the Complaints' alter ego allegations" with a citation to their discussion of alter ego in the personal jurisdiction context.  (*See* Opp. Br. at 49.) And in response to the argument by Mr. Antoon and other individual defendants that Plaintiffs' state law claims are not based on particularized allegations of wrongdoing, Plaintiffs cite to the same alter ego allegations in their opposition brief along with the *Kao v. Holiday* case.  (*See* Opp. Br. at 64.)

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

But Plaintiffs have no basis for alter ego liability: they fail to identify a specific entity for which the elements of a given cause of action are properly pleaded and explain how that entity's actions should be imputed to Mr. Antoon under alter ego principles.  Instead, Plaintiffs simply assert claims against "MindGeek Defendants" or "Defendants," a shortcut that is legally insufficient. *See WebGroup* at 22-23 (holding that allegations such as "'Defendants are a coordinated group of individuals and companies which knowingly benefit from child sex trafficking'" do not adequately "specify each Defendant's culpability"). Plaintiffs' broad-brush approach, asserting that "each of the Individual Defendants and MindGeek Entities . . .  are alter egos of each other and hundreds of international sham shell companies" (Opp. Br. at 5), fails to satisfy Plaintiffs' burden.  *See Innovatel Servs. Inc. v. First Bridge Merch. Sols., LLC*, No. 220CV07681SBAGRX, 2021 WL 3415218, at *4 (C.D. Cal. Mar. 19, 2021) (dismissing complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because, among other things, most of the plaintiff's alter ego allegations lacked factual support and were "little more than a string of legal conclusions insufficient to state a claim."); *see also Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*, No. 18-CV-1896-AJB-NLS, 2019 WL 3842995, at *6 (S.D. Cal. Aug. 14, 2019) (finding allegations that "alter ego defendants … dominated, influenced, and controlled each other and the officers of one another, as well as the business, property, and affairs of each other" were formulaic and conclusory and failed to satisfy *Twombly*).

Because the allegations in the Complaint relating to Mr. Antoon fall short of basic pleading standards, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) without leave to amend.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

### III.    CONCLUSION

For all of the foregoing reasons, and those set forth in his opening memorandum of law, Feras Antoon respectfully requests that the Court dismiss this action with prejudice for lack of personal jurisdiction or, in the alternative, for failure to state a claim.

DATED: January 24, 2022                    Respectfully Submitted,


                                           WIECHERT, MUNK & GOLDSTEIN, PC


                                    By:  /s/ David W. Wiechert
                                         David W. Wiechert (SBN 94607)


                                         COHEN & GRESSER LLP

                                         Jason Brown (admitted *pro hac vice*)
                                         Nathaniel P. T. Read (admitted *pro hac vice*)
                                         Colin C. Bridge (admitted *pro hac vice*)
                                         *Attorneys for Defendant Feras Antoon*

- 23 -
**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF DEFENDANT FERAS ANTOON**

## CERTIFICATE OF SERVICE

I, Danielle Dragotta, an employee of Wiechert, Munk & Goldstein, PC, located at 27136 Paseo Espada, Suite B1123, San Juan Capistrano, California 92675, declare under penalty and perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On January 24, 2022, I served the forgoing documents, described as **REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT (DKT No. 1) ON BEHALF OF DEFENDANT FERAS ANTOON** on all interested parties as follows:

[ ]    **BY MAIL:** I caused such envelope(s) to be deposited in the mail at San Juan Capistrano, California with postage thereon fully prepaid to the office of the addressee(s) as indicated on the attached service list. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[X]    **BY E-MAIL:** I caused the document(s) to be transmitted electronically by filing the forgoing with the clerk of the District Court using the CM/ECF system, which electronically notifies counsel for all parties.

[ ]    **BY PERSONAL DELIVERY:** I personally delivered the document(s) listed above to the person(s) as indicated on the attached service list.

[X]    **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 24, 2022, at San Juan Capistrano, California.


                                        */s/Danielle Dragotta*
                                        Danielle Dragotta

CERTIFICATE OF SERVICE