DREW TULUMELLO (#196484)
drew.tulumello@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorney for Visa Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>    Plaintiff,<br><br>  v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc. (d/b/a MindGeek); BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA, INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5,<br><br>    Defendants. | Case No. 2:21-CV-04920-CJC-ADS<br><br>Judicial Officer: Cormac J. Carney<br>Courtroom: 9B<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VISA INC.'S MOTION TO DISMISS**<br><br>Date: August 8, 2022<br>Time: 1:30 p.m. |

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 2

LEGAL STANDARD.......................................................................... 5

ARGUMENT....................................................................................... 6

I.     Plaintiff's Alleged Injuries Are Not Fairly Traceable To Visa...................... 6

     A.     Plaintiff lacks Article III standing as to Visa......................................... 6

     B.     Plaintiff lacks statutory standing for her TVPRA and RICO claims against Visa. .............................................................................. 9

II.    The Complaint Does Not State A Claim For Relief Under The TVPRA Against Visa ................................................................................ 11

     A.     Visa did not participate in any sex trafficking venture. ...................... 11

     B.     The Complaint contains no facts showing that Visa knew or should have known of the specific sex trafficking violations alleged by Plaintiff. .................................................................................. 16

     C.     The Complaint contains no facts showing Visa obtained a benefit specifically from the alleged illegal enterprise or venture, rather than receiving a benefit from legal content.................................. 18

III.   The Complaint Does Not Plausibly Allege That Visa Participated In A RICO Enterprise In Violation of 18 U.S.C. § 1962(c)................................. 20

     A.     The Complaint does not allege an enterprise involving Visa. ............ 20

     B.     The Complaint does not allege Visa participated in the "conduct" of an enterprise. .................................................................. 22

     C.     The Complaint does not allege that Visa engaged in a pattern of racketeering activity that proximately caused Plaintiff's injuries. ...... 22

IV.   The Complaint Does Not Plausibly Allege Conspiracy Claims Under RICO (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California Common Law ................................................................... 23

V.    The Complaint Fails To Allege A State Law Claim Under California Business And Professions Code §§ 17200, 17500 .........................................26

VI.    The Complaint Should Be Dismissed With Prejudice As To Visa ...............27

CONCLUSION ...............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.B. et al. v. Salesforce.com, Inc. et al.*,
No. 4:20-cv-01254 (S.D. Tex. March 22, 2021) ........................................ 25

*A.B. v. Hilton Worldwide Holdings Inc.*,
484 F. Supp. 3d 921 (D. Or. 2020) ......................................................... 17

*Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*,
725 F.3d 494 (5th Cir. 2013) ............................................................... 12

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015) ........................................... 24, 25, 27

*Ajzenman v. Off. of Comm'r of Baseball*,
487 F. Supp. 3d 861 (C.D. Cal. 2020) .............................................. 24, 26

*Allen v. Wright*,
468 U.S. 737 (1984) .............................................................................. 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................... 5, 24

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020) ............... 13, 14

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) .................................................................. 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 5

*Benavidez v. Cnty. of San Diego*,
993 F.3d 1134 (9th Cir. 2021) ................................................................. 5

*Benson v. JPMorgan Chase Bank, N.A.*,
No. C–09–5272–EMC, 2010 WL 1526394 (N.D.Cal. Apr. 15, 2010) .................... 25

*Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
No. 18-cv-2623, 2018 WL 2251629 (C.D. Cal. May 16, 2018) ........................... 7

*Boyle v. United States*,
  556 U.S. 938 (2009)................................................................................. 20

*California v. Texas*,
  141 S. Ct. 2104 (2021).............................................................................. 7

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) .................................................................. 27

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013)..................................................... 25

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
  No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)........... 17

*Doe 1 v. Red Roof Inns, Inc.*,
  No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13,
  2020) ...................................................................................................... 18

*Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ............... 11, 14, 19

*Doe v. Twitter*, 555 F. Supp. 3d 889 (N.D. Cal. 2021)........................... 11, 14, 18, 19

*Doe I v. Apple Inc.*, No. 1:19-cv-03737, 2021 WL 5774224 (D.D.C. Nov.
  2, 2021) .................................................................................................... 8

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) .................................................................. 20

*Emery v. Visa Internat. Serv. Ass'n*,
  95 Cal. App. 4th 952, 116 Cal. Rptr. 2d 25 (2002) ............................... 2, 27

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) .................................................................. 10

*Gardner v. Starkist Co.*,
  418 F. Supp. 3d 443 (N.D. Cal. 2019)..................................................... 21

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988).................................................. 25, 27

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) ..................................................... 18

*Golo, LLC v. Goli Nutrition Inc.*,
    No. 21-cv-02348, 2021 WL 3360134 (C.D. Cal. July 30, 2021) ............................... 5

*Gomez v. Guthy-Renker, LLC*,
    No. 14-cv-01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) .............................. 21

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) .......................................................................................... 10, 23

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................................ 23, 26

*J.B. v. G6 Hosp., LLC*,
    No. 19-CV-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ........... 13, 16

*J.C. v. Choice Hotels Int'l, Inc.*,
    No. 20-CV-00155, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ...................... 17, 18

*J.L. v. Best W. Int'l, Inc.*,
    521 F. Supp. 3d 1048 (D. Colo. 2021) .................................................................... 17

*Jubelirer v. MasterCard Int'l, Inc.*,
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) ............................................................. 21, 22

*Kaing v. Pulte Homes, Inc.*,
    No. 09-cv-5057, 2010 WL 625365 (N.D. Cal. Feb. 18, 2010) ................................. 8

*Keel v. Schwarzenegger*,
    No. 08-cv-07591, 2009 WL 1444644 (C.D. Cal. May 19, 2009) ............................ 22

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ................................................................................. 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................... 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 5, 6

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) ................................................................... 13

*Manos v. MTC Fin., Inc.*,
    No. 16-cv-01142, 2018 WL 6220051 (C.D. Cal. Apr. 2, 2018) .............................. 23

VISA'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS
    v
    2:21-CV-04920-CJC-ADS

*Maya v. Centex Corp.*,
 658 F.3d 1060 (9th Cir. 2011) ............................................................ 6, 7

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
 663 F. Supp. 2d 863 (N.D. Cal. 2009) ...................................................... 8

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*,
 943 F.3d 1243 (9th Cir. 2019) ............................................................... 23

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
 494 F.3d 788 (9th Cir. 2007) ................................................ 1, 9, 15, 16

*Pillsbury, Madison & Sutro v. Lerner*,
 31 F.3d 924 (9th Cir. 1994) ................................................................. 10

*Ratha v. Phatthana Seafood Co.*,
 No. 16-cv-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) .......................... 12, 13

*Ratha v. Phatthana Seafood Co.*, 26 F.4th 1029 (9th Cir. 2022) ...................... 17, 19

*Reddy v. Litton Indus., Inc.*,
 912 F.2d 291 (9th Cir. 1990) ................................................................ 27

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993) ...................................................................... 12, 22

*S.J. v. Choice Hotels Int'l, Inc.*,
 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ..................................................... 17, 18

*Snake River Farmers' Ass'n, Inc. v. Dep't of Lab.*,
 9 F.3d 792 (9th Cir. 1993) .................................................................. 8

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) ......................................................................... 6

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
 768 F.2d 1001 (9th Cir. 1985) .............................................................. 24

*United States v. Am. Express Co.*,
 838 F.3d 179 (2d Cir. 2016) ................................................................. 2

*United States v. Nichols*, No. 15-CR-756-1, 2019 WL 398775 (N.D. Ill. Jan. 31, 2019) ...................................................................... 26

