1   DREW TULUMELLO (#196484)
    drew.tulumello@weil.com
2   WEIL, GOTSHAL & MANGES LLP
3   2001 M Street NW, Suite 600
    Washington, DC 20036
4   Tel: 202 682 7000
    Fax: 202 857 0940
5

6   *Attorney for Visa Inc.*

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                          **SOUTHERN DIVISION**

11  SERENA FLEITES,                          | Case No. 2:21-CV-04920-CJC-ADS

12                     Plaintiff,            | Judicial Officer: Cormac J. Carney
                                             | Courtroom: 9B
13
                                             |
14        v.                                 |
                                             | **DEFENDANT VISA INC.'S REPLY IN**
15  MINDGEEK S.A.R.L.; MG FREESITES,         | **SUPPORT OF ITS MOTION TO**
    LTD; MINDGEEK USA                        | **DISMISS**
16  INCORPORATED; MG PREMIUM LTD.;           |
    MG GLOBAL ENTERTAINMENT INC.;            |
17  9219-1568 Quebec, Inc. (d/b/a/ MindGeek);| Date: August 8, 2022
18  BERND BERGMAIR; FERAS ANTOON;            | Time: 1:30 p.m.
    DAVID TASSILLO; COREY URMAN;             |
19  VISA, INC.; COLBECK CAPITAL DOES         |
    1-5; BERGMAIR DOES 1-5,                  |
20
                                             |
21
                     Defendants.            |
22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION ................................................................................. 1

ARGUMENT ...................................................................................... 1

I.     Plaintiff Has Not Alleged An Injury Traceable To Visa ................................ 1

      A.     Plaintiff lacks Article III standing ................................................ 1

      B.     Plaintiff lacks statutory standing under the TVPRA and RICO. .......... 5

II.     The Complaint Does Not State A TVPRA Beneficiary Claim Against Visa ................................................................................... 6

      A.     The Complaint does not plausibly allege that Visa participated in a sex trafficking venture .......................................................... 7

      B.     The Complaint lacks any specific allegations that Visa had knowledge of Plaintiff's sex trafficking ..................................... 11

      C.     The Complaint does not plausibly allege that Visa benefitted from an illegal enterprise. ............................................................ 12

III.    The Complaint Does Not State A Valid RICO Claim ................................. 14

IV.    The Complaint Fails To State A Conspiracy Claim Under RICO (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California Common Law ............................................................................... 16

V.     The Complaint Does Not Allege Viable Unfair Business Practice or False Advertising Claims Against Visa ...................................................... 17

CONCLUSION .................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Marriott Int'l, Inc.*,
    455 F. Supp. 3d 171 (E.D. Pa. 2020)..................................................................... 7, 8

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019)................................................................................................. 6

*Arizona Att'ys for Crim. Just. v. Ducey*,
    No. 17-cv-01422, 2018 WL 1570244 (D. Ariz. Mar. 30, 2018) .................................. 4

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    No. 20-cv-00656, 2020 WL 4368214 (N.D. Cal. July 30, 2020)....................... 7, 8, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................... 5

*Bennett v. Spear*,
    520 U.S. 154 (1997)................................................................................................... 2, 5

*Coubaly v. Cargill, Inc.*,
    No. 21-CV-386 (DLF), 2022 WL 2315509 (D.D.C. June 28, 2022)........................... 4

*Daniel v. Nat'l Park Serv.*,
    891 F.3d 762 (9th Cir. 2018) ................................................................................... 2, 3

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ................................................................................ 8, 17

*Doe I v. Apple Inc.*
    No. 1:19-cv-03737, 2021 WL 5774224 (D.D.C. Nov. 2, 2021) ............................ 3, 4

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828, 837 (C.D. Cal. 2021)................................................................. 8

*Doe v. Twitter*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021)..................................................................... 7, 8

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
    895 F.3d 1166 (9th Cir. 2018) ................................................................................... 2

*Emery v. Visa Internat. Serv. Ass'n*,
  95 Cal. App. 4th 952, 116 Cal. Rptr. 2d 25 (2002) ...................................................... 18

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) ............................................................................................ 6

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019). ......................................................................... 12

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010) ............................................................................................................. 6

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) .......................................................................................................... 6

*Ketayi v. Health Enrollment Group*,
  516 F. Supp. 3d 1092 (S.D. Cal. 2021) ................................................................... 15, 17

*Lundstrom v. Choice Hotels Int'l, Inc.*,
  No. 21-cv-00619, 2021 WL 5579117 (D. Colo. Nov. 30, 2021) .......................... 8, 11

*M.A. v. Wyndham Hotels Resorts, Inc.*,
  425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................................................................... 8

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015) ......................................................................................... 4

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ..................................................................................... 9, 10

*Ratha v. Phatthana Seafood Co.*,
  No. 16-cv-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) .................................. 9

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ......................................................................... 11

*S. Pac. Co. v. Darnell-Taenzer Lumber Co.*,
  245 U.S. 531 (1918) .......................................................................................................... 6

