WIECHERT, MUNK & GOLDSTEIN, PC
David W. Wiechert (SBN 94607)
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Phone: (949) 361-2822
Facsimile: (949) 361-5722
Email: dwiechert@aol.com

COHEN & GRESSER LLP
Jason Brown (admitted *pro hac vice*)
Nathaniel P. T. Read (admitted *pro hac vice*)
Colin C. Bridge (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Phone: (212) 957-6000
Facsimile: (212) 957-4514
Email: jbrown@cohengresser.com
Email: nread@cohengresser.com
Email: cbridge@cohengresser.com

*Attorneys for Defendant*
*Feras Antoon*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SERENA FLEITES,

       Plaintiff,

     v.

MINDGEEK S.A.R.L., a foreign entity;
MG FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
Delaware corporation; MG PREMIUM
LTD, a foreign entity; MG GLOBAL
ENTERTAINMENT INC., a Delaware
corporation, 9219-1568 Quebec, Inc.
(d/b/a MindGeek), a foreign entity;
BERND BERGMAIR, a foreign
individual; FERAS ANTOON, a foreign
individual; DAVID TASSILLO, a foreign
individual; COREY URMAN, a foreign
individual; VISA INC., a Delaware
corporation; COLBECK CAPITAL
DOES 1-5; and BERGMAIR DOES 1-5,

       Defendants.

Case No. 21-cv-04920-CJC-ADS

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT (DKT No. 124-3) ON BEHALF OF DEFENDANT FERAS ANTOON**

**Date: August 8, 2022**
**Time: 1:30 p.m.**
**Courtroom: 9 B**
**Judge: Hon. Cormac J. Carney**

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

# **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.    THERE IS NO PERSONAL JURISDICTION OVER
MR. ANTOON ................................................................................................... 2

    A.    The Amended Complaint Fails To Plead That Any of The
MindGeek Entities Are Mr. Antoon's Alter Ego .................................. 3

            1.    The Amended Complaint Does Not Allege That
Mr. Antoon And the MindGeek Entities Lack
Separate Personalities ................................................................ 4

            2.    The Amended Complaint Fails To Plead That
Injustice Would Result If The MindGeek Entities'
Acts Were Not Imputed To Mr. Antoon ..................................... 6

            3.    Plaintiff's Authorities Support Dismissal .................................. 7

    B.    Plaintiff Cannot Rely on Agency To Establish
Jurisdiction ........................................................................................... 9

    C.    The Amended Complaint Fails To Plead Sufficient
Contacts Between Mr. Antoon and the United States ......................... 10

    D.    The Court May Not Exercise Pendent Jurisdiction Over
Any Claims Against Mr. Antoon ........................................................ 12

    E.    The Exercise of Specific Jurisdiction Over Mr. Antoon
Would Be Unreasonable ..................................................................... 12

    F.    The Court Should Deny Plaintiff's Request for
Jurisdictional Discovery ..................................................................... 13

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
AGAINST MR. ANTOON ............................................................................. 16

    A.    The Amended Complaint Should be Dismissed Because
it Engages in Improper Group Pleading ............................................. 17

    B.    The Alter Ego Doctrine Does Not Excuse Plaintiff's
Failure to Plead Legally Sufficient Claims ........................................ 23

III.    CONCLUSION .............................................................................................. 25

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004)............................................................. 12

*ADO Finance, AG v. McDonnell Douglas Corporation*,
   931 F. Supp. 711 (C.D. Cal. 1996).......................................................... 9

*Allegro Consultants, Inc. v. Wellington Techs., Inc.*
   No. 13-CV-02204-BLF, 2014 WL 4352344 (N.D. Cal. Sept. 2,
   2014)................................................................................................. 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................... 8, 16, 19

*Beatport LLC v. SoundCloud Ltd*,
   No. CV 19-847 MRW, 2020 WL 3977602 (C.D. Cal. July 13,
   2020)......................................................................................... 11, 17

*Bell Atlantic Corporation v. Twombly*,
   550 U.S. 544 (2007) ......................................................... 8, 16, 19

*Brophy v. Almanzar*,
   359 F. Supp. 3d 917 (C.D. Cal. 2018)................................................ 14

*Calder v. Jones*,
   465 U.S. 783 (1984) ............................................................................ 2

*Calvert v. Huckins*,
   875 F. Supp. 674 (E.D. Cal. 1995)....................................................... 9

*Chan v. Society Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir. 1994)............................................................ 15

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, &
   Products Liability Litigation*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018)........................................... 19, 20

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016)................................................ 10

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON

*Daimler v. AG Bauman*,
    571 U.S. 117 (2014) ........................................................................ 10

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)........................................................... 7

*Doe v. Mindgeek USA Inc.*,
    2021 WL 5990195 (C.D. Cal. Dec. 2, 2021) ..................................... 21

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021)........................................ 21, 22

*Doe v. WebGroup Czech Republic, as*,
    No. 221CV02428VAPSKX, 2022 WL 982248 (C.D. Cal. Jan. 13,
    2022). (*See* Opp. Br. .)....................................................... 11, 17, 20

*Doe v. WebGroup Czech Republic*,
    No. 221CV02428VAPSKX, 2022 WL 982245 (C.D. Cal. Feb. 25,
    2022).................................................................................................. 17

*Federal Reserve Bank of San Francisco v. HK Systems*,
    No. C-95-1190 MHP, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) .................. 8

*Flynt Distrib. Co., Inc. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984)............................................................ 3

*Gerritsen v. Warner Bros. Ent. Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015)............................................. 24

*Gofron v. Picsel Techs., Inc.*,
    804 F. Supp. 2d 1030 (N.D. Cal. 2011) .............................................. 7

*Innovatel Servs. Inc. v. First Bridge Merch. Sols., LLC*,
    No. 220CV07681SBAGRX, 2021 WL 3415218 (C.D. Cal. Mar.
    19, 2021).......................................................................................... 25

*Johnson v. Mitchell*,
    No. CIV S-10-1968 GEB, 2012 WL 1657643 (E.D. Cal. May 10,
    2012).................................................................................................. 14

*Kao v. Holiday*,
    58 Cal. App. 5th 199 (Cal. Ct. App. 2020) ...................................... 24

- iii -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

*Laub v. United States Department of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ........................................................................ 14

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996) .......................................................................... 17

*Mehr v. Fed'n Internationale de Football Ass'n*,
   115 F. Supp. 3d 1035 (N.D. Cal. 2015) ......................................................... 12

*Mieuli v. DeBartolo*,
   No. C-00-3225 JCS, 2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ..................... 8

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
   No. 18-CV-02539-HSG, 2019 WL 1048252 (N.D. Cal. Mar. 5,
   2019) ............................................................................................................... 14

*Orchid Biosciences, Inc. v. St. Louis University*,
   198 F.R.D. 670 (S.D. Cal. 2001) ................................................................... 15

*Pac. Coast Shipyards Pension Fund v. Nautical Eng'g, Inc.*,
   No. 12-05439 RS, 2014 WL 120637 (N.D. Cal. Jan. 13, 2014) ..................... 24

*Pado, Inc. v. SG Trademark Holding Co. LLC*,
   No. CV2001565CJCPVCX, 2020 WL 1445720 (C.D. Cal. Mar.
   24, 2020) .......................................................................................................... 2

*Park Miller, LLC v. Durham Grp., Ltd.*,
   No. 19-CV-04185-WHO, 2019 WL 6841216 (N.D. Cal. Dec. 16,
   2019) .............................................................................................................. 4-5

*Payrovi v. LG Chem America, Inc.*,
   491 F. Supp. 3d 597 (N.D. Cal. 2020) ........................................................... 15