*United States v. Papagno*,
    639 F.3d 1093 (D.C. Cir. 2011) ................................................................. 12

*United States v. Wilson*,
    No. 10-60102-CR-ZLOCH, 2010 WL 2991561 (S.D. Fla. July 27,
    2010) ........................................................................................................... 24

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................... 7

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) .............................................. 22, 23

*Western & S. Life Ins. Co. v. Countrywide Fin. Corp. (In re Countrywide*
    *Fin. Corp. Mortg.-Backed Sec. Litig.)*,
    No. 11-cv-07166, 2012 WL 10731957 (C.D. Cal. June 29, 2012) ........... 21

**Statutes**

18 U.S.C. § 1589 ............................................................................................ 11

18 U.S.C. § 1591 ............................................................................................ 11

18 U.S.C. § 1594 ...................................................................................... 11, 23

18 U.S.C. § 1595 ....................................................................................... *passim*

18 U.S.C. § 1961 ............................................................................................ 22

18 U.S.C. § 1962 ................................................................................ 2, 20, 23

22 U.S.C. § 7101 ............................................................................................ 10

47 U.S.C. § 230 ............................................................................................. 16

# INTRODUCTION

The circumstances described in this case are disturbing. Plaintiff alleges that, without her consent, two former boyfriends uploaded sexually explicit videos of Plaintiff to the internet. Plaintiff alleges she was a minor when the videos were made. Visa condemns sexual exploitation, sex trafficking, and child sexual abuse material. They are repugnant to the values and mission of the company, its employees, and to society.

While the events Plaintiff describes in the Complaint are detestable, the legal claims seeking to hold *Visa* responsible for them should be dismissed. Visa does not belong in this lawsuit. The Complaint seeks to impose liability on Visa, a payment network, for conduct by completely unrelated third parties that has nothing to do with the payment system or Visa's business. Plaintiff is advocating for a drastic expansion of liability that no court has accepted and that the Ninth Circuit has previously rejected. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007). The Court should dismiss the claims against Visa with prejudice.

Plaintiff alleges that MindGeek S.a.r.l. and its subsidiaries (collectively, "MindGeek") own and operate websites that provide sex traffickers a platform to upload content involving underage victims and non-consensual sex acts, and that MindGeek fails to remove this content from its sites. The Complaint alleges that Plaintiff suffered emotional and financial harm after two ex-boyfriends, not named as defendants here, used MindGeek's sites to disseminate content depicting Plaintiff without her consent. Plaintiff seeks to hold MindGeek liable for the harm she suffered. Of the 21 defendants named in this action, 20 are MindGeek entities, owners, employees, financiers, or are otherwise affiliated with MindGeek. The twenty-first is Visa.

Visa is multiple steps removed from, and very different than, any other defendant. Visa has no contractual relationship with MindGeek—or any other MindGeek Defendant. As a payment network, Visa facilitates billions of electronic transactions annually between financial institutions like banks. It does not deal directly with cardholders or merchants. The Complaint does not allege that Visa or any of its employees created,

disseminated, viewed, or were even aware of content depicting Plaintiff.

Instead, the Complaint seeks to impose liability on Visa because Visa "recognized MindGeek as an authorized merchant and processed payment to its websites."  Compl. ¶ 36.  Based on Visa's role as a payment network, the Complaint seeks to hold Visa liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1594–1595, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and state laws prohibiting unfair business practices.

There is no legal support for Plaintiff's expansive theory of liability.  Obviously, Visa is not a participant in a sex trafficking venture.  Visa has no authority to control or edit the content on MindGeek's websites and had no role in disseminating any content relating to Plaintiff.  Visa is not alleged to have known about the specific content relating to Plaintiff.  Nor is Visa a *cause* of Plaintiff's emotional or financial injuries under any imaginable theory.  To the contrary, Visa is completely removed from the individuals and events that Plaintiff alleges caused her harm.  Plaintiff's attempt to make Visa liable under RICO, the TVPRA, and common law stretches accepted principles of civil liability beyond recognized limits.  The Amended Complaint should be dismissed with prejudice.

## BACKGROUND

Visa operates a payment network that facilitates the flow of funds between financial institutions that execute transactions involving Visa-branded payment credentials.  Visa enters into agreements with these financial institutions—or for simplicity, banks—and establishes procedures for processing Visa-branded and non-Visa branded payment card transactions.

Two types of banks participate in the Visa network: (1) Acquirers and (2) Issuers.  *See, e.g.*, *United States v. Am. Express Co.*, 838 F.3d 179, 188 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) (describing participants in credit card processing systems).  Acquirers are banks that enter into contracts with merchants, which include any businesses where consumers use payment credentials to purchase goods or services.  *See Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 956,

116 Cal. Rptr. 2d 25, 30 (2002) (describing Visa's network). Under their agreements with merchants, Acquirers agree to process transactions when consumers use Visa-branded payment credentials to make a purchase from the merchant. *See id.* Issuers are banks that provide Visa-branded payment credentials to consumers. *See id.* When a consumer uses the card to buy goods and services from merchants, the Issuer receives payment and other information from the merchant, approves (or declines) the transaction, and then collects the transaction amount from the cardholder's account. *See id.* The Visa network links the Acquirers and Issuers by gathering transaction data that enables the Acquirers and Issuers to settle transactions. *See id.*[1]

Importantly, in operating this network, Visa engages directly with the Acquirer and Issuer banks. The Acquirers in turn contract with merchants, and Issuers contract with cardholders. Visa imposes rules governing the types of merchants that Acquirers may contract with, but it is the Acquirer banks that initiate and maintain relationships with all merchants. *See id.* Acquirers monitor merchant activity and are responsible for ensuring that merchants comply with Visa's standards; among other things, Visa's standards prohibit Acquirers from accepting payment from a merchant for any transaction that the Acquirer knows or should have known involves illegal activities or products. *See, e.g.,* Visa, *Visa Core Rules and Visa Product and Service Rules* §§ 1.5.1.4, 1.5.2.1, 5.3.4.4 (Apr. 17, 2021), https://usa.visa.com/dam/VCOM/download/about-visa/visa-rules-public.pdf.

The claims against Visa in this case arise from allegations that Visa's payment network was used in some way to process transactions related to websites owned and operated by MindGeek. Plaintiff alleges that she suffered emotional, psychological, and financial harm after ex-boyfriends uploaded videos of her engaged in sexual activity to

---

[1] Transaction data includes the total amount of the purchase, but it does not include the name or description of the items purchased. For example, if a cardholder purchases a $2 pack of gum and $4 pen from Target, Visa sees only the total $6 transaction amount and has no information about the specific items the cardholder purchased.

pornographic websites. *See* Compl. ¶¶ 258–272. Plaintiff alleges that she was underage when she appeared in the content, and that she did not consent to having this content distributed over the internet. *See generally id*. Plaintiff alleges that this content was viewable on Pornhub—one of the largest pornographic websites in the world—and its affiliate websites, all of which are owned and operated by MindGeek S.a.r.l., a Canada-based company, and its subsidiary entities. *See, e.g.*, *id.* ¶ 272. Plaintiff alleges that MindGeek had the capacity to monitor its websites for underage and non-consensual content, but failed to identify and remove such content, and has participated in a sex trafficking venture by allowing this content depicting Plaintiff to remain on its websites. *See, e.g.*, *id.* ¶¶ 9, 184, 210, 221, 438.