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................................................... 1, 2

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  No. 17-cv-00562, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) .............................. 16

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)........................................................................... 1, 2

*Turaani v. Wray*,
988 F.3d 313 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 225 (2021) ............................. 4

*Warth v. Seldin*,
422 U.S. 490 (1975).................................................................................. 3

**Statutes**

18 U.S.C. § 1594(c) ..................................................................................... 16

18 U.S.C. § 1962(c) ..................................................................................... 14

18 U.S.C. § 1962(d) ..................................................................................... 16

California Business and Professions Code § 17200 .......................................... 17

California Business and Professions Code § 17500 .................................... 17, 18

# INTRODUCTION

Plaintiff's 85-page omnibus opposition ("Opposition") is primarily dedicated to challenging the arguments of the MindGeek Defendants and disputing the MindGeek Defendants' jurisdictional objections.  The few arguments made in passing to oppose Visa's motion to dismiss are conclusory and do not substantively address the legal defects in Plaintiff's theory of liability.  The Opposition confirms that Visa has no place in this lawsuit and should be dismissed with prejudice.

# ARGUMENT

## I.    Plaintiff Has Not Alleged An Injury Traceable To Visa

### A.    Plaintiff lacks Article III standing.

Visa's motion to dismiss established that Plaintiff cannot identify an injury traceable *to Visa* sufficient to confer Article III standing. Mot. 6–9.  Plaintiff's Opposition wrongly assumes that Article III standing always exists when Congress creates a federal cause of action.  Plaintiff posits that "in enacting FOSTA, Congress conferred Article III standing for all claims against those who participate in or benefit from a trafficking venture" and by doing so, Congress "purposely reshap[ed] the traceability analysis." Opp. 81.  That is contrary to fundamental principles of Article III standing.    When Congress creates a private right of action, this does not mean that a plaintiff alleging a violation of the statute always has Article III standing.  Far from it:  as the Supreme Court has repeatedly held, even where Congress has created a cause of action, the key question for standing is whether the Plaintiff suffered injury-in-fact *traceable* to defendant's conduct. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016) (holding that Article III standing is not automatically satisfied "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Congress's creation of a … cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm.").  And while *Spokeo* and *TransUnion* focused on the "injury-in-fact" requirement of standing, the Ninth Circuit has held that a plaintiff asserting a

statutory claim must satisfy the *traceability* requirement of Article III as well.  *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("[T]o satisfy Article III's standing requirement, a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury *causally connected* to the violation." (citing *Spokeo*, 578 U.S. at 340–41) (emphasis added)); *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (allegations of Fair Credit Reporting Act violation were insufficient to satisfy traceability because complaint did not allege a "link" between the statutory violation and the subsequent harm alleged).

The TVPRA[1] undoubtedly creates a civil cause of action where none existed before, but Plaintiff's injuries are not in any way *traceable to or caused by Visa*.  Plaintiff has the burden to plead standing.  *TransUnion*, 141 S. Ct. at 2207.  But the Complaint has not come close to doing so, because multiple intervening acts break any causal link between Visa's payment processing and Plaintiff's injuries.

Plaintiff acknowledges, as she must, that Article III standing can exist for claims against third parties like Visa *only* if the third party had a "determinative or coercive effect upon the action of someone else" who *caused* the injury.  Opp. 84 (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).  So here, Plaintiff must allege that Visa had a "determinative or coercive effect" upon sex traffickers or upon MindGeek.  *Bennett*, 520 U.S. at 168–69.  But there are no plausible allegations to this effect in the Complaint.

Plaintiff does not identify a single allegation showing that Visa took any action that had a *coercive or determinative effect* on the acts of any sex trafficker, MindGeek, or any other person alleged to have engaged in the trafficking acts that directly resulted in

---

[1] Plaintiff's reference to FOSTA is also misplaced—through FOSTA, Congress amended the Communications Act of 1934 to address Section 230 immunity claims by interactive computer service providers, which is a protection that Visa has not asserted in its Motion.

Plaintiff's alleged injuries.[2]  Rather, Plaintiff suggests that "had Visa withdrawn from the venture, MindGeek would *likely* have to have addressed its illegal practices[.]"  Opp. 84 (emphasis added).   Plaintiff further states that "Visa's processing of payments on MindGeek's platform had a determinative or coercive effect because it *allowed defendants* to continue to perpetuate *their wrongdoing* and provided means by which *defendants* could fund *their activities*."  *Id.* (emphasis added).  This is pure speculation and the chain of events Plaintiff imagines is far too remote to satisfy the traceability requirement of Article IIII.  Plaintiff suggests that if Visa had discontinued payment processing for the MindGeek sites, *MindGeek* in reaction might have done more to police its website more closely, which might then have led to the identification and removal of videos depicting Plaintiff, which might then have disincentivized sex traffickers from making videos or engaging in sex trafficking. This multi-step process reflects a long chain of contingencies that is plainly insufficient to establish the traceability requirement of Article III.  Plaintiff's allegations focus on MindGeek's alleged actions and Visa is a far-removed third party that Plaintiff lacks standing to sue under Article III.  *Warth v. Seldin*, 422 U.S. 490, 505–08 (1975); *Daniel*, 891 F.3d at 767.