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .................................................................. 2, 3, 4

*Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*,
   No. 13-CV-2700-BAS JLB, 2014 WL 5847440 (S.D. Cal. Nov. 12,
   2014) ............................................................................................................... 3, 6

*Shin v. Time Squared Glob., LLC*,
   No. SACV1500943AGGJSX, 2015 WL 13284952 (C.D. Cal. Aug.
   26, 2015) ......................................................................................................... 23

- iv -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

*Sihler v. Fulfillment Lab, Inc.*,
    2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ................................................ 7, 8

*Sollberger v. Wachovia Sec., LLC*,
    No. SACV 09-0766AGANX, 2010 WL 2674456 (C.D. Cal. June
    30, 2010) ...................................................................................................... 17

*State Compensation Insurance Fund v. Khan*,
    2013 WL 12132027 (C.D. Cal. July 30, 2013) ........................................ 18, 19

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .......................................................................... 2

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
    No. LACV1901192CJCKLS, 2019 WL 8806093 (C.D. Cal. Sept.
    20, 2019) .................................................................................................. 3, 13

*Uhlig v. Fairn & Swanson Holdings, Inc.*,
    No. 20-CV-00887-DMS-MSB, 2020 WL 6872881 (S.D. Cal. Nov.
    23, 2020) ........................................................................................................ 6

*United States v. Toyota Motor Corp.*,
    561 F. Supp. 354 (C.D. Cal. 1983) .................................................................. 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
    Litig.*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ................................................ 20

*Waldrup v. Countrywide Financial Corp.*,
    2015 WL 93363 (C.D. Cal. Jan. 5, 2015) ....................................................... 19

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ............................................................ 12

**Statutes**

18 U.S.C. § 1595 .................................................................................................. 22

18 U.S.C. § 1964 .................................................................................................. 11

18 U.S.C. § 2255 .................................................................................................. 11

47 U.S.C. § 230 .................................................................................................... 22

- v -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

## Court Rules

Fed. R. Civ. P. 4(k)(2) ............................................................................. 10

Fed. R. Civ. P. 8 .......................................................................... 16, 19, 23

Fed. R. Civ. P. 9 .......................................................................... 16, 19, 23

Fed. R. Civ. P. 12(b)(2) ............................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 8, 23

Fed. R. Civ. P. 30(b)(6) ............................................................................. 9

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1

## PRELIMINARY STATEMENT

2    Mr. Antoon's motion to dismiss (ECF No. 137 ("Antoon Br.")) established

3    two independent grounds for dismissal.  First, Plaintiff has not met her burden to

4    establish personal jurisdiction over Mr. Antoon.  Second, the Amended Complaint[1]

5    fails to state a claim against Mr. Antoon.  Plaintiff's omnibus opposition briefing

6    (ECF No. 151 ("Opp. Br.")) does not meaningfully address—much less rebut—

7    these points, showing that Mr. Antoon does not belong in this case.

8    Recognizing that the Amended Complaint contains no facts directly

9    supporting personal jurisdiction over Mr. Antoon, Plaintiff relies on an alter ego

10    theory, arguing that the contacts of certain entities should be imputed to him.  But

11    Plaintiff's 534-paragraph, 169-page Amended Complaint does not include any

12    facts showing that Mr. Antoon had the required unity of interest and domination

13    over any entity sufficient to disregard the corporate form.  Nor has Plaintiff shown

14    that fraud or injustice will result if the corporate form is respected.

15    Plaintiff similarly cannot allege sufficient plausible facts to support her

16    claims against Mr. Antoon, and instead improperly lumps him in with other

17    individual and entity defendants (without any factual basis).  Such broad-brush

18    methods fail to rescue Plaintiff's legally deficient claims.

19    Plaintiff has had every opportunity to allege the facts required to link Mr.

20    Antoon to this jurisdiction and assert legally sufficient claims against him.  But

21    Plaintiff has failed to meet her burden.  As a result, the Amended Complaint

22    should be dismissed with prejudice.[2]

23

24    [1] Capitalized terms not defined herein have the definitions given in Mr. Antoon's opening memorandum of law.

25    [2] The Court should also dismiss Plaintiff's claims against Mr. Antoon for the

26    reasons set forth in the concurrently filed reply memoranda of law submitted by the MindGeek Entities, Bernd Bergmair, David Tassillo, and Corey Urman pursuant to

27    Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, which Mr. Antoon joins and incorporates by reference.

28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1

## ARGUMENT

2

## I.    THERE IS NO PERSONAL JURISDICTION OVER MR. ANTOON

3

4       Plaintiff has the burden to establish personal jurisdiction over Mr. Antoon.

5  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  To meet the

6  requirements of due process, the contacts of each defendant "must be assessed

7  individually."  *Calder v. Jones*, 465 U.S. 783, 790 (1984).  Important here, to meet

8  her burden, Plaintiff must allege plausible jurisdictional *facts*; "mere 'bare bones'

9  assertions of minimum contacts with the forum or legal conclusions unsupported

10 by specific factual allegations will not satisfy a plaintiff's pleading burden."

11 *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); *see also Pado, Inc. v. SG*

12 *Trademark Holding Co. LLC*, No. CV2001565CJCPVCX, 2020 WL 1445720, at

13 *4 (C.D. Cal. Mar. 24, 2020) (reasoning that "conclusory jurisdictional

14 allegations" that failed to "specifically identify any events or transactions that took

    place in California" were insufficient to establish jurisdiction).

15      The Amended Complaint—like the Complaint that preceded it—falls far

16 short of the specific factual allegations required to establish jurisdiction over Mr.

17 Antoon.  Tellingly, Plaintiff's omnibus opposition briefing also conflates

18 individuals and entities in a failed effort to create relevant jurisdictional contacts

19 where none exist.  (*See, e.g.*, Opp. Br. at 78 ("[D]efendants own and operate

20 hundreds of pornographic websites . . . defendants directly conduct operations and

21 advertisements in California . . .").)

22      Unable to show jurisdiction over Mr. Antoon based on his own actions,

23 Plaintiff is (once more) forced to rely on the assertion that two California-based

24 MindGeek Entities, MindGeek USA Inc. ("MG US") and MindGeek Global

25 Entertainment Inc. ("MG Global"), are his alter egos or agents.  (*See* Opp. Br. at

26 72.)  But Plaintiff's attempts to impute MG USA and MG Global's contacts to Mr.

27 Antoon and her other, half-hearted arguments supporting jurisdiction all fail.  And

28

- 2 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

because Plaintiff does not even attempt to explain how discovery could remedy the Amended Complaint's jurisdictional defects as to Mr. Antoon, her request for jurisdictional discovery should be denied.

### A.   The Amended Complaint Fails To Plead That Any of The MindGeek Entities Are Mr. Antoon's Alter Ego

Plaintiff contends that this Court may exercise general jurisdiction over Mr. Antoon based on an alter ego relationship between Mr. Antoon and MG US and MG Global.  (Opp. Br. at 72.)  But, as explained in Mr. Antoon's motion to dismiss, the Amended Complaint falls far short of pleading facts sufficient to provide a basis for imputing MG US's or MG Global's (or any other MindGeek Entity's) jurisdictional contacts to Mr. Antoon.  (*See* Antoon Br. at 15-17.)