The factual allegations against Visa are very different. The Complaint seeks to hold Visa liable for sex trafficking because Visa "recognized MindGeek as an authorized merchant and processed payment to its websites." Compl. ¶ 36. According to the Complaint, Visa did not "insist" that the content depicting Plaintiff or illegal sex trafficking content "be removed or that MindGeek put in place systems to reasonably ensure it was not commercializing such content[.]" *Id.* ¶ 285. The Complaint also alleges that some visitors to MindGeek sites purchased subscriptions to access certain premium content behind pay walls. *See, e.g.*, *id.* ¶¶ 290, 379, 382. It also alleges that because Visa processed payments for these sites, it profited from MindGeek's alleged sex trafficking enterprise. *Id.* ¶ 382.

The Complaint does not allege that Visa had any role in maintaining MindGeek's websites or monitoring content on its sites, or that Visa created, uploaded, or disseminated any content, much less content depicting Plaintiff. It does not allege that Visa has any direct business relationship with MindGeek or with the ex-boyfriends who uploaded the videos. Nor does Plaintiff allege that Visa had any knowledge of content depicting Plaintiff specifically, or knew that any such content was uploaded without Plaintiff's consent. The Complaint does not allege that Visa processed any transactions involving content specifically depicting Plaintiff, let alone that any person used a Visa payment

credential to access any illegal content on any MindGeek site at all.

The Complaint asserts claims against Visa under the TVPRA (Counts III and IV) and RICO (Counts VII and VIII). Plaintiff also asserts claims against Visa for unfair business practices under California Business and Professions Code §§ 17200 and 17500 (Count XVI) and civil conspiracy (Count XVII). All of these claims are without merit.

## LEGAL STANDARD

Visa moves for dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss a complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) should be granted where the complaint's allegations "are 'insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "The party invoking federal jurisdiction bears the burden of establishing [the] elements" necessary to for federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Because a federal court "has an 'affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority,' … 'the [p]laintiff's factual allegations in the complaint … will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Golo, LLC v. Goli Nutrition Inc.*, No. 21-cv-02348, 2021 WL 3360134, at *3 (C.D. Cal. July 30, 2021).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should be granted where the complaint fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. The complaint must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "Thus, 'conclusory allegations of law and unwarranted inferences

are insufficient to defeat a motion to dismiss.'" *Benavidez v. Cnty. of San Diego*, 993
F.3d 1134, 1145 (9th Cir. 2021).

## ARGUMENT

## I. Plaintiff's Alleged Injuries Are Not Fairly Traceable To Visa

For purposes of Article III standing, the injuries Plaintiff sues upon are not fairly
traceable to Visa. Instead, Plaintiff's alleged injuries are directly traceable to other
entities and individuals with whom Visa has no relationship. Because the Complaint does
not tie Plaintiff's alleged injuries to Visa's conduct, Plaintiff lacks Article III standing.
Plaintiff likewise cannot satisfy the proximate causation requirement for any of her
statutory claims.

### A. Plaintiff lacks Article III standing as to Visa.

Article III standing "is an essential and unchanging" prerequisite to the exercise of
a federal court's jurisdiction. *Lujan*, 504 U.S. at 560. To meet the "irreducible
constitutional minimum of standing," there must be "a causal connection between the
injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the
challenged action of the defendant, and not … th[e] result [of] the independent action of
some third party not before the court.'" *Id.* (citations omitted). It must also be "likely,"
rather than "merely speculative," that a plaintiff's "injur[ies] will be redressed by a
favorable decision." *Id.* at 561 (citations omitted). The burden lies with Plaintiff to
"clearly … allege facts demonstrating" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330,
338 (2016) (citation omitted).

The Article III standing requirement means that Plaintiff must allege "a 'line of
causation' between defendants' action and [Plaintiff's] alleged harm that is more than
'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen
v. Wright*, 468 U.S. 737, 757 (1984)). Here, Plaintiff has failed to allege a plausible causal
chain between her alleged injuries and Visa's conduct.

The Complaint alleges no direct connection between Visa and Plaintiff or her ex-
boyfriends. Plaintiff alleges that her injury stems from third parties who took videos and

uploaded them to MindGeek sites, from MindGeek's maintenance of sites on which the videos could be uploaded, and from MindGeek's lack of monitoring of its sites and failure to remove the videos.  *See, e.g.*, Compl. ¶¶ 272, 365, 474, 482, 534.  The Complaint does not allege that Visa created or uploaded videos involving Plaintiff.  It does not allege that Visa hosted, shared, or promoted the content.  And it does not allege that Visa played any role in operating or monitoring the sites where the third parties uploaded the content.  The Complaint does not allege that Visa was aware of the existence of any content depicting Plaintiff, or even that any person actually used Visa-branded payment credentials for payments connected to content involving Plaintiff.  The alleged injuries underpinning each of Plaintiff's claims against Visa—for TVPRA violations, RICO violations, conspiracy, and unfair business practices—depend *entirely* on the independent actions of parties other than Visa.  There is no Article III standing under such circumstances.  *See Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 18-cv-2623, 2018 WL 2251629, at *3 (C.D. Cal. May 16, 2018) (allegations of unsafe neighborhood were traceable only to third party individuals who committed acts of violence, not policy makers).

Although Article III standing can be established in some circumstances where the alleged harm is caused by a third party, it is "substantially more difficult" in such cases "to meet the minimum requirement of [Article] III." *Warth v. Seldin*, 422 U.S. 490, 505 (1975); *see also California v. Texas*, 141 S. Ct. 2104, 2117 (2021).  And where, as here, "a chain of causation involves *numerous* third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the Supreme Court and [Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Maya*, 658 F.3d at 1070.  That is precisely the case here.

Under Plaintiff's allegations, Plaintiff's injuries flow directly from numerous independent actors, including her ex-boyfriends, the individuals involved in posting videos to MindGeek, the various MindGeek Defendants that operated and maintained websites hosting that content, and the MindGeek entities and individuals who are alleged

not to have monitored the website. Accepting the Complaint's allegations as true, Plaintiff's injuries would have occurred even if Visa did not exist. Indeed, the Complaint suggests that any efforts by Visa to restrict payment processing to MindGeek would *not have* prevented Plaintiff's injuries. The Complaint pleads that, in December 2020, Visa instructed Acquirer banks to suspend processing of payments related to MindGeek through the Visa network. Compl. ¶ 300. Despite this action, the Complaint alleges that illegal content depicting Plaintiff nevertheless remained available on MindGeek websites. *See, e.g.*, Compl. ¶ 270. Article III standing is absent where the harm that is pleaded is attributable directly to *multiple* other independent actors.[2]

Moreover, Plaintiff's claims against Visa are all based on an unsupported assumption that Visa could force MindGeek to operate differently. But the Complaint has not plausibly alleged that Visa could control MindGeek's business. Visa does not have any direct contractual relationship with MindGeek or with any of the sites identified in the Complaint. Moreover, the Complaint alleges that the content depicting Plaintiff was user-generated and located on MindGeek's *free-of-charge* websites, such as Pornhub, *see* Compl. ¶¶ 258, 260, which require no payment transaction—much less a Visa transaction—to view. Visa is in no way involved with user-generated content that is uploaded to MindGeek's free websites. And aside from the completely speculative and conclusory allegation that "[i]t is *virtually* certain that Visa processed payments that

---

[2] *See, e.g.*, *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 881 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012) (no Article III standing where plaintiff could not attribute global warming injuries to defendants as opposed to other entities); *Kaing v. Pulte Homes, Inc.*, No. 09-cv-5057, 2010 WL 625365, at *6 (N.D. Cal. Feb. 18, 2010), *aff'd* 464 F. App'x 630 (9th Cir. 2011) (plaintiffs' alleged loss in property value not traceable to subprime mortgage lending because it "resulted not just from the actions of [defendant], but also from the independent actions of all of the various residents of Plaintiff's neighborhood" and economic conditions); *Doe I v. Apple Inc.*, No. 1:19-cv-03737, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021) (plaintiffs alleging harm from human rights violations in cobalt mines lacked Article III standing to sue electronics manufacturers on theory that manufacturers drove demand for cobalt); *Snake River Farmers' Ass'n v. Dep't of Lab.*, 9 F.3d 792, 796 (9th Cir. 1993) (allegation that low wage rates in one place might affect wages in another place was too "speculative, attenuated, and general" to satisfy Article III).

allowed viewers to access or download videos of Plaintiff," the Complaint contains no specific, concrete factual allegations suggesting that content depicting Plaintiff required *any* paid membership access or appeared on *any* sites with paywalls. *See id.* ¶ 379 (emphasis added). And even if that were true, Visa's payment processing would still not be a but-for cause of Plaintiff's injuries. The Complaint's causal chain between the events causing her harm and Visa are much too attenuated to establish standing as to Visa.