The courts repeatedly reject standing in similar circumstances.  *See* Mot. 8.  In *Doe I v. Apple Inc.*, for example, plaintiffs sought to hold electronics manufacturers liable for alleged human rights violations in cobalt mines.  No. 1:19-cv-03737, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021).  Plaintiffs relied on the theory that the defendants were responsible for any violations because, as end-purchasers of cobalt, they drove demand for the metal.  *Id.*  The court found that the plaintiffs lacked Article III standing.  The court reasoned that "[i]t might be true that if Apple, for example, stopped making

---

[2] Plaintiff's references to alleged misrepresentations that Visa made regarding content on MindGeek's sites also do not establish "coercion" or "control."  *See* Opp. 84.  For example, the letter Visa sent to an advocate group stating it maintains a neutral stance is hardly equivalent to Visa maintaining coercion or control over sex traffickers or MindGeek.

products that use cobalt, it would have purchased less of the metal," resulting in third parties ceasing to purchase cobalt, which in turn might have "led some of the Plaintiffs to not have been mining when their injuries occurred." *Id.* But that "long 'chain of contingencies'" was "not sufficient to tie Defendant's conduct to Plaintiff's injuries." *Id.* (citation omitted). Similarly, in *Coubaly v. Cargill, Inc.*, the court recently dismissed a forced labor action brought against supplier corporations under Section 1595 for lack of standing because plaintiffs did not plausibly allege their injuries were traceable to the defendants and required the court to "speculate about the role of intermediaries." *See* No. 21-CV-386 (DLF), 2022 WL 2315509, at *7 (D.D.C. June 28, 2022); *see also Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (injury not traceable where third parties "'may well have engaged in their injury-inflicting actions even in the absence of the [defendant's] challenged conduct'") (citation omitted); *Arizona Att'ys for Crim. Just. v. Ducey*, No. 17-cv-01422, 2018 WL 1570244, at *4 (D. Ariz. Mar. 30, 2018) (injury not traceable where Arizona Attorney General did "not have a coercive effect on the actions of state bar counsel who may or may not elect to pursue action"); *Turaani v. Wray*, 988 F.3d 313, 316–17 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 225 (2021) (injury to plaintiff from denial of gun sale was not traceable to FBI agent because agent's advice to gun dealer "did not command or coerce" the dealer to deny the sale).

Those bedrock principles of standing control with equal force here. Accepting as true Plaintiff's allegations, they amount at most to a "long 'chain of contingencies'" that is not sufficient to link Visa's conduct to the alleged injuries of the specific Plaintiff in this case. *Apple*, 2021 WL 5774224 at *7–8 (citation omitted). Indeed, Plaintiff's allegations confirm that MindGeek's voluntary decisions in operating and maintaining its online platforms, and the acts of third-parties who uploaded content to its websites, are *independent* from Visa's payment processing. *See, e.g.*, Compl. ¶¶ 270, 300 (alleging that illegal content depicting Plaintiff remained on MindGeek sites even after Visa instructed Acquirer banks to cease processing payments). Plaintiff does not and cannot

allege that but for Visa's conduct, she would not have been harmed. Nor does Plaintiff allege that by processing payments, Visa dictated, let alone coerced, MindGeek's policies, decisions, or actions, or the actions of any sex traffickers, as the law requires. *Bennett*, 520 U.S. at 168–69. Plaintiff's alleged injuries therefore cannot be traced to Visa and the claims against Visa should be dismissed for lack of Article III standing.

### B.    Plaintiff lacks statutory standing under the TVPRA and RICO.

In addition to lacking Article III standing, Plaintiff has no statutory standing under the TVPRA and RICO because under both statutes, as a matter of law, Visa was not the proximate cause of her injuries. *See* Mot. 9–10. Plaintiff's only response, buried in a footnote, is the conclusory assertion that the Complaint "has alleged proximate cause in connection with the claims where it is required," accompanied by a general reference to the Complaint's facts section and the Opposition's background section. Opp. 83 n.45 (citing Facts, § B.5, Opp. Argument § I.C) (internal citation omitted). That conclusory statement is insufficient to support statutory standing at the pleading stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The Complaint fails to allege any facts whatsoever about how Visa's alleged actions in processing payments could be the proximate cause of Plaintiff's alleged injuries, particularly where Plaintiff's alleged injuries depend on the actions of intervening third parties, including Plaintiff's unnamed high school boyfriend, the unnamed man who she alleges manipulated her to make additional videos while intending to monetize them, unnamed online users who downloaded and re-uploaded the video depicting her to MindGeek's sites, and the various MindGeek Defendants themselves. *See* Compl. ¶¶ 258–69.