For MG US's and MG Global's contacts to be imputed to Mr. Antoon, the Amended Complaint must plead facts showing "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice."  *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, No. LACV1901192CJCKLS, 2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019) (quoting *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)). Failure to establish either prong means that Plaintiff has failed to meet her burden. *See Ranza*, 793 F.3d at 1075 n.9 (because plaintiff did not show the nonexistence of separate personalities between individual and corporation, "we need not analyze the 'fraud or injustice' prong"); *Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, No. 13-CV-2700-BAS JLB, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014) (because plaintiff failed "to establish the second prong of the alter-ego analysis, the Court need not address the first prong"). As discussed below, Plaintiff has failed to show either prong.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

### 1. The Amended Complaint Does Not Allege That Mr. Antoon And the MindGeek Entities Lack Separate Personalities

As explained in Mr. Antoon's motion to dismiss, to show the required unity of interest and ownership under the first prong, the Amended Complaint must allege facts showing pervasive control, "such as when a parent corporation dictates every facet of the subsidiary's business," and Plaintiff cannot establish this through conclusory allegations. (*See* Antoon Br. at 15-16 (quoting *Ranza*, 793 F.3d at 1073)). The Amended Complaint's scant factual allegations confirm that Mr. Antoon did not have such pervasive control over any MindGeek Entity; he was a minority stakeholder and did not have ultimate control over the MindGeek Entities. (*See* Antoon Br. at 15-16.) Moreover, the Amended Complaint also fails to plead specific facts showing that Mr. Antoon commingled funds, treated corporate assets as his own, diverted or manipulated assets, or otherwise engaged in conduct suggesting an alter ego relationship where the individual and entity lack separate personalities. (*See* Antoon Br. at 16 (citing *Allegro Consultants, Inc. v. Wellington Techs., Inc.*, No. 13-CV-02204-BLF, 2014 WL 4352344, at *6 (N.D. Cal. Sept. 2, 2014).)

Plaintiff has no answer to Mr. Antoon's showing that the Amended Complaint falls far short of pleading an alter ego relationship between him and any MindGeek Entity. Tellingly, Plaintiff's alter ego arguments center on the MindGeek Entities. (*See* Opp. Br. at 74-77.) Even if Plaintiff had shown that certain MindGeek Entities failed to observe corporate formalities (she did not), her alter ego theory would fail because she did not attempt to establish that Mr. Antoon is the alter ego of MG US, MG Global, or any other entity. *See, e.g.*, *Park Miller, LLC v. Durham Grp., Ltd.*, No. 19-CV-04185-WHO, 2019 WL 6841216, at *10 (N.D. Cal. Dec. 16, 2019) (rejecting argument that intermingling assets of related companies established jurisdiction over individual under an alter ego theory). As

- 4 -

1    to the Individual Defendants, including Mr. Antoon, she offers only the cursory

2    argument that "the Complaint details each of their roles in directing, managing,

3    and carrying out the operations of the Company, including controlling and

4    dictating the illegal conduct at issue in this case."  (Opp. Br. at 74-75.)

5        As Plaintiff's conclusory statement underscores, the Amended Complaint

6    simply does not establish that Mr. Antoon had the pervasive control over any

7    MindGeek Entity required for the alter ego theory to apply.  Rather, the Amended

8    Complaint confirms Mr. Antoon's limited power over the MindGeek Entities

9    (including MG US and MG Global).  (*See, e.g.*, AC ¶¶ 97 ("Although the Bro-Club

10   led by Antoon remained in daily operational control of the restructured MindGeek,

11   they now answered to Bergmair on behalf of the new owners."), 431 ("The

12   Bergmair Doe Defendants . . . are the ultimate puppet masters of the Enterprise."),

13   96 ("Despite their centrality to the transaction, and control of the company going

14   forward, the identities of Bergmair's investors, as well as Bergmair's real identity

15   remained unknown even to Feras Antoon.").)  And the Amended Complaint

16   acknowledges that Mr. Antoon is a minority shareholder of the MindGeek Entities.

17   (*See* AC ¶ 96.)

18       Although she tries to insinuate impropriety, Plaintiff in fact describes a

19   common structure whereby Mr. Antoon and other senior executives attend to day-

20   to-day corporate affairs.  And the Amended Complaint does not allege that control

21   over the MindGeek entities is concentrated in any single person's hands, let alone

22   Mr. Antoon's.  The Amended Complaint thus pleads, at best, that Mr. Antoon had

23   *some* degree of control over an international group of companies in which he had

24   *some* ownership stake and that the group of companies was ultimately owned and

25   controlled by unnamed individuals unknown to Mr. Antoon.  These are not the

26   facts of alter ego.  Indeed, if Plaintiff's allegations were enough, alter ego

27   jurisdiction would be established for every executive or part owner of a multi-

28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

national group of companies, which of course is not the law.  It is thus no surprise that courts routinely *reject* alter ego theories based on allegations of far greater domination and control than Plaintiff has made here.  *See, e.g.*, *Uhlig v. Fairn & Swanson Holdings, Inc.*, No. 20-CV-00887-DMS-MSB, 2020 WL 6872881, at *3 (S.D. Cal. Nov. 23, 2020) (allegations that individual defendants controlled company and were its sole members, officers, and owners "alone [did] not establish the requisite level of control for alter ego jurisdiction").

In sum, the Amended Complaint provides no basis to conclude that Mr. Antoon and the MindGeek Entities lack separate personalities.

### 2.    The Amended Complaint Fails To Plead That Injustice Would Result If The MindGeek Entities' Acts Were Not Imputed To Mr. Antoon

As explained in Mr. Antoon's motion to dismiss, to satisfy the second prong of the alter ego test, "there must be an inequitable result if the acts in question are treated as those of the corporation alone," and Plaintiff cannot rely on conclusory allegations to meet this prong, either.  (*See* Antoon Br. at 16 (quoting *Shimmick*, 2014 WL 5847440, at *6, *7).)  Because the Amended Complaint does not plead that any MindGeek Entity is (or was) undercapitalized by Mr. Antoon or that any other inequity to Plaintiff arises from any action by Mr. Antoon, the Amended Complaint fails to establish that "fraud or injustice" would result if Mr. Antoon were not deemed the alter ego of any MindGeek Entity.  (*See* Antoon Br. at 16-17.)

Plaintiff has no response to Mr. Antoon's showing that the Amended Complaint fails to plead that "fraud or injustice" would result if the MindGeek Entities were not deemed to be his alter egos.  Rather, Plaintiff faults the Individual Defendants generally for not "submit[ting] a declaration refuting any of the underlying factual allegations that support this Court's jurisdiction."  (Opp. Br. at 75.)  But the Declaration of Mr. Andreou is unrebutted evidence on this motion

- 6 -
**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

that each of the corporate defendants is adequately capitalized and properly

observes corporate formalities.  (ECF No. 139-3, Declaration of Andreas

Alkiviades Andreou In Support of the MindGeek Defendants' Motion to Dismiss.)

Plaintiff offers no facts challenging this evidence, and thus, even if the Amended

Complaint had pleaded facts regarding the capitalization of these entities, the Court

could not rely on such allegations to support jurisdiction over Mr. Antoon.  *See*

*Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc., 557 F.2d 1280, 1284 (9th Cir. 1977)

(courts "may not assume the truth of allegations in a pleading" that are

contradicted by affidavit); *see also, e.g.*, *Gofron v. Picsel Techs., Inc.*, 804 F. Supp.

2d 1030, 1037 (N.D. Cal. 2011) (concluding plaintiffs could not rest on allegations

to establish jurisdiction where defendant nonresident company had submitted an

affidavit contradicting their allegations).  Indeed, although Plaintiff asserts that the

MindGeek Entities' evidence is consistent with Plaintiff's "allegation that the

various sham-entities operate in concert with one another to further their criminal

enterprise," Plaintiff does not point to any facts showing that any MindGeek Entity

was undercapitalized due to any action by Mr. Antoon.  (Opp. Br. at 75-76.)