If accepted, Plaintiff's theory would upend the financial and payment industries. It would require payment networks to bear liability for the day-to-day conduct of individuals with whom they have no relationship and over whom they have absolutely no visibility or control. Future plaintiffs could apply Plaintiff's reasoning to injuries caused by guns, prescription drugs, tobacco, soda, furs, and myriad other products—all on the theory that a Visa card was used somewhere along the way and that Visa should have somehow stopped conduct by unrelated actors. Visa has no ability whatsoever to investigate the facts and circumstances of each of the billions of individual transactions it processes each year. Not only would Plaintiff's theory encourage misdirected litigation, it also would undermine the payment and credit industry that the Ninth Circuit has recognized as "the primary engine of electronic commerce," and that Congress has declared it is federal policy to support. *Perfect 10, Inc.*, 494 F.3d at 794.

Each of the Complaint's claims against Visa—for TVPRA and RICO violations, conspiracy, and unfair business practices—seeks to hold Visa liable for Plaintiff's injuries based on Visa's role in providing and maintaining a network for processing payments. Because Plaintiff's injuries are not fairly traceable to Visa, and instead resulted from independent acts of other parties, all counts against Visa should be dismissed for lack of Article III standing. The Court need go no further to dismiss the Amended Complaint.

## B.   Plaintiff lacks statutory standing for her TVPRA and RICO claims against Visa.

Because her injuries cannot be traced to Visa, Plaintiff also lacks statutory standing to pursue TVPRA and RICO claims against Visa. Courts are instructed to "presume that

a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). This "proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 133 (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268–69 (1992)). Under this standard, a plaintiff must show "injury flowing directly from" the conduct of the defendant. *Id.* at 133–34; *see also Holmes*, 503 U.S. at 271–72 (noting the causation inquiry under RICO rarely goes beyond "the first step") (citation omitted).

Here, accepting the Complaint's allegations, Visa's alleged acts were not a proximate cause of Plaintiff's injuries. Plaintiff's theory of causation goes well beyond "the first step." *Holmes*, 503 U.S. at 271–72. Plaintiff nowhere alleges that her injury "flow[ed] directly" from Visa's alleged TVPRA or RICO violations. *Lexmark*, 572 U.S. at 133. These statutory causes of action instead allege that Visa's payment processing facilitated and helped *MindGeek* benefit indirectly and financially from sex trafficking violations. Compl. ¶¶ 8, 14, 303–5. This is not enough to establish proximate causation. *See Fields v. Twitter, Inc.*, 881 F.3d 739, 749–50 (9th Cir. 2018) (allegation that Twitter services "facilitated the … growth and ability to plan and execute" of a terrorist organization was insufficient to satisfy proximate causation).

Moreover, Plaintiff's injuries flow entirely from independent intervening actions of other parties—the MindGeek Defendants and third parties who recorded and uploaded illegal content. Compl. ¶ 112, 258–260, 267–268. Those independent actions break any conceivable causal chain between Visa's conduct and Plaintiff's injuries. *See Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928–29 (9th Cir. 1994) (proximate causation not satisfied where plaintiff's harm depended on the independent acts of tenant); *see also Holmes*, 503 U.S. at 271–72. Counts III, IV, VII, and VIII should be dismissed for failure to allege legally viable proximate causation.

## II. The Complaint Does Not State A Claim For Relief Under The TVPRA Against Visa

Congress enacted the TVPRA "to combat trafficking in persons," which it found was being "increasingly perpetrated by organized, sophisticated criminal enterprises." 22 U.S.C. § 7101(a), (b)(8). To that end, Congress imposed enhanced criminal penalties for certain offenses related to peonage, slavery, involuntary servitude, forced labor, and sex trafficking. *See* 18 U.S.C. §§ 1589–1594. Congress subsequently created a civil remedies provision in Section 1595(a).

Under Section 1595(a), a plaintiff may bring a civil claim based on a violation of one of the criminal offenses set forth in the TVPRA. Here, the Complaint alleges a violation of Section 1591, the sex trafficking provision. Because Visa is not alleged to be the perpetrator of this violation, to state a claim under Section 1595, Plaintiff must allege facts showing that Visa: (1) "knowingly participated in a venture;" (2) "received a benefit from its participation;" *and* (3) "*knew or should have known* that [P]laintiff w[as] [a] victim[] of sex trafficking." *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (Carney, J.) (quoting *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 922 (N.D. Cal. 2021)). The Complaint does not plausibly allege *any* of these elements as to Visa, and therefore does not state a claim under the TVPRA.

### A. Visa did not participate in any sex trafficking venture.

The TVPRA claim fails because the Complaint does not allege that Visa "participated" in a sex trafficking "venture." Plaintiff alleges that MindGeek is a sex trafficking venture within the meaning of 18 U.S.C. § 1591 and § 1595 that "recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiff and other minors, and victims of rape, sexual abuse, sexual exploitation, and nonconsensual sex[.]" Compl. ¶ 358, 361. Plaintiff does not allege that Visa did any of those things. Instead, the Complaint alleges that Visa's payments network was used to process payments by third parties for premium subscriptions and other content on certain paid MindGeek partner channels. *Id.* ¶¶ 303, 379. But Visa's act of processing payments between banks is too remote from the primary conduct courts have held to

constitute "participation in a venture" required for liability under Section 1595.

The plain meaning of the term "participation" provides a guide for the Court's analysis. The verb "participate," as used in Section 1595 when expanded in 2008, denotes actions through which a person takes part in or contributes to a venture.[3] "Participation" requires active engagement. *See Reves v. Ernst & Young*, 507 U.S. 170, 178–89 (1993) (rejecting argument that "aid" equals "participation"); *Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*, 725 F.3d 494, 497 (5th Cir. 2013) ("[T]he word 'participation' connotes activity, and not mere nonfeasance."); *G.G. et al. v. Salesforce.com, Inc.*, No. 20-CV-02335, 2022 WL 1541408, at *12 (N.D. Ill. May 16, 2022) ("participation" requires "some level of active engagement," and more than "passive facilitation"). The D.C. Circuit has also explained that "the company that provides electricity to power the sound system at [a court's] oral arguments assists the proceedings, but its employees are not ordinarily said to have participated in the oral argument," just like "[a] health insurance company may pay for a patient's operation, but the insurer does not participate in the operation at the hospital." *United States v. Papagno*, 639 F.3d 1093, 1098 (D.C. Cir. 2011). Thus, an allegation that a TVPRA violation "would not be possible without the capabilities provided by [a company]" is insufficient to demonstrate the company's "participation in any venture." *Salesforce.com*, 2022 WL 1541408, at *15.