To the extent Plaintiff contends that the Complaint satisfies proximate causation by alleging that Visa could have encouraged MindGeek to change its practices, that argument fails to establish Article III standing, let alone statutory standing. Specifically, Plaintiff's position violates the "first step" rule of proximate causation, which holds that only the

most *direct* cause of a harm—that is, the first step in a line of causation (here, the sex trafficking)—is the proximate cause of the alleged injury. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 271–72 (1992) (quoting *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918) ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step."). Courts in RICO cases and other statutory contexts have recognized that this "'first step' limitation" requires a *direct* relationship between the alleged harm and the statutory violation. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10 (2010) ("Because the City's theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement."); *Fields v. Twitter, Inc.*, 881 F.3d 739, 745 (9th Cir. 2018) (applying "first step" limitation to Anti-Terrorism Act claim to require a "direct relation" between the harm and alleged statutory violation); *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1526 (2019) (recognizing in the antitrust context that "the first step" limitation is an "ancient rule" of proximate causation). Here, any possible link between Plaintiff's alleged injuries and Visa's payment processing requires innumerable steps and is far too attenuated to satisfy the "first step" requirement of proximate causation under the TVPRA and RICO. Visa is not a "but-for" cause of Plaintiff's harm, let alone a proximate cause. *Hemi Grp.*, 559 U.S. at 9 (citation omitted); *Holmes*, 503 U.S. at 268–69.

## II.    The Complaint Does Not State A TVPRA Beneficiary Claim Against Visa

Visa's Motion showed that the Complaint does not state a TVPRA claim against Visa for three independent reasons:  (1) Visa's routine payment processing does not constitute "participation" in a sex trafficking venture, (2) the Complaint contains no facts suggesting that Visa knew or should have known of the specific sex trafficking violations involving Plaintiff, and (3) the Complaint does not plausibly allege that Visa received any benefit directly connected to any alleged illegal trafficking. *See* Mot. 11–20.  Plaintiff's failure to allege any one of these elements independently requires dismissal of her claims. The Complaint does not satisfy *any* of these three elements.

### A.    The Complaint does not plausibly allege that Visa participated in a sex trafficking venture.

The Opposition fails to address the Complaint's inability to allege how Visa's routine payment processing could amount to participation in a sex trafficking venture under the TVPRA.   As Visa explained, "participation" requires more than indirect financial support or passive facilitation—rather, it necessitates active engagement[3] in a venture.   Mot. 12.   Plaintiff argues that the active participation requirement is satisfied because trafficking "could have been prevented had Visa terminated its relationship with MindGeek earlier or, at a minimum, not knowingly continued to process payments."   Opp. 42.   But no court has stretched the concept of "participation" in a sex trafficking venture under the TVPRA to reach a third party on the theory that the third party should have or could have affirmatively *prevented* trafficking.

Indeed, courts have specifically rejected Plaintiff's theory, expressly finding that the TVPRA does not impose such a far-reaching affirmative duty.   In *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020), the court explained that it "does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking."   Similarly, in *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020), the court disagreed with plaintiff's theory that "Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking

---

[3] The Opposition claims that "active engagement" in Plaintiff's actual trafficking is not required to establish participation under the TVPRA based on the *Twitter* decision, but that argument misses Visa's point.   *See* Opp. 41 n. 15.   While the *Twitter* court held that the "overt act" requirement to establish *criminal* liability under the TVPRA is not necessary, it also held that *for civil liability*, the plaintiff must show "an ongoing pattern of conduct amounting to a tacit agreement with the perpetrators."   *Doe v. Twitter*, 555 F. Supp. 3d 889, 922–23 (N.D. Cal. 2021).   That holding is entirely consistent with the cases Visa cites holding that participation in a venture requires more than passive conduct.   *See* Mot. 12.

through room rentals." The court concluded, "[w]e do not read the Act as requiring hotels (*and other businesses or professions possibly earning money from trafficking*) to affirmatively stop the trafficking." *Id.* (emphasis added); *see also Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619, 2021 WL 5579117, at *5 (D. Colo. Nov. 30, 2021) ("[D]efendant is correct that the 'mere failure to prevent sex trafficking is not sufficient' to show that defendant knowingly benefited from its participation in a venture[.]") (quoting *A.B.*, 455 F. Supp. 3d at 182).

Instead, to allege "participation," Plaintiff must "connect the dots" between *her* alleged trafficking and actions of the defendant. *See, e.g.*, *B.M.*, 2020 WL 4368214, at *5 (holding that allegations against parent hotel chain failed to satisfy participation element where the Complaint was "devoid of any facts linking *these Defendants* … to the sex trafficking of *this Plaintiff*" (emphasis in original)); *see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) ("In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit."). At the very least, courts require that the plaintiff show a "continuous business relationship between the trafficker and [Defendants] such that it would appear that the trafficker and [Defendants] have established a pattern of conduct or could be said to have a tacit agreement." *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (quoting *M.A. v. Wyndham Hotels Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)). The Complaint comes nowhere close to meeting that standard.