Plaintiff has not and cannot show that fraud or injustice would result if Mr.

Antoon is not deemed to be an alter ego of MG US or MG Global (or any other

defendant) for jurisdictional purposes.  For this reason, Plaintiff cannot use alter

ego principles to establish jurisdiction over Mr. Antoon.

### 3.    Plaintiff's Authorities Support Dismissal

Plaintiff's cited authority supports dismissal.  (*See* Opp. Br. at 70-71 (citing

cases).)  For example, *Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436 (S.D. Cal.

Dec. 8, 2020) (cited in Opp. Br. at 73) rejected plaintiffs' arguments that the

individual defendant was the alter ego of the corporation, in part because the

plaintiffs had abandoned that argument in their opposition.  2020 WL 7226436, at

*6.  The *Sihler* court instead exercised personal jurisdiction over the individual

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1  defendant because the plaintiffs had "alleged sufficient facts and offered sufficient

2  evidence to make a prima facie showing that Defendant Nelson directly

3  participated in the alleged misconduct purposefully directed at California." *Id.* at

4  *7.  Plaintiff here has no such allegations.

5      Plaintiff's reliance on *Federal Reserve Bank of San Francisco v. HK*

6  *Systems*, No. C-95-1190 MHP, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) and

7  *Mieuli v. DeBartolo*, No. C-00-3225 JCS, 2001 WL 777447, at *10 (N.D. Cal. Jan.

8  16, 2001), is also unavailing.  In *HK Systems*, the court reasoned that, "[u]nder the

9  liberal pleading requirements of the Federal Rules and viewed in the light most

10 favorable to the Fed," allegations that a parent company "dominated and

11 controlled" its subsidiary "to such an extent that the individuality and separateness

12 of the subsidiary had ceased," among other things, "implicate[d] a variety of" the

13 factors relevant to the alter ego analysis.  1997 WL 227955 at *6.  In *Mieuli*, the

14 court exercised personal jurisdiction over an individual who allegedly dominated

15 the general partner of a limited partnership to such an extent that he acted as the *de*

16 *facto* general partner and thus could be held directly liable on a theory of *de facto*

17 partnership.  *See id.* at *10.

18      By contrast, the Amended Complaint contains no facts showing that Mr.

19 Antoon dominated MG US, MG Global, or any other entity.  As explained above,

20 the Amended Complaint makes plain that Mr. Antoon was not the majority owner

21 of the MindGeek Entities and did not control them.[3]

22      And the court in *ADO Finance, AG v. McDonnell Douglas Corporation*, 931

23 F. Supp. 711 (C.D. Cal. 1996) was presented with a strong evidentiary showing

24

25  _____

26  [3] *HK Systems* or *Mieuli*, which were decided before the Supreme Court's decisions
    in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v.*

27  *Twombly*, 550 U.S. 544 (2007), also cannot support Plaintiff's perfunctory
    argument that the Amended Complaint states a claim against Mr. Antoon under an

28  alter ego theory.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1    that a corporation's owner dominated his purported alter ego corporation.  Among

2    other things, the record included testimony from the corporation's Rule 30(b)(6)

3    witness that the individual, who solely owned its parent companies, appointed the

4    corporation's Board, directed the corporation's business decisions, and managed

5    the corporation's daily operations.  *Id.* at 718.  Again, while the *ADO* Court found

6    this strong showing of domination and control sufficient for a *prima facie* showing

7    of jurisdiction on an alter ego theory, by contrast the Amended Complaint alleges

8    that Mr. Antoon did not have the final say in the MindGeek Entities' strategy

9    decisions and was a minority stakeholder.  (*See supra* Section I.A.1.)

10        Plaintiff's reliance on *Calvert v. Huckins*, 875 F. Supp. 674 (E.D. Cal. 1995)

11    and *United States v. Toyota Motor Corp.*, 561 F. Supp. 354 (C.D. Cal. 1983) is

12    similarly misplaced.  (*See* Opp. Br. at 76.)  The *Calvert* court concluded that the

13    plaintiffs failed to make a *prima facie* case that parent corporations exerted such a

14    measure of control over their subsidiary sufficient to support an alter ego

15    relationship.  *See* 875 F. Supp. at 678-79.  The Amended Complaint's allegations

16    similarly fall short of establishing the requisite pervasive control over a purported

17    alter ego.  And the court in *Toyota Motor Corp.* concluded the nonresident

18    defendant's own contacts with the forum were sufficient to support the exercise of

19    jurisdiction over it; there was no need to pierce the corporate veil.  *See* 561 F.

20    Supp. at 359-60.  *Toyota* therefore offers no support to Plaintiff's alter ego

21    arguments.

22        In short, Plaintiff's authorities highlight the Amended Complaint's deficient

23    allegations of alter ego and support dismissal.

24        **B.    Plaintiff Cannot Rely on Agency To Establish Jurisdiction**

25        As noted above, in cursory fashion, Plaintiff asserts that "[t]his Court has

26    personal jurisdiction over each of the MindGeek Entities and Individual

27    Defendants based on the jurisdictional contacts of their agents/alter egos MG USA

28

and MG Global," suggesting that exercising jurisdiction over Mr. Antoon may be proper under an agency theory.  (Opp. Br. at 72.)  But Plaintiff again ignores *Daimler v. AG Bauman*, 571 U.S. 117 (2014), which "invalidated the Ninth Circuit's agency test for purposes of general jurisdiction."  (Antoon Br. at 9 (quoting *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016))).  Plaintiff also does not and cannot argue that the Amended Complaint sufficiently alleges that any of the MindGeek Entities acted as Mr. Antoon's agent for purposes of specific jurisdiction.  (*See* Antoon Br. at 17.)  Plaintiff has thus essentially abandoned her agency theory, and, for the reasons set forth in Mr. Antoon's opening memorandum of law, agency cannot be used to show jurisdiction over Mr. Antoon.  (*See* Antoon Br. at 9, 17.)[4]

## C.    The Amended Complaint Fails To Plead Sufficient Contacts Between Mr. Antoon and the United States

Plaintiff makes a barebones attempt to argue that even absent an alter ego relationship with MG US or MG Global, Mr. Antoon has sufficient minimum contacts with the United States to satisfy the requirements of jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure (the "Rules"), 18 U.S.C. § 2255, and 18 U.S.C. § 1964.[5]  But, as explained in Mr. Antoon's motion to dismiss, the Amended Complaint fails to allege any facts about what Mr. Antoon

---

[4] Plaintiff did not even respond to Mr. Antoon's showing in his motion to dismiss that the Amended Complaint fails to plead that he controlled or directly participated in the alleged wrongdoing giving rise to Plaintiff's claims such that the MindGeek Entities' jurisdictionally relevant contacts could be imputed to him; thus, for the reasons set forth in Mr. Antoon's Motion to Dismiss, no MindGeek Entity's contacts may be imputed to him on that theory, either.  (*See* Antoon Br. at 17-19.)

[5] Plaintiff makes no attempt to argue that the Amended Complaint pleads sufficient jurisdictionally relevant contacts between Mr. Antoon and California.  In any event, for the reasons set forth in Mr. Antoon's motion to dismiss, the Amended Complaint fails to allege sufficient contacts between Mr. Antoon and California.  (*See* Antoon Br. at 10-14.)