All of the relevant cases show that, under these standards, Visa did not "participate" in a sex trafficking venture. For example, in *Ratha v. Phatthana Seafood Co.*, the court determined that to state a claim for beneficiary liability under Section 1595, plaintiffs must allege that a defendant "took some action to operate or manage the venture, such as

---

[3] *See* Definition of "Participate," *Shorter Oxford English Dictionary* (6th Ed. 2007) ("Take a part or share in; possess in common *with* others."); *Participation, Black's Law Dictionary* (8th ed. 2004) ("The act of taking part in something, such as a partnership, a crime, or a trial."); *Participate*, Merriam-Webster's Advanced LEARNER's English Dictionary (2008) ("[T]o be involved with others in doing something: to take part in an activity or event with others.").

directing or participating in [the alleged TVPRA violation]." No. 16-cv-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022). It explained that liability under Section 1595 "requires more than receipt of a passive benefit to satisfy the TVPRA's participation in a venture element." *Ratha*, 2017 WL 8293174, at *4. The court in *B.M. v. Wyndham Hotels & Resorts, Inc.* similarly held that to state a claim for beneficiary liability under Section 1595, a plaintiff must allege that the beneficiary "*directly* participated in a venture that trafficked [the plaintiff]." No. 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (finding no participation in sex trafficking by global hotel companies); *see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) ("In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit."). Under these and other cases, Plaintiff's TVPRA claims against Visa fail because the Complaint does not and cannot allege that Visa operated or managed a sex trafficking venture.

Even where courts have allowed claims to proceed without a "direct association" between the beneficiary and the trafficker, courts have "required 'a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have *a tacit agreement*'" to the unlawful aspects of the venture. *J.B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (emphasis added)). This requires more than a routine business relationship as alleged by Plaintiff. The Amended Complaint contains no allegations suggesting that Visa had a "tacit agreement" with anyone to participate in a sex trafficking venture.

In the technology context involving social media platforms, courts have held the participation element sufficiently alleged only where a defendant has *access to and control over* the traffickers or their content. In *Doe v. Twitter*, for example, the court found participation sufficiently alleged based on allegations that Twitter has the ability to

monitor the posting of illegal content but fails to remove it; Twitter's hashtags help users find illegal content; Twitter does not remove hashtags it knows are associated with illegal content; and Twitter's search suggestion feature makes it easier for users to find illegal content. *See Doe v. Twitter*, 555 F. Supp. 3d 889, 992 (N.D. Cal. 2021). This Court in *Doe v. MindGeek USA Inc.* similarly concluded that participation was adequately alleged where MindGeek knowingly permitted child sexual abuse material ("CSAM") to remain on its site despite having the ability to remove it; that MindGeek offered playlists, tags, titles, categories, and descriptors to help facilitate the search for illegal content; and that MindGeek suggests and promotes search terms, among other actions. *MindGeek*, 558 F. Supp. 3d at 837–38. The Complaint here does not allege *any* comparable conduct on the part of Visa.[4]

The Complaint tries to suggest that Visa actively participated in the MindGeek sex trafficking venture "by making at least two public statements falsely suggesting that all of the content on MindGeek's tubesites was lawful and legitimate under current laws, despite Visa's knowledge that that suggestion was false." Compl. ¶ 379; *see also id.* ¶¶ 290, 297. But the statements identified by the Complaint speak for themselves and do not constitute participation in a sex trafficking venture. The two statements describe Visa's company policies and do not endorse the content of MindGeek's websites. The first statement says that "Visa only permits transactions on the Visa network for the purchase or sale of lawful products and services" and "works together with [its] coalition

---

[4] Similarly, in recent TVPRA cases against hotel chains, courts have held that plaintiffs alleged a "continuous relationship" where defendants *themselves* rented rooms to people they should have known were engaged in sex trafficking, and saw evidence of the specific trafficking first hand, such as the renter paying for the rooms in cash, victims with visible bruises and malnourishment, a "continuous procession of older men entering and leaving" the rooms, or excessive guest requests for sheets or room service. *See, e.g.*, *B.M.*, 2020 WL 4368214, at *1. Some hotels also accommodated requests from traffickers to rent rooms near exit doors, had staff who observed traffickers escorting victims throughout the hotel, and allegedly ignored screams for help coming from the rooms. *See S. Y. v. Best W. Int'l, Inc.*, No. 2:20-CV-616-JES-MRM, 2021 WL 2315073, at *6 (M.D. Fla. June 7, 2021).

partners to identify potentially illegal merchants or illegal activities and bar them from the network." *Id.* ¶ 289.  The second statement described Visa's view that "any truly effective solution must come from thoughtful changes to laws and regulations," and "[m]aintaining a neutral stance under the law is vital for the free flow of commerce." *Id.* ¶ 297.  These statements are descriptions of Visa's rules.  The quoted statements oppose illegality; they in no way plausibly allege a "tacit agreement" to participate in a sex trafficking venture with anyone, let alone MindGeek or sex traffickers.

Visa is not a social media network.  It does not host content.  Instead, the Visa network processes hundreds of billions of financial transactions every year.[5]  But Visa is not "participating" in billions of ventures each year.  For that reason, the Ninth Circuit has flatly rejected legal theories seeking to impose on payment networks the type of indirect, aiding-and-abetting type liability Plaintiff seeks to impose here.

In *Perfect 10 v. Visa*, the Ninth Circuit evaluated whether a copyright owner could hold a payment card company liable on a vicarious liability theory for processing payments on a copyright infringer's website.  *See Perfect 10*, 494 F.3d at 798.  The plaintiffs argued that by continuing to process credit card payments on the infringing websites—despite allegedly knowing about the infringement—credit card companies enabled and contributed to the infringing activity.  *Id.* at 796.  The Ninth Circuit disagreed. *Id.*  The court acknowledged that "Defendants' payment systems make it easier for such an infringement to be profitable, and that they therefore have the effect of increasing such infringement."  But the Ninth Circuit reasoned that "because infringement of [Plaintiff's] copyrights can occur without using Defendants' payment system," payment processing is not a "material contribution" to infringement.  *Id.* at 797–98.  It explained, "[t]he alleged infringement does not turn on the payment; it turns on the reproduction, alteration and distribution of the images, which Defendants do not do, and which occurs over networks Defendants do not control."  *Id.* at 805–06.

---

[5] *See* Visa, *Visa Fact Sheet*, available at https://usa.visa.com/dam/VCOM/global/about-visa/documents/aboutvisafactsheet.pdf.

The same is true here.  Just as in *Perfect 10*, Visa does not control the production, upload, or distribution of the content depicting Plaintiff on MindGeek's sites.  And just as in *Perfect 10*, Visa has no control over MindGeek's monitoring and approval of content on its websites or the ways in which it aided users in locating content.  Termination of payment processing would not have prevented nor brought an end to the Plaintiff's alleged injuries.  Just as payment processing did not constitute a material contribution to copyright infringement, so too here it does not constitute participation in a sex trafficking venture.

Any other rule would be untenable.  As the Ninth Circuit explained in *Perfect 10*, "credit cards serve as the primary engine of electronic commerce," and "Congress has determined it to be the 'policy of the United States—(1) to promote the continued development of the Internet and other interactive computer services and other interactive media [and] (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.'"  494 F.3d at 794 (quoting 47 U.S.C. §§ 230(b)(1), (2)).  Payment networks could not play this role if they faced liability for criminal misconduct by completely unrelated individuals who somewhere along the way happened to benefit indirectly from a credit card transaction.  Requiring these payment platforms to investigate the individual facts and circumstances of billions of transactions on pain of severe legal liability would invite almost limitless litigation against such platforms and therefore precipitate a dramatic change in the industry.  *Cf. J.B.*, 2020 WL 4901196 at *9 (holding it would be unreasonable to conclude that Craigslist enters into tacit agreements with all traffickers who post ads to its website).  Visa is not a participant in a sex trafficking venture.