Plaintiff claims that the Complaint alleges a "tacit agreement" because it alleges that Visa "processed credit card payments that 'carried with them obvious red flags.'" *See* Opp. 41. But the Complaint does not plead any facts that identify *any* such transactions. And the Complaint pleads no other facts suggesting that Visa and MindGeek agreed to a sex trafficking venture. *See e.g.*, *Twitter, Inc.*, 555 F. Supp. 3d at 922–23 (N.D. Cal. Aug. 19, 2021) (finding participation adequately pled against Twitter where Twitter made it difficult to report violations, permitted illegal content despite ability to

monitor it, reported instances of child abuse material on its platform, and created hashtags to assist in search functions).  At most, the Complaint alleges that Visa ultimately received an attenuated, indirect and passive benefit, Opp. 41, which is insufficient to establish actual participation in a sex trafficking venture.  *See Ratha v. Phatthana Seafood Co.*, No. 16-cv-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017), *aff'd*, 35 F.4th 1159 (9th Cir. 2022).  Plaintiff dismisses *Ratha* because it does not "deal with beneficiary liability based on a violation of section 1591," Opp. 43 n.16, but that distinction makes no difference—the *Ratha* court squarely addressed the TVPRA's standard governing the conduct that amounts to "participation" under Section 1595, which applies to any beneficiary liability claim regardless of the underlying trafficking violation.  Moreover, *no court* has ever embraced Plaintiff's elastic theory that the attenuated, indirect and passive receipt of funds—funds that *may or may not* even relate to trafficking at all—is sufficient to constitute participation in a sex trafficking venture.[4]

Plaintiff's argument stretches the bounds of liability well beyond recognized limits.  In *Perfect 10*, the Ninth Circuit rejected a similar argument that "by continuing to process credit card payments to the infringing websites despite having knowledge of ongoing infringement, [the credit card] Defendants induce, enable and contribute to the infringing activity … ."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 796 (9th Cir. 2007).  The Ninth Circuit held that where the infringing conduct can occur without payment, payment processing does not constitute material contribution.  *Id.*  The *Perfect 10* court reasoned that "the services provided by the credit card companies do not help locate and are not used to distribute the infringing images," and that "the issue here is reproduction, alteration, display and distribution, which can occur without payment."  *Id.*    And

---

[4] Moreover, even if passive receipt of funds were sufficient (which it is not), Visa earns transaction fees from *the acquiring banks* with whom it contracts, not directly from merchants such as MindGeek.  *See* Mot. 20.  Any indirect benefit Visa allegedly receives is therefore multiple steps removed from sex trafficking.

compared to a search engine like Google, "[t]he salient distinction is that Google's search engine itself assists in the distribution of infringing content to the Internet users, while Defendants' payment systems do not." *Id.* at 797. Thus, even though credit card processors "do, as alleged, make infringement more profitable, and people are generally more inclined to engage in an activity when it is financially profitable," the Ninth Circuit held that "because infringement of Perfect 10's copyrights can occur without using Defendants' payment system, we hold that payment processing by the Defendants … does not constitute a 'material contribution … .'" *Id.* at 797–98.

Plaintiff has no response to *Perfect 10*. Plaintiff asks the Court to disregard *Perfect 10* because it addressed a different cause of action, Opp. 43 n.16, but the Ninth Circuit's reasoning is instructive here. Here, as in *Perfect 10*, Visa has no role in producing the alleged illegal content, monitoring it, sharing it, or otherwise providing a platform enabling users to access it. The "salient" difference the Ninth Circuit found to distinguish payment processors and a search engine like Google also exists here: Visa in no way "assists" the trafficking at issue by aiding the creation, dissemination, or distribution of illegal content. *Id.* And, as in *Perfect 10*, the alleged sex trafficking could (and did) occur without Visa's involvement at all. *Perfect 10*'s reasoning shows that the Complaint fails to allege that Visa "participated" in a sex trafficking venture.

The Opposition also suggests that the Court should disregard the economic ramifications of the Complaint's expansive theory of liability, arguing that holding Visa responsible "would not interfere with legitimate commerce," but instead would "further FOSTA's main legislative goal: to prevent proliferation of sex trafficking by stopping companies like Visa from knowingly continuing to benefit from such illegal activities." Opp. 42. But this blithe dismissal of the unintended consequences of Plaintiff's sweeping theory is unpersuasive. First, FOSTA was an amendment to the Communications Act of 1934 to address Section 230 immunity claims by interactive computer service providers—Visa is not an interactive computer service provider and therefore cannot be the target of

FOSTA's legislative goal.  Moreover, under Plaintiff's theory, any remote, third-party actors "participate" in the sex trafficking venture—including the companies that provide electricity to the traffickers or to MindGeek; the companies that sell video equipment to traffickers; and the cars, banks, restaurants, grocery stores and others that enable the traffickers to carry out their scheme.  This result could not possibly be the legislative goal of the TVPRA or any other trafficking statute.