- 10 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

did relevant to Plaintiff's claims, much less that he took action directed at the United States. (*See* Antoon Br. at 10-14, 19-21.) Mr. Antoon, therefore, has insufficient contacts with the United States to satisfy the requirements of due process. (*See id.*)[6]

In response, Plaintiff again resorts to impermissibly lumping Mr. Antoon together with other individuals and the MindGeek Entities to try to create the illusion of sufficient jurisdictionally relevant contacts. (*See, e.g.*, Opp. Br. at 78 ("[D]efendants own and operate hundreds of pornographic websites . . . defendants directly conduct operations and advertisements in California . . . .").) These conclusory statements carry no weight: "It's obviously conclusory for a litigant to say that A and B (and C and D) all did the same thing to me, without making any attempt to distinguish between the parties or to explain in any way the basis for their alleged culpability." *Beatport LLC v. SoundCloud Ltd*, No. CV 19-847 MRW, 2020 WL 3977602, at *6 (C.D. Cal. July 13, 2020) (dismissing nonresident defendant because, among other things, pleadings "trie[d] to transfer [parent's] contacts with California to those of its subsidiary").

For the reasons in Mr. Antoon's motion to dismiss, where (as here) there has been no showing of an alter ego or agency relationship, one defendant's jurisdictional contacts cannot be attributed to another, and the Amended Complaint

---

[6] Plaintiff once again misunderstands Mr. Antoon's argument on jurisdiction under 18 U.S.C. § 1964. (*See* Opp. Br. at 79 n.41.) Mr. Antoon contends that, because service here was not effected pursuant to RICO's service provisions, 18 U.S.C. § 1964 provides no basis for applying the national contacts test to determine whether the requirements of specific jurisdiction have been satisfied. (*See* Antoon Br. at 19-21.) Similarly, Plaintiff appears to misunderstand the import of *Doe v. WebGroup Czech Republic, as*, No. 221CV02428VAPSKX, 2022 WL 982248 (C.D. Cal. Jan. 13, 2022). (*See* Opp. Br. at 79-80 n.42.) Contrary to Plaintiff's assertions, the *WebGroup* court did consider whether the plaintiff had established sufficient minimum contacts between the foreign individuals and the United States. *See* 2022 WL 982248, at *5-7. It concluded she was unable to establish that the foreign defendants, including individuals, had purposefully directed their activities to the United States. *See id.*

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

thus fails to establish specific jurisdiction over Mr. Antoon.  (*See* Antoon Br. at 7-22; *see also Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 848-49 (N.D. Cal. 2018) (disregarding allegations grouping defendants together); *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1052 (N.D. Cal. 2015) (no jurisdiction where none of the alleged California contacts had anything to do with plaintiffs' claims).)

### D.   The Court May Not Exercise Pendent Jurisdiction Over Any Claims Against Mr. Antoon

Plaintiff asserts that the Court should exercise pendent jurisdiction over the state law claims asserted against the Individual Defendants, among others.  (*See* Opp. Br. at 79.)  But pendent jurisdiction only applies to claims against the same defendant "for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  The Amended Complaint asserts no claims against Mr. Antoon for which personal jurisdiction exists, and thus pendent jurisdiction cannot be applied to establish personal jurisdiction over any claims asserted again Mr. Antoon.  (*See* Antoon Br. at 7-22.)

### E.   The Exercise of Specific Jurisdiction Over Mr. Antoon Would Be Unreasonable

In typical conclusory fashion, Plaintiff contests Mr. Antoon's showing that exercising jurisdiction over him would be unreasonable solely by improperly lumping him in with other defendants.  (*See, e.g.*, Opp. Br. at 80 ("Plaintiff alleges that the MindGeek Enterprise, under the control of the Individual Defendants, created shell entities in California . . . .").)  Tellingly, Plaintiff does not cite the Amended Complaint to support her argument that Mr. Antoon "purposely injected

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1    [himself] into the forum state's affairs." (Opp. Br. at 80.) That is because the

2    Amended Complaint contains no facts supporting that assertion.

3        Plaintiff also offers nothing to counter Mr. Antoon's argument that

4    exercising specific jurisdiction over him in this action would be unreasonable,

5    given: (1) the availability of a superior alternative forum (Canada, where Mr.

6    Antoon resides), (2) the fact that almost all of the defendants (including the

7    corporate defendants) are foreign and thus most if not all of the alleged acts or

8    omissions that purportedly injured Plaintiff occurred abroad, (3) the Court's lack of

9    interest in adjudicating claims against Mr. Antoon that have nothing to do with

10   what he did in California or the United States, and (4) the undue burden on Mr.

11   Antoon of litigating here. (*See* Antoon Br. at 21-22.) And so, for the reasons set

12   forth in Mr. Antoon's opening memorandum of law, exercising jurisdiction over

13   him in this action would be unreasonable.

14       **F.    The Court Should Deny Plaintiff's Request for Jurisdictional**
15       **Discovery**

16       Plaintiff contends that, "[a]t a minimum," she "is entitled to jurisdictional

17   discovery." (Opp. Br. at 80.) Although courts have discretion in determining

18   whether to permit jurisdictional discovery, a party must first make a showing that

19   such discovery is warranted and not a mere fishing expedition. *See Symettrica*,

20   2019 WL 8806093, at *5. Plaintiff offers no justification for jurisdictional

21   discovery, including how any discovery might shed light on whether Mr. Antoon

22   may be subject to personal jurisdiction. The rationale Plaintiff does offer—that

23   "information concerning the activities and jurisdictional contacts of each entity is

24   uniquely within defendants' possession"—makes no mention of what information

25   Plaintiff could discover that would provide a basis for personal jurisdiction over

26   Mr. Antoon. (Opp. Br. at 81; *see also* Opp. Br. at 76-77 (arguing for discovery

27

28

- 13 -
**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE**
**AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1  because "only the MindGeek Defendants, and not plaintiff has information from
2  which each entity's role can be determined.").)

3      Courts have denied jurisdictional discovery where, as here, plaintiffs fail to
4  identify how discovery could remedy their pleading defects and the request
5  amounts to nothing more than a fishing expedition based on speculation. *See, e.g.*,
6  *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-CV-02539-HSG, 2019 WL
7  1048252, at *7 (N.D. Cal. Mar. 5, 2019) (denying jurisdictional discovery where
8  plaintiffs failed "to provide the Court with 'specific facts, transactions, or conduct
9  that would give rise to personal jurisdiction.'" (citation omitted)); *Johnson v.*
10  *Mitchell*, No. CIV S-10-1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10,
11  2012) (denying jurisdictional discovery because, among other things, request was a
12  fishing expedition).

13      None of Plaintiff's authorities support a contrary result.  The court in *Laub v.*
14  *United States Department of Interior*, 342 F.3d 1080 (9th Cir. 2003) remanded
15  with instructions to the district court to permit discovery into *subject matter*
16  *jurisdiction* because, among other things, the plaintiff had proffered documents
17  suggesting the federal government played a significant enough role in an
18  interagency program to render actions taken pursuant to that program subject to
19  federal requirements. *Id.* at 1092-93.  Similarly, this Court in *Brophy v. Almanzar*,
20  359 F. Supp. 3d 917 (C.D. Cal. 2018) permitted jurisdictional discovery to
21  supplement plaintiff's evidentiary showing of, among other things, defendants'
22  business and presence in California. *Id.* at 924-25.  Here, in comparison, Plaintiff
23  has adduced nothing indicating the exercise of personal jurisdiction over Mr.
24  Antoon would be proper or, for that matter, anything suggesting a line of inquiry
25  that may shed light on whether Mr. Antoon may be subject to personal jurisdiction
26  here.