**B.    The Complaint contains no facts showing that Visa knew or should have known of the specific sex trafficking violations alleged by Plaintiff.**

Plaintiff's TVPRA claims against Visa should separately and independently be dismissed because the Complaint does not plausibly allege that Visa knew or should have known of the alleged sex trafficking that injured Plaintiff.  Although Plaintiff attempts to impute knowledge to Visa based on general reports of illegal content on MindGeek

websites, those reports are not tied to Plaintiff herself or the particular content depicting her.

Section 1595(a) requires that the plaintiff show the defendant participated in "*a venture*." Because the statutory text "speaks in singular terms," Plaintiff must plead the knowledge element as to a *particular* sex trafficking venture, involving this specific Plaintiff, not just allege conclusory facts about sex trafficking in general. *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *see also Salesforce.com*, 2022 WL 1541408, at *15 ("Section 1595 requires that the venture engage in an act in violation of § 1591, which requires knowledge as to a specific victim.").

Courts have held that alleged "knowledge or willful blindness of a general sex trafficking problem" in an industry is not sufficient to establish liability under the TVPRA. *Id*. As the Ninth Circuit has explained, "[s]weeping generalities" describing problems in an "industry are too attenuated to support an inference that [a defendant] knew or should have known of the specifically alleged TVPRA violations." *Ratha v. Phatthana Seafood Co.*, 26 F.4th 1029, 1046 (9th Cir. 2022). Instead, the TVPRA requires Plaintiff to allege "facts sufficient to establish that the defendant knew or should have known about the trafficking of *the plaintiff in particular*." *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) (emphasis added).[6]

The Complaint does not satisfy this requirement—not even close. It does not allege that Visa knew or should have known about any alleged sex trafficking involving

---

[6] *See also J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155, 2020 WL 6318707, at *6 (N.D. Cal. Oct. 28, 2020) ("general allegations about sex trafficking problems throughout the hospitality industry is not enough to put them on notice about the sex trafficking of this plaintiff"); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020) ("Plaintiff must allege facts showing how [defendants] received notice that Plaintiff A.B. was trafficked at their respective properties."); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (notice of "the prevalence of sex trafficking generally" at defendant's hotels is insufficient to show that defendant "should have known about what happened to this plaintiff").

Plaintiff.  It does not allege that Plaintiff notified Visa about the content depicting her on MindGeek sites or that Visa would have known about this content specifically for any other reason.  An alleged "general awareness" that MindGeek might have prohibited material somewhere on its websites is not sufficient to establish knowledge.  *See S.J. v. Choice Hotels*, 473 F. Supp. 3d at 154 (holding that franchisors could not be liable under TVPRA "simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties").

Here, Plaintiff alleges that Visa knew of a general problem in the online pornography industry and on MindGeek's websites.  *See, e.g.*, Compl. ¶ 277 (alleging that credit card companies and member banks "were *aware of the trafficking and CSAM risk* because it was *common knowledge in the pornographic industry*") (emphasis added).  But these allegations go to notice of general allegations about sex trafficking problems, which is insufficient to allege that Visa had knowledge of actual, specific trafficking violations involving Plaintiff.  *See Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (allegations that customers complained of prostitution on defendant's properties are "insufficient to meet a known or should have known standard" under Section 1595(a).  The Complaint does not plead that Visa had the knowledge or constructive knowledge of a specific venture to engage in TVPRA violations.  *See, e.g.*, *J.C.*, 2020 WL 6318707, at *6.

## C.    The Complaint contains no facts showing Visa obtained a benefit specifically from the alleged illegal enterprise or venture, rather than receiving a benefit from legal content.

The Complaint also does not plausibly allege the "benefit" element of a TVPRA violation.  To satisfy this element, Plaintiff must allege facts from which the Court can infer that Visa knowingly received a "financial benefit" deriving from participation in the sex trafficking venture.  *See Twitter*, 555 F. Supp. 3d at 923–24.  General allegations that a business relationship exists are insufficient; "[t]here must be a *causal relationship* between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit."  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y.

2019) (emphasis added).  Here there is none.

To satisfy this standard, the Complaint must tie the transaction fees that Visa received to illegal sex trafficking content involving Plaintiff, as opposed to the *legal* content hosted on MindGeek websites.  The Complaint does not draw this (or any other) connection between Plaintiff and Visa.  It only speculates that "[i]t is virtually certain that Visa processed payments that allowed viewers to access or download videos of Plaintiff." *See* Compl. ¶ 379.  But that is complete speculation.  MindGeek hosts millions of videos. Nowhere does the Complaint allege that Visa *actually* processed any payments related to content depicting Plaintiff specifically, that content depicting Plaintiff was behind a paywall, or that access to content depicting Plaintiff required a premium subscription. And even if the Complaint did so, that would not establish that Visa knew or should have known about the content depicting Plaintiff.  The Complaint does not identify a single transaction tied to a video of Plaintiff that occurred at a time when Visa allegedly knew or should have known of trafficking violations involving Plaintiff.  *See Ratha*, 26 F.4th at 1049.  And the Complaint does not contain any facts that give rise to the inference that Visa processed payments for *any* illegal content—let alone that it did so with "knowledge of [the] causal relationship" between the illegal content and the fees that it collected.  *Id*.

The allegations of benefit against Visa are categorically distinct from what courts have found sufficient to satisfy the "benefit" element.  In *Doe v. MindGeek*, for example, the Court found the plaintiff satisfied this element by alleging that MindGeek specifically *monetized* the videos of that particular plaintiff.  It pointed to the allegations that advertisements appeared next to the videos depicting her and that one of the videos received 30,000 views.  *See Doe v. MindGeek*, 558 F. Supp. 3d at 838–39.  Similarly in *Twitter*, the court found the Complaint contained "detailed allegations about how Twitter monetizes content, including CSAM, through advertising, sale of access to its API, and data collection."  *Twitter*, 555 F. Supp. 3d at 924.  Here, there are no factual allegations that Visa has knowingly and deliberately monetized illegal content.  The Complaint contains only conclusory assertions about transaction fees.  *See, e.g.*, Compl. ¶¶ 290, 294.

But the Complaint does not distinguish between transaction fees for legal content on MindGeek's sites as opposed to illegal content. Moreover, Visa collects fees based on usage of its network *by Issuers and Acquirers*, who pay those fees for the benefit of being part of the Visa payment ecosystem. Visa does not monetize the particular subject matter of the underlying transaction—it does not even have visibility into the specifics of the underlying transaction.

Because the Complaint does not plausibly allege that Visa received any "benefit" from any alleged participation in a venture, the Complaint does not plead any viable TVPRA claim against Visa.

### III. The Complaint Does Not Plausibly Allege That Visa Participated In A RICO Enterprise In Violation of 18 U.S.C. § 1962(c)

The Racketeer Influenced and Corrupt Organizations Act was intended to combat organized crime by allowing for criminal and civil penalties for racketeering activities performed as part of an ongoing criminal enterprise. The Complaint asserts a claim against Visa for participation in a RICO enterprise under 18 U.S.C. § 1962(c). Just like Plaintiff's other claims, this theory stretches RICO past permissible limits.

To state a claim under section 1962(c) for participation in a RICO enterprise, Plaintiff must allege that Visa "participate[d] in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)). The Complaint fails to satisfy any element as to Visa.