The consequences on commerce are particularly serious.  Visa cannot identify all forms of illegal conduct connected to the billions of transactions processed over its networks every year.  Visa does not have a direct contractual relationship with MindGeek, with the alleged traffickers, or with the Plaintiff.  If Visa is deemed to be engaged in a sex trafficking venture by running its payment processing business, then the liability for the payment industry (for retail sales of guns, cigarettes, sugary foods, drugs, etc.) will be boundless.

## B. The Complaint lacks any specific allegations that Visa had knowledge of Plaintiff's sex trafficking.

Moreover, the Opposition identifies no factual allegations supporting the claim that Visa knew or should have known of specific instances of Plaintiff's alleged exploitation. "[K]nowledge or willful blindness of a general sex trafficking problem" in an industry is insufficient to establish liability under the TVPRA absent allegations relating to a particular plaintiff's trafficking.  *See* Mot. 17; *see also Lundstrom*, 2021 WL 5579117, at *8 ("General knowledge of commercial sex activity occurring at hotels across the United States, or even defendant's properties, is insufficient on its own to demonstrate that defendant participated in the trafficking of plaintiff."); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture.").

Disregarding this body of law, the Opposition merely reiterates the Complaint's

allegation that Visa should have known about the sex trafficking venture because PayPal previously terminated its relationship with MindGeek and "the presence of trafficking in the webcam industry was notorious and well known to Visa." Opp. 44. These allegations of general knowledge are not enough. Plaintiff must allege that Visa knew or should have known of the alleged trafficking of the specific Plaintiff who brought this action. The Opposition only attempts to fold Visa into allegations that are actually directed at the MindGeek entities. For example, the Opposition states that Plaintiff "became a victim of child pornography at age 13 when MindGeek, its owners, agents, and partners—including defendant Visa—illegally solicited, reviewed, accepted, uploaded, optimized, tagged, categorized, and disseminated CSAM of plaintiff and advertised alongside her CSAM on its tubesites." Opp. 5. But the Opposition lacks any explanation as to how *Visa* could have had any role in soliciting, reviewing, uploading, or disseminating CSAM. Because Plaintiff does not plausibly allege specific facts indicating *Visa* knew of her alleged trafficking, the Complaint does not satisfy the constructive knowledge requirement of the TVPRA.

### C.    The Complaint does not plausibly allege that Visa benefitted from an illegal enterprise.

Even if Plaintiff could overcome the "participation" and "knowledge" elements of a TVPRA claim, which she cannot, the Complaint does not plausibly plead a benefit tied to an illegal enterprise. Plaintiff argues that "Visa's routine processing of payments necessarily implicated [illegal] content," and that for purposes of TVPRA liability, Visa "need not derive benefits directly from the illegal activities itself." Opp. 43. Yet Plaintiff does not identify a single allegation suggesting that Visa received any transaction fees for payments made to access illegal content. And the Opposition is wrong on the law: numerous courts have held that beneficiary liability under the TVPRA requires that the defendant derive a *direct* benefit from the alleged trafficking. *See, e.g.*, *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).

To state a claim under the TVPRA, the Complaint must plausibly allege that the transaction fees Visa received were paid on account of specific instances of illegal sex trafficking, rather than for legal content hosted on a site. *See* Mot. 19. Plaintiff relies on *B.M. v. Wyndham Hotels & Resorts, Inc.*, contending that the court held "that plaintiff need only allege that the benefit received by the defendants 'derive directly from, and be knowingly received in exchange for, participating in a sex-trafficking venture,'" not "from the illegal activities itself." Opp. 43 (citing *B.M.*, 2020 WL 4368214, at *4). But *B.M.* does not go that far. In *B.M.*, the hotel franchisors argued that royalties they received from operators renting rooms to sex traffickers did not amount to a knowing benefit from a trafficking venture. The court rejected the franchisors' argument because, unlike here, the *B.M.* plaintiff alleged that a fraction of the room rates was paid to the franchisor; that is, the franchise royalties were derived *directly* from payments that sex traffickers made for the rooms to carry out their venture. Each room rented by a trafficker was thus necessarily tied to a direct benefit to the franchisor—the profits from traffickers' payments passed directly to the hotel chain franchisors.