27
28

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1    Plaintiff's reliance on *Orchid Biosciences, Inc. v. St. Louis University*, 198

2  F.R.D. 670 (S.D. Cal. 2001) and *Payrovi v. LG Chem America, Inc.*, 491 F. Supp.

3  3d 597 (N.D. Cal. 2020) is similarly misplaced.  The *Orchid Biosciences* court

4  denied the defendant's request for a protective order regarding plaintiff's discovery

5  requests.  *Id.* at 671, 675.  The court deemed plaintiff's discovery requests to be

6  generally restricted to jurisdictional issues.  *See id.* at 674.  By contrast, Plaintiff

7  here has not even suggested what discovery she would seek to establish

8  jurisdiction over Mr. Antoon.  And the court in *Payrovi*, noting the plaintiff's

9  "specific suspicion" that a defendant targeted and advertised to California retailers

10  such as the one that sold the allegedly defective product to plaintiff, permitted

11  jurisdictional discovery into the extent and nature of that defendant's advertising

12  and marketing of that product to California retailers.  *See* 491 F. Supp. 3d at 609.

13  Unlike the plaintiff in *Payrovi*, Plaintiff can point to nothing in the Amended

14  Complaint that could lead to the discovery of relevant jurisdictional facts as to Mr.

15  Antoon.

16    Finally, *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994) also

17  does not help Plaintiff.  There, discovery was ordered based on plaintiffs

18  establishing a question of fact regarding whether a domestic company had acted as

19  the "general agent" of a foreign defendant.  *See id.* at 1406.  As noted above,

20  agency no longer provides a basis for general jurisdiction, and Plaintiff has not

21  raised any factual issues, much less the ones before the *Chan* court.

22    Plaintiff's Amended Complaint and opposition show that Mr. Antoon has

23  nothing to do with this case, and Plaintiff cannot explain how she could discover

24  jurisdictionally relevant facts as to Mr. Antoon.  As a result, Plaintiff's request for

25  jurisdictional discovery should be denied.

26

27

28

- 15 -
**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. ANTOON

Even if the Court concludes that it has personal jurisdiction over Mr. Antoon, the Court should dismiss the claims against him because the Amended Complaint is legally deficient under Rule 8(a), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).

Under *Twombly* and *Iqbal*, a complaint is subject to dismissal unless it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678.   As set forth in Mr. Antoon's motion to dismiss, the Amended Complaint does not allege plausible facts concerning Mr. Antoon's role in any of Plaintiffs' claims.   There are no factual allegations that Mr. Antoon participated in a sex trafficking venture involving Plaintiff, that he knew or should have known about the alleged trafficking, that he personally benefited from such sex trafficking, or that he agreed with others to violate the TVPRA.  (*See* Antoon Br. at 25-27.)  Similarly, Plaintiff's child pornography claims allege conduct by "MindGeek," but assert no facts establishing that Mr. Antoon was aware that Ms. Fleites was a minor, that he personally received or distributed any of the videos allegedly depicting her, or that his actions caused her injuries.  (*See* Antoon Br. at 28.)  Plaintiff's RICO allegations, likewise, do not describe Mr. Antoon's role in the alleged enterprise or identify any predicate acts by Mr. Antoon.  (*See* Antoon Br. at 29-31.)  And Plaintiff's state law claims are equally devoid of factual allegations about Mr. Antoon.  (*See* Antoon Br. at 31-32.)

Plaintiff's opposition does nothing to fix the Amended Complaint's fatal deficiencies.  Plaintiff does not—because she cannot—point to any factual allegations regarding conduct by Mr. Antoon relevant to her claims.  Essentially conceding that the Amended Complaint lacks adequate factual allegations

- 16 -

1  concerning Mr. Antoon, Plaintiff offers two arguments to avoid dismissal.  Neither

2  succeeds.  First, Plaintiff incorrectly asserts that "group pleading" is permissible

3  and, therefore, she need not make particularized allegations concerning Mr.

4  Antoon.  Second, Plaintiff suggests that such allegations are unnecessary because

5  the corporate and individual defendants are all alter egos and their acts may be

6  imputed to each other.  For the reasons discussed below, these arguments fail.

7  **A.    The Amended Complaint Should be Dismissed Because it Engages**

8  **in Improper Group Pleading**

9      As explained in Mr. Antoon's opening brief (*see* Antoon Br. at 23-24), it is

10  well-settled that a plaintiff suing multiple defendants must make particularized

11  allegations as to each defendant.  Courts in the Ninth Circuit routinely hold it to be

12  "a basic pleading defect for a complaint to 'lump' parties together and to fail to

13  distinguish between named defendants."  *Beatport LLC v. SoundCloud Ltd*, No.

14  CV 19-847 MRW, 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020); *see also*

15  *McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996) (affirming dismissal

16  where "no attempt is made to match up the specific factual allegations and the

17  specific legal claims to a specific defendant."); *Sollberger v. Wachovia Sec., LLC*,

18  No. SACV 09-0766AGANX, 2010 WL 2674456, at *4-5 (C.D. Cal. June 30,

19  2010) (group pleading "warrants dismissal" because it "deprives Defendants of

20  knowing exactly what they are accused of doing wrong"); *Doe v. WebGroup Czech*

21  *Republic, as*, No. 221CV02428VAPSKX, 2022 WL 982248, at *10 (C.D. Cal. Jan.

22  13, 2022), amended on reconsideration in part sub nom. *Doe v. WebGroup Czech*

23  *Republic*, No. 221CV02428VAPSKX, 2022 WL 982245 (C.D. Cal. Feb. 25, 2022)

24  (dismissing complaint alleging violations of sex trafficking and child pornography

25  laws where complaint "commingle[d] the Defendants together throughout much of

26  the pleading, without identifying which entities are responsible for the conducted

27  [sic] underlying the claims").

28

- 17 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE**
**AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1
2
3
4
5
6
7
8
9
10

     In her opposition, Plaintiff does not address, much less distinguish, the authorities cited by Mr. Antoon in support of dismissal under Rule 12(b)(6). Plaintiff instead attempts to justify her failure to distinguish among defendants or include specific allegations about Mr. Antoon by claiming that "group pleading" is allowed where "the defendants are uniquely in possession of information concerning" their conduct.  (*See* Opp. Br. at 31, n.8 (invoking "group pleading" in response to arguments by the "Individual Defendants"[7] that the Amended Complaint fails to state a sex trafficking claim); 51 (claiming that "group pleading" is permissible in response to the "MindGeek Defendants" argument that the Amended Complaint's RICO allegations are inadequate).)

11
12
13
14
15
16
17
18
19
20
21
22
23
24

     The cases cited by Plaintiff, however, do not help her argument.  Plaintiff claims that this Court's decision in *State Compensation Insurance Fund v. Khan*, 2013 WL 12132027 (C.D. Cal. July 30, 2013) held that group pleading is permissible where defendants "operate as a unit and obscure their individual roles, and information concerning each individual's participation is uniquely within defendants' control."  (*See* Opp. Br. at 54.)  But *Khan* did not condone group pleading.  On the contrary, this Court dismissed the original complaint due to pleading deficiencies including the complaint's failure "to plead the role of each defendant in the scheme" and its reliance on "'group pleading,' making it unclear which allegations were directed at which defendants." *Kahn*, 2013 WL 12132027, at *4.  The Court declined to dismiss the amended complaint because, among other reasons, it alleged facts showing what each defendant did: despite continued improper group pleading, the amended complaint "included enough factual detail

25

---

26
27
28

[7] Plaintiff's opposition brief tellingly cites the entity defendants' brief when referring to the individual defendants' arguments: "The Individual Defendants argue that the TVPRA claims against them fail because they are merely lumped in with the entity defendants. (MG Mot. 5-6)."  (Opp. at 31 n.8.)