### A. The Complaint does not allege an enterprise involving Visa.

The Complaint fails to allege the existence of an "enterprise" with which Visa had any relationship. It alleges that "Defendants and enterprise members were associated in fact." Compl. ¶ 422. But this is a conclusory allegation and it falls apart under scrutiny. "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556

U.S. 938, 946 (2009).  And "[t]he concept of 'associat[ion]' requires both interpersonal relationships and a common interest."  *Id.* (citation omitted).  The Complaint does not allege that Visa had any interpersonal relationship with any other alleged party in the "enterprise," let alone that Visa shared a "common purpose" with its members.

*First*, far from alleging a close "association," the Complaint alleges that Visa provided a network for processing credit card transactions.  It alleges "nothing more than a simple contract for services of a type entered by millions of others."  *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1052 (W.D. Wis. 1999).  That business arrangement is insufficient to show an "interpersonal relationship" between Visa and the MindGeek Defendants or the perpetrators who made the videos that harmed Plaintiff.  *See Gomez v. Guthy-Renker, LLC*, No. 14-cv-01425, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015).  Moreover, Visa did not even maintain any *direct contractual* relationship with MindGeek or any of the other MindGeek Defendants—the Acquirers initiated and maintained business relationships with MindGeek for processing payments.  In RICO claims involving payment networks, courts have rejected as "absurd" the notion "that each of the many million combinations of merchant, [credit card company], and lender is a RICO enterprise."  *Jubelirer*, 68 F. Supp. 2d at 1053 (citation omitted).  That rule applies here.

*Second*, the Complaint alleges no facts suggesting that Visa shared a "common purpose" with any of the MindGeek Defendants.  The Complaint alleges that Visa wanted to earn transaction fees.  Compl. ¶ 302.  But Visa's alleged interest in receiving transaction fees is insufficient to show a common purpose with a *sex trafficking* association.  Courts have uniformly held that routine business performance does not become a "common purpose" under RICO because "the entities are actually pursuing their individual economic interests, rather than any shared purpose."  *Gomez*, 2015 WL 4270042, at *9.[7]

---

[7] *See also Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough."); *Western & S. Life Ins. Co. v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.)*, No. 11-cv-07166, 2012 WL 10731957, at *8 (C.D. Cal. June 29,

That is precisely the case here.  Visa did not join in a sex trafficking enterprise by operating its payment network.

### B. The Complaint does not allege Visa participated in the "conduct" of an enterprise.

The Complaint must also allege that Visa participated in the "conduct" of an enterprise, which requires showing Visa had "some part in directing [the] affairs [of the enterprise]." *Reves*, 507 U.S. at 179; *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1034 (C.D. Cal. 2011) (same).  It does not do so.

Directing the affairs of an enterprise requires a party to have "participated in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 183.  The Complaint does not allege that Visa's activities in relation to MindGeek come anywhere close to this standard.  Plaintiff does not allege that Visa engaged in any conduct beyond its attenuated, indirect business relationship with MindGeek.  *See* Compl. ¶ 36 ("Visa recognized MindGeek as an authorized merchant").  But "merely having a business relationship with and performing services for [] an enterprise, including financial … services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise." *Jubelirer*, 68 F. Supp. 2d at 1053.  The RICO "conduct" allegations against Visa fail for this reason.[8]

### C. The Complaint does not allege that Visa engaged in a pattern of racketeering activity that proximately caused Plaintiff's injuries.

The Complaint must also allege that each individual defendant engaged in a predicate act of "racketeering activity," as identified in 18 U.S.C. § 1961(1).  *See Keel v. Schwarzenegger*, No. 08-cv-07591, 2009 WL 1444644, at *6–7 (C.D. Cal. May 19, 2009).  The only predicate act by Visa the Complaint even attempts to allege is supposed

---

2012) (explaining that parties who "enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise'") (citations omitted).

[8] *See also In re WellPoint, Inc.*, 865 F. Supp. 2d at 1034–35 (The "existence of a business relationship … without more does not show that [a defendant] conducted the enterprise"); *Walter*, 538 F.3d at 1249 ("Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'").

TVPRA violations, which, as explained above, Plaintiff has not plausibly alleged.  There is no TVPRA violation by Visa, meaning there is also no predicate act as required for RICO liability.

Moreover, because the Complaint has not plausibly alleged a *single* predicate racketeering act as to Visa, it has not alleged a "pattern" of racketeering activity.  *See Manos v. MTC Fin., Inc.*, No. 16-cv-01142, 2018 WL 6220051, at *3 (C.D. Cal. Apr. 2, 2018) (Carney, J.), *aff'd*, 773 F. App'x 452 (9th Cir. 2019) (a "pattern" requires "at least two acts of racketeering activity within ten years of one another"); *In re WellPoint, Inc.*, 865 F. Supp. 2d at 1035 ("[P]laintiff must allege at least two predicate acts by *each* defendant.").

Finally, to have standing to pursue a RICO claim, Plaintiff must allege that Visa's alleged RICO violation was the proximate cause of her injuries.  *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1258 (9th Cir. 2019); *Holmes*, 503 U.S. at 268.  As explained above, the Complaint does not allege that Visa was a proximate, or even a but-for, cause of Plaintiff's injuries.

## IV.    The Complaint Does Not Plausibly Allege Conspiracy Claims Under RICO (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California Common Law

The Complaint also alleges three claims for conspiracy against Visa: conspiracy claims arising under RICO (Count VIII), the TVPRA (Count IV), and California common law (Count XVII).  Each claim requires Plaintiff to allege facts satisfying the same fundamental elements: (1) an agreement to engage in wrongdoing, (2) intent to aid in the conspiracy's purpose, and (3) knowledge of the essential features of the conspiracy.  The Complaint fails to plausibly allege any of these elements.

To state a claim for RICO conspiracy in violation of section 1962(d), Plaintiff must allege (1) that Visa either entered "an agreement that is a substantive violation of RICO" or "agreed to commit, or participated in, a violation of two predicate offenses," (2) was "aware of the essential nature and scope of the enterprise," and (3) "intended to participate in it."  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Similarly, to allege

a TVPRA conspiracy, the Complaint must show that the conspiring parties had a "unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985). This means that Plaintiff must plausibly allege that the parties *shared a purpose* of engaging in conduct that constituted a violation of the TVPRA and to profit from those actions. *See, e.g.*, *United States v. Wilson*, No. 10-60102-CR-ZLOCH, 2010 WL 2991561, at *5 (S.D. Fla. July 27, 2010), *report and recommendation adopted*, No. 10-60102-CR, 2010 WL 3239211 (S.D. Fla. Aug. 16, 2010) (Section 1591 conspiracy requires "the Government [to] establish that Defendant agreed with another to cause a minor to engage in a commercial sex act"). The elements of civil conspiracy under California common law are also similar: to show formation of a conspiracy, Plaintiff must plausibly allege "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020). The Complaint lacks facts needed to satisfy these standards.

*Agreement.* First, the Complaint fails to allege any "agreement" between Visa and any of the MindGeek Defendants to engage in sex trafficking. The Complaint's assertion that "Defendants conspired by agreement or understanding, to commit unlawful acts," Compl. ¶ 391, is conclusory, and therefore insufficient to plausibly allege that Visa itself agreed in any way with the MindGeek Defendants to commit a substantive RICO violation, a predicate TVPRA violation, or any other wrongful act. *See Iqbal*, 556 U.S. at 678; *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (lumping multiple defendants together "in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)") (citations omitted). The allegation that Visa "recognized MindGeek as an authorized merchant and processed payment to its websites," Compl. ¶ 36, does not suggest that Visa agreed to participate in sex trafficking of any kind. This allegation fails to even show a direct business relationship with MindGeek, much less an agreement to engage in sex trafficking. *Baumer v. Pachl*, 8 F.3d

1341, 1346 (9th Cir. 1993) ("mere association" with another entity is not actionable because "agreement is essential" to conspiracy liability).