Here, the Complaint alleges no facts showing that Visa received transaction fees for payments from sex traffickers, or from payments related *in any way* to illegal sex trafficking or CSAM content, as opposed to payments for the massive amount of legal content hosted on MindGeek websites. The Complaint only speculates that "it is virtually certain that Visa was involved in the processing of advertising revenues, including the conversions, and revenues from premium services and products that MindGeek earned from the viral exploitation of Plaintiff's underage videos." Compl. ¶ 304. But the Complaint does not allege that Visa actually processed payments related to content depicting Plaintiff or that any content depicting Plaintiff was behind a paywall. Nor does it plead that specific advertisements next to videos depicting Plaintiff were actually processed through Visa's network or contain any details about the content of those advertisements. Moreover, the Complaint concedes that vast amounts of content on

MindGeek websites are absolutely free.  *See* Mot. 8.  Thus, unlike *B.M.*, where the franchisors directly benefitted from payments made directly by sex traffickers to rent hotel rooms, the Complaint draws no link between illegal content and any payments made using Visa-branded payment cards.  *See id.* at 21.  Nor does the Complaint allege Visa processed any payments related to content depicting Plaintiff specifically.  This is not a "technical legal argument[]," *see* Opp. 43, but an essential element to a TVPRA claim that Plaintiff has not sufficiently alleged.  Plaintiff's TVPRA claim against Visa cannot rest on a conclusory assertion that it is "virtually certain" Visa's payment processing implicated such content absent a single factual and plausible allegation to support such an assertion.

## III.   The Complaint Does Not State A Valid RICO Claim

Nothing in the Opposition is sufficient to overcome the defects in the Complaint's RICO claims against Visa.  Indeed, Plaintiff makes only a passing attempt to address Visa's arguments with respect to the RICO causes of action.

First, the Opposition does not point to anything in the Complaint that is sufficient to allege an association-in-fact "enterprise" involving Visa, as required by 18 U.S.C. § 1962(c).  Rather than allege an "interpersonal relationship[] and a common interest" between Visa and MindGeek, the Complaint describes a "simple contract for services" between MindGeek and Visa.  Mot. 21.  Courts have consistently held that such allegations are insufficient to show a common purpose, a basic requirement for RICO liability.  *See id.*  Plaintiff's only response is to state that "Visa and MindGeek's claim that the FAC simply pleads a contractual relationship with the parties simply ignores the FAC's detailed allegations of Visa's role in the Enterprise which must be accepted as true on this motion."  Opp. 52 (internal citation omitted).  But despite claiming that "Visa's coordinated and continuing participation in carrying out and directing the Enterprise's affairs creates liability," *id.* at 53, the Opposition again fails to point to what exactly Visa's specific role allegedly is in the enterprise.  Neither the Opposition nor the

Complaint identifies specific allegations suggesting that Visa had any purpose beyond the commercial one of operating its own business.[5]

Plaintiff cites *Ketayi v. Health Enrollment Group*, which recognized that two contracting businesses could still "'form an "enterprise" for RICO purposes and still be named as individual RICO defendants.'" 516 F. Supp. 3d 1092, 1135 (S.D. Cal. 2021). This is obviously true in cases where the plaintiffs "allege[] *more* than that Defendants simply contracted with one another for legitimate purposes," for example in a coordinated insurance fraud scheme. *Id.* (emphasis added). But here, the Complaint nowhere alleges that Visa entered a contractual relationship with the purpose of deceiving any person or to engage in substantive sex trafficking violations. The "more" described in *Ketayi* is completely missing.

Second, Plaintiff has no answer to the Complaint's failure to satisfy the "participation" element of a RICO enterprise because it contains no allegations that Visa directed the affairs of any alleged enterprise. Mot. 22. Plaintiff relies again on vague references to Visa in suggesting that the Complaint "satisfy[ies] the conduct element, which requires only a showing that defendant played 'some part in directing th[e] affairs' of the Enterprise." Opp. 51 n.20. But nowhere does the Complaint suggest that Visa played *any role* in "directing" any alleged enterprise. The Complaint alleges only that Visa provided merchant services to MindGeek and thus had nothing beyond an attenuated business relationship with MindGeek. Mot. 22 (citing Compl. ¶ 36). Plaintiff offers no substantive response to these fundamental defects.

---

[5] Moreover, Visa does not have a direct contractual relationship with MindGeek; instead, Visa contracts with banks. But even assuming Plaintiff's allegations are accepted as true, Plaintiff's theory under RICO is invalid.

1
2

**IV.    The Complaint Fails To State A Conspiracy Claim Under RICO (18 U.S.C. § 1962(d)), The TVPRA (18 U.S.C. § 1594(c)), Or California Common Law**

3

4    Plaintiff's Opposition does not show how the Complaint has plausibly alleged any

5    element of Plaintiff's conspiracy claims under RICO, the TVPRA, and California

common law.

6    In addressing her RICO conspiracy claim, Plaintiff contends that "[t]he existence

7    of the agreement between defendants and the intent and knowledge of the conspirators

8    'can be readily and plausibly inferred' from the FAC's detailed allegations of

9    interdependence and mutual efforts to further the common purpose of the Enterprise."

10    Opp. 58 (citations omitted).  Plaintiff cites to the Opposition's summary of allegations

11    relating to Visa's knowledge of a generalized issue with CSAM in online pornography.

12    *See id.*  But again, the Opposition fails to identify a single fact that could support an

13    inference that Visa entered into an agreement *specifically* to engage in wrongdoing.