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

to clarify the role and specific claims asserted against each defendant." *Id.*[8] Similar to the original complaint in *Khan*, the Amended Complaint here does not adequately "plead the role of each defendant" in the alleged scheme, typically alleging, instead, that all of the individuals engaged in the same conduct. (*See, e.g.*, AC ¶ 428 ("Defendants Antoon, Urman, Tassillo, and other Bro-Club members furthered the Enterprise's common purpose by, inter alia, directing the scheme to purchase trafficked and nonconsensual content in bulk . . ..").)

Plaintiff's reliance on *Waldrup v. Countrywide Financial Corp.* is also misplaced because the portion cited only considered the particularity requirements for pleading fraudulent concealment.  The court denied the motions to dismiss under Rule 9(b) because, even though the plaintiff did not specify each corporate defendant's role, the complaint identified the specific agents with whom the plaintiff dealt and included details concerning their authority to speak on behalf of the corporate defendants. *See Waldrup*, 2015 WL 93363, at *8 (C.D. Cal. Jan. 5, 2015).  Here, not only has Plaintiff not included the type of specific factual allegations found sufficient in *Waldrup*, she has not alleged plausible facts concerning Mr. Antoon sufficient to satisfy the basic pleading standards under Rule 8(a) and *Iqbal/Twombly*.

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, & Products Liability Litigation*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) also does not help Plaintiff.  Like *Waldrup, Chrysler-Dodge* involved unique factual circumstances and allegations concerning corporate rather than individual

---

[8] Moreover, contrary to Plaintiff's suggestion here, *Kahn's* holding that pleading requirements "may be relaxed with respect to matters within the opposing party's knowledge," had nothing to do with the issue of group pleading. This holding related only to the separate issue of whether the complaint's allegations could be based on information and belief.  As the Court explained: "many of the details related to the allegedly fraudulent enterprise are within Defendants' exclusive knowledge, and it is therefore acceptable that some of State Fund's allegations are based on information or belief."  *Kahn*, 2013 WL 12132027, at *4.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

defendants.  As a result of plaintiffs' specific allegations that defendants in the same corporate family had overlapping organizational structures, the court upheld allegations about the corporate group rather than requiring the misconduct of each of the two entities to be specified.  *Id*. at 976-77.  Indeed, in a part of the opinion not cited by Plaintiff, the court recognized that group pleading is generally not allowed but permitted it under the specific factual circumstances in that case.  *See id*. at 990 ("While, in general, 'lumping' of defendants is not permissible, Plaintiffs have made allegations explaining why it is appropriate in the instant case," including because defendants had grouped "business sectors by function (instead of location), such that plausibly both [defendant] companies played a role.").[9]

Plaintiff cannot use group pleading to avoid dismissal of her claims against Mr. Antoon.  The Amended Complaint's use of the collective "MindGeek" or "MindGeek Defendants" for each claim results in allegations against Mr. Antoon that "rest on, or are inextricably tied to," the allegations against other defendants.  *WebGroup*, 2022 WL 982248, at *10.  As a result, "it is difficult to parse out the conduct" for which Mr. Antoon is allegedly responsible.  *Id.*

Moreover, by doubling down on the Amended Complaint's strategy of lumping defendants together, Plaintiff's opposition flatly misrepresents and fails to counter arguments in Mr. Antoon's motion to dismiss.  For example, during her discussion of the Amended Complaint's sex trafficking allegations, Plaintiff asserts that "the MindGeek Defendants do not dispute that the FAC adequately alleges that they received benefits from their participation in a sex trafficking venture."

---

[9] The final case Plaintiff cites in support of group pleading, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017), does not add to the analysis because it concerns, in relevant part, the same underlying facts as the *Chrysler-Dodge* case and the same reasoning by the court.  *See id.* at *11 ("As alleged, each of [the corporate group's] sectors and divisions is grouped not by location, but by subject matter," and "[t]hese allegations support a plausible inference that the knowledge of, and action undertaken by, employees . . . can be attributed to both" corporate defendants).

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON

1   (Opp. Br. at 34.)  "MindGeek Defendants" is defined to include Mr. Antoon, but

2   Plaintiff's assertion is directly contradicted by Mr. Antoon's motion to dismiss,

3   which states that Plaintiff's claim "that 'the MindGeek Defendants' benefited from

4   a sex trafficking venture (*see, e.g.*, AC ¶ 370), is also insufficiently pleaded as to

5   Mr. Antoon" because the Amended Complaint fails to allege facts "showing that

6   Mr. Antoon knew about or participated in a trafficking venture, knowingly

7   benefited from it, or knew or should have known that the Plaintiff in this case was

8   a minor or a victim of sex trafficking." (Antoon Br. at 26.)

9          Plaintiff's refusal to differentiate among defendants also leads her to

10  repeatedly mischaracterize this court's decisions in *Doe v. MindGeek*.  In

11  connection with her sex trafficking causes of action, Plaintiff claims "this Court

12  has twice held based on substantially identical allegations that the MindGeek

13  Defendants 'knew or should have known that [p]laintiff[] w[as] the victim[] of sex

14  trafficking at the hands of user[] who posted the content.'"  (Opp. Br. at 35 (citing

15  *MindGeek,*558 F. Supp. 3d at 839 (C.D. Cal. 2021); *Doe v. Mindgeek USA Inc.,*

16  2021 WL 5990195, at *7-8 (C.D. Cal. Dec. 2, 2021)); *see also* Opp. Br. at 26

17  ("This Court has already held, based on nearly identical (albeit less egregious)

18  allegations, that the MindGeek Defendants' criminal scheme to monetize videos

19  depicting minors engaged in sex acts gives rise to claims for beneficiary

20  liability.").  Plaintiff here implies that the Court has upheld claims against Mr.

21  Antoon (who is included in the definition of "MindGeek Defendants" (*see* Opp.

22  Br. at 1, n.1)), based on allegations like those in the Amended Complaint, which

23  fail to include particularized allegations concerning Mr. Antoon or other individual

24  defendants.  But any such implication is inaccurate because the allegations in *Doe*

25  *v. MindGeek* are very different from Plaintiff's, neither Mr. Antoon nor any of the

26  individual defendants is a party in that case, and this Court has not ruled on the

27

28

- 21 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1
2
sufficiency of Plaintiff's allegations with respect to any of the individual

defendants.[10]

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
Similarly, the opposition's discussion of Section 230 of the Communications

Decency Act both mischaracterizes the Court's holding in *Doe v. MindGeek* and

impermissibly lumps Mr. Antoon in with the other defendants.  (*See* Opp. Br. at

65-69.)  Plaintiff claims that the MindGeek Defendants are not entitled to Section

230 protection in this case because they are "content creators." (*Id*. at 66.)

According to Plaintiff, this Court held in *Doe v. MindGeek* that the "MindGeek

Defendants" (defined to include Mr. Antoon), among other things, "solicit, review,

approve, and feature [illegal content] on their platforms" and "target" and

"encourage" child pornography through the use of coded language and video titles

and, therefore, contribute to the creation of child pornography.  (*Id*. at 67.)

According to Plaintiff, because the Amended Complaint in this case contains the

same allegations (which is not correct), "the Court's holdings in *Doe v. MindGeek*

apply with equal force here."  (*Id*. at 68-69.)  But not only was Mr. Antoon not a

defendant in *Doe v. MindGeek*, but, as Mr. Antoon argued in his motion to dismiss,

he is entitled to Section 230 immunity because the Amended Complaint does not

allege that he played a role in the creation or development of any CSAM videos,

including Plaintiff's videos.  (*See* Antoon Br. at 33).

20
21
22
23
24
---

[10] Plaintiff relies on similar misleading characterizations of *Doe v. MindGeek* regarding many of her other claims, improperly suggesting that they apply to Mr. Antoon and the other Individual Defendants, when they patently do not because those people were not parties to the case.  (*See* Opp. Br. at 46 n.18, 57).)