*Intent to Aid.*   Second, the Complaint does not allege that Visa intended to further any alleged conspiracy or to participate in any alleged enterprise.   Plaintiff's general, conclusory assertions that "[e]ach of the Defendants shared the same conspiratorial objective," Compl. ¶ 391 (TVPRA conspiracy), *id.* ¶ 531 (civil conspiracy), are insufficient.[9]   Plaintiff must sufficiently allege a "meeting of the minds" to commit the trafficking violation.   *See, e.g.*, Order at 11, *A.B. et al. v. Salesforce.com, Inc. et al.*, No. 4:20-cv-01254 (S.D. Tex. March 22, 2021), ECF No. 58 (defendant's software purchase agreement did not establish it "had sex trafficking as an 'object to be accomplished'").   And Plaintiff here has not alleged any such meeting of the minds that would show Visa had any intent to commit wrongful acts.

Moreover, courts have held that a commercial relationship between parties, without more, does not establish the parties' intent to aid each other in a conspiratorial objective, even if the goods involved in the transaction are allegedly illicit.[10]   Thus, the Complaint's allegation that Visa wished to earn a profit by continuing to process payments, Compl. ¶¶ 15, 302, falls well short of showing intent to participate in any sex trafficking conspiracy

---

[9] Plaintiff's civil conspiracy allegations against Visa do not even go this far.   The Complaint fails to even mention Visa specifically in this count, grouping "defendants" together and merely restating the element of the claim. *Id.* ¶ 531.   This broad allegation is insufficient to state a claim against Visa. *See Adobe Sys.*, 125 F. Supp. 3d at 964 (lumping multiple defendants together in an allegation "fails to satisfy [the] notice requirement of Rule 8(a)(2)"); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.").

[10] *See Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981–82 (N.D. Cal. 2013) (explaining that allegations of buyer-seller relationship are insufficient to show that the buyer "intended to aid in the alleged wrongdoing" where complaint alleged that the buyer created a "market" that incentivized the seller to engage in the wrongdoing); *see also Benson v. JPMorgan Chase Bank, N.A.*, No. C–09–5272–EMC, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) (bank's financial incentive to accept deposits from Ponzi scheme promoters did not establish intent to aid the promoters).

1  or enterprise.   And, in any event, Visa does not have any direct relationship with

2  MindGeek that would have permitted it to reach any sort of mutual agreement to engage

3  in sex trafficking; it is Acquirer banks who initiate and maintain a relationship with

4  merchants like MindGeek.

5  *Knowledge of Conspiracy.*   Third, the Complaint does not allege that Visa was

6  aware of the nature and scope of any alleged conspiracy.[11]  The Complaint does not allege

7  that Visa had any insight or knowledge whatsoever into the sex trafficking plans, goals,

8  methods, or operations of the criminals engaged in these activities.  There is no allegation

9  that Visa ever met or interacted with anyone responsible for the content of the videos

10  uploaded onto MindGeek's websites.  Because the Complaint fails to plead any of the

11  elements common to each conspiracy claim—agreement, intent, and knowledge—all

12  conspiracy counts against Visa should be dismissed.

13  **V.    The Complaint Fails To Allege A State Law Claim Under California Business And Professions Code §§ 17200, 17500**

14

15        Plaintiff has not stated a claim against Visa for unfair business practices or false

16  advertising under California Business and Professions Code §§ 17200, 17500.  Although

17  the Complaint nominally purports to assert this claim against Visa, Plaintiff's factual

18  allegations in Count XVI relate solely to the alleged acts of the MindGeek Defendants,

19  not Visa.  The Complaint alleges generally that "*Defendants* have engaged in unlawful,

20  unfair, and fraudulent business acts and practices by participating in a venture … that

21  intentionally … monetized the dissemination of CSAM … and other nonconsensual

22  content *on its site*." Compl. ¶ 520 (emphasis added).  It also states that "*Defendants*

23  fraudulently deceived *its* [sic] *users* that they were monetizing, distributing, and

24  advertising legitimate, legal content, when in fact *defendants' websites* were riddled with

---

25  [11] *See United States v. Nichols*, No. 15-CR-756-1, 2019 WL 398775, at *13 (N.D. Ill. Jan.

26  31, 2019) (TVPRA conspiracy requires knowledge of the "essential nature and scope of the charged conspiracy"); *Howard*, 208 F.3d at 751 (defendant must be "*aware* of the

27  essential nature and scope of the enterprise") (emphasis added) (citation omitted); *Ajzenman*, 487 F. Supp. 3d at 867 (civil conspiracy requires "knowledge of wrongful

28  activity").

---

videos of [illegal] content, including videos of Plaintiff" and Defendants' "inadequate" verification systems "enabled users to upload child pornography to *Defendants' websites.*" *Id.* ¶ 521 (emphasis added).

Visa does not have any websites at issue in this case. It does not have any control over age and consent verification policies on the websites at issue, and it does not distribute or advertise content on those sites. These allegations are directed at MindGeek. And the Complaint's passing attempt to group Visa in with the MindGeek Defendants, with no specific allegations as to Visa, is insufficient to state a claim against to Visa. *See Adobe Sys.*, 125 F. Supp. 3d at 964; *Gauvin*, 682 F. Supp. at 1071 (complaint failed to state a claim where "all defendants are lumped together in a single, broad allegation").

Moreover, "[a] defendant's liability [for unfair business practices] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500." *Emery*, 95 Cal. App. 4th at 960, 116 Cal. Rptr. 2d at 33 (citation omitted). The Complaint nowhere alleges facts suggesting that Visa personally participated in or exercised control over any alleged venture. Visa performed arm's length financial services in accordance with its contracts with banks that contract with MindGeek—nothing more.

## VI.   The Complaint Should Be Dismissed With Prejudice As To Visa

Each claim against Visa should be dismissed with prejudice because the pleadings "could not possibly be cured by the allegation of other facts." *See Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of appeal where amendment could not cure defect in pleadings); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (affirming dismissal with prejudice where amendment would be futile). Plaintiff's injuries stem from independent, intervening acts of third parties, and Visa lacks any connection with the MindGeek Defendants beyond an indirect and intermediated business relationship. No amendment to the pleadings could change that. Indeed, Plaintiff amended the Complaint after Visa briefed these issues in its first motion to dismiss, and despite this opportunity, the Complaint has not cured any

of the deficiencies that Visa identified.  Accordingly, the Complaint should be dismissed with prejudice as to Visa.

<b>CONCLUSION</b>

Visa condemns the terrible harms that Plaintiff describes.  But imposing liability on Visa is not consistent with the rule of law or with justice.  There is no legal theory that renders Visa liable for the allegedly illegal acts that others perpetrated on Plaintiff.  For these reasons, the Court should dismiss all claims, Counts III, IV, VII, VIII, XVI, and XVII, as to Visa with prejudice.

Dated:  May 23, 2022                    RESPECTFULLY SUBMITTED,

                                                    */s/ Drew Tulumello*
                                                    DREW TULUMELLO (#196484)
    drew.tulumello@weil.com
    WEIL, GOTSHAL & MANGES LLP
    2001 M Street NW, Suite 600
    Washington, DC 20036
    Tel: 202 682 7000
    Fax: 202 857 0940
    *Attorney for Defendant Visa Inc.*