14    Plaintiff cites *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561, 2017 WL

15    3485881, at *17 (N.D. Cal. Aug. 15, 2017) in arguing that the allegations support the

16    inference of an agreement.  But there, the plaintiff alleged RICO violations related to

17    defendants' use of counterfeit software keys to access copyrighted software and duplicate

18    the programs.  The defendants argued that the plaintiff did not allege the existence of an

19    actual agreement.  The court, however, found that an agreement could be inferred because

20    the allegations showed that the employees of the other defendant *took actions directly in*

21    *support* of the conspiracy, for example using "illegal keys connected to the names of

22    employees" and using those keys thousands of times on multiple computers.  *Id.*  The

23    court held that this parallel illegal conduct of each of the employees in *Synopsys* could

24    suggest they shared an agreement to engage in wrongdoing.  *Id.*  The facts alleged here,

25    *which do not illustrate any parallel conduct or coordination*, let alone coordinated *illegal*

26    conduct, do not support such an inference.  The Complaint shows that Visa acted on its

27    own as a payment processor, not in concert with MindGeek, which has complete and

28

independent control in operating its platforms.

Plaintiff further claims that "a civil RICO plaintiff 'is not required to prove every detail of the agreement' when alleging conspiracy, particularly at the motion to dismiss stage." Opp. 59 n.31 (quoting *Ketayi*, 516 F. Supp. 3d at 1138). That principle is no help because the Complaint does not allege a *single* detail of any purported agreement between Visa and MindGeek to engage in a wrongdoing.

Plaintiff attempts to defend her TVPRA conspiracy claim with the conclusory assertion that "the FAC sufficiently alleges that Visa and the MindGeek Defendants had a 'unity of purpose or a common design and understanding, or a meeting of the minds … .'" Opp. 44 (citation omitted). In support, Plaintiff merely recites her allegation that "Visa knew that its funding supported and facilitated MindGeek," and "continued to partner with MindGeek despite numerous public disclosures that MindGeek was engaged in trafficking and dissemination of CSAM." *Id.* But, as Visa explained, alleged knowledge of wrongdoing alone, even if true, does not make a conspiracy, and does not demonstrate a "meeting of the minds." *See* Mot. 25; *see also Red Roof Inns*, 21 F.4th at 727. Visa further explained that the Complaint does not plausibly allege that Visa had knowledge of the essential features of the conspiracy, or intent to aid in its purpose. Mot. 26. The Opposition makes no effort to show how the Complaint satisfied either requirement. With respect to civil conspiracy, Plaintiff states only that "[d]efendants' challenges to plaintiff's civil conspiracy claims are predicated entirely on its challenges to the underlying claims," Opp. 59, but the Opposition does not directly address any of Visa's arguments related to civil conspiracy, Mot. 23–25, and that claim should be dismissed.

## V.    The Complaint Does Not Allege Viable Unfair Business Practice or False Advertising Claims Against Visa

The Opposition contends that Plaintiff has adequately alleged claims against Visa under California Business and Professions Code §§ 17200 and 17500 ("UCL claims") by

alleging that Visa "affirmatively agreed to partner with MindGeek despite actual and constructive knowledge of its illegal activities and profited millions of dollars from its participation, including advertising and subscription fees earned from plaintiff's images." Opp. 60–61. *But these are not the allegations that appear in the Complaint.* Instead, the Complaint's allegations in support of Plaintiff's UCL claims focus entirely on *MindGeek's* conduct. Mot. 26. The Opposition has no answer for its failure to include any specific allegations as to *Visa* for these causes of action. Nor does the Opposition explain how its allegations against Visa satisfy the UCL's requirement that a defendant exercise "unbridled control" over the alleged unfair business practices. *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960, 116 Cal. Rptr. 2d 25, 33 (2002) (citation omitted). Visa is not alleged to have exercised this level of control over the purported sex trafficking venture, or really any level of control. The UCL claims fail along with Plaintiff's other causes of action. As with the TVPRA, Plaintiff's unfair business practices claim requires Plaintiff to plausibly allege Visa's "personal 'participation in the unlawful practices.'" *See* Mot. 27. Thus, the claim under California Business and Professions Code §§ 17200, 17500, fails for the same reason the TVPRA participation claim fails. *See supra* § II.A.

## CONCLUSION

Visa condemns the terrible harms that Plaintiff describes and stands against sex trafficking, sexual exploitation, and child sexual abuse material. There is no legal theory that renders Visa liable for the allegedly illegal acts committed by the perpetrators. For the above-stated reasons, the Court should dismiss all claims in Counts III, IV, VII, VIII, XVI, and XVII as to Visa with prejudice.

Dated:  July 25, 2022

RESPECTFULLY SUBMITTED,

*/s/ Drew Tulumello*
DREW TULUMELLO (#196484)
drew.tulumello@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorney for Defendant Visa Inc.*