25
26
27
28
Moreover, Plaintiff overstates the holding in *Doe v. Mindgeek* regarding the Section 1595 claim.  There, the Court held only that the plaintiff's sex trafficking allegations were sufficient to survive a motion to dismiss.  *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837-40 (C.D. Cal. 2021).  The Court did not hold, for example, that the defendants actually knew or should have known that plaintiff was a victim of sex trafficking or that they otherwise violated the law.

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1
2
3
4
5
6
7
8
9
10
11

By continuing to lump Mr. Antoon together with the other defendants, Plaintiff fails to rebut the arguments in Mr. Antoon's motion to dismiss and fails to show how the Amended Complaint provides a "short and plain statement of the claim showing that the pleader is entitled to relief" from Mr. Antoon.  Fed. R. Civ. P. 8(a)(2); *see also Shin v. Time Squared Glob., LLC*, No. SACV1500943AGGJSX, 2015 WL 13284952, at *2 (C.D. Cal. Aug. 26, 2015) (explaining that "[o]ne common theme of Rule 8(a), Rule 9(b), and *Iqbal* and *Twombley* on pleading is that plaintiffs must give the defendants a clear statement about what the defendants allegedly did wrong" and dismissing complaint that "use[d] the omnibus term 'Defendants' throughout . . .  without identifying what the particular defendants specifically did wrong.").

12
13
14
15
16

Moreover, it would be futile to allow Plaintiff to further amend her complaint.  Plaintiff has already had the opportunity to amend her complaint in light of defendants' initial motion to dismiss.  That she continues to rely on group pleading instead of coming forward with particularized allegations against Mr. Antoon only confirms that Mr. Antoon does not belong in this case.

17
18

### B.    The Alter Ego Doctrine Does Not Excuse Plaintiff's Failure to Plead Legally Sufficient Claims

19
20
21
22
23
24
25

Plaintiff's alter ego allegations are also insufficient to rescue her claims. While Plaintiff's legal arguments concerning alter ego principally focus on jurisdiction (*see* Opp. Br. at 72-77), Plaintiff appears to suggest in her Rule 12(b)(6) discussion that her alter ego claim relieves her of the need to make substantive factual allegations about Mr. Antoon.  (*See, e.g.,* Opp. Br. at 45, 65.) Plaintiff's reliance on the alter ego doctrine in the Rule 12(b)(6) context is just as unavailing as her use of group pleading.

26
27
28

The Amended Complaint does not adequately allege that Mr. Antoon is the alter ego of any of the MindGeek Entities.  To state a claim for alter ego liability, a

- 23 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

1    plaintiff must allege the same two elements required in the jurisdictional context:

2    "First, there must be such a unity of interest and ownership between the

3    corporation and its equitable owner that the separate personalities of the

4    corporation and the shareholder do not in reality exist. Second, there must be an

5    inequitable result if the acts in question are treated as those of the corporation

6    alone." *Gerritsen v. Warner Bros. Ent. Inc.,* 112 F. Supp. 3d 1011, 1042 (C.D.

7    Cal. 2015) (citation omitted).  Conclusory allegations will not suffice.  *See id.*

8    (explaining that "[c]onclusory allegations of 'alter ego' status are insufficient to

9    state a claim. Rather, a plaintiff must allege specific facts supporting both of the

10   elements of alter ego liability."); *Pac. Coast Shipyards Pension Fund v. Nautical*

11   *Eng'g, Inc.*, No. 12-05439 RS, 2014 WL 120637, at *4 (N.D. Cal. Jan. 13, 2014).

12          As demonstrated above in Section I.A., the Amended Complaint lacks

13   plausible factual allegations about Mr. Antoon sufficient to plead an alter ego

14   relationship.  The Amended Complaint's conclusory allegations of Mr. Antoon's

15   management, operational control, and minority ownership of a group of related

16   companies fall short of the pervasive control needed to establish unity of interest

17   between Mr. Antoon and any MindGeek Entity (*see supra* Section I.A.1).  Nor

18   does Plaintiff allege a factual basis showing that there would be an inequitable

19   result if Mr. Antoon were not deemed to be an alter ego of any of the entity

20   defendants (*see* Section I.A.2).  Moreover, the sole alter ego case cited in the

21   opposition's 12(b)(6) discussion, *Kao v. Holiday*, 58 Cal. App. 5th 199, 202 (Cal.

22   Ct. App. 2020), only highlights the inadequacy of Plaintiff's alter ego allegations.

23   (*See* Opp. Br. at 65).  In *Kao*, the appellate court upheld a finding of alter ego

24   liability where, among other things, the trial court found that the defendants

25   commingled funds and made unauthorized use of corporate assets by paying their

26   rent with company funds and using personal funds to pay the plaintiff's salary.  *See*

27   *id*. at 206-07.  In contrast, as discussed above (*see supra* Section I.A.1.), the

28

- 24 -

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

Amended Complaint contains no allegations that Mr. Antoon commingled funds with any entity or that he treated corporate assets as his own.

Plaintiff's alter ego theory that "each of the Individual Defendants and MindGeek Entities . . . are alter egos of each other and hundreds of international sham shell companies," (Opp. Br. at 5) cannot save the Amended Complaint, which includes no specific facts relating to Mr. Antoon's actions and is therefore legally insufficient. *See Innovatel Servs. Inc. v. First Bridge Merch. Sols., LLC*, No. 220CV07681SBAGRX, 2021 WL 3415218, at *4 (C.D. Cal. Mar. 19, 2021) (dismissing complaint where alter ego allegations lacked factual support and were "little more than a string of legal conclusions insufficient to state a claim.").

## III.    CONCLUSION

For all of the foregoing reasons, and those set forth in his opening memorandum of law, Feras Antoon respectfully requests that the Court dismiss this action with prejudice for lack of personal jurisdiction or, in the alternative, for failure to state a claim.

DATED: July 25, 2022                    Respectfully Submitted,


                                        WIECHERT, MUNK & GOLDSTEIN, PC


                                        By: /s/ *David W. Wiechert*
                                            David W. Wiechert (SBN 94607)


                                        COHEN & GRESSER LLP

                                        Jason Brown (admitted *pro hac vice*)
                                        Nathaniel P. T. Read (admitted *pro hac vice*)
                                        Colin C. Bridge (admitted *pro hac vice*)
                                        *Attorneys for Defendant Feras Antoon*

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF FERAS ANTOON**

# CERTIFICATE OF SERVICE

I, Danielle Dragotta, an employee of Wiechert, Munk & Goldstein, PC, located at 27136 Paseo Espada, Suite B1123, San Juan Capistrano, California 92675, declare under penalty and perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On July 25, 2022, I served the forgoing documents, described as **REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT (DKT No. 124-3) ON BEHALF OF DEFENDANT FERAS ANTOON** on all interested parties as follows:

[ ]   **BY MAIL:** I caused such envelope(s) to be deposited in the mail at San Juan Capistrano, California with postage thereon fully prepaid to the office of the addressee(s) as indicated on the attached service list. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[X]   **BY E-MAIL:** I caused the document(s) to be transmitted electronically by filing the forgoing with the clerk of the District Court using the CM/ECF system, which electronically notifies counsel for all parties.

[ ]   **BY PERSONAL DELIVERY:** I personally delivered the document(s) listed above to the person(s) as indicated on the attached service list.

[X]   **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 25, 2022, at San Juan Capistrano, California.


                              /s/*Danielle Dragotta*
                              Danielle Dragotta

CERTIFICATE OF SERVICE